# Exhibit A

## INVESTMENT MANAGEMENT AGREEMENT

INVESTMENT MANAGEMENT AGREEMENT, dated as of June 14th, 2002 by and between Carlton A. Jones (the "Client"), and Gramercy Advisors, L.L.C., a Delaware limited liability company (the "Investment Manager"),

W I T N E S S E T H:

WHEREAS, the Client and the Investment Manager wish to enter into this Agreement in order to set forth the terms and conditions upon which the Investment Manager will provide investment advisory services to the Client.

NOW, THEREFORE, in consideration of the premises and mutual covenants hereinafter set forth, the parties hereto agree as follows:

1.   Appointment

The Client hereby appoints the Investment Manager to act as investment manager in respect of the Client for the period and on the terms set forth in this Agreement. The Investment Manager accepts such appointment and agrees to render the services herein set forth. The Client represents and warrants as of the date of this Agreement that it is a "Qualified Purchaser" on the basis set forth in Exhibit I.

2.   Authority of Investment Manager

The Investment Manager shall have full discretion and authority to manage the portfolio of securities and other investments (including cash), instruments and contracts belonging to the Client (the "Account") in accordance with the investment approach set forth on Schedule A attached hereto and made a part hereof the investment approach (the "Investment Approach"). The Investment Manager may, but is not required to take into account any strategies or other suggestions made from time to time by the Client, or by any of its professional advisors (i.e. accountants or legal counsel) who the Investment Manager believes have been authorized by the Client to provide such suggestions. The Client shall allocate to the Account the initial amount of $1,200,000.00 which amount may increase or decrease based on appreciation or depreciation of the Account and by subsequent allocations or withdrawals as reflected on the books and records of the Investment Manager.

Subject to the foregoing, the Investment Manager, as attorney-in-fact of the Client, is hereby authorized without further approval by the Client (except as may be required by applicable law):

(a)   to enter into such investments as are in accordance with the Investment Manager's best judgment and the Investment Approach.

1

(b)     to make all decisions relating to the manner, method and timing of trading and investment transactions and to select, open, maintain and close accounts with brokers, dealers and other intermediaries by or through whom such transactions will be executed or carried out;

(c)     to open, maintain and close bank accounts and draw checks or other orders for the payment of money, and to direct banks, brokers or other custodians to deliver funds or assets, including to third parties, but only in the course of effecting trading and investment transactions for or on behalf of the Client and for the payment of any fees and expenses due and owing to the Investment manager under this Agreement,

(d)     to make and execute all such documents and to take all such other actions as the Investment Manager considers necessary or appropriate to carry out its duties hereunder.

The Investment Manager may perform its obligations hereunder itself or through investment entities which is sponsors or other affiliates (the term "affiliate" means any other person or entity which directly or indirectly controls, is controlled by or is under common control with such person or entity; a person or entity shall be deemed to be controlled by such other person or entity, if it has the power to direct or cause the direction of the management policies of such person or entity whether by contract or otherwise) and which investment entities provide for certain lock-up periods for any investment in such respective entities. If the Investment Manager is to provide the Client with any service under this Agreement through affiliates, the identity of such affiliate shall be provided to the Client and a copy of the operating agreement of any investment entity into which assets of the Account have been invested shall be delivered by the Investment Manager to the Client.

3.  Valuation of Assets; Reports to the Client

The Investment Manager shall promptly submit or cause to be submitted to the Client such reports of the Account and of the market value of the Account as the Client shall from time to time reasonably require. The Investment Manager shall not incur any individual liability or responsibility for any determination made, advice given or action taken or omitted by it in good faith with respect to the determination of the value of the Account.

4.  Fees

In consideration of and as compensation for the performance of its services pursuant to this Agreement, the Investment Manager shall receive management and incentive fees directly from the respective investment entities established and managed by the Investment Manager, or an affiliate, in which the Account has acquired an interest, on the terms and conditions provided in the operating agreement of the respective investment entities and the client authorizes the Investment Manager to deduct all such fees from any account maintained by or on behalf of the client at any bank, broker or custodian.

5.  Brokerage

In the course of selecting brokers, dealers, banks and intermediaries to effect transactions for the Client, the Investment Manager may agree to such commissions, fees and other charges on behalf of the Client as it shall deem reasonable in the circumstances taking into account all

2

such factors as it deems relevant, including the quality of research services made available to the Investment Manager (even if such research services are not for the exclusive benefit of the Client) and all forms of "soft-dollar" payments available to the Investment Manager, including those which may constitute additional compensation to the Investment Manager. It is understood that the costs of such services will not necessarily represent the lowest costs available and that the Investment Manager is not under an obligation to combine or arrange orders so as to obtain reduced charges. In reaching such determination, the Investment Manager is not required to place or attempt to place a specific dollar value on the services of a broker or on the portion of any commission reflecting such services. In demonstrating that such determinations were made in good faith, the Investment Manager shall be prepared to show that all commissions were allocated and paid for purposes related to the Investment Manager's investment activities; that the services provided by the broker are for lawful and appropriate assistance to the Investment Manager in the performance of his investment decision-making responsibilities; and that the commissions paid were within a reasonable range. The determination that commissions are within a reasonable range shall be based on any available information as to the level of commissions known to be charged by other brokers. Services provided by brokers to the Investment Manager are considered to be in addition to, and not in lieu of, services required to be performed by the Investment Manager pursuant to the Investment Management Agreement.

6.  Other Activities of the Investment Manager

    (a)  The Client consents to and acknowledges that:

        (i)  the Investment Manager may act as investment adviser, sponsor or general partner for other customers, accounts and collective investment vehicles and may give advice, and take action, with respect to any of those customers, accounts and pooled investment vehicles which may differ from the advice given, or the timing or nature of action taken, with respect to the Client or its Account;

        (ii)  where there is a limited supply of an investment opportunity, the Investment Manager will use its best efforts to allocate or rotate investment opportunities in a manner deemed equitable, but the Investment Manager cannot assure, and assumes no responsibility for, equality among all accounts and customers; and to the extent permitted by law, the Investment Manager shall be permitted to bunch or aggregate orders for the Client's Account with orders for other accounts, notwithstanding that the effect of such aggregation may operate to the disadvantage of the Client;

        (iii)  the Investment Manager, its partners and their respective affiliates and the partners, shareholders, members, officers, directors and employees of the Investment Manager, its partners and their respective affiliates may engage in transactions or make investments or cause or advise other customers to engage in transactions or make investments which may differ from or be identical to the transactions engaged in or investments made by the Investment Manager for the Client or its Account; the Investment Manager shall not have any obligation to engage in any transaction or make any investment for the Client or to recommend any transaction or investment to the Client which the Investment Manager, its partners or any of their respective affiliates or any of the partners, members, shareholders, officers, directors or employees of the Investment Manager, its partners or any of their respective affiliates may

3

engage in or make for their own accounts or the account of any other customer, except as otherwise required by applicable law; and

        (iv)    the Investment Manager or its affiliates may, in accordance with applicable law, engage in brokerage transactions in which the Investment Manager or one of its affiliates acts as broker for both the Client and another person on the other side of the transaction for which it will receive commissions or other compensation, and the Client may purchase securities or other instruments from, or sell securities or other instruments to, the Investment Manager or its affiliates.

        (b)    By reason of the Investment Manager's advisory, investment banking and related activities, the Investment Manager may acquire confidential or material non-public information or be restricted from initiating transactions in certain securities. It is acknowledged and agreed that the Investment Manager will not be free to divulge, or to act upon, any such confidential or material non-public information with respect to the Investment Manager's performance of this Agreement and that, due to these restrictions, the Investment Manager may not initiate a transaction for the Client that the Investment Manager otherwise might have initiated, and the Client may be frozen in an investment position that it otherwise might have liquidated or closed out.

7.    <u>Limitation of Liability, Exculpation and Indemnification</u>

        (a)    Whether or not therein expressly so provided, every provision of this Agreement relating to the conduct or affecting the liability of or affording protection to the Investment Manager, its members or any of their affiliates and their respective partners, members, officers, directors, employees and agents shall be subject to the provisions of this Section.

        (b)    To the fullest extent permitted by law, the Investment Manager, its members, and any of their respective affiliates, and their respective partners, members, officers, directors, employees, shareholders and agents (including parties acting as agents for the execution of transactions) shall not be liable to the Client or anyone for any reason whatsoever (including but not limited to (i) any act or omission by the Investment Manager in connection with the conduct of the business of the Client, that is determined by the Investment Manager in good faith to be in or not opposed to the best interests of the Client, (ii) any act or omission by the Investment Manager based on the suggestions of any professional advisor of the Client whom the Investment Manager believes is authorized to make such suggestions on behalf of the Client, (iii) any act or omission by the Client, or (iv) any mistake, negligence, misconduct or bad faith of any broker or other agent of the Client selected by the Investment Manager with reasonable care), unless any act or omission by the Investment Manager constitutes willful misconduct, gross negligence, a violation of applicable securities laws or criminal wrongdoing by the Investment Manager.

        (c)    The Investment Manager is not required to inquire into or take into account the effect of any tax laws or the tax position of the Client in connection with managing the Account. To the fullest extent permitted by law, neither the Investment Manager, its members or any of their respective affiliates and their respective partners, members, officers, directors, employees, shareholders and agents shall be liable in any manner to the Client with respect to the effect of any U.S. federal, state, local or any other taxes of any nature whatsoever on the Account or the

4

Client in connection with managing the Account or in connection with this Agreement or otherwise. The Client agrees that it has consulted its own tax advisor regarding the possible tax consequences of establishing the Account or entering into any investment made under or in connection with this Agreement. The Investment Manger shall make any payment, or shall transfer all or any part of the Account, to the Client without deduction of any taxes, duties, charges or levies except where required by law, provided that the Investment Manager is entitled to discharge from the Account any such taxes, duties, charges or levies which are properly incurred in connection with managing the Account. In addition, to the fullest extent permitted by law, neither the Investment Manager, its members or any of their respective affiliates and their respective partners, members, officers, directors, employees, shareholders and agents shall have any personal liability to the Client, or its partners, officers, directors, employees, shareholders or agents, by reason of any change in U.S. federal, state or local or foreign income tax laws, or in the interpretations thereof, as they apply to the Client or the shareholders thereof, whether the change occurs through executive, legislative, judicial or administrative action.

(d)     The Investment Manager may consult with legal counsel or accountants selected by it and any act or omission by it on behalf of the Client or in furtherance of the business of the Client in good faith in reliance on and in accordance with the advice of such counsel or accountants shall be full justification for the act or omission, and the Investment Manager shall be fully protected in so acting or omitting to act if the counsel or accountants were selected with reasonable care.

(e)     To the fullest extent permitted by law, the Client shall indemnify and save harmless the Investment Manager, its members and any of their respective affiliates and their respective partners, members, officers, directors, employees, shareholders and agents (including parties acting as agents for the execution of transactions) (the "Indemnitees"), from and against any and all claims, liabilities, damages, losses, costs and expenses, including amounts paid in satisfaction of judgments, in compromises and settlements, as fines and penalties and legal or other costs and expenses of investigating or defending against any claim or alleged claim, of any nature whatsoever, known or unknown, liquidated or unliquidated, that are incurred by any Indemnitee and arise out of or in connection with the business of the Client, managing the Account, any investment made under or in connection with this Agreement, or the performance by the Indemnitee of the Investment Manager's responsibilities hereunder and against all taxes, charges, duties or levies incurred by the Investment Manager or any Indemnitee in connection with the purchase or sale or ownership of the Account, provided that an Indemnitee shall be entitled to indemnification hereunder only if the Indemnitee acted in good faith and in a manner the Indemnitee reasonably believed to be in or not opposed to the best interests of the Client and the Indemnitee's conduct did not constitute willful misconduct, gross negligence, a violation of applicable securities laws or criminal wrongdoing. The termination of any proceeding by settlement, judgment, order or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that an Indemnitee did not act in good faith and in a manner that the Indemnitee reasonably believed to be in or not opposed to the best interests of the Client or that the Indemnitee's conduct constituted willful misconduct, gross negligence, a violation of applicable securities laws or criminal wrongdoing.

(f)     Expenses incurred by an Indemnitee in defense or settlement of any claim that shall be subject to a right of indemnification hereunder, shall be advanced by the Client prior to

the final disposition thereof upon receipt of an undertaking by or on behalf of the Indemnitee to repay the amount advanced to the extent that it shall be determined ultimately that the Indemnitee is not entitled to be indemnified hereunder.

(g)     The right of any Indemnitee to the indemnification provided herein shall be cumulative of, and in addition to, any and all rights to which the Indemnitee may otherwise be entitled by contract or as a matter of law or equity and shall be extended to the Indemnitee's successors, assigns and legal representatives.

(h)     The provisions of this Section are expressly intended to confer benefits upon the Investment Manager, its partners and any of their respective affiliates and any of their respective partners, members, officers, directors, employees, shareholders and agents and such provisions shall remain operative and in full force and effect regardless of the expiration or any termination of this Agreement.

(i)     Notwithstanding anything in this Agreement to the contrary, the aggregate maximum amount that the Client shall be liable to Indemnitees pursuant to this Agreement shall, to the extent not prohibited by law, never exceed the amount of management and incentive fees paid by the Client to the Investment Manager under this Agreement prior to the date that the acts or omissions giving rise to a claim for indemnification or liability shall have occurred. In no event shall the Investment Manager be liable for special, exemplary, punitive, indirect, or consequential loss, or damage of any kind whatsoever, including without limitation lost profits. The Investment Manager shall not incur any liability for interest on any monies at any time received by it or any investment loss or other charge resulting therefrom with respect to amounts invested hereunder.

8.     Custody

The Investment Manager may offer or arrange for custody services in connection with the Account. The Investment Manager shall provide any custodian holding assets of the Client with such information as such custodian may require relating to all transactions concerning the assets belonging to the Client.

9.     Rendering Services

The Investment Manager may employ (at its expense except as set forth in Section 5 of this Agreement), retain or otherwise avail itself of services or facilities of other persons or organizations for the purpose of providing the Investment Manager with such statistical or factual information, advice or assistance as the Investment Manager may deem necessary, appropriate or convenient for the discharge of the Investment Manager's obligations hereunder or otherwise helpful to the Client; provided, however, that the Investment Manager shall not assign, transfer or otherwise delegate to any other such person or organization the discretionary investment authority given to the Investment Manager as set forth in this Agreement. The Client expressly consents to and authorizes the Investment Manager to deduct from the Account or assets of the Client under management of the Investment Manager, in addition to advisory fees payable to the Investment manager by the Client, fees payable to attorneys and accountants for

professional services incurred by the Investment Manager on behalf of the Client in connection with or related to investment advisory services.

10.   Partial Withdrawals, Term and Termination

(a)   All withdrawals or redemptions from, or termination of investments in investment entities established and managed by the Investment Manager or an affiliate, which relate to investments of the Account made into such investment entities, shall be governed by the respective operating agreement of such investment entities.

(b)   For all other investments of the Account, the Client shall have the right to make partial withdrawals of any amount from the Account from time to time on ten (10) days prior written notice. The right of the Client to make partial withdrawals or to terminate upon ten (10) days' notice is subject to market conditions permitting the Investment Manager to liquidate the Account in a prudent manner and the Investment Manager shall have the right to extend this Agreement as necessary to liquidate the Account in such manner.

(c)   This Agreement shall become effective on the date hereof and shall remain in full force and effect until one year after the date hereof and shall be automatically extended for additional one-year terms thereafter, provided that either party may also terminate this Agreement at any time on or after the initial term of this Agreement upon ten (10) days' prior written notice to the other party. The right to terminate this Agreement at any time is subject to the fact that investments made by the Investment Manager in investment entities may be subject to a lock-up period and withdrawals or redemption from, or termination of the investment in, such investment entities may be made only in accordance with the terms of the respective operating agreement governing such investment entities.

11.   Independent Contractor Status

The Investment Manager and the Client shall for all purposes herein be deemed to be independent contractors with respect to each other.

12.   Nonexclusivity

Nothing in this Agreement shall limit or restrict the right of the Investment Manager to engage in any other business or to render services of any kind to any other corporation, firm, individual or association.

13.   Notices

(a)   Notices of any kind to be given to the Investment Manager shall be in writing and shall be duly given if mailed or delivered to the Investment Manager: Gramercy Advisors LLC, 545 Steamboat Road, First Floor, Greenwich, CT 06830, Attention: Bob Young, or to such other entity or individual as shall be specified by the Investment Manager to the Client in accordance with this paragraph 13. If the Investment Manager changes the address of its place of business, it shall so notify the Client in accordance with this paragraph 13.

(b)     Notices of any kind to be given to the Client shall be in writing and shall be duly given if mailed or delivered to the Client, Carlton A. Jones at 2734 East Oakland Avenue, #18, Johnson City, TN 37601 or at phone 423-282-3025 or at such other address or to such other individual as shall be specified by the Client to the Investment Manager in accordance with this paragraph 13.

14.    General Conditions

(a)     This Agreement contains the entire agreement between the parties hereto and may be modified only by a written agreement signed by the parties hereto.

(b)     This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but the rights and obligations hereunder shall not be assignable or transferable without the written consent of the other party hereto and any attempted assignment transfer or delegation thereof without such consent shall be void. The foregoing shall not prevent an assignment by the Investment Manager in connection with any transaction which is deemed not to be an assignment pursuant to Rule 202(a)(1)-1 under the United States Investment Advisers Act of 1940, as amended ("Advisors Act") or pursuant to other applicable law.

(c)     The Client understands and agrees that the Investment Manager or any affiliate of the Investment Manager may engage in "agency cross transactions" as defined in Rule 206(3)-2 ("Agency Cross Transactions") promulgated by the Securities and Exchange Commission under the Advisers Act in which the Investment Manager or such affiliate acts as a broker for both the Client (or a fund in which an Account is invested), and for another person on the other side of the transaction. The Client understands and agrees that the Investment Manager or such affiliate may receive commissions from, and have a potentially conflicting division of loyalties and responsibilities regarding, both parties to such Agency Cross Transactions. This consent, as to Agency Cross Transactions effected on behalf of the Client, may be revoked at any time by written notice from the client to the Investment Manager. The Client also understands and agrees that the Investment Manager may effect a transaction between two managed accounts or funds that it or an affiliate advises and that the Investment Manager may have potentially conflicting division of loyalties and responsibilities regarding cross trading. The Investment Manager will only engage in such cross trading transactions if the sales price is no less disadvantageous to the Client then the best price that the Client could receive elsewhere.

(d)     This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard for the principles of conflict of laws thereof.

(e)     This Agreement may be executed in one or more counterparts each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

(f)     If any term or provision hereof, or the application thereof to any person or circumstance, shall to any extent be contrary to any applicable exchange or government regulation or otherwise invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those as to which it

is contrary, invalid or unenforceable shall not be affected thereby and, to the extent consistent with the overall intent hereof as evidenced by this Agreement taken as a whole, shall be enforced to the fullest extent permitted by applicable regulation and law.

      IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their officers designated below on the date hereinabove written.

                              GRAMERCY ADVISORS, L.L.C.

                          By: _____
                              Name: Jay A. Johnston
                              Title: Managing Director

                          By: _____

9

## SCHEDULE A

### Investment Approach

The investment objective of the Investment Manager with respect to the Account is to seek a superior long-term rate of return through an actively managed portfolio of primarily foreign exchange and fixed income investments in developed and developing countries throughout the world. The Investment Manager believes that there exists the greatest number of opportunities in the emerging markets and to a lesser extent in the developed markets. The Investment Manager intends to select investments that are likely to result in high capital appreciation as well as current income.

The Account intends to make investments primarily by acquiring an interest in these investments or by acquiring interests in investment entities which are established and managed by the Investment Manager and which entities themselves would be a vehicle for acquiring the investments described herein. The purpose of utilizing these investment entities will be to achieve, through pooling of assets managed by the Investment Manager, increased liquidity and reduced costs. The Account will invest in financial instruments, securities and transactions, including, but not limited to, foreign exchange and derivatives thereof, debt (bonds, convertible bonds, loans, trade credits, bank deposits and other types of debt securities) of issuers with their principal business activities and interests located in emerging market countries, and cash (short-term U.S. government securities and bank deposits). Debt securities typically will not be investment grade and will be most likely subject to periods of illiquidity. In addition, the Investment Manager or investment entity may buy or sell put or call options on securities, foreign exchange and forward contracts on securities or foreign exchange involving emerging markets. The Investment Manager may also engage in short sales of securities. The Investment Manager may from time to time in its discretion vary the allocation of the assets among different financial instruments, securities and markets.

Countries eligible for investments will include any country, including those listed as "emerging" by the World Bank, which list is modified from time to time. Although this would include virtually every country in Central and South America, Africa, the Caribbean, Eastern Europe, republics of the former Soviet Union, and several in Asia, it is the policy of the Investment Manager not to focus its attention exclusively on any particular "emerging" country, but rather to remain open to developed and emerging market countries in all available geographical areas.

There is no restriction of the percentage of the Account that may be invested in any single issuer, country or region.

NYK 768740-2.050695.0011

# EXHIBIT I

## to the Investment Management Agreement between the Client and the Investment Manager

Each Client must indicate whether he, she or it qualifies as a "Qualified Purchaser" pursuant to *at least one* of the following tests. (Please check *all* that apply, or, if none applies, consult the Investment Manager.)

(1) ☐ a natural person who owns not less than $5,000,000 in investments[1];

(2) ☐ a company that owns not less than $5,000,000 in investments that is owned directly or indirectly by or for two (2) or more natural persons who are related as siblings or spouse (including former spouses), or direct lineal descendants by birth, adoption, spouses of such persons, the estates of such persons, or foundations, charitable organizations or trusts established by or for the benefit of such persons;

(3) ☐ a trust not covered by clause (2) above that was not formed for the purpose of acquiring the securities offered, as to which the trustee or other person authorized to make decisions with respect to the trust, and each settlor or other person who has contributed assets to the trust is a person described in clauses (1), (2) above or (4) below;

(4) ☐ either a person acting for its own account or the accounts of other qualified purchasers, who in the aggregate owns and invests on a discretionary basis not less than $25,000,000 in investments or (y) a qualified institutional buyer (as defined in paragraph (a) of Rule 144A promulgated under the Securities Act), meeting the requirements of Rule 2a51-1(g) promulgated under the Investment Company Act (reproduced at Exhibit I hereto); or

(5) ☑ a company all of the securities of which are beneficially owned by "qualified purchasers."

---

[1] For the definition of "investments", see Rule 2a51-1 promulgated under the Investment Company Act, which is reproduced in Exhibit II hereto.

11

**EXHIBIT II**

<u>to the Investment Management Agreement between the Client and the Investment Manager</u>

Rule 2a51-1 -- Definition of Investments for Purposes of Section 2(a)(51) (Definition of "Qualified Purchaser"); Certain Calculations

a.  Definitions. As used in this section:

   1. The term Commodity Interests means commodity futures contracts, options on commodity futures contracts, and options on physical commodities traded on or subject to the rules of:

      i. Any contract market designated for trading such transactions under the Commodity Exchange Act and the rules thereunder; or

      ii. Any board of trade or exchange outside the United States, as contemplated in Part 30 of the rules under the Commodity Exchange Act.

   2. The term Family Company means a company described in paragraph (A)(ii) of section 2(a)(51) of the Investment Company Act of 1940, as amended (the "Act").

   3. The term Investment Vehicle means an investment company, a company that would be an investment company but for the exclusions provided by sections 3(c)(1) through 3(c)(9) of the Act or the exemptions provided by Rule 3a-6 or Rule 3a-7, or a commodity pool.

   4. The term Investments has the meaning set forth in paragraph (b) of this section.

   5. The term Physical Commodity means any physical commodity with respect to which a Commodity Interest is traded on a market specified in paragraph (a)(1) of this section.

   6. The term Prospective Qualified Purchaser means a person seeking to purchase a security of a Section 3(c)(7) Company.

   7. The term Public Company means a company that:

      i. Files reports pursuant to section 13 or 15(d) of the Securities Exchange Act of 1934; or

      ii. Has a class of securities that are listed on a "designated offshore securities market" as such term is defined by Regulation S under the Securities Act of 1933.

   8. The term Related Person means a person who is related to a Prospective Qualified Purchaser as a sibling, spouse or former spouse, or is a direct lineal descendant or ancestor by birth or adoption of the Prospective Qualified Purchaser, or is a spouse of such descendant or ancestor, provided that, in the case of a Family Company, a

12

Related Person includes any owner of the Family Company and any person who is a Related Person of such owner.

9. The term Relying Person means a Section 3(c)(7) Company or a person acting on its behalf.

10. The term Section 3(c)(7) Company means a company that would be an investment company but for the exclusion provided by section 3(c)(7) of the Act.

b. Types of Investments. For purposes of section 2(a)(51) of the Act, the term Investments means:

1. Securities (as defined by section 2(a)(1) of the Securities Act of 1933, other than securities of an issuer that controls, is controlled by, or is under common control with, the Prospective Qualified Purchaser that owns such securities, unless the issuer of such securities is:

    i. An Investment Vehicle;

    ii. A Public Company; or

    iii. A company with shareholders' equity of not less than $50 million (determined in accordance with generally accepted accounting principles) as reflected on the company's most recent financial statements, provided that such financial statements present the information as of a date within 16 months preceding the date on which the Prospective Qualified Purchaser acquires the securities of a Section 3(c)(7) Company;

2. Real estate held for investment purposes;

3. Commodity Interests held for investment purposes;

4. Physical Commodities held for investment purposes;

5. To the extent not securities, financial contracts (as such term is defined in section 3(c)(2)(B)(ii) of the Act entered into for investment purposes;

6. In the case of a Prospective Qualified Purchaser that is a Section 3(c)(7) Company, a company that would be an investment company but for the exclusion provided by section 3(c)(1) of the Act, or a commodity pool, any amounts payable to such Prospective Qualified Purchaser pursuant to a firm agreement or similar binding commitment pursuant to which a person has agreed to acquire an interest in, or make capital contributions to, the Prospective Qualified Purchaser upon the demand of the Prospective Qualified Purchaser; and

7. Cash and cash equivalents (including foreign currencies) held for investment purposes. For purposes of this section, cash and cash equivalents include:

13

  i. Bank deposits, certificates of deposit, bankers acceptances and similar bank instruments held for investment purposes; and

  ii. The net cash surrender value of an insurance policy.

c. Investment Purposes. For purposes of this section:

1. Real estate shall not be considered to be held for investment purposes by a Prospective Qualified Purchaser if it is used by the Prospective Qualified Purchaser or a Related Person for personal purposes or as a place of business, or in connection with the conduct of the trade or business of the Prospective Qualified Purchaser or a Related Person, provided that real estate owned by a Prospective Qualified Purchaser who is engaged primarily in the business of investing, trading or developing real estate in connection with such business may de deemed to be held for investment purposes. Residential real estate shall not be deemed to be used for personal purposes if deductions with respect to such real estate are not disallowed by section 280A of the Internal Revenue Code.

2. A Commodity Interest or Physical Commodity owned, or a financial contract entered into, by the Prospective Qualified Purchaser who is engaged primarily in the business of investing, reinvesting, or trading in Commodity Interests, Physical Commodities or financial contracts in connection with such business may be deemed to be held for investment purposes.

d. Valuation. For purposes of determining whether a Prospective Qualified Purchaser is a qualified purchaser, the aggregate amount of Investments owned and invested on a discretionary basis by the Prospective Qualified Purchaser shall be the Investments' fair market value on the most recent practicable date or their cost, provided that:

1. In the case of Commodity Interests, the amount of Investments shall be the value of the initial margin or option premium deposited in connection with such Commodity Interests; and

2. In each case, there shall be deducted from the amount of Investments owned by the Prospective Qualified Purchaser the amounts specified in paragraphs (e) and (f) of this section, as applicable.

e. Deductions. In determining whether any person is a qualified purchaser there shall be deducted from the amount of such person's Investments the amount of any outstanding indebtedness incurred to acquire or for the purpose of acquiring the Investments owned by such person.

f. Deductions: Family Companies. In determining whether a Family Company is a qualified purchaser, in addition to the amounts specified in paragraph (e) of this section, there shall be deducted from the value of such Family Company's Investments any outstanding indebtedness incurred by an owner of the Family Company to acquire such Investments.

g. Special rules for certain Prospective Qualified Purchasers--

14

1. Qualified institutional buyers. Any Prospective Qualified Purchaser who is, or who a Relying Person reasonably believes is, a qualified institutional buyer as defined in paragraph (a) of Rule 144A, acting for its own account, the account of another qualified institutional buyer, or the account of a qualified purchaser, shall be deemed to be a qualified purchaser provided:

    i. That a dealer described in paragraph (a)(1)(ii) of Rule 144A shall own and invest on a discretionary basis at least $25 million in securities of issuers that are not affiliated persons of the dealer; and

    ii. That a plan referred to in paragraph (a)(1)(i)(D) or (a)(1)(i)(E) of Rule 144A, or a trust fund referred to in paragraph (a)(1)(i)(F) of Rule 144A that holds the assets of such a plan, will not be deemed to be acting for its own account if investment decisions with respect to the plan are made by the beneficiaries of the plan, except with respect to investment decisions made solely by the fiduciary, trustee or sponsor of such plan.

2. Joint Investments. In determining whether a natural person is a qualified purchaser, there may be included in the amount of such person's Investments any Investments held jointly with such person's spouse, or Investments in which such person interests with such person's spouse a community property or similar shared ownership interest. In determining whether spouses who are making a joint investment in a Section 3(c)(7) Company are qualified purchasers, there may be included in the amount of each spouse's Investments any Investments owned by the other spouse (whether or not such Investments are held jointly). In each case, there shall be deducted from the amount of any such Investments the amounts specified in paragraph (e) of this section incurred by each spouse.

3. Investments by Subsidiaries. For purposes of determining the amount of Investments owned by a company under section 2(a)(51)(A)(iv) of the Act, there may be included Investments owned by majority-owned subsidiaries of the company and Investments owned by a company ("Parent Company") of which the company is a majority-owned subsidiary, or by a majority-owned subsidiary of the company and other majority-owned subsidiaries of the Parent Company.

4. Certain Retirement Plans and Trusts. In determining whether a natural person is a qualified purchaser, there may be included in the amount of such person's Investments any Investments held in an individual retirement account or similar account the Investments of which are directed by and held for the benefit of such person.

h. Reasonable Belief. The term "qualified purchaser" as used in section 3(c)(7) of the Act means any person that meets the definition of qualified purchaser in section 2(a)(51)(A) of the Act and the rules thereunder, or that a Relying Person reasonably believes meets such definition.