UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
GRAMERCY ADVISORS, LLC;         :
                                :
            Plaintiff,         :   **Civ. A. No. 07cv2809 (LMM)**
   v.                           :
                                :
CARLETON A. JONES, III, and     :
JOHN A. JONES;                  :
                                :
           Defendants.        :
------------------------------------------------------------ x

### STATEMENT OF MATERIAL FACTS NOT IN DISPUTE
### PURSUANT TO LOCAL CIVIL RULE 56.1

Pursuant to Local Civil Rule 56.1(a), Plaintiff GRAMERCY ADVISORS LLC ("Gramercy" or "Plaintiff"), hereby submits the following statement of material facts as to which there is no genuine issue to be tried.

1. In this action, Plaintiff seeks advancement of expenses and indemnification from Defendants in connection with expenses incurred in a lawsuit initially filed by the Defendants against BDO Seidman, LLP ("BDO") in U.S. District Court for the Middle District of Tennessee – captioned *John A. Jones and Carleton A. Jones, III v. BDO Seidman, LLP*, Case No. 3:06-CV-1115 (the "Tennessee Action") – which was recently amended to add Gramercy as a defendant. (See Ex. A.)

2. In the Tennessee Action, Defendants essentially allege that Gramercy participated in a conspiracy with defendant BDO in which it (acting through BDO) knowingly advised Defendants to pursue an illegal tax strategy (the "Tax Strategy"). (Ex. A, ¶ 29.)

    **A.    The Development of BDO's Tax Strategy and BDO's Solicitation of Defendants.**

3.    Defendants allege in the Tennessee Action that, during 2002, Carleton A. Jones, III ("Carleton Jones") and John A. Jones ("John Jones," and together with Carleton Jones, collectively, "Defendants"), highly sophisticated businessmen, sold their interests in their businesses, resulting in several million dollars of profits and taxable long-term capital gains. (Ex. A, ¶¶ 1, 2, 29, 34, 83.)

4.    Defendants allege in the Tennessee Action that, prior to such sale, Defendants had been introduced to BDO in 2001 through Defendant John Jones' ex-wife. (*Id.*, ¶¶ 79-82.)

5.    Defendants allege in the Tennessee Action that Mark Puckett, a BDO partner, learned of the impending sales of Defendants' business interests, and represented to Defendants that BDO had developed an investment strategy by which Defendants could avoid capital gains tax on the sales of their business interests. (*Id.*, ¶ 83-86.)

6.    Defendants allege in the Tennessee Action that BDO recommended that Defendants retain Gramercy to effectuate the transactions essential to the tax strategy. (*Id.*, ¶ 34.) Defendants also allege that in April 2002, Defendants, accompanied by their financial planner, Steve Solys, traveled to New York to meet with Puckett of BDO and Jay Johnston of Gramercy at BDO's New York office. (*Id.*, ¶ 94.)

    **B.    Limited Nature of Gramercy's Role and Its Related Right to Indemnification and Advancement.**

7.    Defendants allege in the Tennessee Action that, prior to the meeting in New York, Puckett told Defendants ***not to discuss any of the tax implications with Gramercy***. (*Id.*, ¶ 95.) According to Defendants, Puckett said this was in order for Gramercy to remain "independent and separate from BDO and the tax advice [BDO] was giving." (*Id.*)

8. Consistent with Puckett's alleged admonition to refrain from discussing tax matters with Gramercy, Defendants do not allege that Gramercy itself made any representations at the April 2002 meeting concerning: the tax benefits of BDO's investment strategy; past Internal Revenue Service ("IRS") inaction with respect to other BDO clients; anticipated IRS inaction with respect to Defendants' transactions; or any other matter touching on the legality or efficacy of BDO's investment strategy. (*See, e.g., id.*, ¶¶ 86, 74, 91-95, 99.)

9. Defendants allege in the Tennessee Action that several weeks after the April 2002 meeting in New York, on May 14 and June 3, 2002, respectively, Defendants entered into consulting agreements with BDO, and paid BDO a substantial fee. (*Id.*, ¶¶ 107-08, Ex. B.)

10. Defendants allege in the Tennessee Action that they had also retained the law firm of De Castro, West, Chodorow, Glickfield & Nass ("De Castro"), at BDO's urging, to issue legal opinion letters. (Ex. A, ¶ 104.)

11. Gramercy is not an accountancy firm, nor is it a law firm. It is in no position to advise clients on tax or legal matters, and it does not do so. Accordingly, Gramercy's role in the transactions referenced in Defendants' amended complaint was limited to the execution of the trades necessary to effectuate the tax strategy devised by BDO and De Castro. Gramercy did not advise the Joneses on tax matters or tax strategy, expressed no opinion whatsoever on the legality of any tax strategy selected by either of them, and indeed had none of the expertise to do so. (See Ex. C, ¶18; Ex. D, at, *e.g.*, 7; Ex. E, ¶ 7(c); Ex. F.)

12. Defendants allege in the Tennessee Action that, in mid-June 2002, they retained Gramercy to execute the transactions recommended by BDO and De Castro, and executed several agreements with Gramercy in connection therewith. (Ex. A, ¶ 104; Ex. E.) According to the Tax Strategy, which Gramercy did not devise, the transactions involved using distressed

3

emerging-market debt and other securities with a high cost basis and a low market value to generate losses that could be used to reduce their federal tax liability. (Ex. C, ¶16.)

13.   Defendants each signed an Investment Management Agreement (each an "IMA," and collectively, the "IMAs") stating in the clearest possible terms that Gramercy was not rendering, and could not render, any advice whatsoever concerning the tax implications of the transactions it was being asked to effectuate for Defendants. (See Ex. E.) Indeed, Paragraph 7(c) of the IMAs provided:

> [Gramercy] is not required to inquire into or take into account the effect of any tax laws or the tax position of [Defendant] in connection with managing the account. To the fullest extent permitted by law, ***neither [Gramercy], its members or any of their respective affiliates and their respective partners, members, officers, directors, employees, shareholders and agents shall be liable in any manner to [Defendant] with respect to the effect of any U.S. federal, state, local or any other taxes of any nature whatsoever on the Account of [Defendant] in connection with managing the Account or in connection with this Agreement or otherwise***. [Defendant] agrees that [he] has consulted [his] own tax advisor regarding the possible tax consequences of establishing the Account or entering into any investment made under or in connection with this Agreement.

(Ex. E, ¶ 7(c)(emphasis added).)

14.   Furthermore, under Paragraph 7(e) of the IMAs, each of the Defendants agreed:

> To the fullest extent permitted by law, ***[Defendant] shall indemnify*** and save harmless ***[Gramercy]***, its members and any of their respective affiliates and their respective partners, members, officers, directors, employees, shareholders and agents (including parties acting as agents for the execution of the transactions) (the "Indemnitees"), ***from and against any and all claims, liabilities, damages, losses, costs and expenses, including . . . legal or other costs and expenses*** of investigating or defending against any claim or alleged claim, ***of any nature whatsoever***, known or unknown, liquidated or unliquidated, that are incurred by [Gramercy] and arise out of or in connection with the business of [Defendant], managing the Account, any investment made under or in connection with this Agreement, or the performance by [Gramercy] of [Gramercy's] responsibilities hereunder . . . .

4

(Ex. E, ¶ 7(e) (emphasis added); Ex. A, ¶ 104.)

15. And, under Paragraph 7(f) of the IMAs, each of the Defendants further agreed:

> Expenses incurred by [Gramercy] in defense or settlement of any claim that shall be subject to a right of indemnification hereunder, ***shall be advanced by [Defendant] prior to the final disposition thereof*** upon receipt of an undertaking by or on behalf of [Gramercy] to repay the amount advanced to the extent that it shall be determined ultimately that [Gramercy] is not entitled to be indemnified hereunder.

(Ex. E, ¶ 7(f) (emphasis added).)

16. Similarly, in connection with Defendants' execution of their IMAs, they also executed and delivered to Gramercy side "belief" letters in which they each explicitly stated the following:

> In connection with the execution of the Investment Management Agreement between [Defendant] and Gramercy Advisors, LLC (the "Investment Manager"), the undersigned hereby represents and warrants to you that the investments made pursuant to the Agreement and all transactions related thereto (collectively, the "Transactions") are believed to be in accordance with all the laws, rules and regulations applicable to the undersigned.
>
> The undersigned further acknowledges that: (a) it has ***consulted with its own financial, tax and legal advisors with respect to the Transactions and, in particular, the effect of the tax laws and regulations and the impact of any notices or announcements issued by the IRS***, (b) it has ***not relied on [Gramercy] for any financial, tax or legal advice with respect to the Transactions***, and (c) it ***shall not have any claim against [Gramercy] in the event that any tax liability, problem or issue should arise in connection with the Transactions*** other than as a direct result of any negligence of [Gramercy] in effecting the investments pursuant to the Agreement.

(Ex. F (emphasis added).)

17. Consistent with the aforementioned disclaimers, Defendants retained their own tax lawyers – J. Lee Griffith, Esq. and Richard A. Johnson, Esq. of the Nashville firm Waller

Lansden Dortch & Davis – to carefully review BDO's tax advice and investment strategy. (Ex. G, 4.)

18. The biography of Mr. Johnson that appears on Waller Lansden's web site notes, *inter alia*, that he "combines his vast experience with LLCs . . . with strategic tax planning to minimize corporate and personal tax liabilities . . . ." (Ex. H, 1st page.) Likewise, Mr. Griffith "was the principal draftsman of the Tennessee Limited Liability Company Act;" "has published extensively on . . . taxes and the Limited Liability Company in Tennessee;" and has "extensive experience with the Tennessee Limited Liability Company Act and . . . federal tax issues." (Ex. I, 1st page)

19. Additionally, each Defendant specifically represented that counsel had received from BDO all materials necessary and desirable for their review of BDO's strategy. (Ex. B, at Appendix A ("I [(Defendant)] have received, reviewed, and evaluated such information and materials as I and my advisors deemed relevant, and have made an independent decision to participate in the Transactions.").)

20. Defendants allege in the Tennessee Action that on September 11, 2002 they each invested $1,120,000 with Gramercy to effectuate the transactions. (Ex. A, ¶ 110.)

**C. Defendants' Awareness Regarding the Risks Attendant to Their Tax Strategy.**

21. In addition to any information and/or assistance received from their legal advisors and financial planner regarding the risks of pursuing their Tax Strategy, Defendants allege in the Tennessee Action that in 1999 and 2000, the IRS issued two ***public*** Notices that, according to Defendants, invalidated the tax-advantaged investment strategies later pitched to them by BDO. (*Id.*, ¶¶ 55-58.)

22. Indeed, Defendants allege in the Tennessee Action that, prior to entering the

6

transactions at issue, they were aware that the IRS was attacking tax shelters. (Ex. A, ¶ 74.) According to the Tennessee Action, this awareness prompted them repeatedly to question BDO – not Gramercy – about the validity of the proffered tax strategy both before and after entering the transactions in question. (*Id.*) Defendants further allege in the Tennessee Action that BDO – not Gramercy – allegedly falsely represented that its tax strategy employed transactions "distinct from the types of tax shelters which the IRS was attacking." (*Id.*) Defendants admit, however, that BDO told them there was as much as a forty-nine percent chance that the IRS would ***not*** accord the transactions favorable treatment. (*Id.*, ¶ 131 n.5.) In fact, they admit that BDO disclosed that two of its own similar client transactions were under IRS review. (*Id.*, ¶ 86(4).)

23.     Further, Defendants acknowledged in "Appendix A" to their Consulting Agreement with BDO that "BDO has advised me . . . that if the IRS . . . challenges the tax treatment of the Transactions they could assert that I owe additional tax, interest and penalties," and that "BDO has made no representation concerning whether these Transactions might or might not cause my tax return to be examined by the IRS . . . Additionally, BDO has advised me that these transactions may be required to be disclosed in my income tax returns." (Ex. B, at Appendix A.)

24.     Moreover, Defendants also represented in "Appendix A" to their Consulting Agreement with BDO that "IRS regulations require BDO to maintain certain records for some tax-advantaged transactions and, on request, to provide this information to the IRS. . . . ***I understand that the Transactions could be subject to these rules***," and "BDO has informed me that they have not registered the Transactions as a tax shelter under the Internal Revenue Code as BDO believes that such Transactions are not required to be registered. I understand that there can be no assurance that the IRS will agree with this determination." (Ex. B, at Appendix A

(emphasis added).)

### D. Defendants File Their 2002 Tax Returns, Are Audited by the IRS, And Commence Litigation.

25. Defendants allege in the Tennessee Action that, on October 10, 2003, BDO issued tax opinion letters to Defendants, and several days later prepared and filed 2002 tax returns for Defendants. (*Id.*, ¶¶ 114, 117, 122.) According to the Tennessee Action, the returns claimed losses generated by BDO's investment strategy as offsets to the capital gains incurred in Defendants' 2002 sale of their business interests. (*Id.*, ¶¶ 119.)

26. Defendants allege in the Tennessee Action that in "the latter part of 2005," the IRS determined that the deductions on Defendants' 2002 returns would be disallowed, and proposed a settlement imposing monetary penalties on Defendants. (*Id.*, ¶¶ 135-37.) Contrary to BDO's alleged promise to "vigorously defend" Defendants, BDO advised Defendants to accept the proposed settlement rather than attempting to negotiate a more favorable one. (*Id.*, ¶¶ 128-139.)

27. Defendants thereafter commenced the Tennessee Action against BDO in or about November 2006.

28. On or about March 27, 2007, Defendants amended their complaint in the Tennessee Action to add Gramercy as a defendant. (See Ex. A.)

29. Gramercy has already incurred legal fees and costs in defending the Tennessee Action, including the costs recently incurred in preparing and filing a motion to dismiss that lawsuit based on, *inter alia*, lack of jurisdiction and failure to state a claim for which relief can be granted. (See accompanying Declaration of Michael E. Petrella, dated June 15, 2007, ¶ 3.)

30. Gramercy has undertaken (in paragraph 21 of the complaint it has filed in this action) to repay the amount advanced by Defendants to the extent that it is determined ultimately

that Gramercy is not entitled to indemnification under the IMAs.  (See Ex. J.)

Dated:       New York, New York
             June 15, 2007

/s/ Sean F. O'Shea
Sean F. O'Shea (SO 5746)
Michael E. Petrella (MP 3794)
Robert R. Viducich (RV 7300)
**O'SHEA PARTNERS LLP**
90 Park Avenue, 20th Floor
New York, New York 10016
Tel:    (212) 682-4426
Fax:   (212) 682-4437