# Exhibit B

# CONSULTING AGREEMENT

This Consulting Agreement ("Agreement") is entered into as of the 14th day of May, 2002 (the "Effective Date") by and between Carleton A. Jones (the "Client") and BDO Seidman, LLP, a New York registered limited liability partnership ("BDO"), with offices at 5100 Poplar Avenue, Suite 2600, Memphis, TN 38137.

## WITNESSETH

WHEREAS, the Client is interested in making certain investments (the "Transactions");

WHEREAS, BDO is in the business of providing accounting, tax and consulting services; and

WHEREAS, the Client desires BDO to provide certain consulting, tax and accounting services in connection with the Transactions, and BDO desires to provide such consulting services to the Client, all upon the terms and conditions provided herein.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Term. Unless earlier terminated as provided herein, the term of this Agreement shall commence on the Effective Date and shall continue through December 31, 2003 (the "Term").

2. Services. (a) During the Term, BDO agrees to provide the following consulting services to the Client (the "Services"): consulting services in conjunction with the sale of equity interest(s) in certain entities, including assistance in determining the overall tax and economic effects of potential sales price(s) and allocations thereof, assisting the Client and/or the Client's advisors in structuring the Transaction(s) to attain the most beneficial tax results, and assisting with certain income tax, estate tax, personal financial planning and other financial aspects of various anticipated investment activities. **BDO is not in the business of providing investment or legal advice or related services, thus, none of the services to be rendered by BDO to Client can or will include investment or legal advice and should not be considered as investment or legal advice. Client acknowledges and represents that it will, and is, not relying upon BDO for investment or legal advice or related services.**

(b) BDO will provide the Client with an opinion reasonably acceptable to Client's counsel concerning the federal income tax consequences of the Transactions. The





opinion will be in addition to and not in lieu of the opinion the Client will receive from legal counsel. The fee for the opinion to be provided by BDO is included in the Consulting Fee set forth in this Agreement.

(c) The Services hereunder do not include the preparation of any tax returns by BDO. Your tax returns may be selected for review by the tax authorities, and any proposed adjustments by the examining agents are subject to certain rights of appeal. Further, the Services hereunder do not include representation in any such review or any subsequent appeals. We are available on request to prepare tax returns for you or to represent you in any such proceedings. BDO's representation will be subject to a separate engagement letter(s), and we will render additional invoices for the time and expenses incurred.

(d) BDO is bound by the ethics of its profession as Certified Public Accountants in the performance of its services hereunder. BDO however is not a guarantor of its advice and will be liable to Client only in the event one or more aspects of such professional advice constitutes professional negligence. Client agrees that BDO and its personnel shall not be liable to the Client for any claims, liabilities, or expenses relating to this Agreement for an aggregate amount in excess of the fees paid by the Client to BDO pursuant to this Agreement.

3. Fees.

(a) In consideration for the performance of the Services, the Client shall pay BDO $600,000 (the "Consulting Fee"). If the Client's account, after default, is referred to an attorney or collection agency for collection, the Client shall pay all of BDO's reasonable expenses incurred in such collection efforts including, without limitation, court costs and reasonable attorneys' fees. In the event that BDO's performance of the Services results in BDO being required to spend time or incur expenses with respect to any subsequent legal process or litigation involving a third party (for example, testifying in a litigation matter), BDO will charge the Client for that time at BDO's prevailing hourly rates and for reimbursement of those expenses.

(b) The total Consulting Fee shall be due and payable from the Client to BDO on or before May 28, 2001 either by wire transfer to an account designated by BDO in writing to the Client or by Client check, whichever manner of payment is requested by BDO.

4. Termination.

(a) Either party shall have the right to terminate this Agreement if -

(i) the other party breaches or defaults under this Agreement and fails to cure such breach or default within seven (7) days after receiving written notice from the non-breaching party; or

(ii) the other party becomes insolvent or makes an assignment for the benefit of creditors, or a receiver or similar officer is appointed to take charge of all or part of such other party's assets.

(b) The terms and conditions of Paragraphs 3, 5, 6, 7, 8, and 14 shall survive any expiration or termination of this Agreement. Client's obligation to pay the Consulting Fee as specified in paragraph 3 shall be unaffected by any expiration or termination of this Agreement. No refund of the Consulting Fee will be made in the event of any expiration or termination of this Agreement.

5. Indemnification. The Client, at its own expense, shall release and indemnify, defend and hold BDO and its affiliates, along with their respective partners, employees, agents, designees, insurers and assignees, harmless from and against, all losses, claims, damages, liabilities, costs and expenses (including reasonable legal or other out-of-pocket expense) incurred, caused by or arising out of the performance of the Services by BDO for the Client, the Transactions, or any transaction related thereto, or the Client's breach of this Agreement. This indemnity excludes a final adjudication that BDO engaged in gross negligence or willful misconduct in performing the Services which gave rise to the loss, claim, damage, liability, cost or expense sought to be recovered. Pending any such final decision, the indemnification and reimbursement provisions of this Agreement shall apply and the Client shall perform its obligations to reimburse BDO for its expenses.

6. No Warranty. **BDO makes no warranties, express or implied, under this Agreement with respect to the Services or otherwise. BDO expressly disclaims any implied warranty of merchantability or fitness for a particular purpose or use.** As stated above, the Services to be provided in connection with this Agreement include the issuance of an opinion regarding the federal income tax consequences of the Transactions. In this regard, BDO accepts responsibility for the opinion BDO will provide to Client. BDO does not assume any responsibility whatsoever, and shall not be held liable for any legal and/or tax opinions not prepared by BDO regarding any strategies that may be implemented by Client during the term of this Agreement. Client acknowledges and agrees that BDO has advised the Client to retain a law firm for legal as well as tax opinions on any strategies or Transactions in which Client engages during the term of this Agreement. The Client's exclusive remedy, and BDO's sole liability to the Client, for any cause whatsoever related in any way to this Agreement or to the Services provided by BDO to Client, shall be limited to the dollar amount of the Consulting Fees actually paid to BDO by the Client under this Agreement. The foregoing limitation of liability shall apply regardless of the form of action, whether contract or tort, including, without limitation, negligence. Notwithstanding anything to the contrary, in no event shall BDO be liable for

any loss of profit, revenue, or other commercial injury or any special, incidental, punitive, indirect or consequential damages suffered by the Client or any third party, whether or not BDO has been advised of the possibility of such loss, injury, damages or third party claim. under any cause of action arising out of or relating to this Agreement or the Services provided by BDO to the Client in connection with this Agreement.

7. No Assignment. Neither party shall assign this Agreement, in whole or in part, without the prior written consent of the other party, which written consent shall not be unreasonably withheld. Subject to the foregoing, this Agreement shall inure to the benefit of and be binding upon the successors, legal representatives and assignees of the parties hereto.

8. Dispute Resolution.

(a) If any dispute, controversy or claim arises in connection with the performance or breach of this Agreement, either party may, upon written notice to the other party, request mediation in accordance with the then current Dispute Resolution Rules for Professional Accounting and Related Services Disputes (Including Mediation) of the American Arbitration Association ("AAA") Such mediation shall be assisted by a neutral mediator acceptable to both parties and shall require the best efforts of the parties to discuss with each other in good faith their respective positions and, respecting their different interests, to finally resolve such dispute.

(b) Each party may disclose any facts to the other party or to the mediator, which it, in good faith, considers necessary to resolve the dispute. However, all such disclosures shall be deemed in furtherance of settlement efforts and shall not be admissible in any subsequent legal proceeding against the disclosing party. Except as agreed by both parties, the mediator shall keep confidential all information disclosed during negotiations. The mediator shall not act as a witness for either party in any subsequent arbitration between the parties.

(c) Such mediation shall conclude within sixty days from receipt of the written notice unless extended by mutual consent. The parties may also agree at any time to terminate or waive mediation . The costs incurred by each party in such negotiations shall be borne by it; the fees and expenses of the mediator, if any, shall be borne equally by the parties.

(d) If any dispute, controversy or claim arises in connection with the performance or breach of this Agreement and cannot be resolved by mediation within sixty days (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by binding arbitration under the then current Dispute Resolution Rules for Professional Accounting and Related Services Disputes (Including Mediation) of the American Arbitration Association ("AAA"), and shall take place in either the cities of

Nashville, Johnson City or Memphis, Tennessee as mutually agreed by the parties unless the parties agree to a different locale. The arbitrator(s) shall permit each party to engage in limited discovery with a period of 60 days to complete any such discovery.

(e) Unless the parties agree to a single arbitrator, such arbitration shall be conducted before a panel of three (3) persons, one (1) chosen by each party and the third selected by the two (2) party-selected arbitrators. The arbitration panel shall have no authority to award non-monetary or equitable relief, and any monetary award shall not include punitive damages. The confidentiality provisions applicable to mediation shall also apply to arbitration.

(f) Judgment on the award issued by the arbitration panel may be entered in any federal or state court of competent jurisdiction. All reasonable costs of both parties, as determined by the arbitrators, including (1) the fees and expenses of the AAA and the arbitrators, and (2) the costs, including reasonable attorneys' fees, necessary to confirm the award in court shall be borne entirely by the non-prevailing party (to be designated by the arbitration panel in the award) and may not be allocated between the parties by the arbitration panel.

9. Enforceability. If any provision of this Agreement is declared invalid or unenforceable, such provision shall be deemed modified to the extent necessary and possible to render it valid and enforceable. In any event, the unenforceability or invalidity of any provision shall not affect any other provision of this Agreement, and this Agreement shall continue in full force and effect, and be construed and enforced, as if such provision had not been included, or had been modified as above provided, as the case may be.

10. Independent Contractor. BDO and the Client acknowledge that the relationship between the parties to this Agreement is exclusively that of an independent contractor and that BDO's obligations to the Client are exclusively contractual in nature. Nothing herein contained shall be construed to imply a joint venture, partnership or principal-agent relationship between BDO and the Client, and neither party shall have the right, power or authority to obligate or bind the other to any third party in any manner whatsoever.

11. Governing Law. This Agreement shall be governed and construed in accordance with the laws of the State of Tennessee, except for its conflict of law principles.

12. Entire Agreement. This Agreement (including Appendix A, which is incorporated herein as if the terms thereof were fully set forth in this Agreement) sets forth the entire agreement between the parties with respect to the subject matter herein, superseding all prior agreements, negotiations or understandings, whether oral or written,

with respect to such subject matter. This Agreement may not be amended or modified except in a writing signed by duly authorized representatives of the Client and BDO.

13. Notice. All notices and other communications required or desired to be given pursuant to this Agreement will be given in writing and will be deemed duly given upon personal delivery, or on the third day after mailing if sent by registered or certified mail, postage prepaid, return receipt requested, or on the day after mailing if sent by a nationally recognized overnight delivery service which maintains records of the time, place and recipient of delivery.

If to BDO: BDO Seidman, LLP
Attention: Mark D. Puckett
5100 Poplar Avenue, Suite 2600
Memphis, TN 38137
Phone: 901-680-7608

If to Client: Mr. Carleton A. Jones
2734 East Oakland Avenue, #18
Johnson City, TN 37601
Phone: ~~423-929-3111~~ 423-282-3025
~~Fax: 423-282-3025~~

or to such other person, entity, address or facsimile number as a party may respectively designate in like manner, from time to time.

14. Confidentiality Privilege

(a) A confidentiality privilege under Internal Revenue Code Section 7525 may pertain to certain communications between BDO (federally authorized tax practitioners) and the Client regarding federal tax advice provided pursuant to this Agreement. The Client understands that BDO makes no representation, warranty or promise and offers no opinion with respect to the applicability of such confidentiality privilege, if any, and the Client understands and agrees to this circumstance should such privilege be determined not to apply in any circumstance.

(b) By retaining BDO, the Client agrees that BDO is authorized to claim the privilege on the Client's behalf with respect to any applicable communications, up to and until such time as the Client may waive any such privilege in writing, or BDO may otherwise be required by law to disclose such communications in compliance with any court order, subpoenas, summonses, or incurs costs in defending the assertion of the privilege on the Client's behalf, the Client will be responsible for such costs.

15. Miscellaneous.

(a) The Client represents and warrants that it has the full power and authority to enter into this Agreement and to carry out the transactions provided for herein. In addition, the Client represents that it has not entered into any agreement regarding the subject matter hereunder with any other party that covers the period during which BDO is authorized to act and provide services hereunder.

(b) The failure of either party to require performance by the other of any provision hereof shall in no way affect the right to require performance at any time thereafter, nor shall the waiver of a breach of any provision hereof be taken to be a waiver of any succeeding breach of such provision or as a waiver of the provision itself.

(c) The paragraph headings set forth in this Agreement are for the convenience of the parties, and in no way define, limit, or describe the scope or intent of this Agreement and are to be given no legal effect.

(d) A copy of BDO's privacy policy is attached as Appendix B.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

**BDO SEIDMAN, LLP**

By: [signature]

Name: Mark D. Puckett

Title: Partner

**CARLETON A. JONES ("CLIENT")**

By: [signature]

APPENDIX A TO CONSULTING AGREEMENT

This Appendix A is incorporated in and made a part of the Consulting Agreement between Carleton A. Jones (the "Client" or "I") and BDO Seidman, LLP ("BDO"), dated May 14, 2001, as if this Appendix were set forth in full therein, and is subject to all of the terms and conditions of the Agreement. In connection with certain investments (the "Transactions") that I am making, I acknowledge that:

•BDO has advised me that, prior to entering into the Transactions, I should consult with a tax attorney or tax advisor independent of BDO concerning the potential tax treatment of the Transaction and the potential tax consequences to me of participating in the Transactions, and I have done so or declined to do so;

•BDO has advised me, and I understand, that like all tax positions, the tax treatment of the Transactions is subject to audit and challenge by the Internal Revenue Service (hereinafter "IRS") and/or a state or local taxing authority;

•BDO has advised me, and I understand, that if the IRS and/or a state or local taxing authority challenges the tax treatment of the Transactions they could assert that I owe additional tax, interest and penalties. Any such liability is solely my responsibility;

•I understand that in contributing property to any limited liability company that receives a contribution of property in the course of the Transactions, I can either contribute (a) a combination of certain leveraged assets and additional unleveraged assets or (b) solely unleveraged assets. BDO has recommended that I contribute solely unleveraged assets and has advised me that certain additional tax risks may arise if leveraged assets are contributed to the limited liability company. I represent that I have independently considered the type of assets to contribute;

•BDO has made no representation concerning whether these Transactions might or might not cause my tax return to be examined by the IRS, or other taxing authority. Additionally, BDO has advised me that these transactions may be required to be disclosed in my income tax returns;

•Federal, state and local laws, including tax laws, are subject to change. Changes in the law could be retroactive and could affect the tax treatment of the Transactions. BDO will not advise me of changes in the law unless specifically engaged in writing to do so;

•IRS regulations require BDO to maintain certain records for some tax-advantaged transactions and, on request, to provide this information to the IRS. Among the information required to be provided are the identity of investors and a description of the tax advantages expected to be derived from the transaction. I understand that the Transactions could be subject to these rules;

•BDO has informed me that they have not registered the Transactions as a tax shelter under the Internal Revenue Code. I understand that there can be no assurance that the IRS will agree with this determination;

•BDO does not provide investment or legal advice to its clients, and has not provided me with investment or legal advice concerning the Transactions; and

•I have received, reviewed, and evaluated such information and materials as I and my advisors deemed relevant, and have made an independent decision to participate in the Transactions.

Carleton A. Jones

APPENDIX B TO CONSULTING AGREEMENT BETWEEN
CARLETON A. JONES AND BDO SEIDMAN, LLP

## BDO Seidman, LLP Privacy Policy

BDO Seidman, LLP may obtain nonpublic personal information about your family, income, expenditures, investments, estate, insurance coverage, or other personal matters that BDO Seidman, LLP may need in order to perform the services for which you have engaged the firm. This information may be obtained from the following sources:

a. Forms you fill out to obtain our services;

b. Documents that you provide to us;

c. Documents that you authorize us to obtain from others;

d. Discussions with you;

e. Discussions with others that you authorize us to undertake.

BDO Seidman, LLP does not disclose any nonpublic personal information about our clients or former clients to anyone, except as required by law.

We restrict access to nonpublic personal information about you to our professionals and staff who need to know such information in order for BDO Seidman, LLP to provide you with its services. We maintain physical, electronic and procedural safeguards that comply with federal regulations and professional requirements to guard the confidentiality of your nonpublic personal information.

CONSULTING AGREEMENT

This Consulting Agreement ("Agreement") is entered into as of the 3rd day of June, 2002 (the "Effective Date") by and between John A. Jones (the "Client") and BDO Seidman, LLP, a New York registered limited liability partnership ("BDO"), with offices at 5100 Poplar Avenue, Suite 2600, Memphis, TN 38137.

WITNESSETH

WHEREAS, the Client is interested in making certain investments (the "Transactions");

WHEREAS, BDO is in the business of providing accounting, tax and consulting services; and

WHEREAS, the Client desires BDO to provide certain consulting, tax and accounting services in connection with the Transactions, and BDO desires to provide such consulting services to the Client, all upon the terms and conditions provided herein.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Term. Unless earlier terminated as provided herein, the term of this Agreement shall commence on the Effective Date and shall continue through December 31, 2003 (the "Term").

2. Services. (a) During the Term, BDO agrees to provide the following consulting services to the Client (the "Services"): consulting services in conjunction with the sale of equity interest(s) in certain entities, including assistance in determining the overall tax and economic effects of potential sales price(s) and allocations thereof, assisting the Client and/or the Client's advisors in structuring the Transaction(s) to attain the most beneficial tax results, and assisting with certain income tax, estate tax, personal financial planning and other financial aspects of various anticipated investment activities. **BDO is not in the business of providing investment or legal advice or related services, thus, none of the services to be rendered by BDO to Client can or will include investment or legal advice and should not be considered as investment or legal advice. Client acknowledges and represents that it will, and is, not relying upon BDO for investment or legal advice or related services.**

(b) BDO will provide the Client with an opinion reasonably acceptable to Client's counsel concerning the federal income tax consequences of the Transactions. The



EXHIBIT
8

opinion will be in addition to and not in lieu of the opinion the Client will receive from legal counsel. The fee for the opinion to be provided by BDO is included in the Consulting Fee set forth in this Agreement. It is anticipated that such opinion will include relevant issues and law for such calendar year addressed by the opinion.

(c) The Services hereunder do not include the preparation of any tax returns by BDO. Your tax returns may be selected for review by the tax authorities, and any proposed adjustments by the examining agents are subject to certain rights of appeal. Further, the Services hereunder do not include representation in any such review or any subsequent appeals. We are available on request to prepare tax returns for you or to represent you in any such proceedings. BDO's representation will be subject to a separate engagement letter(s), and we will render additional invoices for the time and expenses incurred.

(d) BDO is bound by the ethics of its profession as Certified Public Accountants in the performance of its services hereunder. BDO however is not a guarantor of its advice and will be liable to Client only in the event one or more aspects of such professional advice constitutes professional negligence. Client agrees that BDO and its personnel shall not be liable to the Client for any claims, liabilities, or expenses relating to this Agreement for an aggregate amount in excess of the fees paid by the Client to BDO pursuant to this Agreement.

3. Fees.

(a) In consideration for the performance of the Services, the Client shall pay BDO $585,000 (the "Consulting Fee"). If the Client's account, after default, is referred to an attorney or collection agency for collection, the Client shall pay all of BDO's reasonable expenses incurred in such collection efforts including, without limitation, court costs and reasonable attorneys' fees.

(b) The total Consulting Fee shall be due and payable from the Client to BDO on or before June 7, 2002 either by wire transfer to an account designated by BDO in writing to the Client or by Client check, whichever manner of payment is requested by BDO.

(c) In the event that BDO's performance of the Services results in BDO being required to spend time or incur expenses with respect to any subsequent legal process or litigation involving a third party (for example, testifying in a litigation matter), BDO will charge the Client for that time at BDO's prevailing hourly rates and for reimbursement of those expenses.

4. Termination.

(a) Either party shall have the right to terminate this Agreement if -

(i) the other party breaches or defaults under this Agreement and fails to cure such breach or default within seven (7) days after receiving written notice from the non-breaching party; or

(ii) the other party becomes insolvent or makes an assignment for the benefit of creditors, or a receiver or similar officer is appointed to take charge of all or part of such other party's assets.

(b) The terms and conditions of Paragraphs 3(c), 5, 6, 7, 8, and 14 shall survive any expiration or termination of this Agreement.

5. Indemnification. The Client, at its own expense, shall release and indemnify, defend and hold BDO and its affiliates, along with their respective partners, employees, agents, designees, insurers and assignees, harmless from and against, all losses, claims, damages, liabilities, costs and expenses (including reasonable legal or other out-of-pocket expense) incurred, caused by or arising out of the performance of the Services by BDO for the Client, the Transactions, or any transaction related thereto, or the Client's breach of this Agreement. This indemnity excludes a final adjudication that BDO engaged in negligence or willful misconduct in performing the Services which gave rise to the loss, claim, damage, liability, cost or expense sought to be recovered. Pending any such final decision, the indemnification and reimbursement provisions of this Agreement shall apply and the Client shall perform its obligations to reimburse BDO for its expenses.

6. No Warranty. **BDO makes no warranties, express or implied, under this Agreement with respect to the Services or otherwise. BDO expressly disclaims any implied warranty of merchantability or fitness for a particular purpose or use.** As stated above, the Services to be provided in connection with this Agreement include the issuance of an opinion regarding the federal income tax consequences of the Transactions. In this regard, BDO accepts responsibility for the opinion BDO will provide to Client. BDO does not assume any responsibility whatsoever, and shall not be held liable for any legal and/or tax opinions not prepared by BDO regarding any strategies that may be implemented by Client during the term of this Agreement. Client acknowledges and agrees that BDO has advised the Client to retain a law firm for legal as well as tax opinions on any strategies or Transactions in which Client engages during the term of this Agreement. The Client's exclusive remedy, and BDO's sole liability to the Client, for any cause whatsoever related in any way to this Agreement or to the Services provided by BDO to Client, shall be limited to the dollar amount of the Consulting Fees actually paid to BDO by the Client under this Agreement. The foregoing limitation of liability shall apply regardless of the form of action, whether contract or tort, including, without limitation,

negligence. Notwithstanding anything to the contrary, in no event shall BDO be liable for any loss of profit, revenue, or other commercial injury or any special, incidental, punitive, indirect or consequential damages suffered by the Client or any third party, whether or not BDO has been advised of the possibility of such loss, injury, damages or third party claim, under any cause of action arising out of or relating to this Agreement or the Services provided by BDO to the Client in connection with this Agreement.

7. No Assignment. Neither party shall assign this Agreement, in whole or in part, without the prior written consent of the other party, which written consent shall not be unreasonably withheld. Subject to the foregoing, this Agreement shall inure to the benefit of and be binding upon the successors, legal representatives and assignees of the parties hereto.

8. Dispute Resolution.

(a) If any dispute, controversy or claim arises in connection with the performance or breach of this Agreement, either party may, upon written notice to the other party, request mediation in accordance with the then current Dispute Resolution Rules for Professional Accounting and Related Services Disputes (Including Mediation) of the American Arbitration Association ("AAA") Such mediation shall be assisted by a neutral mediator acceptable to both parties and shall require the best efforts of the parties to discuss with each other in good faith their respective positions and, respecting their different interests, to finally resolve such dispute.

(b) Each party may disclose any facts to the other party or to the mediator, which it, in good faith, considers necessary to resolve the dispute. However, all such disclosures shall be deemed in furtherance of settlement efforts and shall not be admissible in any subsequent legal proceeding against the disclosing party. Except as agreed by both parties, the mediator shall keep confidential all information disclosed during negotiations. The mediator shall not act as a witness for either party in any subsequent arbitration between the parties.

(c) Such mediation shall conclude within sixty days from receipt of the written notice unless extended by mutual consent. The parties may also agree at any time to terminate or waive mediation. The costs incurred by each party in such negotiations shall be borne by it; the fees and expenses of the mediator, if any, shall be borne equally by the parties.

(d) If any dispute, controversy or claim arises in connection with the performance or breach of this Agreement and cannot be resolved by mediation within sixty days (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by binding arbitration under the then current Dispute Resolution Rules for Professional Accounting and Related Services Disputes (Including Mediation) of the

American Arbitration Association ("AAA"), and shall take place in either the cities of Nashville, Johnson City or Memphis, Tennessee as mutually agreed by the parties unless the parties agree to a different locale. The arbitrator(s) shall permit each party to engage in limited discovery with a period of 60 days to complete any such discovery.

(e) Unless the parties agree to a single arbitrator, such arbitration shall be conducted before a panel of three (3) persons, one (1) chosen by each party and the third selected by the two (2) party-selected arbitrators. The arbitration panel shall have no authority to award non-monetary or equitable relief, and any monetary award shall not include punitive damages. The confidentiality provisions applicable to mediation shall also apply to arbitration.

(f) Judgment on the award issued by the arbitration panel may be entered in any federal or state court of competent jurisdiction. All reasonable costs of both parties, as determined by the arbitrators, including (1) the fees and expenses of the AAA and the arbitrators, and (2) the costs, including reasonable attorneys' fees, necessary to confirm the award in court shall be borne entirely by the non-prevailing party (to be designated by the arbitration panel in the award) and may not be allocated between the parties by the arbitration panel.

9. Enforceability. If any provision of this Agreement is declared invalid or unenforceable, such provision shall be deemed modified to the extent necessary and possible to render it valid and enforceable. In any event, the unenforceability or invalidity of any provision shall not affect any other provision of this Agreement, and this Agreement shall continue in full force and effect, and be construed and enforced, as if such provision had not been included, or had been modified as above provided, as the case may be.

10. Independent Contractor. BDO and the Client acknowledge that the relationship between the parties to this Agreement is exclusively that of an independent contractor , i.e., BDO is rendering professional services in the capacity of a professional services firm and that BDO's obligations to the Client are exclusively contractual in nature. Nothing herein contained shall be construed to imply a joint venture, partnership or principal-agent relationship between BDO and the Client, and neither party shall have the right, power or authority to obligate or bind the other to any third party in any manner whatsoever.

11. Governing Law. This Agreement shall be governed and construed in accordance with the laws of the State of Tennessee, except for its conflict of law principles.

12. Entire Agreement. This Agreement (including Appendix A, which is incorporated herein as if the terms thereof were fully set forth in this Agreement) sets forth the entire agreement between the parties with respect to the subject matter herein,

superseding all prior agreements, negotiations or understandings, whether oral or written, with respect to such subject matter. This Agreement may not be amended or modified except in a writing signed by duly authorized representatives of the Client and BDO.

13. Notice. All notices and other communications required or desired to be given pursuant to this Agreement will be given in writing and will be deemed duly given upon personal delivery, or on the third day after mailing if sent by registered or certified mail, postage prepaid, return receipt requested, or on the day after mailing if sent by a nationally recognized overnight delivery service which maintains records of the time, place and recipient of delivery.

If to BDO: BDO Seidman, LLP
Attention: Mark D. Puckett
5100 Poplar Avenue, Suite 2600
Memphis, TN 38137
Phone: 901-680-7608

If to Client: Mr. John A. Jones
2308 Rambling Road
Johnson City, TN 37604
Phone: 423-282-5128

With Duplicate Original to: Richard A. Johnson, Esq.
Waller Lansden Dortch & Davis, LLC
511 Union Street, Suite 2100
Nashville, TN 37239
Phone: 615-244-6380

or to such other person, entity, address or facsimile number as a party may respectively designate in like manner, from time to time.

14. Confidentiality Privilege

(a) A confidentiality privilege under Internal Revenue Code Section 7525 may pertain to certain communications between BDO (federally authorized tax practitioners) and the Client regarding federal tax advice provided pursuant to this Agreement. The Client understands that BDO makes no representation, warranty or promise and offers no opinion with respect to the applicability of such confidentiality privilege, if any, and the Client understands and agrees to this circumstance should such privilege be determined not to apply in any circumstance.

(b) By retaining BDO, the Client agrees that BDO is authorized to claim the privilege on the Client's behalf with respect to any applicable communications, up to and

until such time as the Client may waive any such privilege in writing, or BDO may otherwise be required by law to disclose such communications in compliance with any court order, subpoenas, summonses, or incurs costs in defending the assertion of the privilege on the Client's behalf, the Client will be responsible for such costs.

15. Miscellaneous.

(a) The Client represents and warrants that it has the full power and authority to enter into this Agreement and to carry out the transactions provided for herein. In addition, the Client represents that it has not entered into any agreement regarding the subject matter hereunder with any other party that covers the period during which BDO is authorized to act and provide services hereunder.

(b) The failure of either party to require performance by the other of any provision hereof shall in no way affect the right to require performance at any time thereafter, nor shall the waiver of a breach of any provision hereof be taken to be a waiver of any succeeding breach of such provision or as a waiver of the provision itself.

(c) The paragraph headings set forth in this Agreement are for the convenience of the parties, and in no way define, limit, or describe the scope or intent of this Agreement and are to be given no legal effect.

(d) A copy of BDO's privacy policy is attached as Appendix B.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

BDO SEIDMAN, LLP

By: [signature]

Name: Mark D. Puckett

Title: Partner

JOHN A. JONES ("CLIENT")

By: [signature]

APPENDIX A TO CONSULTING AGREEMENT

This Appendix A is incorporated in and made a part of the Consulting Agreement between John A. Jones (the "Client" or "I") and BDO Seidman, LLP ("BDO"), dated June 3, 2002, as if this Appendix were set forth in full therein, and is subject to all of the terms and conditions of the Agreement. In connection with certain investments (the "Transactions") that I am making, I acknowledge that:

•BDO has advised me that, prior to entering into the Transactions, I should consult with a tax attorney or tax advisor independent of BDO concerning the potential tax treatment of the Transaction and the potential tax consequences to me of participating in the Transactions, and I have done so or declined to do so;

•BDO has advised me, and I understand, that like all tax positions, the tax treatment of the Transactions is subject to audit and challenge by the Internal Revenue Service (hereinafter "IRS") and/or a state or local taxing authority;

•BDO has advised me, and I understand, that if the IRS and/or a state or local taxing authority challenges the tax treatment of the Transactions they could assert that I owe additional tax, interest and penalties. Any such liability is solely my responsibility;

•I understand that in contributing property to any limited liability company that receives a contribution of property in the course of the Transactions, I can either contribute (a) a combination of certain leveraged assets and additional unleveraged assets or (b) solely unleveraged assets. BDO has recommended that I contribute solely unleveraged assets and has advised me that certain additional tax risks may arise if leveraged assets are contributed to the limited liability company. I represent that I have independently considered the type of assets to contribute;

•BDO has made no representation concerning whether these Transactions might or might not cause my tax return to be examined by the IRS, or other taxing authority. Additionally, BDO has advised me that these transactions may be required to be disclosed in my income tax returns;

•Federal, state and local laws, including tax laws, are subject to change. Changes in the law could be retroactive and could affect the tax treatment of the Transactions. BDO will not advise me of changes in the law unless specifically engaged in writing to do so;

•IRS regulations require BDO to maintain certain records for some tax-advantaged transactions and, on request, to provide this information to the IRS. Among the information required to be provided are the identity of investors and a description of the tax advantages expected to be derived from the transaction. I understand that the Transactions could be subject to these rules;

•BDO has informed me that they have not registered the Transactions as a tax shelter under the Internal Revenue Code as BDO believes that such Transactions are not required to be registered. I understand that there can be no assurance that the IRS will agree with this determination;

•BDO does not provide investment or legal advice to its clients, and has not provided me with investment or legal advice concerning the Transactions; and

•I have received, reviewed, and evaluated such information and materials as I and my advisors deemed relevant, and have made an independent decision to participate in the Transactions.

John A. Jones

APPENDIX B TO CONSULTING AGREEMENT BETWEEN

JOHN A. JONES AND BDO SEIDMAN, LLP

**BDO Seidman, LLP Privacy Policy**

BDO Seidman, LLP may obtain nonpublic personal information about your family, income, expenditures, investments, estate, insurance coverage, or other personal matters that BDO Seidman, LLP may need in order to perform the services for which you have engaged the firm. This information may be obtained from the following sources:

a. Forms you fill out to obtain our services;

b. Documents that you provide to us;

c. Documents that you authorize us to obtain from others;

d. Discussions with you;

e. Discussions with others that you authorize us to undertake.

BDO Seidman, LLP does not disclose any nonpublic personal information about our clients or former clients to anyone, except as required by law.

We restrict access to nonpublic personal information about you to our professionals and staff who need to know such information in order for BDO Seidman, LLP to provide you with its services. We maintain physical, electronic and procedural safeguards that comply with federal regulations and professional requirements to guard the confidentiality of your nonpublic personal information.