## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GRAMERCY ADVISORS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 07-CV-2809 |
| CARLETON A. JONES, III and | ) | |
| JOHN A. JONES, | ) | Judge McKenna |
| | ) | Magistrate Judge Peck |
| Defendants, | ) | |
| | ) | |

---

## <u>MEMORANDUM OF LAW IN SUPPORT OF<br>MOTION TO DISMISS, STAY OR TRANSFER</u>

---

Winston S. Evans (#6281)
Thomas W. Shumate IV (#19595)
Evans, Jones & Reynolds, P.C.
1810 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2424
(615) 259-4685

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      THE CLAIMS WHICH GRAMERCY HAS ASSERTED IN THIS COURT
        ARE COMPULSORY COUNTERCLAIMS WHICH MUST BE PURSUED
        IN THE TENNESSEE CASE OR BE FOREVER BARRED.  FOR THIS
        REASON  ALONE,  THIS  ACTION  SHOULD  BE  DISMISSED  OR
        STAYED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.      Compulsory counterclaims must be asserted in the original action or
                be forever barred.  They cannot be brought in a separate action which
                is subsequently filed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      Federal Courts routinely enjoin, stay, or dismiss defendants from
                pursuing compulsory counterclaims in another forum . . . . . . . . . . . . . . . 4

        C.      The claims which  Gramercy has asserted in its second-filed suit are
                compulsory counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                1.      In determining whether a claim "arises out of the same
                        transaction or occurrence," the Second Circuit applies the
                        "logical relationship" test. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                2.      There is a logical relationship between the claims asserted by
                        Messrs. Jones and the claims asserted by  Gramercy . . . . . . . . . . 10

                3.      Furthermore, the opposing claims of Messrs. Jones and
                        Gramercy raise the same issues of law and fact . . . . . . . . . . . . . . 13

                4.      Still further, substantially the same evidence will support or
                        refute the opposing claims of Messrs. Jones and Gramercy  . . . . 13

II.     PURSUANT  TO  THE  WELL-SETTLED  FIRST  FILED  RULE,  THIS
        COURT SHOULD STAY GRAMERCY'S SECOND-FILED LAWSUIT  . . . . 15

III.     IN THE INTEREST OF JUSTICE AND FOR THE CONVENIENCE OF
         PARTIES AND WITNESSES, THIS CASE SHOULD BE TRANSFERRED
         TO THE MIDDLE DISTRICT OF TENNESSEE . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Cases:**

*Adam v. Jacobs*, 950 F.2d 89 (2nd Cir. (N.Y.)1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Baker v. Golden Seal Liquors, Inc.*, 417 U.S. 467, 94 S.Ct. 2504,
    41 L.Ed.2d 243 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bonadio v. East Park Research, Inc.*, 220 F.R.D. 187 (N.D.N.Y., 2003) . . . . . . . . . . . . . . . . . 7

*BuddyUSA, Inc. v. Recording Industry Ass'n of America, Inc.*,
    21 Fed.Appx. 52 (2nd Cir. (N.Y.), 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cabiri v. Government of Republic of Ghana*, 165 F.3d 193 (2nd Cir. (N.Y.),1999) . . . . . . . . . . 9

*Cyprus Corp. v. Whitman*, 93 F.R.D. 598 (D.C.N.Y., 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dahl v. HEM Pharmaceuticals Corp.*, 867 F. Supp. 194 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . 20

*Data Treasury v. First Data*, 243 F.Supp.2d 591 (N.D.Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . 21

*First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir.1989) . . . . . . . . . . . . . . . . 15

*Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharmaceutical*,
    2005 WL 1116318 (D.N.J., 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hollinee Corp. v. Weyher*, 1992 WL 110989 (S.D.N.Y.,1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*IMS Health Inc. v. Vality Tech. Inc.*, 59 F. Supp. 2d 454 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . 15

*In re Charter Oak Associates*, 361 F.3d 760(2nd Cir. (Conn.), 2004) . . . . . . . . . . . . . . . . . . . . . 8

*In re MacLeod Co., Inc.*, 935 F.2d 270 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Parmalat Securities Litigation*, 2007 WL 386237 (S.D.N.Y., 2007) . . . . . . . . . . . . . . . . . 8

*In re Salomon Smith Barney Mut. Fund Fees Litigation*,
    441 F.Supp.2d 579 (S.D.N.Y., 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Seatrade*, 297 F. Supp. 577 (S.D.N.Y. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Interwood Marketing, Ltd. v. Media Arts International, Ltd.*,
    1990 U.S. Dist. LEXIS 16747 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Jay Franco and Sons, Inc. V. G. Studios, LLC*, 34 A.D.3d 297,
    825 N.Y.S.2d 20 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kytel Intern. Group, Inc. v. Rent A Center, Inc.*, 43 Fed.Appx. 420
    (2nd Cir. (N.Y.), 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Larocco v. Preserve Real Estate, LLC*, 2006 WL 542579 (E.D.Tenn., 2006) . . . . . . . . . . . . . 18

*Martin v. Grayhar Elec. Co., Inc.*, 266 F.2d 202 (7th Cir. 1959) . . . . . . . . . . . . . . . . . . . . . . 15

*Meeropol v. Nizer*, 505 F.2d 232 (2d Cir.1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*MMZ Associates, Inc. v. Gelco Corp.*, 2006 WL 3531429 (S.D.N.Y. 2006) . . . . . . . . . . . . . 5, 9

*Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367,
    70 L.Ed. 750 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nartron Corp. v. Quantum research Group, Ltd.*, 473 F.Supp.2d 790
    (E.D.Mich., 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Plating Resources, Inc. v. UTI Corp.*, 47 F.Supp.2d 899 (N.D. Ohio 1999) . . . . . . . . . . . . . . . 19

*Sequa Capital Corp. v. Miller & Miller Associates, Inc.*,
    992 WL 204372 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . 15

*Southern Const. Co. v. Pickard*, 371 U.S. 57; 83 S.Ct. 108,
    9 L.Ed.2d 31 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Steward Mach. Co., Inc. v. Underpinning & Foundation Constructors*,
    1984 WL 359 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Super Natural Distributors, Inc. v. MuscleTech Research*,
    140 F.Supp.2d 970 (E.D.Wis., 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*The Whistler Group v. PNI Corporation*, 2003 WL 22939214 (N.D.Tex.) . . . . . . . . . . . . . 19, 20

*U.S. for the Use and Benefit of D'Agostino Excavators, Inc., v.*
    *The Hewyard-Robinson Co., Inc., et al.*, 430 F.2d 1077 (2nd Cir. 1970) . . . . . . . . . . . . . 4

*U.S. v. Aquavella*, 615 F.2d 12 (2d Cir., 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*,
    16 Fed.Appx. 433 (6th Cir. (Ohio), 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Other:**

28 U.S.C. §1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


Fed.R.Civ.P. 13(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 9

This case involves the same issues as *Jones v. BDO Seidman, LLP and Gramercy Advisors, LLC* which was earlier filed in the United States District Court for the Middle District of Tennessee (Docket #3:06-CV-1115) ["the Tennessee Case"].  Therefore, the Defendants, Carleton Jones and John Jones ["Messrs. Jones"], have moved for the following relief: (1) dismissal of this action; (2) a stay of this action pending the outcome of the Tennessee Case; or, (3) a transfer of this action pursuant to 28 U.S.C. §1404(a) to the Middle District of Tennessee.

## STATEMENT OF THE CASE

On November 20, 2006, Messrs. Jones filed the Tennessee Case.  At that time, the only defendant was BDO Seidman, LLP ["BDO"]. [Winston S. Evans Declaration, Exhibit 1(Complaint filed in Tennessee Case)](hereinafter "Evans Declaration")

On March 27, 2007, Messrs. Jones filed an Amended Complaint in the Tennessee Case. [Evans Declaration, Exhibit 2].  That Amended Complaint *inter alia* includes Gramercy Advisors, LLC ["Gramercy"] as a Defendant.  Of course, Gramercy is the plaintiff in this case.

The Amended Complaint in the Tennessee Case asserts claims against BDO and Gramercy for, *inter alia,* fraud, breach of fiduciary duty, conspiracy, negligent misrepresentation, and professional malpractice as a result of a tax shelter which  Gramercy and BDO wrongfully induced Messrs. Jones to enter and which was rejected by the IRS.   The Amended Complaint also seeks a judgment declaring that the Investment Management Agreements ["IMAs"] which Gramercy had Messrs. Jones sign are unenforceable and that, even if they are enforceable, the indemnity provisions in the IMAs are not applicable to the dispute between Messrs. Jones and Gramercy. [Amended Complaint, ¶¶ 185-192].  The allegations of the Amended Complaint regarding the IMAs and the indemnity provisions include the following:

For each of at least four reasons, these provisions are inapplicable or unenforceable. <u>First</u>, they do not apply to suits between the indemnitors (Messrs. Jones) and the indemnitee (Gramercy). Rather, they only apply to suits brought against the indemnitee (Gramercy) *by third parties* based upon actions taken by the indemnitee (Gramercy) for the benefit of the indemnitors (Messrs. Jones). <u>Second</u>, these provisions are inapplicable because they do not apply to claims for willful misconduct, gross negligence, a violation of applicable securities laws, or criminal wrongdoing by Gramercy. The claims which Messrs. Jones have asserted against Gramercy include claims for willful misconduct and gross negligence. <u>Third,</u> the provisions apply only if Gramercy acted in good faith and in a manner the Gramercy reasonably believed to be in the best interests of Messrs. Jones. Gramercy did not act in good faith and did not reasonably believe that its actions were in the best interests of Messrs. Jones. <u>Fourth,</u> Messrs. Jones signed the Gramercy Agreement in reasonable reliance on the false statements, misleading statements, and omissions of Gramercy which have already been described in this Complaint. This includes the false statements, misleading statements, and omissions which were made by BDO as the co-conspirator of Gramercy. Therefore, Messrs. Jones were wrongfully induced to enter the Gramercy Agreement. Because Messrs. Jones were wrongfully induced to enter the Gramercy Agreement, it is unenforceable.

[Amended Complaint, ¶ 188].

On March 29, 2007, Gramercy was served with process for the Tennessee Case. [Evans Declaration, Exhibit 3]

<u>On April 9, 2007, Gramercy retaliated by commencing this action against Messrs. Jones</u>. In this second-filed action, Gramercy seeks to enforce the IMAs and to require that Messrs. Jones indemnify it against any judgment which Messrs. Jones obtain against it.[1] In addition, Gramercy seeks to have Messrs. Jones advance the costs of defending itself in the Tennessee Case and in this action. **Therefore, the facts and events giving rise to Gramercy's claims in this action are** **already at issue in the Tennessee Case. Furthermore, Gramercy bases its claims in this action** **upon the same IMAs which are the subject of the claim of Messrs. Jones for declaratory relief** **in the Tennessee Case.** [*See*, Gramercy's Complaint, ¶¶ 10, 14-21, 23-34]. Thus, the facts, legal

[1]Copies of the IMAs are attached as Exhibits A and B to Gramercy's complaint.

issues and documents at issue in this second-filed action are <u>identical</u> to the facts, legal issues and documents in the Tennessee Case. **Gramercy's second-filed suit does not place at issue any matter other than matters which are already at issue in the Tennessee Case**.

In the meanwhile, substantial proceedings have already taken place in the Tennessee Case. [Evans Declaration, ¶¶ 1, 4, Exhibits 1, 4].

As explained in this Memorandum, the second-filed action by Gramercy should be dismissed, stayed, or transferred to the Middle District of Tennessee. This is for each of the following reasons:

    (1)    **The claims which Gramercy has asserted in this Court are compulsory counterclaims which must be pursued in the earlier-filed Tennessee Case or be forever barred.**

    (2)    **Pursuant to the well-settled First-Filed Rule this Court should dismiss or stay this action pending the outcome of the Tennessee Case.**

    (3)    **In the interest of justice, and for other reasons, this case should be transferred to the Middle District of Tennessee pursuant to 28 U.S.C. §1404(a).**

<u>**ARGUMENT**</u>

**I.**    <u>**THE CLAIMS WHICH GRAMERCY HAS ASSERTED IN THIS COURT ARE COMPULSORY COUNTERCLAIMS WHICH MUST BE PURSUED IN THE TENNESSEE CASE OR BE FOREVER BARRED. FOR THIS REASON ALONE, THIS ACTION SHOULD BE DISMISSED OR STAYED.**</u>

    **A.**    <u>**Compulsory counterclaims must be asserted in the original action or be forever barred. They cannot be brought in a separate action which is subsequently filed**</u>**.**

Federal Rule of Civil Procedure 13(a) provides that a counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The purpose of Rule 13(a) is to prevent fragmentation of litigation and multiplicity

of actions. *U.S. for the Use and Benefit of D'Agostino Excavators, Inc., v. The Heyward-Robinson Co., Inc., et al.*, 430 F.2d 1077, 1082 (2nd Cir. 1970).

It is well established that an opposing party's failure to plead a compulsory counterclaim forever bars that party from raising the claim in another action. *Baker v. Golden Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974). Therefore, Gramercy may not assert in this Court any claims in this Court which are compulsory counterclaims to the Tennessee Case.

### B.    Federal Courts routinely enjoin, stay, or dismiss defendants from pursuing compulsory counterclaims in another forum.

When a party attempts to circumvent Rule 13(a) by filing a second suit in another forum to pursue a compulsory counterclaim, federal courts in the second suit routinely exercise their authority to stay or dismiss the second suit. In fact, the United States Supreme Court has explicitly denounced the practice of filing a second action in order to circumvent Rule 13(a):

> The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. <u>The Rule was *particularly* directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint</u>. *See, e.g., United States v. Eastport S.S. Corp.*, 2 Cir., 255 F.2d 795, 801-802.

*Southern Const. Co. v. Pickard*, 371 U.S. 57, 60; 83 S.Ct. 108, 9 L.Ed.2d 31 (1962)(emphasis supplied).

There is a presumption that district courts will use their discretion to dismiss, stay or enjoin the prosecution of subsequently filed lawsuits that assert claims which are compulsory counterclaims. As the Eastern District of Wisconsin emphatically stated:

> Because counterclaims generally can be adjudicated most efficiently in one action (as Rule 13 envisioned), the presumption is that courts should enjoin prosecution of subsequently-filed lawsuits that state claims characterizable as compulsory counterclaims to the initial action. See Asset Allocation, 892 F.2d at 573.

*Super Natural Distributors, Inc. v. MuscleTech Research*, 140 F.Supp.2d 970, 975-976 (E.D.Wis., 2001) (emphasis supplied).

Likewise, there is a presumption that this Court should dismiss or stay this action so that Gramercy is required to pursue its compulsory counterclaim in the earlier-filed Tennessee Case.

Courts of the Second Circuit have routinely exercised their discretion to enjoin parties, such as Gramercy, who have attempted to pursue compulsory counterclaims in later filed actions. *See, e.g., MMZ Associates, Inc. v. Gelco Corp.*, 2006 WL 3531429, *2 (S.D.N.Y. 2006)("When an action is brought in one federal district court and a compulsory counterclaim is later asserted before another district court, the first court may enjoin prosecution of the second action. *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir.1974)"). In *Adam v. Jacobs*, 950 F.2d 89 (2nd Cir. (N.Y.),1991), the plaintiff filed suit on a guaranty agreement in the Southern District of New York. The defendant, however, had already commenced an action against the plaintiff in the Eastern District of Michigan seeking recision of the agreement and claiming that it was fraudulently induced to enter the agreement. The Second Circuit held that (1) the New York action was a compulsory counterclaim which could be asserted only in the Michigan action; and (2) the district court should have dismissed or stayed the New York Action. The Second Circuit explained as follows:

> The filing of the second action, however, contravenes the purpose of Rule 13 : "Ideally, once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceeding." *Id*. at 143.
>
> As the Supreme Court has stated, Rule 13(a) "was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of

common matters." *Southern Const. Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). The rule "was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." *Id.* We believe that the rule plays a unique role in conserving judicial resources and that a court's failure to stay its hand unduly burdens the litigation process. Cf. W. Reece, M. Rosenberg & P. Hay, Conflict of Laws 199 (9th ed. 1990) ("In English practice, multiplicity of proceedings which may result from the pendency of litigation elsewhere ... now is also an important element to be taken into account in ruling on forum non conveniens motions.").

In *National Equipment Rental*, plaintiff commenced an action in the Eastern District of New York against the defendant, Thomas, for payments due under a lease. Thomas defended in that action by seeking rescission and by counterclaiming for his own damages. Four months later, Thomas brought his own action, based on the same lease agreement, in the Northern District of Alabama. After the Alabama court refused to stay the action, the Eastern District judge enjoined the parties from proceeding further in Alabama. Thomas appealed, alleging that the district judge had abused his discretion by enjoining the Alabama suit. 287 F.2d at 45.

We affirmed the district court, stressing that "the situation was a perfect one for the issuance of the injunction.... 'We believe it to be important that there be a single determination of a controversy between the same litigants and, therefore, a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter.' " 287 F.2d at 46 (citations omitted).

While the normal chronology would have been for the court of first impression-here, the Michigan court-to have enjoined the second court, this procedure is not mandatory. The same policies are furthered by the second court's exercising judicial self-restraint:

> [W]e can see no reason why the end result should be different when the party seeking to preserve the primacy of the first court moves the second court to stay its hand rather than asking the first court to enjoin prosecution of the second case. Whatever the procedure, the first suit should have priority, "absent the *94 showing of balance of convenience in favor of the second action."

*Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d at 1202-03 (citations omitted) (abuse of discretion for district judge not to stay suit where plaintiff had filed repetitive actions in New Jersey and New York, even though "New York [was] a more logical forum" ) (emphasis added). For us to refuse to stay our own proceedings

6

> while exercising a willingness to enjoin parties from litigating in other courts would
> be inconsistent.

*Id.* at 93-4. (emphasis supplied)

*See also, Sequa Capital Corp. v. Miller & Miller Associates, Inc.*,1992 WL 204372 (S.D.N.Y. 1992) in which the Court dismissed a second-filed case even though that case asserted what was only a *permissive* counterclaim to the first-filed case, stressing as follows:

> [G]iven the Court's expression of concern regarding duplicative litigation and judicial
> efficiency in Adam, it appears that even under those circumstances, a district court
> should decline to act in the second case, and allow all claims to be resolved in one
> action.

*Id.* at *4. (emphasis supplied)

See also, *Cyprus Corp. v. Whitman*, 93 F.R.D. 598 (D.C.N.Y., 1982) (New York district court dismissed complaint that should have been filed as a counterclaim in first-filed Pennsylvania action); *Hollinee Corp. v. Weyher*, 1992 WL 110989 (S.D.N.Y.,1992) (New York district court stayed second-filed declaratory judgment action that should have been filed as a compulsory counterclaim in the first-filed action in Northern District of California); *Bonadio v. East Park Research, Inc.*, 220 F.R.D. 187, 188-190 (N.D.N.Y., 2003) (New York district court dismissed a complaint which should have been asserted as a compulsory counterclaim in an earlier-filed action in Nevada; Court stressed that allowing New York action to proceed " would be duplicative of the action in Nevada and would be contrary to the purpose of Rule 13 which is preserving scarce judicial resources and preventing inconsistent judicial determination and verdicts on similar issues").

Thus, it is only necessary to determine if the claims which Gramercy has asserted in this later filed action are compulsory counterclaims. If so, this action must be dismissed, stayed, or transferred to the Middle District of Tennessee.

As will be explained, the claims asserted by Gramercy **_are_** compulsory counterclaims.

C.    **The claims which Gramercy has asserted in its second-filed suit are compulsory counterclaims.**

    1.    In determining whether a claim "arises out of the same transaction or occurrence," the Second Circuit applies the "logical relationship" test.

A counterclaim is compulsory and must be asserted if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim. *In re Charter Oak Associates*, 361 F.3d 760, 768 (2nd Cir. 2004). In determining whether a claim "arises out of the same transaction or occurrence," the Second Circuit applies the "logical relationship" test:

> "A claim is compulsory if 'a logical relationship exists between the claim and the counterclaim and [if] the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'"

*In re Parmalat Securities Litigation*, 2007 WL 386237, *2 (S.D.N.Y., 2007). (emphasis supplied)

This "logical relationship" test should be construed liberally to promote judicial economy. *In re: Price*, 42 F.3d 1068, 1073 (7th Cir.1994).

> Because the objective of Rule 13(a) is to promote judicial economy, the term "transaction or occurrence" is construed generously to further this purpose. *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 390 (3d Cir.2002). For Merix's claims to qualify as compulsory counterclaims, there need not be precise identity of issues and facts between those claims and GSK's claims in this action. Rather, the relevant inquiry is whether Merix's claims bear a "logical relationship" to GSK's claims. Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir.1978). A logical relationship between claims exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." *Id*. "Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." *Transamerica*, 292 F.3d at 390 (3d Cir.2002) (citations omitted). "The hallmark of this approach is its flexibility. Basically, it allows the court to apply Rule 13(a) to any counterclaim that from an

8

economy or efficiency perspective could be profitably tried with the main claim." [citation omitted].

*Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharmaceutical*, 2005 WL 1116318, *11 (D.N.J., 2005). (emphasis supplied).

The Second Circuit likewise construes the "logical relationship" test liberally:

> We have construed the transaction or occurrence standard liberally:
>
>> In determining whether a claim arises out of the transaction ... that is the subject matter of the opposing party's claim, this Circuit generally has taken a broad view, not requiring an absolute identity of factual backgrounds ... but only a logical relationship between them. This approach looks to the logical relationship between the claim and the counterclaim, and attempts to determine whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit. [citations omitted].

*Cabiri v. Government of Republic of Ghana*, 165 F.3d 193, 197-198 (2nd Cir. (N.Y.),1999). (emphasis supplied)

Under the "logical relationship" test, the court determines whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926).

> Thus, "[a] claim is compulsory if ... 'the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.' [Citations omitted]"

*MMZ Associates, Inc. v. Gelco Corp*., *supra*, *2 (emphasis supplied).

As will be explained, the purpose underlying Rule 13(a), judicial economy and fairness, will be disserved unless the claims asserted by Gramercy in the Southern District of New York are found to be compulsory counterclaims which must be pursued in the Tennessee Case.

9

2. <u>There is a logical relationship between the claims asserted by Messrs. Jones and the claims asserted by Gramercy.</u>

In this case, the original claims and the counterclaims arise from the same agreement. When presented with such a situation, courts typically find that the counterclaims are compulsory counterclaims which must be pursued in the same action. *See, In re Seatrade*, 297 F. Supp. 577 (S.D.N.Y. 1969) in which an insurer filed a claim in the Chapter X proceeding against one of the bankrupts, Seatrade Corporation, for sums allegedly due on unpaid calls or premiums under insurance policies. The trustee then filed a counterclaim alleging that, while those policies were in effect, two crew members of one of the vessels sustained personal injuries for which they received awards of damages. An order was issued directing the insurer to show cause why it should not be directed to indemnify the bankrupt estate against the losses sustained as a result of those personal injury claims. The Southern District of New York observed that the claims of the insurer for unpaid premiums and the claims of the trustee for indemnity were based upon the same insurance policies. Accordingly, the trustee's claim was a compulsory counterclaim. 297 F. Supp. at 579.

In *U.S. v. Aquavella*, 615 F.2d 12 (2d Cir., 1979), the Second Circuit held that the government's claims for overpayments were compulsory counterclaims that should have been adjudicated along with operators' claims for an injunction and money damages in an earlier-filed action. The Second Circuit explained as follows:

> In determining whether a claim "arises out of the transaction . . . that is the subject matter of the opposing party's claim", this Circuit generally has taken a broad view, not requiring "an absolute identity of factual backgrounds . . . but only a logical relationship between them." [citation omitted]. This approach looks to the logical relationship between the claim and the counterclaim, *see, e. g. Koufakis v. Carvel*, 425 F.2d 892, 899 (2 Cir. 1970), and attempts to determine <u>whether the "essential</u>

10

facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2 Cir. 1978).

615 F.2d at 22-3. (emphasis supplied)

Likewise, considerations of judicial economy and fairness dictate that all claims between Messrs. Jones and Gramercy be resolved in one suit. To begin, it would be impossible to adjudicate the rights of Messrs. Jones without also adjudicating the rights of Gramercy. Conversely, it would be impossible to adjudicate the rights of Gramercy without also adjudicating the rights of Messrs. Jones. So, all of those rights must be determined in one case. Otherwise, piecemeal litigation will result and there will be a waste of judicial resources. Moreover, there could well be inconsistent rulings and judgments which would lead to even more confusion and judicial chaos.

Other cases are in accord. *See*, *In re MacLeod Co., Inc*., 935 F.2d 270 (6th Cir. 1991), in which the Sixth Circuit stated as follows in holding that a "logical relationship" existed with regard to claims arising from the same contract so that the claims of the defendant were compulsory counterclaims:

The interests of judicial economy and efficiency are served by hearing these two claims together.

*Id*. at *4 (emphasis supplied).

So it is in this case. The claim of Messrs. Jones for declaratory judgment and the claims of Gramercy arise from the same agreement. Indeed, the "logical relationship" between the claims could not be stronger. Furthermore, "[t]he interests of judicial economy and efficiency are served by hearing these two claims together." Therefore, the claims of Gramercy are compulsory counterclaims which must be pursued in this case.

11

Gramercy will likely argue that there should be no dismissal, stay or transfer of this action because it has challenged jurisdiction in the Tennessee Case.  This argument will not withstand scrutiny because there is a compelling basis for jurisdiction of the Middle District of Tennessee over Gramercy.  *See*, **Appendix A** to this Memorandum.

If their is any doubt on whether the Middle District of Tennessee will decide to exercise personal jurisdiction over Gramercy, this later-filed action should still be stayed, at least until the Middle District of Tennessee has ruled on Gramercy's motion to dismiss in the Tennessee Case. It is only logical that neither the resources of this Court nor the resources of the parties be expended in pursuing this case until the Middle District of Tennessee has ruled on that motion.  If this case were allowed to proceed prior to that ruling, judicial chaos in the form of inconsistent rulings and judgments could result.  For example, there could be inconsistent rulings on discovery matters.[2] There could also be other inconsistent rulings on other pre-trial motions, such as the motion for partial summary judgment which Gramercy has just filed.  In order to avoid such judicial chaos, to avoid the expense of duplicative litigation, and to further the purpose of Rule  13, there should *at least*  be a stay of this case until and unless the Middle District of Tennessee holds that it does not have jurisdiction over Gramercy.

Furthermore, the claims which Gramercy has asserted in this case appear to be contrary to well-settled law in New York and the Second Circuit.  *See*, **Appendix B** to this Memorandum.  *A fortiori* the first-filed rule should be applied and this case should be stayed, if not dismissed outright.

---

[2]Gramercy has moved for a protective order to stay discovery in the Tennessee Case. Messrs. Jones have filed a response asserting that they are clearly entitled to discovery on jurisdictional matters.  In addition, they contend that  their alternative basis for jurisdiction is intertwined with the merits of the case.  Therefore, they contend that discovery on the merits, not just jurisdictional discovery, should be permitted.

3.      Furthermore, the opposing claims of Messrs. Jones and Gramercy raise the same issues of law and fact.

The issues raised by the claim of Messrs. Jones for declaratory judgment and the claim of Gramercy for indemnity are largely the same, if not <u>identical</u>.

Messrs. Jones seek to have the IMAs declared unenforceable on the ground that they were wrongfully induced to sign those documents.  Conversely, Gramercy seeks to have those same IMAs enforced.

Messrs. Jones seek a declaration that the indemnity provision of the IMAs do not apply to to the situation presented by this case; *i.e.,* a suit between the indemnitors (Messrs. Jones) and the indemnitee (Gramercy).[3]  Conversely, Gramercy seeks a declaration that the indemnity provisions apply to the situation presented by this case.

Finally, the indemnity provisions of the IMAs are inapplicable where Gramercy has not acted in good faith or where it has been guilty of willful misconduct or gross negligence.  Messrs. Jones contend that Gramercy did not act in good faith and that it was guilty of such wilful misconduct or gross negligence.  Therefore, the indemnity provisions of the IMAs should not apply.  Conversely, Gramercy contends that it has acted properly in all respects.  Thus, the factual and legal issues raised by the claims of Messrs. Jones and the claims of Gramercy are  identical.

4.      Still further, substantially the same evidence will support or refute the opposing claims of Messrs. Jones and Gramercy.

Obviously, the same evidence will support or refute the respective claims of Messrs. Jones and Gramercy regarding the enforceability and interpretation of the indemnity provisions of the

---

[3]Messrs. Jones also contend that the indemnity provisions of the IMAs only apply to suits brought against the indemnitee (Gramercy) *by third parties* based upon actions taken by the indemnitee (Gramercy) for the benefit of the indemnitors (Messrs. Jones).

IMAs. This is still more reason why the claim of Gramercy is compulsory counterclaim which must be pursued in the Tennessee Case.

Furthermore, that same evidence not only will support or refute the respective claims of the parties regarding the enforceability and interpretation of the indemnity provisions but also will support or refute the remainder of the claims asserted by Messrs. Jones. Specifically, a court will have to make the following determinations in order to determine whether Messrs. Jones are required to indemnify Gramercy,: (1) whether Messrs. Jones were wrongfully induced to enter the IMAs and (2) whether Gramercy has been guilty of willful misconduct or gross negligence. In order to make those determinations, a court will be required to consider and decide not just the claim for declaratory judgment, but all of the claims asserted by Messrs. Jones against Gramercy. The court will be required to decide whether Gramercy acted fraudulently or breached its fiduciary duty. The court will be required to decide if Gramercy conspired with BDO. If the court determines that Gramercy did any of those things, then the "willful misconduct or gross negligence" exceptions to the indemnity provisions will apply. If the Court determines that Gramercy, either acting alone or in conspiracy with BDO, wrongfully induced Messrs. Jones to enter the tax shelter transactions, then the IMAs and their indemnity provisions will be unenforceable.

Stated succinctly, the same evidence which will be presented to support or refute the claims regarding the indemnity provisions must also be presented to support or refute the remainder of the claims of Messrs. Jones. In order that this evidence need be presented only once, all claims - including the claims regarding the indemnity provisions in the IMA - should be decided in the Tennessee Case. Indeed, it would defy logic and common sense to require that the evidence which will be presented in the Tennessee Case also be presented in this Court. Yet, such duplication of

lawsuits is exactly what will occur if Gramercy's case in this Court is not stayed or dismissed.  For

this reason alone, Gramercy's complaint should be dismissed or stayed so that all matters can be

decided in one proceeding, *i.e.*, the earlier-filed Tennessee Case.

## II.  PURSUANT TO THE WELL-SETTLED FIRST FILED RULE, THIS COURT SHOULD STAY GRAMERCY'S SECOND-FILED LAWSUIT.

"The first filed rule, a change of venue principle, permits the transfer or dismissal of

subsequently commenced litigation involving the same parties and the same issues when both suits

are pending in federal courts." *Kytel Intern. Group, Inc. v. Rent A Center, Inc.*, 43 Fed.Appx. 420,

*2 (2nd Cir. (N.Y.), 2002) (citing *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 77, 79

(2d Cir.1989)).

> The first-to-file rule is a well-established doctrine that encourages comity among
> federal courts of equal rank. The rule provides that when actions involving nearly
> identical [**8] parties and issues have been filed in two different district courts, "the
> court in which the first suit was filed should generally proceed to judgment." *In re
> Burley*, 738 F.2d 981, 988 (9th Cir. 1984).

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 Fed.Appx. 433 (6th Cir. (Ohio),

2001).

See, also, *IMS Health Inc. v. Vality Tech. Inc.*, 59 F. Supp. 2d 454, 463 (E.D. Pa.

1999)("Courts must be presented with exceptional circumstances before exercising their discretion

to depart from the first-filed rule.")(emphasis supplied").[4]

The basis for the first-filed rule was well described in *Martin v. Grayhar Elec. Co., Inc.*, 266

F.2d 202 (7th Cir. 1959) as follows:

Two simultaneously pending lawsuits involving identical issues and between the

---

[4]The filing date - not the service date - should be considered for purposes of determining
which case was filed first.  *Interwood Marketing, Ltd. v. Media Arts International, Ltd.*, 1990 U.S.
Dist. LEXIS 16747, *8-9 (S.D.N.Y. 1990).

same parties, the parties being transposed and each prosecuting the other independently, is certainly anything but conducive to the orderly administration of justice. We believe it to be important that there be a single determination of a controversy between the same litigants and, therefore, a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter, and an injunction should issue enjoining prosecution of the second suit to prevent the economic waste involved in duplicating litigation which would have an adverse effect on the prompt and efficient administration of justice.

266 F.2d at 204 (emphasis supplied).[5]

Other courts have stressed that the first-filed rule should also be applied because trying a case in two different forums might lead to inconsistent judgments, as well as the waste of judicial resources and unnecessary legal expenses which result from duplicative litigation:

> In the interest of preventing duplicative litigation that might lead to conflicting results, and to prevent the waste of judicial resources and unnecessary legal expenses, the court did not improvidently exercise its discretion by invoking its equity power to enjoin defendant from prosecuting the California action [citations omitted]

*Jay Franco and Sons, Inc. V. G. Studios, LLC*, 34 A.D.3d 297, 825 N.Y.S.2d 20 (2006). (emphasis supplied).

So it is in this case. Allowing Gramercy to proceed with its later-filed suit would not only cause the parties to incur unnecessary legal expense but also lead to the possibility of inconsistent results. This Court might find that the IMAs are unenforceable so that Gramercy would not be entitled to indemnity. Conversely, the Middle District of Tennessee might then find that the IMAs are enforceable and order indemnity. Alternatively, this Court might find that the indemnity provisions simply do not apply to the facts of this case whereas the Middle District of Tennessee might find to the contrary. In either of these situations, judicial chaos would result. In order to avoid such chaos,

---

[5]The Seventh Circuit held that the district court had abused its discretion in failing to enjoin the defendant from proceeding with the later-filed suit.

the first-filed rule must be applied.

See also, *Steward Mach. Co., Inc. v. Underpinning & Foundation Constructors*, (Memorandum Opinion), in which the Southern District of New York followed the first-filed rule, holding as follows:

> With respect to Steward's motion to enjoin Koch from proceeding in the Eastern District, the court notes that it has the power to issue such an injunction. *See, e.g., Donaldson, Lufkin & Jenrette v. Los Angeles County*, 542 F. Supp. 1317, 1320 (S.D.N.Y. 1982). Moreover, the court should exercise that power to avoid 'the possibility of inconsistent rulings on discretionary matters as well as duplication of judicial effort.' *Id*. See also *National Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43, 46 (2d Cir. 1961). Since the facts in this case arise from the same transactions as the facts in the action pending in the Eastern District, it seems clear that this court should attempt to avoid wasteful duplication of effort.

1984 WL 359, *2 (S.D.N.Y. 1984)(emphasis supplied).

Likewise, this Court should exercise its injunctive powers in this case "to avoid the possibility of inconsistent rulings . . . as well as duplication of judicial effort."

And see, *In re Salomon Smith Barney Mut. Fund Fees Litigation*, 441 F.Supp.2d 579 (S.D.N.Y., 2006), in which the Southern District of New York held:

> Defendants request a stay of this portion of the lawsuit because of a previously-filed action entitled *Fitzgerald v. Citigroup, Inc.*, No. 03 Civ. 4305 (S.D.N.Y.2003), pending before Judge Batts in this District. Defendants maintain that the Fitzgerald litigation asserts claims that are "substantially identical" to the claims asserted here and point out, as well, that the lead plaintiff in Fitzgerald is also a plaintiff in the case at bar (Defs.' Mem. Supp. Mot. Dismiss 13). Plaintiffs oppose this request.
>
> The "first-to-file" rule dictates that the Court grant Defendants' motion. . . .
>
> . . .
>
> In the present circumstances, there is no good reason for the Court to proceed. With regard to judicial economy, the parties in the Fitzgerald case have fully briefed motion to dismiss and judicial resources have already been expended in litigating that action before Judge Batts. Moreover, neither the balance of convenience nor special

17

circumstances warrant not staying the common claims in this second-filed suit.

441 F.Supp.2d at 608-9.

Furthermore, the first-filed rule applies with equal force to actions, such as this, which involve claims for declaratory judgments. *See, BuddyUSA, Inc. v. Recording Industry Ass'n of America, Inc.*, 21 Fed.Appx. 52, (2nd Cir. (N.Y.), 2001), in which an internet file-sharing services company filed suit in the Southern District of New York seeking a declaration that they did not infringe copyrights on sound recordings. Thereafter, the copyright holders filed an infringement suit in the Northern District of New York. The internet file-sharing services company then sought to enjoin the Northern District action. Although the suit by the internet file-sharing services company sought a declaratory judgment, the court still stayed the second-filed action after determining that the declaratory judgment was not filed as part of a race to the courthouse.

Similarly, the Tennessee Case was not commenced as part of a race to the courthouse. Indeed, Gramercy was not even named as a defendant until four months after that case was filed. Even more importantly, Gramercy did not have any claims to assert against Messrs. Jones until they filed the Amended Complaint in the Tennessee Case. If that Amended Complaint had not been filed, this suit would never have occurred. Thus, the filing of the Tennessee Case could not possibly have been the result of a race to the courthouse.

Other courts have likewise applied the first-filed rule to suits involving a declaratory judgment. *See, Nartron Corp. v. Quantum research Group, Ltd.*, 473 F.Supp.2d 790 (E.D.Mich., 2007)(court applied the first-filed rule and dismissed the later-filed suit).

In *Larocco v. Preserve Real Estate, LLC*, 2006 WL 542579 (E.D.Tenn., 2006), the Eastern District of Tennessee deferred to an earlier-filed state action for declaratory judgment, explaining

18

as follows:

> The court finds that it would be an undue burden on the parties to maintain duplicate lawsuits, one here and another in state court. Further, the interests of judicial economy dictate that this action be stayed pending the outcome of the state court action.

*Id*. at *3.

In *Plating Resources, Inc. v. UTI Corp*., 47 F.Supp.2d 899 (N.D. Ohio 1999) the district court in which the later-filed suit was pending applied the first-filed rule and deferred to the earlier-filed action.  It did so even though the first action involved a complaint for declaratory judgment.

Finally, the first-filed rule and the concern of avoiding litigation are of particular concern where, as in this case, the merits of the second-filed are dubious <u>as a matter of law.</u>  *See*, **Appendix B.**

## III.    IN THE INTEREST OF JUSTICE AND FOR THE CONVENIENCE OF PARTIES AND WITNESSES, THIS CASE SHOULD BE TRANSFERRED TO THE MIDDLE DISTRICT OF TENNESSEE.

28 U.S.C. §1404(a) authorizes this Court to transfer a case "[f]or the convenience of parties and witnesses, [and] in the interest of justice."

> The purpose of <u>Section 1404(a)</u> "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense....'' ' <u>*Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)</u> (quoting <u>*Continental Grain Company v. Barge FBL-585,* 364 U.S. 19, 26, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)</u>).

*The Whistler Group v. PNI Corporation*, 2003 WL 22939214, *2 (N.D.Tex.)(emphasis supplied).

19

In this case each of the following factors weigh heavily in favor of transfer: (1) the interest of justice, (2) the convenience of witnesses, (3) the convenience of parties (4) docket congestion.

First, the interest of justice is a most important factor which *alone* requires that this case be transferred so that duplicative litigation will be avoided. Indeed, this interest of justice requires transfer even though convenience of the parties and witnesses points to a different result. *See, Dahl v. HEM Pharmaceuticals Corp*., 867 F. Supp. 194 (S.D.N.Y. 1994) in which the first-filed suit was pending in Nevada at the time that a second suit was filed in New York. The Southern District of New York ordered that the second suit be transferred to Nevada, stressing as follows:

> Courts have frequently cited the desire to avoid multiplicity of litigation from a single transaction in considering whether an action should be transferred in the interest of justice. And cases have frequently been transferred to a forum in which other actions were pending from the same transactions. [citation omitted]. *see also Mfrs. Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161, 165 (S.D.N.Y.1992) ( " 'There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.' ") (citations omitted). Further, "the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction." *Federal Practice and Procedure* § 3854 at 439-440.

867 F.Supp. at 196 (emphasis supplied).

Likewise, the interest of justice and the policy against multiplicity of litigation is decisive in this case. *See also*, *The Whistler Group v. PNI Corporation*, *supra* which ordered transfer to the court where related litigation was pending, stating as follows:

> See *Ferens v. John Deere Company*, 494 U.S. 516, 531, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) ("[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different [d]istrict [c]ourts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.") (quoting *Continental Grain*, 364 U.S. at 26) . . .
>
> . . . .

By permitting two different courts to interpret the same patent claims, there is a heightened risk of inconsistent rulings which, in turn, promotes uncertainty and impedes the administration of justice. *Datatreasury,* 243 F.Supp.2d at 596. This untenable prospect favors resolving related patent cases in the same forum whenever possible, see *id.* at 594, 596, even if the convenience of the parties and witnesses calls for a different result. See 15 Wright, Miller & Cooper, Fed. Prac. & Proc. 2d § 3854 at 439-40 (1986) (suggesting that "the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction.").

.   .   .

Transferring this Texas litigation to the Northern District of California will serve the objectives of efficient litigation and substantive justice. See *Sundance Leasing Company v. Bingham,* 503 F.Supp. 139, 140 (N.D.Tex.1980) ( "Considerations of judicial economy and efficiency clearly support a policy of having substantially similar matters litigated before the same tribunal."). The district court in *Levitt v. State of Maryland Deposit Insurance Fund Corporation,* 643 F.Supp. 1485 (E.D.N.Y.1986) stated:

> **\*6** [t]ransfer of an action to a district where a related case is pending enables more efficient conduct of pretrial discovery, saves witnesses time and money in both trial and pretrial proceedings, and avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the parties while at the same time serving the public interest.
> *Id.* at 1493 (citations omitted).

*Id.* at \*3, 5-6 (emphasis supplied).

*And see, Data Treasury v. First Data*, 243 F.Supp.2d 591 (N.D.Tex. 2003), which likewise ordered transfer to the court where related litigation was pending. Stating as follows, the Court made clear that the interest of justice in avoiding duplicative litigation was the paramount factor to consider:

> Although the letter of section 1404(a) might suggest otherwise, it is well established that "the interest of justice" is an important factor in the transfer analysis. [citations omitted]. Transfer is particularly appropriate where related cases involving the same issues are pending in another court. In *Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), the Supreme Court observed:
>
> > To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was

21

> designed to prevent.   Moreover, such a situation is conductive to a
> race of diligence among litigants for a trial in the District Court each
> prefers.

*Id.,* 80 S.Ct. at 1474.

> Since *Continental Grain,* a number of courts, including the Fifth Circuit, have held
> that the existence of related litigation in a transferee court is a factor that weighs
> strongly in favor of transfer.  [citations omitted].  Piecemeal litigation in the complex
> and technical area of patent and trademark law is especially undesirable.  *See Smiths
> Industries Medical Systems, Inc. v. Ballard Medical Products, Inc.,* 728 F.Supp. 6,
> 7 (D.D.C.1989).   In such cases, the "interest of justice" may dictate transfer even if
> the convenience of the parties and witnesses calls for a different result.[numerous
> citations omitted].

243 F.Supp.2d at 593-594(emphasis supplied).

While this case does not involve patents, it still involves the complicated and esoteric subject of

federal income taxation.  It still involves the same risk of inconsistent judgments and unnecessary

expenses which results from duplicative litigation. Unless this case is transferred, the conduct of

pretrial discovery will likewise be inefficient.  Further, there will be the risk of inconsistent

judgments and exorbitant amounts will be expended unnecessarily in both trial and pretrial

proceedings. For this reason alone, a transfer should be ordered.

These concerns for the interest of justice are particularly acute where, as here, the merits of

the later-filed action are dubious.  *See*, **Appendix B.**

A second factor weighing in favor of transfer is the convenience of the witnesses.  At this

time, the parties have identified only three witnesses who reside in New York. In contrast, they have

identified eight witnesses who reside in Tennessee (including Messrs. Jones) and three witnesses

who reside in northern Georgia.[6] [Evans Declaration, ¶ 6, Exhibit 4].

---

[6]They have also identified one witness in California, one witness in Illinois, and two
witnesses in Michigan.

22

A _third_ factor weighing in favor of transfer is the convenience of the parties.  This is because Messrs. Jones reside in Tennessee. While they are not impoverished, they certainly do not have the financial resources of Gramercy.  _See_, copies of pages from website of Gramercy. [Evans Declaration, collective exhibit 5] In those pages from its website, Gramercy trumpets that its business is "Event-driven distressed debt investing on a global scale." (emphasis supplied). It is "the investment manager to the Gramercy Emerging Market Fund (GEMF),  the Gramercy Mexico NPL Fund, the Gramercy Mexico NPL Fund II, the Gramercy Global Optimization Fund (GGOF), and a number of private investment partnerships and managed accounts." _Id._ In a recent interview, its co-managing partner, Robert Koenigsburger, stated that Gramercy has about $2 billion under management. _Id._  It is the sub-advisor of a listed Chilean Fund "whose principal clients are the Pension Funds of Chile." _Id._  It has purchased a loan servicing program in Mexico. _Id._

Further, BDO has offices in Memphis, Tennessee and it is a party to the Tennessee Case. There have already been substantial proceedings conducted in the Tennessee Case. [Evans Declaration, ¶ 5, Exhibit 1].  Still further, the Court can take judicial notice that the cost of litigation in Nashville, Tennessee is much less than in New York City.  Allowing this case to proceed would require not only Messrs. Jones but also BDO to incur the enormous expense of litigating in New York City.

It should also be noted that  none of the parties resides within this district.[7]

The _fourth_ factor weighing in favor of transfer is calendar congestion.  The docket in the Southern District of New York is more congested than that of the Middle District of Tennessee.  The

---

[7]While Gramercy supposedly has an office in New York, its principal office is in Greenwich, Connecticut.  [Evans Declaration, Exhibit 5]

Court is requested to take judicial notice of the data found in *Statistical Tables for the Federal Judiciary*, December 31, 2006. [Evans Declaration, Exhibits 6 and 7. ]   As indicated in the table below, the civil filings in the Southern District of New York are almost ten times greater than in the Middle District of Tennessee.  The are over fifteen times more cases pending in the Southern District of New York than in the Middle District of Tennessee, and the median disposition time for all tried cases is three months longer in the Southern District of New York than in the Middle District of Tennessee.

|  | New York | Tennessee | Ratio |
|---|---|---|---|
| **2006 Case Filings** | 14,675 | 1,508 | 9.73 |
| **2006 Cases Pending** | 20,839 | 1,368 | 15.23 |
|  | New York | Tennessee | Difference |
| **2006 Median Time Interval in Months from Filing to Disposition for Cases Tried** | 25.5 | 22.5 | 3 months |

Thus, not only the paramount factor (interest of justice) but three other factors weigh heavily in favor of transfer.

## CONCLUSION

For the reasons stated, this case should be dismissed or stayed.  Alternatively, it should be transferred to the Middle District of Tennessee.

24

Respectfully submitted,

s/ Winston S. Evans
Winston S. Evans (#6281)
Thomas W. Shumate IV (#19595)
Evans, Jones & Reynolds, P.C.
1810 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2424
(615) 259-4685

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, STAY OR TRANSFER** has been served via **Electronic Transmission** upon:

Michael Edward Petrella, Esq.
O'Shea Partners, LLP
90 Park Avenue, 20th Floor
New York, NY 10016

Richard D. Meadow, Esq.
The Lanier Law Firm, PLLC
126 East 56th Street, 6th Floor
New York, NY 10022

via **Electronic Transmission and Federal Express** upon:

Hon. Lawrence M. McKenna, District Judge
United States Courthouse
500 Pearl St., Room 1640
New York, NY 10007

this 19th day of June, 2007.

s/ Winston S. Evans

361400.016

25