UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRAMERCY ADVISORS, LLC, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) Case No. 07-CV-2809 |
| CARLETON A. JONES, III and JOHN A. JONES, | ) ) Judge McKenna ) Magistrate Judge Peck |
| Defendants, | ) ) |

## DECLARATION OF WINSTON S. EVANS

I, Winston S. Evans, hereby affirm under penalty of perjury that the following statements are true and correct.

1.  Attached as **Exhibit 1** is a true and correct copy of the Docket Sheet from *Jones v. BDO Seidman, LLP and Gramercy Advisors, LLC* which was is pending in the United States District Court for the Middle District of Tennessee (Docket #3:06-CV-1115) ["the Tennessee Case"].

2.  I am counsel for Carleton A. Jones and John A. Jones [collectively "Messrs. Jones"] in both the Tennessee Case and in this case.

3.  In this case, as well as in the Tennessee Case, I seek to discover for Messrs. Jones the following:

   • Whether Gramercy ever executed the foreign exchange digital option transactions which were allegedly going to provide for Messrs. Jones shelter from federal income taxes.

If Gramercy did not execute those transactions, its failure to do so would, in my opinion, be a breach of the duties which Gramercy, as a Registered Investment Advisor, owed to Messrs. Jones. It is my understanding that the tax shelter transactions could not possibly have withstood IRS scrutiny if

Gramercy did not execute the transactions. Therefore, I believe it is important to discover whether Gramercy ever intended to execute the transactions, whether it did execute the transactions and, if it did not execute the transactions, why it did not do so. Further, I believe that a failure of Gramercy to execute those transactions would be circumstantial evidence of a fraudulent intent on the part of Gramercy.

4. It appears from various documents that Gramercy and BDO Seidman, LLP ["BDO"] apparently had an established practice of sharing fees paid by clients of BDO for federal income tax shelters.[1] I seek to conduct discovery regarding this fee sharing practice because Messrs. Jones allege that (1) they asked Mr. Jay Johnston of Gramercy how it was going to be compensated; and, (2) Johnston responded that Gramercy would receive only a standard monthly management fee (equal to a small percentage of assets under management) and annual performance based fee (20% of the capital appreciation in the accounts of Messrs. Jones, net of management fee and expenses). *See*, Amended Complaint filed in Tennessee Case, ¶¶ 94-99 [6/19/07 Evans Declaration, Exhibit 2 (DE#9)].

I seek to discover information which will confirm that such an established practice of fee sharing did indeed exist and that BDO and Gramercy secretly shared fees which Messrs. Jones paid to BDO.

More specifically, Messrs. Jones paid $1,185,000 to BDO for consulting fees in connection with the tax shelter. I seek to discover if BDO secretly paid any of those fees to Gramercy, and, if so, how much it paid to Gramercy.

---

[1] *See*, Appendix A to Memorandum in Support of Motion to Dismiss, Stay or Transfer at pp. A-8 through A-19 [DE #11]. And *see*, Declarations of IRS Agent Sandra Alvelo [6/19/07 Evans Declaration, Exhibits 8 and 9];

It is my understanding that, in order for the tax shelter to survive IRS scrutiny, it was crucial for Gramercy to be independent of BDO. Obviously, Gramercy would not have been independent of BDO if it was secretly sharing fees with BDO. Therefore it is important to discover whether Gramercy and BDO had a practice of sharing fees and whether they secretly shared the fees which Messrs. Jones paid to BDO.

Further, Messrs. Jones allege that Mark Puckett of BDO told them it was crucial for Gramercy to be independent of BDO in order for the transactions to withstand IRS scrutiny. If BDO was secretly sharing fees with Gramercy, it would seem that Gramercy and BDO were *not* independent, so that the tax shelter would have been doomed to failure from the outset.[2] It would also seem that BDO, Gramercy, Puckett and Johnston should have known this and should have revealed it to Messrs. Jones. This is further reason why, in my opinion, it is important to discover the "fee sharing arrangement."

5. In my opinion, there is substantial evidence which demonstrates that Gramercy and BDO were involved in a common scheme to sell and promote tax shelters. *See*, Appendix A to Memorandum in Support of Motion to Dismiss, Stay or Transfer at pp. A-8 through A-19 [DE #11]. And *see*, Declarations of IRS Agent Sandra Alvelo [6/19/07 Evans Declaration, Exhibits 8 and 9 (DE#9)]; Complaint filed in *Ronen Olshansky v. Gramercy Advisors* (Docket No. 03-CV-9943, S.D.N.Y.) [6/19/07 Evans Declaration, Exhibit 10 (DE#9)]; Page 24 from Government's Memorandum of Law in Support of its Motion Seeking the Admission of Certain "Other Crimes"

---

[2]Messrs. Jones were not relying on Gramercy for tax advice. However, they do contend that they were relying on Gramercy *to tell the truth and to reveal all material facts*. They further contend that, if there was fee sharing between Gramercy and BDO, that was a material fact which should have been revealed to Messrs. Jones.

3

Evidence, filed in *U.S. v. Stein* (Docket No. 05-CR-888 S.D.N.Y.)[6/19/07 Evans Declaration, Exhibit 11 (DE#9)]. I seek to discover evidence which will establish that common scheme and all relevant overt acts taken in furtherance of that common scheme. This includes, but is not limited to, all such acts which were taken and which were directed at Messrs. Jones.

Evidence concerning this common scheme is important for at least three reasons. First, the existence of the common scheme would be still more evidence that Gramercy and BDO were not independent of each other. As noted above, it is my understanding that such lack of independence would have doomed the tax shelter to failure from the outset.

Second, Messrs. Jones allege that BDO made numerous misrepresentations and concealed material facts from them. If Gramercy and BDO were acting pursuant to a common scheme or conspiracy, then those misrepresentations and omissions by BDO would, in my opinion, be attributable to Gramercy as a co-conspirator. In order so to hold Gramercy responsible for these misrepresentations and omissions by BDO, I seek to conduct discovery which will establish that Gramercy and BDO were acting pursuant to a common scheme to structure and promote tax shelters.[3]

6. For the reasons set forth above, I wish to conduct the following discovery at this time:

- Propound interrogatories and document requests to Gramercy
- Rule 30(b)(6) depositions of Gramercy
- Deposition of Jay Johnston of Gramercy

---

[3]Note that this is in addition to the concealments by Gramercy which Messrs. Jones contend that Gramercy made and the misrepresentations which they contend that Gramercy made directly to them.

4

- Issue subpoena *duces tecum* for BDO to produce documents and to testify; inspect documents and conduct Rule 30(b)(6) deposition of BDO

- Deposition of Mark Puckett of BDO

- Deposition of R.J. Ruble (formerly of the law firm of Brown & Wood)[4]

- Issue subpoena *duces tecum* for the law firm of Decastro, West, Chodorow, Glickfield & Nass, Inc. to produce documents and to testify;[5] inspect documents and conduct Rule 30(b)(6) deposition of that law firm

- Issue subpoena *duces tecum* for Ronen Olshansky[6] to produce documents and to testify; inspect those documents and depose him

- Issue subpoena *duces tecum* for Ms. Sam Goldman[7] to produce documents and to testify; inspect those documents and depose him

- Deposition of Marc Helie (former principal of Gramercy)

7. In my opinion, it is necessary to conduct this discovery before responding to the Motion for Partial Summary Judgment which Gramercy has filed.

---

[4] The declarations of IRS Agent Alvelo show that there were communications which involved Ruble and Johnston and which apparently concerned tax shelter transactions.

[5] Messrs. Jones allege that they were referred to this law firm by BDO. The law firm issued opinion letters to Messrs. Jones regarding the tax shelter. Messrs. Jones contend that these opinion letters were seriously flawed and believe that the law firm may have been acting with Gramercy and BDO as part of the same common scheme or conspiracy.

[6] Mr. Olshansky is a former employee or Gramercy and was the plaintiff in *Ronen Olshansky v. Gramercy Advisors* (Docket No. 03-CV-9943, S.D.N.Y.). *See*, copy of complaint which he filed in that case in which he alleged *inter alia* that Gramercy was engaged in the "very lucrative, but unlawful business of structuring transactions, which generated large tax losses, but had little or no economic substance." [6/19/07 Evans Declaration, Exhibit 10].

[7] Mr. Goldman was counsel for Mr. Olshansky in *Ronen Olshansky v. Gramercy Advisors* (Docket No. 03-CV-9943, S.D.N.Y.).

8. Depending on the results of this discovery, there may be other depositions or discovery which I will wish to conduct

Dated: June 26, 2007.

*[signature]*

Winston S. Evans

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **DECLARATION OF WINSTON S. EVANS** has been served via **Electronic Transmission and Federal Express** upon:

Michael Edward Petrella, Esq.
O'Shea Partners, LLP
90 Park Avenue, 20th Floor
New York, NY 10016

Richard D. Meadow, Esq.
The Lanier Law Firm, PLLC
126 East 56th Street, 6th Floor
New York, NY 10022

and via **Federal Express** upon:

Hon. Lawrence M. McKenna, District Judge
United States Courthouse
500 Pearl St., Room 1640
New York, NY 10007

this 26th day of June, 2007.

s/ Winston S. Evans

361400.042

6