UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
GRAMERCY ADVISORS, LLC;

                Plaintiff,

      v.

                **Civ. A. No. 07cv2809 (LMM)**

CARLETON A. JONES, III, and
JOHN A. JONES;

                Defendants.
------------------------------------------------------------- x

**MEMORANDUM OF LAW OF PLAINTIFF GRAMERCY ADVISORS LLC IN OPPOSITION TO DEFENDANTS' MOTION TO DEFER MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR TIME TO CONDUCT DISCOVERY**

Sean F. O'Shea (SO 5746)
Michael E. Petrella (MP 3794)
**O'SHEA PARTNERS LLP**
90 Park Avenue, 20th Floor
New York, New York 10016
Tel: (212) 682-4426
Fax: (212) 682-4437

*Counsel for Plaintiff Gramercy Advisors, LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY............................................ 1

LEGAL ARGUMENT ................................................................................................ 5

I.  GRAMERCY'S CLAIM FOR ADVANCEMENT IS NOT A COMPULSORY COUNTERCLAIM TO THE TENNESSEE ACTION ................. 5

    A.  Gramercy's Claim for Advancement Raises No Issues Legitimately Implicated in the Tennessee Action ........................................... 5

    B.  There Is No Risk of Inconsistent Judgments or Duplication of Effort between This Action and the Tennessee Action ................................. 10

II. THE TENNESSEE ACTION IS JURISDICTIONALLY DEFECTIVE AS TO GRAMERCY, AND THEREFORE CANNOT SERVE AS A BASIS TO DELAY OR DEFER THE INSTANT CASE ....................................................... 11

III. BECAUSE ADVANCEMENT, BY DEFINITION, MUST BE GRANTED PRIOR TO ANY ADJUDICATION OF THE MERITS, THERE IS NO BASIS TO GRANT DEFENDANTS' REQUEST FOR DISCOVERY ON THEIR DEFENSES TO THIS ACTION .................................... 13

CONCLUSION........................................................................................................ 15

**TABLE OF AUTHORITIES**

**Cases**

*Albert Trostel & Sons Co. v. Canadian Imperial Bank of Commerce*, No. 82 C 7536,
  1984 WL 868 (N.D. Ill. Aug. 21, 1984) ................................................................. 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ......... 14

*Citrin v. Int'l Airport Centers LLC*, 922 A.2d 1164 (Del. Ch. 2006) ............................. 9

*Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742 (S.D.N.Y. 1977) ................. 13

*Fischmann v. VistionTel, Inc.*, 934 F. Supp. 115 (S.D.N.Y. 1996) ............................... 10

*Foodcomm Int'l v. Barry*, 463 F. Supp. 2d 818 (N.D. Ill. 2006) .................................. 6

*Great Am. Ins. Co. v. Houston Gen'l Ins. Co.*, 735 F. Supp 581 (S.D.N.Y. 1990) .................. 7

*Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214 (4th Cir. 2002) ..................... 14

*In re District 15, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*,
  658 F. Supp. 648 (S.D.N.Y. 1987) .................................................................. 14

*Int'l Airport Centers*, ........................................................................... 9

*Int'l Airport Centers, L.L.C. v. Citrin*, 455 F.3d 749 (7th 2006) ............................. 8, 9

*Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F. Supp. 35 (E.D. Pa. 1983) ..................... 13

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168
  (2d Cir. 2005) ..................................................................................... 5

*North Am. Airlines, Inc. v. Int'l Bhd. Of Teamsters, AFL-CIO*, No. 04 Civ. 9949(KMK),
  2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) ........................................................... 7

*Robinson v. TransWorld Airlines, Inc.*, 947 F.2d 40 (2d Cir. 1991) ............................. 14

*U.S. v. Sidley Austin Brown & Wood LLP*, No. 03 C 9355, 2004 WL 816448
  (N.D. Ill. Apr. 15, 2004) .......................................................................... 6

*United States v. Doherty*, 786 F.2d 491 (2d Cir. 1976) .......................................... 6

*United States v. Stein*, 452 F. Supp. 2d 230 (S.D.N.Y. 2006) .................................... 9

## PRELIMINARY STATEMENT

Plaintiff Gramercy Advisors LLC ("Gramercy" or "Plaintiff") respectfully submits this Memorandum of Law in opposition to the motion of Defendants Carleton A. Jones, III and John A. Jones ("Defendants") to (1) defer adjudication of Gramercy's currently-filed motion for partial summary judgment, or (2) alternatively, to grant Defendants additional time to conduct discovery.

Defendants' principal contention is that Gramercy's claims herein are in fact compulsory counterclaims in an action filed by Defendants in the Middle District of Tennessee. Defendants seek to defer adjudication of Gramercy's motion for partial summary judgment and to have the Court first adjudicate Defendants' motion to dismiss or stay this action in favor of the Tennessee case. Defendants' motion should be denied. Gramercy seeks summary judgment only on its contractual claim for advancement. As explained in Point I, *infra*, that claim does not require a determination of any of the merits at issue in Tennessee and, consequently, is not a compulsory counterclaim there (notwithstanding Defendants' addition of an improper declaratory judgment claim in Tennessee seeking to preempt this action). More fundamentally, the Tennessee court lacks personal jurisdiction of Gramercy (currently the subject of motion practice and limited discovery there), and that action cannot be used as a basis to dismiss or stay the present one. Defendants' alternate request – merits discovery – should also be denied.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The essential facts underlying the parties' disputes are set forth in the Memorandum of Law in Support of Motion by Plaintiff Gramercy Advisors LLC for Partial Summary Judgment (Petrella Decl.,[1] Ex. 1), to which the Court is respectfully referred, and will not be repeated *in toto* herein.

Defendants are wealthy businessmen who, in 2002, reaped millions of dollars in profits from the sale of their interests in several Tennessee newspapers. Eager to avoid paying capital

---

[1] Declaration of Michael E. Petrella, dated July 27, 2007, submitted herewith.

gains tax, they retained accounting firm BDO Seidman, LLP ("BDO") to advise them. According to Defendants, BDO advised them to engage in a series of transactions that would generate millions of dollars in losses that could be applied on Defendants' 2002 tax returns to offset the capital gains. (*Id.*, Ex. 2, ¶¶ 29, 83-86, 114-22). After deciding to pursue BDO's investment strategy, Defendants retained Gramercy to execute the specific transactions recommended by BDO. (*Id.*, ¶ 104). Gramercy agreed to do so, but strictly on the condition that it would have no liability in the event Defendants' desired tax benefits failed to materialize. To that end, Defendants each acknowledged and agreed in writing that Gramercy had made no representations respecting the tax implications of BDO's investment strategy; that Defendants had not relied on Gramercy for tax advice, but in fact had relied on other professional advisors for such advice; and that Gramercy would not be liable in any manner concerning the tax consequences of the transactions effectuated for Defendants. (*Id.*, Ex. 1, at 4-5). Defendants were separately advised by ostensibly expert tax counsel, J. Lee Griffith, Esq. and Richard A. Johnson, Esq. of the Nashville, Tennessee firm Waller Lansden Dortch & Davis, against whom Defendants have leveled no accusations of wrongdoing. (*Id.*, Ex. 1, at 5).

In 2005, the IRS challenged the losses taken on Defendants' 2002 returns. (*Id.*, Ex. 2, ¶¶ 135-37). On November 20, 2006, Defendants commenced an action against BDO in the United States District Court for the Middle District of Tennessee, *John A. Jones and Carleton A. Jones, III v. BDO Seidman, LLP et al*, Case No. 3:06-CV-1115 (the "Tennessee Action"), asserting a variety of claims sounding in negligence only. Defendants' complaint did not even ***mention*** Gramercy. Upon information and belief, BDO demanded that Defendants arbitrate their claims against BDO, pursuant to an arbitration clause in BDO's consulting agreement with Defendants. At that juncture – in an apparent effort to defeat BDO's arbitration rights – Defendants suddenly "discovered" that BDO had defrauded Defendants and that Gramercy had conspired with BDO in that regard. On March 27, 2007, Defendants filed an amended complaint in the Tennessee Action (the "Amended Complaint" of "Am. Compl.") adding Gramercy as a party defendant. (*Id.*, Ex. 2).

2

Defendants commenced the Tennessee Action as against Gramercy by filing the Amended Complaint on March 27, 2007 and serving it on Gramercy on March 29, 2007. The bulk of the Amended Complaint concerned alleged misrepresentations and omissions by BDO, and a threadbare attempt to establish that Gramercy had conspired with BDO and was thus legally liable for BDO's alleged acts and omissions. (*Id.*, Ex. 2, ¶¶ 1-183). Tacked onto the end was a claim for declaratory relief. Acknowledging that Gramercy was expected to commence the present action, Defendants sought a judgment declaring, *inter alia*, that (1) the terms of Defendants' IMAs with Gramercy did not require them to indemnify or advance costs to Gramercy in connection with the Tennessee Action, and (2) that the IMAs had been wrongfully or fraudulently induced and were therefore void. (*Id.*, ¶¶ 184-92).

Several days after being served with the Amended Complaint, on April 9, 2007, Gramercy commenced this action seeking advancement and indemnification pursuant to the IMA.

On April 29, 2007, Defendants moved the Tennessee court to enjoin Gramercy from pursuing the instant action.[2] On May 25, 2007, Gramercy moved to dismiss the Tennessee Action for lack of personal jurisdiction, for failure to state a claim, and for lack of subject matter jurisdiction over Defendants' declaratory cause of action. On June 15, 2007, Gramercy moved this Court for partial summary judgment granting its claims for advancement (but leaving for future adjudication its claims for indemnification and other relief).

Because Defendants had served discovery demands in the Tennessee Action, on June 4, 2007 Gramercy moved the Tennessee court to stay discovery pending the adjudication of the court's *in personam* jurisdiction of Gramercy. Defendants opposed the discovery stay on the grounds that it was entitled to preliminary discovery on jurisdiction. Moreover, because Defendants claimed that Gramercy's alleged conspiracy with BDO would confer personal jurisdiction of Gramercy on the basis of BDO's acts and omissions within Tennessee, and

---

[2] On June 19, 2007, Defendants moved this Court to stay or dismiss this action in favor of the Tennessee Action, or to transfer the case to the Middle District of Tennessee.

because those allegations were "intertwined" with the merits, Defendants claimed they were entitled to full discovery on the merits prior to any adjudication of personal jurisdiction.

Following briefing of the stay motion and a teleconference with the Tennessee court, on July 9, 2007 the presiding Magistrate refused to permit discovery on Defendants' conspiracy theory of jurisdiction but permitted discovery limited to more traditional jurisdiction concepts. (Petrella Decl., Ex. 3, at 1). Such discovery is to be concluded by September 10, 2007, and briefing of Gramercy's jurisdiction motion is to conclude by October 5, 2007. (*Id.*)

Defendants have now moved this Court (1) to defer briefing of Gramercy's motion for partial summary judgment, and (2) to instead rule first on Defendants' motion to dismiss, stay, or transfer this action. Arguing that "substantial proceedings have already taken place in the Tennessee Case;" that all of the issues and evidence in this case are identical to those in the Tennessee Action; that Gramercy's claims herein are therefore compulsory counterclaims in the Tennessee Action and must be adjudicated by the Tennessee court; and that the Tennessee court has valid *in personam* jurisdiction of Gramercy (Def. Mem., at 3-4, 7), Defendants assert that it would be wasteful to brief and adjudicate the motion for partial summary judgment prior to Defendants' motion to dismiss, stay, or transfer.

As demonstrated below, Gramercy's claim for advancement is not a compulsory counterclaim in the Tennessee action, and Defendants' claim of identity of issues in the Tennessee Action and the present action are largely premised on Defendants' improper attempt to preempt this action through their misuse of the declaratory judgment remedy in the Tennessee Action. This Court can and should adjudicate Gramercy's partial summary judgment motion, irrespective of the outcome of Gramercy's pending jurisdiction motion in Tennessee.

## **LEGAL ARGUMENT**

I.  **GRAMERCY'S CLAIM FOR ADVANCEMENT IS NOT A COMPULSORY COUNTERCLAIM TO THE TENNESSEE ACTION.**

Defendants' request that the Court defer Gramercy's partial summary judgment motion boils down to the fundamental contention that the issues in this action merely duplicate those in

4

the Tennessee action, and that Gramercy's claims herein should be resolved as (compulsory) counterclaims in the Tennessee Action. Defendants' arguments do not withstand scrutiny.

### A.  Gramercy's Claim for Advancement Raises No Issues Legitimately Implicated in the Tennessee Action.

In this action, Gramercy seeks to enforce provisions of its IMAs with Defendants obligating Defendants (1) to indemnify Gramercy for the costs incurred in defending Defendants' (meritless) Tennessee Action should Gramercy ultimately prevail on the merits; and (2) *prior to any determination on the merits*, to advance Gramercy its costs incurred in connection with the Tennessee Action. (Petrella Decl., Ex. 10). Defendants deny these obligations (1) on various grounds of contract interpretation (see, *e.g.,* Def. Mem., at 2; Petrella Decl., Ex. 2, ¶¶ 188-89),[3] and (2) on the ground that the IMAs allegedly were wrongfully or fraudulently induced[4] (see, *e.g.,* Def. Mem., at 2; Petrella Decl., Ex. 2, ¶¶ 188, 192).

---

[3]    As noted in Gramercy's memorandum of law in support of its motion for partial summary judgment, Defendants' key contention – that the indemnification provisions in the IMA do not apply to suits between the parties thereto – contravenes clear Second Circuit precedent. Petrella Decl., Ex. 1, at 7-8; *see Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp*., 418 F.3d 168, 178-79 (2d Cir. 2005) (holding that contract language providing for "[indemnification] from any actions . . . of any kind or nature arising, growing out of, or otherwise connected with any activity under this Agreement" was broad enough to encompass actions between the parties to the contract). The language of Paragraph 7(e) if the IMAs at issue here – "[indemnification] from and against . . . any and all claims . . . that . . . arise out of or in connection with" (*inter alia*) the business relationship between the parties (Petrella Decl., Ex.'s 8 & 9, at 5) – is indistinguishable.

[4]    As established in this Memorandum of Law, the merits (or lack thereof) of Defendants' fraudulent inducement defenses are irrelevant to Gramercy's advancement claim. (See Point I, *supra*). Nonetheless, in light of Defendants' mantra-like invocation of conspiracy (see, *e.g.,* Def. Mem., at 9), a word about their "evidence" is in order. The main thrust of their claims against Gramercy is that Gramercy conspired with BDO to foist flawed tax advice on Defendants, inducing Defendants to pursue an investment strategy and associated transactions that supposedly would have favorable tax advantages but which, in fact, had been under IRS scrutiny. Defendants' claimed tax deductions were later disallowed by the IRS. Defendants' principal evidence of conspiracy consists of several paragraphs and exhibits cherry-picked from a declaration submitted by an IRS agent in connection with a proceeding to enforce – over a claim of privilege – several summonses issued by the IRS to BDO. (Def. Mem., at 9; Defendants' Memorandum of Law in Support of Motion to Dismiss, Stay, or Transfer, Appendix A at 8-19). Putting aside that there is far less to the cited material than meets the eye, the following more general observations are offered.

   *First*, it will come as no surprise to the Court that tax advisory and accounting firms like BDO aggressively seek out and exploit "loopholes" in the tax laws and regulations. That is, by definition, entirely legal. Conversely, the IRS seeks to maximize revenue collection, and will often challenge putative "loopholes." The question of whether a "loophole" is valid typically entails exceedingly complex and subtle legal distinctions and analysis. *Cf. U.S. v. Sidley Austin Brown & Wood LLP*, No. 03 C 9355, 2004 WL 816448, *6 (N.D. Ill.) (whether transactions at issue constituted abusive tax shelters was "a complicated question"). Defendants do not allege that any court or factfinder ever determined the IRS agent's statements to be well-founded, and (what Defendants purport to be) the agent's conclusions are nothing more than the characterizations of an advocate for a party (the IRS) with

5

Defendants' contract-interpretation defenses are entirely extraneous to the facts and circumstances at issue in the Tennessee Action (*i.e.*, whether BDO and Gramercy fraudulently or negligently induced Defendants to purchase bad tax advice). This is apparent from the fact that the first 184 paragraphs of Defendants' Amended Complaint do not even mention the IMA, let alone its terms. (Petrella Decl., Ex. 2). The only reason Defendants can claim that these contractual issues "are already at issue in the Tennessee Case" (Def. Mem., at 3) is because Defendants' Amended Complaint also includes a request for declaratory relief raising such issues. (Petrella Decl., Ex. 2, ¶¶ 185-192).

Defendants' declaratory cause of action in Tennessee is an obvious misuse of the declaratory remedy as a tactical gambit to preempt the present action. Declaratory relief exists for two fundamental purposes: "to avoid accrual of avoidable damages to one not certain of his rights," *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1976), and to permit the natural defendant in a looming dispute to have the dispute adjudicated, where the defendant suffers harm occasioned by the delay or failure of the natural plaintiff to commence a coercive action, *see, e.g., Great Am. Ins. Co. v. Houston Gen'l Ins. Co.*, 735 F. Supp 581, 584-85 (S.D.N.Y. 1990). As this Court observed,

---

institutional interests diametrically opposed to those of tax consultants such as BDO.

    *Second*, nothing in the IRS agent's declaration shows that Gramercy played any role in devising BDO's investment strategies or that Gramercy displayed any awareness of the alleged legal infirmities of the strategy or the supposed IRS crackdown thereon. Rather, it merely shows Gramercy furnishing objective factual input used by attorneys to draft opinion letters. Absent any awareness on Gramercy's part of the alleged flaws in the advice rendered by BDO to Defendants, Gramercy, as a matter of law, could not have **conspired** with BDO against Defendants. *See, e.g., Foodcomm Int'l v. Barry*, 463 F. Supp. 2d 818, 830-31 (N.D. Ill. 2006) ("[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy").

    *Third*, if the IRS agent's conclusions did bespeak genuine wrongdoing or conspiracy (something Gramercy categorically denies), it is wrongdoing directed against the **United States government**, not against BDO's clients. Defendants assert that the IRS agent's declaration "show[s] that Gramercy was deeply involved with BDO in structuring and promoting tax shelters." (Def. Mem., at 9). Putting aside Defendants' hyperbole and erroneous characterizations, the IRS' investigation of BDO, like the U.S. Senate investigation of the "tax shelter industry" referenced by Defendants (see Petrella Decl., Ex. 2, ¶¶ 32), was not a consumer protection probe targeting unscrupulous advisors who dupe unwitting naifs, as Defendants vainly characterize themselves. To the contrary, the IRS viewed Defendants as knowing coconspirators, as evidenced by its imposition of monetary penalties against them. (Petrella Decl., Ex. 2, ¶¶ 137). That Gramercy allegedly assisted or conspired with BDO – and Defendants – to deprive the federal government of tax revenues furnishes absolutely no legal basis for Defendants to recover anything from Gramercy.

6

> A declaratory judgment is an opportunity for a party to a ripe legal controversy to have that controversy resolved by a Court promptly rather than waiting for the opposing party, with the ripe substantive right to sue, to choose to exercise its rights to judicial intervention, particularly where the delay in seeking judicial intervention will cause substantial prejudice to the declaratory judgment plaintiff. The intent is to allow a party to be free from the whim of its opponent in deciding when to resolve the legal dispute between them.

*Id.* at 585.

Here, however, Defendants sued Gramercy, notwithstanding the indemnification provisions in the IMA. Gramercy, in turn, promptly commenced the present action, as Defendants knew it would.[5] The IMA did not deter Defendants from exercising their putative rights or otherwise create the sort of uncertainty or insecurity from which the declaratory remedy is intended to afford relief. Plainly, Defendants added a declaratory cause of action to their Tennessee pleading solely to manufacture a basis for asserting here – as they now do – that Gramercy's indemnification and advancement claims and Defendants' defenses thereto are already at issue in Tennessee. Courts, however – including the Sixth Circuit – "take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *North Am. Airlines, Inc. v. Int'l Bhd. Of Teamsters, AFL-CIO*, No. 04 Civ. 9949(KMK), 2005 WL 646350, *17 (S.D.N.Y. Mar. 21, 2005) (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). Because Defendants' contract-based defenses are not genuinely at issue in the Tennessee Action, there is no reason for this court to decline to adjudicate them.

Defendants' other defense to the IMA – fraudulent inducement – does raise matters that are at issue in the Tennessee Action, but are of absolutely no import to Gramercy's claim for ***advancement*** and present no obstacle to adjudication of Gramercy's pending motion for partial

---

[5] Defendants undoubtedly were aware that Gramercy brought a similar action against another client who had sued Gramercy in a "tax shelter" case in Florida state court. Defendants themselves cite (Def. Mem., at 9) a lawsuit against Gramercy in the Southern District of New York by a terminated employee (the employee has since issued a full written retraction of the allegations cited by Defendants), and are plainly monitoring the docket of this Court, including Gramercy's other advancement/indemnification lawsuit., *see Gramercy Advisors LLC v. Thompson*, 1:05 CV 09385 (RJH) (S.D.N.Y.)

summary judgment.  The precise issue is cogently explained in the Seventh Circuit's recent decision in *Int'l Airport Centers, L.L.C. v. Citrin*, 455 F.3d 749 (7th Cir. 2006) (Posner, J.)  The plaintiff, IAC, had sued Citrin in the Northern District of Illinois for breach of fiduciary duty.  *Id.* at 751.  Citrin's employment contract with IAC – like the IMAs here – required IAC to advance Citrin the costs of defending against IAC's action prior to any final disposition.  *Id.*  When IAC refused to advance, Citrin brought an action in another jurisdiction (Delaware) – like Gramercy in the present action – to enforce his rights.  *Id.*

     IAC – like Defendants here – moved the Illinois district court to enjoin Citrin's Delaware suit on the grounds that it concerned the same subject matter as the Illinois action.  *Id.*  The Seventh Circuit demolished that assertion:

> Citrin is not asking the Delaware court to hold . . . that IAC has failed to state a claim . . . .  He is not asking to be indemnified on the ground that he is innocent of the charge of breach of fiduciary obligation.  That would require a ruling on the merits of IAC's claim and he is not asking for that.  All he is asking is that in advance of the final disposition of the suit in federal district court he receive his litigation expenses in accordance with the terms of his employment contract.  And since ***entitlement to advancement is independent of the merits of the suit for which the money is sought, the claim for advancement is not a compulsory counterclaim to that suit***.  For the claim does not arise out of the litigation; it arises out of the employment contract.
>
> It is true that Citrin could have asked the [(Illinois)] district judge to order the advancement of fees, since the federal district court would have subject-matter and personal jurisdiction of a suit by Citrin against IAC arising out of the contract, though this would have required the judge to interpret Delaware law.  But requiring IAC to defend the advancement suit in Delaware, the state whose law governs, can hardly be thought a hardship to the company or otherwise inappropriate.  The only issues in the Delaware suit are the applicability of the contractual advancement clause to Citrin's defense in the district court proceeding (specifically, whether IAC's suit concerns a matter arising out of Citrin's employment by the company) and the amount of litigation expense that Citrin has incurred.

8

*Id.* at 751-52 (emphasis added). The Delaware Court of Chancery, granting Citrin judgment *on the pleadings*, similarly endorsed the "traditional notion that a suit for advancement need not be brought as a counterclaim in the underlying lawsuit for which advancement of legal expenses is sought." *Citrin v. Int'l Airport Centers LLC*, 922 A.2d 1164, 1166 (Del. Ch. 2006).

The dispositive nature of this reasoning for the present motion could not be clearer. The IMAs entitle Gramercy to advancement prior to any determination of the merits of Defendants' allegations, including their allegation that Gramercy conspired with BDO to defraud Defendants. Defendants' allegations – whether asserted as claims in the Tennessee Action or as affirmative defenses in this action – are irrelevant to Gramercy's right to advancement, and thus irrelevant to Gramercy's pending motion for summary judgment on its advancement claims.[6] Therefore, even in the unlikely event that the Tennessee Court finds it has personal jurisdiction of Gramercy (a determination that will not occur until October 2007, at the earliest), and Defendants' substantive claims proceed in Tennessee, Gramercy's claim for advancement remains independent of the merits of that suit and is not a compulsory counterclaim therein. Although Gramercy could seek advancement as a *permissive* counterclaim in Tennessee, the IMAs are governed by New York law and it is fully appropriate for this Court to adjudicate the claims. *See Int'l Airport Centers*, 455 F.3d at 752.

### B. There Is No Risk of Inconsistent Judgments or Duplication of Effort between This Action and the Tennessee Action.

Like Defendants' instant motion, their motion to dismiss, stay, or transfer is founded principally on the notion that Gramercy's claims herein are duplicative of the Tennessee Action.

---

[6] Any suggestion that, by merely raising allegations of fraudulent inducement, Defendants can avoid otherwise binding obligations of advancement on the theory that the contract is void, has been rejected by this Court with respect to an identical IMA with another Gramercy client. The Court rejected the defendants' fraudulent inducement defense and granted Gramercy's motion for partial summary judgment  See Petrella Decl., Ex. 1, at 9-13; *see also United States v. Stein*, 452 F. Supp. 2d 230, 272 (S.D.N.Y. 2006) ("fundamental principle is that a company that undertakes to advance defense costs may not avoid that obligation by claiming that the litigation against its former employee for which the employee seeks advancement of defense costs accuses the employee of conduct that, if proved, would foreclose indemnification or establish a breach of the employment contract or of a fiduciary or other duty owed to the company"), *vacated on other grounds*, *Stein v. KPMG, LLP*, 486 F.3d 753 (2d Cir. 2007).

9

Because this argument indisputably fails with respect to the issue of advancement, Defendants' motion undoubtedly will be denied, and Defendants' complaints about wasted effort in connection with briefing of both Gramercy's motion for partial summary judgment and Defendants' motion (Def. Mem., Point I) are unfounded. Defendants, however, also invoke the potential for duplication of effort and inconsistent judgments if both the Tennessee Action and the instant action proceed. These contentions are also without merit.

*First*, Defendants have not demonstrated any potential for inconsistent judgments. Typically, where parties are litigants in two separate legal proceedings, ordinary principles of res judicata and collateral estoppel will protect against the dangers of inconsistent judgments. *See, e.g., Fischmann v. VistionTel, Inc.*, 934 F. Supp. 115, 118 (S.D.N.Y. 1996) (principles of collateral estoppel protect party litigating two separate lawsuits with same counterparty; risk of inconsistent judgments does not exist). If, for example, Gramercy prevails on its motion for partial summary judgment, Defendants will be collaterally estopped to relitigate that portion of its declaratory cause of action in Tennessee; no inconsistency will arise. (And the foregoing proceeds from the unlikely premise that the Tennessee Court both finds that it has personal jurisdiction of Gramercy and decides to entertain Defendants' patently improper declaratory action).

*Second*, as shown in Point I.A, *supra*, Gramercy's claim for advancement does not duplicate any of the issues legitimately before the Tennessee Court. To the extent that a determination of Gramercy's indemnification claims does require adjudication of the same merits currently at issue in Tennessee, no such adjudication can occur before the determination of Gramercy's advancement claim. By the time Gramercy's indemnification claim is to be adjudicated by this Court, the Tennessee Court likely will have ruled on and granted Gramercy's motion to dismiss for lack of personal jurisdiction. At that point, Defendants' motion to dismiss, stay, or transfer and motion to defer will have been rendered entirely moot. The patent lack of jurisdiction over Gramercy in Tennessee is addressed in the following section.

*Third*, it appears that the litigation between Defendants, Gramercy, and BDO likely will be fragmented anyway. BDO has moved the Tennessee court to compel the Defendants to arbitrate their claims against BDO. BDO has successfully invoked identical arbitration clauses with respect to numerous other "tax shelter" client-plaintiffs (see Petrella Decl., Ex. 4, at 25-26), and there is no sound reason for the Tennessee Court to rule otherwise with respect to Defendants. Consequently, absent an order requiring Defendants and Gramercy to arbitrate their claims in the same arbitration proceeding with BDO, there will be no economies gained by litigating this dispute in Tennessee instead of this Court.

II. **THE TENNESSEE ACTION IS JURISDICTIONALLY DEFECTIVE AS TO GRAMERCY, AND THEREFORE CANNOT SERVE AS A BASIS TO DELAY OR DEFER THE INSTANT CASE.**

The most fundamental reason to deny the present motion, as well as Defendants' motion to dismiss, stay, or transfer, is that Gramercy is not subject to personal jurisdiction in Tennessee; the Tennessee Action thus cannot serve as a basis to stay or defer the present action. Defendants contend that there is "a <u>compelling</u> basis for personal jurisdiction over Gramercy in the Middle District of Tennessee" (Def. Mem., at 7 (emphasis in original)), and refer the Court to jurisdictional arguments set forth in an appendix to their brief in support of their motion to dismiss, stay, or transfer. (*Id.* at 7). The arguments in that appendix were repeated nearly verbatim in a brief submitted by Defendants to the Tennessee court in opposition to Gramercy's motion to stay discovery. Gramercy addressed these arguments in a reply brief and an earlier dismissal brief (Petrella Decl., Ex.'s 5 & 6). Rather than restate the arguments in full, the Court is respectfully referred to Exhibit 8, Point I, and Exhibit 7, Point II.

To summarize, Defendants contend (1) that Gramercy committed a tortious act outside of Tennessee (an alleged failure at a New York meeting with Defendants to disclose alleged fee sharing between Gramercy and BDO) giving rise to injury within Tennessee, satisfying the Tennessee long-arm statute and due process, and (2) that Gramercy conspired with BDO and, therefore, BDO's alleged tortious acts and omissions within Tennessee can be imputed to

11

Gramercy for purposes of personal jurisdiction. With respect to the first contention, Gramercy's reply brief demonstrated that Defendants' have not satisfied even the plain language of the Tennessee long-arm statute (Petrella Decl., Ex. 5, at 6). Moreover, while Defendants rely principally on several mail and telephonic communications from Connecticut (Gramercy's principal place of business) to Tennessee to establish constitutionally adequate minimum contacts, Defendants have not identified any communications by Gramercy that were themselves *tortious*. Under Sixth Circuit case law – cited in abundance by Gramercy and conspicuously ignored by Defendants – the proffered communications fall far short of the required threshold. (See *id.*, at 6-10; Ex. 6, Point I).

With respect to conspiracy-based jurisdiction arguments, Gramercy observed that Defendants' conspiracy allegations are patently inadequate under Federal Rules of Civil Procedure 9(b) and 12(b)(6), and therefore fail to establish a jurisdictional hook. (See Petrella Decl., Ex. 6, Points II).

The Tennessee court has since partially granted Gramercy's motion to stay discovery. Although it permitted Defendants to conduct general jurisdictional discovery concerning Gramercy's own ties with Tennessee (*i.e.*, traditional concepts of long-arm jurisdiction), it has barred Defendants from taking any discovery on its conspiracy-based jurisdiction theory. (*Id.*, Ex. 3). As Gramercy noted to the Tennessee Court, the permitted discovery will be utterly unavailing to Defendants, because Gramercy does not dispute Defendants' allegations concerning Gramercy's communications and other inconsequential ties with Tennessee, and discovery will simply confirm what the parties already agree upon. (See *id.*, Ex. 5, at 4). These allegations, however, fail to establish even a *prima facie* case of personal jurisdiction because, *inter alia*, they fail to show any purposeful availment by Gramercy of the benefits and protections of Tennessee law. (Petrella Decl., Ex. 5, Point II; Ex. 6, Point I).

Although the jurisdictional discovery and briefing in Tennessee will not be completed until October 2007, the Court can see for itself that Gramercy's jurisdiction motion will almost certainly succeed. In such circumstances, it is plainly within the Court's discretion to deny

Defendants' instant motion and their motion to dismiss, stay, or transfer. *See Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F. Supp. 35, 36-37 (E.D. Pa. 1983) (denying defendant's motion to dismiss, stay, or transfer in favor of earlier-filed Ohio action, where substantial doubt existed as to Ohio court's personal jurisdiction of plaintiff); *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 748 (S.D.N.Y. 1977) (denying plaintiff's request to enjoin later-filed California action where, *inter alia*, personal jurisdiction of defendant in New York was doubtful).

### III. BECAUSE ADVANCEMENT, BY DEFINITION, MUST BE GRANTED PRIOR TO ANY ADJUDICATION OF THE MERITS, THERE IS NO BASIS TO GRANT DEFENDANTS' REQUEST FOR DISCOVERY ON THEIR DEFENSES TO THIS ACTION.

As an alternative, Defendants ask for leave to conduct discovery on the merits prior to a determination of Gramercy's motion for partial summary judgment, and for leave to conduct discovery as to the amounts Defendants are obligated to advance under the terms of the IMA and as to the "reasonableness" of the amount of advancement requested by Gramercy. (Def. Mem., Point III). These requests should be denied.

As established in Point I, *supra*, and in Gramercy's memorandum of law in support of its motion for partial summary judgment (Petrella Decl., Ex. 1, at 9-13), the merits of Defendants' fraudulent inducement defense are wholly irrelevant to the determination of Gramercy's advancement claim. Accordingly, discovery on the issues of alleged fraudulent inducement and alleged fee splitting (see Def. Mem., at 8-9) are no basis to defer Gramercy's motion for partial summary judgment. The *Fed. R. Civ. P.* 56(f) cases cited by Defendants (Def. Mem., at 9-10), unlike the present one, concern requests for discovery on matters **relevant** to the particular summary judgment motion at issue.[7] Their animating principle is that discovery should be

---

[7] In *Robinson v. TransWorld Airlines, Inc.*, 947 F.2d 40, 42-43 (2d Cir. 1991), the employee non-movant's request for discovery concerned the employer movant's termination practices, discovery directly relevant to the employer's motion for summary judgment on the employee's Age Discrimination in Employment Act claim. *In re District 15, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 658 F. Supp. 648, 651 (S.D.N.Y. 1987) granted the non-movant discovery as to the movant's de facto control of and alter ego relationship to, an affiliated corporation, in the face of the movant's contention that it was not a party to the collective bargaining agreement be

13

afforded where the non-movant "has not had the opportunity to discover *information that is essential to his opposition*." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis added). The discovery sought here by Defendants is not merely nonessential, but legally irrelevant.

Defendants' request for discovery into the total amount of indemnification for which they are contractually liable and the reasonableness of the amount of advancement demanded by Gramercy are similarly irrelevant. The Court can and should first determine that Defendants are bound by the IMAs' advancement provision. After that determination, the Court can hold an evidentiary hearing or require written submissions to decide the ancillary issues raised by Defendants. Indeed, this is precisely how this Court (Holwell, J.) proceeded in an earlier case by a Gramercy client suing over an alleged "tax shelter." The Court denied the defendant's request to stay the Southern District action in favor of a jurisdictionally defective Florida state action, and granted Gramercy's partial summary judgment motion seeking advancement, with a subsequent hearing to determine dollar issues. (See Petrella Decl., Ex. 7).

Defendants' request for discovery concerning the "reasonableness" of the costs incurred to date by Gramercy (see Def. Mem., at 11-12) is further unavailing because nothing in the IMA imposes a "reasonableness" test on the amount of indemnification or advancement. (See Petrella Decl., Ex.'s 8 and 9, ¶ 7(e) – (i)).

---

issue. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 242 (4th Cir. 2002) concerned a non-movant's request for discovery concerning the movant's bad faith, in the face of movant's summary judgment motion seeking dismissal for lack of evidence of bad faith. Finally, in *Albert Trostel & Sons Co. v. Canadian Imperial Bank of Commerce*, No. 82 C 7536, 1984 WL 868, *3 (N.D. Ill. Aug. 21, 1984), the court granted the non-movant the opportunity to depose the individuals upon whose affidavits the movant sought summary judgment.

14

## **CONCLUSION**

For all of the foregoing reasons, Defendants' motion to defer briefing and adjudication of Gramercy's motion for partial summary judgment should be denied in all respects.

Dated: New York, New York
July 27, 2007

s/ Sean F. O'Shea
Sean F. O'Shea (SO 5746)
Michael E. Petrella (MP 3794)
**O'SHEA PARTNERS LLP**
90 Park Avenue, 20th Floor
New York, New York 10016
Tel:  (212) 682-4426
Fax:  (212) 682-4437

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing has been served via ECF system upon:

Winston S. Evans
Evans, Jones & Reynolds, P.C
1810 One Nashville Place, Suite 1810
Nashville, TN 37219
(212)-421-2878
(212)-421-2878 (fax)

Thomas W. Shumate, IV
Evans, Jones & Reynolds, P.C
1810 One Nashville Place, Suite 1810
Nashville, TN 37219
(615)-259-4685
(615)-2556-4448 (fax)

this 27th day of July, 2007.

                                                                            s/ Michael E. Petrella
                                                                            Michael E. Petrella (MP 3794)
                                                                            **O'SHEA PARTNERS LLP**
                                                                            90 Park Avenue, 20th Floor
                                                                            New York, New York 10016
                                                                            Tel:   (212) 682-4426
                                                                            Fax:   (212) 682-4437