# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
GRAMERCY ADVISORS, LLC;

        :

        Plaintiff,

   v.        :

        **Civ. A. No. 07cv2809 (LMM)**

CARLETON A. JONES, III, and    :
JOHN A. JONES;

        :

        Defendants.
-------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY PLAINTIFF GRAMERCY ADVISORS, LLC FOR PARTIAL SUMMARY JUDGMENT

        Sean F. O'Shea (SO 5746)
        Michael E. Petrella (MP 3794)
        Robert R. Viducich (RV 7300)
        **O'SHEA PARTNERS LLP**
        90 Park Avenue, 20th Floor
        New York, New York 10016
        Tel: (212) 682-4426
        Fax: (212) 682-4437

        *Counsel for Plaintiff Gramercy Advisors, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 2

    A.    General Background. ................................................................................................. 2
    B.    Defendants' Express Agreement to Advance Expenses and Indemnify Gramercy. ........... 3
    C.    Defendants' Express Waiver of Reliance and Tax-Related Liability ............................... 4

LEGAL ARGUMENT ................................................................................................................... 6

    I.    PLAINTIFF IS ENTITLED TO A JUDGMENT DECLARING THAT THE PLAIN, UNAMBIGUOUS LANGUAGE OF EACH IMA REQUIRES DEFENDANTS TO ADVANCE EXPENSES TO GRAMERCY, AND ORDERING DEFENDANTS TO ADVANCE EXPENSES TO GRAMERCY. ................................................................... 6

    II.    DEFENDANTS' ALLEGATIONS OF MISCONDUCT BY GRAMERCY DO NOT NEGATE THEIR OBLIGATION TO ADVANCE EXPENSES. ........................................... 9

CONCLUSION ............................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Beacon Cons. Co. v. Matco Elec. Co., Inc.*, 521 F.2d 392 (2d Cir. 1975) .................................. 12

*Higgins v. SPX Corp.*, No. 1:05-CV-127, 2006 WL 1547302 (W.D. Mich. Jun. 5, 2006) .......... 10

*Homestore, Inc. v. Tafeen*, 888 A.2d 204 (Del. 2005) .................................................................. 13

*Kaung v. Cole National Corp.*, 884 A.2d 500 (Del. 2005) ............................................................ 14

*Lipson v. Supercuts, Inc.*, No. 15074-NCC, 1996 WL 560191 (Del. Ch. Sept 10, 1996) ............ 13

*Lucente v. International Business Machines Corp.*, 310 F.3d 243 (2d Cir. 2002) ......................... 9

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
418 F.3d 168 (2d Cir. 2005) ......................................................................................................... 10

*Miller v. U.S. Foodservice, Inc.*, 405 F. Supp. 2d 607 (D. Md. 2005) ......................................... 16

*Moore v. Williams*, 902 F. Supp. 957 (N.D. Iowa 1995) ........................................................ 11, 14

*Nycal Corp. v. Inoco PLC*, No. 98-7058,166 F.3d 1201, 1998 WL 870192
 (2d Cir. Dec. 9, 1998) ................................................................................................................. 10

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996) .............................................................. 9

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091
(2d Cir. 1993) .................................................................................................................................. 9

*Spickerman v. Central State, Southeast and Southwest Areas Health and Welfare Fund*,
801 F.2d 257 (7th Cir. 1986) ........................................................................................................ 14

*Tafeen v. Homestore, Inc.*, No. CIV A. 023-N, 2004 WL 556733
 (Del. Ch. Mar. 22, 2004) ....................................................................................................... 11, 16

*U.S. v. Stein*, 452 F. Supp. 2d 230 (S.D.N.Y. 2006) .............................................................. 14, 15

**Statutes**

Fed. R. Civ. P. 56. .......................................................................................................................... 1

28 U.S.C. § 2201 .......................................................................................................................... 12

28 U.S.C. § 2202 .................................................................................................................. 12

**PRELIMINARY STATEMENT**

Plaintiff Gramercy Advisors LLC ("Gramercy" or "Plaintiff") respectfully submits this Memorandum of Law in support of its motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for an Order granting partial summary judgment in its favor and against Carleton A. Jones, III and John A. Jones (each, a "Defendant," and collectively, "Defendants"). This case arises out of a lawsuit initially filed by the Defendants against BDO Seidman, LLP ("BDO") in U.S. District Court for the Middle District of Tennessee – captioned *John A. Jones and Carleton A. Jones, III v. BDO Seidman, LLP et al*, Case No. 3:06-CV-1115 (the "Tennessee Action") – that was recently amended to include Gramercy as a defendant. The Tennessee Action accuses Gramercy of advising the Joneses to invest in a purportedly illegal tax shelter.

Despite multiple written acknowledgments from the Defendants that they (1) did not rely on Gramercy for tax advice; (2) would not sue Gramercy for any adverse consequences resulting from their chosen tax strategy; (3) would advance expenses incurred by Gramercy in defense of any claim arising from its business relationship with them; and (4) would indemnify Gramercy against any and all claims arising from the business relationship between Gramercy and them, Defendants have staunchly refused to honor these contractual guarantees. In a feeble effort to shirk their obligation to advance Gramercy's expenses in connection with the Tennessee Action, the Defendants claim that they were fraudulently induced – with their independent personal attorneys and financial planner at their side – into signing multiple contracts containing disclaimers of reliance and waivers of liability in favor of Gramercy, as well as advancement and indemnification clauses.

As demonstrated below, there are no material issues of fact in dispute, and Plaintiff is entitled to judgment as a matter of law on its claim for advancement of fees and expenses against Defendants. Thus, pursuant to the express contracts between Plaintiff and each of the Defendants, Gramercy requests an Order requiring Defendants to advance fees and expenses in the initial amount of $500,000, with additional amounts to be advanced as necessary.

## STATEMENT OF FACTS

    A.    **General Background.**

Gramercy is an investment advisory firm and an investment manager of a number of private investment partnerships engaged in, *inter alia*, the business of managing foreign distressed assets for U.S. investors. The Defendants are wealthy, highly sophisticated business executives who, in 2002, reaped millions of dollars in capital gains from the sale of their businesses. (Plaintiff's Statement of Material Facts Not In Dispute Pursuant to Local Civ. R. 56.1 ("56.1 Stat."), ¶ 3.) The Defendants did not want to pay taxes on this profit, so they engaged the BDO accounting firm and the law firm of De Castro, West, Chodorow, Glickfield & Nass ("De Castro"), who advised them to undertake a series of transactions that would generate capital losses to offset their multi-million dollar gains. (*Id.*, ¶¶ 5, 9, 10.) Thus, pursuant to their tax strategy, in June 2002, Defendants entered into certain transactions that involved using distressed emerging-market debt and other securities with a high cost basis and a low market value to generate losses that could be used to reduce their federal tax liability. (*Id.*, ¶ 12.)

Gramercy is not an accountancy firm, nor is it a law firm. It is in no position to advise clients on tax or legal matters, and it does not do so. (*Id.*, ¶ 11.) Accordingly, Gramercy's role in the transactions referenced in Defendants' amended complaint was limited to the execution of the trades necessary to effectuate the tax strategy devised by BDO and De Castro. (*Id.*) Gramercy did not advise the Joneses on tax matters or tax strategy, expressed no opinion whatsoever on the legality of any tax strategy selected by either of them, and indeed had none of the expertise to do so. (*Id.*) Indeed, Defendants admit in their Tennessee Action that they were instructed by BDO not to "ask any questions of Gramercy concerning the tax implications of the transactions which BDO had recommended." (*Id.*, ¶ 7.)

Nevertheless, on or about March 27, 2007, Defendants added Gramercy as a defendant in the Tennessee Action, which had been previously filed against BDO. (*Id.*, ¶ 28.) That Action now alleges, *inter alia*, that Gramercy conspired with BDO in knowingly advising Defendants to pursue an unlawful tax shelter strategy. (*Id.*, ¶ 2.) The allegations in the Tennessee Action relate

2

exclusively to the tax advice provided to Defendants by BDO and De Castro and improperly attempt to saddle Gramercy with the consequences of a tax strategy that it neither devised nor recommended. (*Id*., ¶¶ 5-11.)

### B. Defendants' Express Agreement to Advance Expenses and Indemnify Gramercy.

Defendants long ago agreed to advance legal fees and expenses to Gramercy, and to indemnify and hold it harmless for all claims associated with the transactions at issue in the Tennessee Action. Specifically, each Defendant entered into an Investment Management Agreement (each, an "IMA," and collectively, the "IMAs"), dated as of June 14, 2002, in which they agreed, *inter alia*, to advance expenses incurred by Gramercy in any legal action related to the parties' business relationships and, further, that they would each indemnify and hold Gramercy harmless from and against all claims arising from their respective business relationships with Gramercy. (*Id*., ¶¶ 12-15.)

Paragraph 7(e) of each IMA defined the scope of Defendants' indemnity obligations to Gramercy:

> To the fullest extent permitted by law, [Defendant] shall indemnify and save harmless [Gramercy], its members and any of their respective affiliates and their respective partners, members, officers, directors, employees, shareholders and agents (including parties acting as agents for the execution of transactions) (the "<u>Indemnitees</u>"), from and against *any and all claims, liabilities, damages, losses, costs and expenses, including . . . legal or other costs and expenses of investigating or defending against any claim or alleged claim, of any nature whatsoever*, known or unknown, liquidated or unliquidated, that are incurred by [Gramercy] and *arise out of or in connection with the business of [Defendant], managing the Account, any investment made under or in connection with this Agreement, or the performance by [Gramercy] of the Investment Manager's responsibilities hereunder* . . . .

(*Id*., ¶ 14 (emphasis added).)

Most critically for purposes of the instant motion, the IMAs signed by Defendants required not only indemnification by Defendants, but also that Defendants *advance legal fees*

3

*and costs to Gramercy prior to final determination on the merits of any claim by Gramercy against Defendants for indemnification.* In Paragraph 7(f) of each IMA, Defendants agreed that any

> [e]xpenses incurred by [Gramercy] in defense or settlement of any claim that shall be subject to a right of indemnification hereunder, ***shall be advanced by [Defendant] prior to the final disposition thereof*** upon receipt of an undertaking by or on behalf of [Gramercy] to repay the amount advanced to the extent that it shall be determined ultimately that [Gramercy] is not entitled to be indemnified hereunder.

(*Id.*, ¶ 15 (emphasis added).)

### C. Defendants' Express Waiver of Reliance and Tax-Related Liability in Favor of Gramercy.

Defendants were clearly advised of Gramercy's limited role in the tax strategy devised and recommended by BDO and De Castro before they entered into a business relationship with Gramercy, and indeed were required to execute several documents acknowledging as much. (*Id.*, ¶¶ 7-20.) For example, each Defendant signed an explicit disclaimer in, *inter alia*, Paragraph 7(c) of his IMA confirming that he did not receive any tax advice from Gramercy:

> To the fullest extent permitted by law, [Gramercy] shall [not] be liable in any manner to the [Defendant] with ***respect to the effect of any U.S. federal, state, local or any other taxes of any nature whatsoever*** on the Account or the [Defendant] in connection with managing the Account or in connection with this Agreement or otherwise. The ***[Defendant] agrees that it has consulted its own tax advisor regarding the possible tax consequences of establishing the Account or entering into any investment made under or in connection with this Agreement***.

(*Id.*, ¶ 13 (emphasis added).)

In addition, each of the Defendants executed a "belief" letter to Gramercy stating the following:

> In connection with the execution of the Investment Management Agreement between [Defendant] and Gramercy Advisors, LLC (the "Investment Manager"), the undersigned hereby represents and warrants to you that the investments made pursuant to the Agreement and all transactions related thereto (collectively, the

4

> "Transactions") are believed to be in accordance with all the laws, rules and regulations applicable to the undersigned.
>
> The undersigned further acknowledges that: (a) it has ***consulted with its own financial, tax and legal advisors with respect to the Transactions and, in particular, the effect of the tax laws and regulations and the impact of any notices or announcements issued by the IRS***, (b) it has ***not relied on [Gramercy] for any financial, tax or legal advice with respect to the Transactions***, and (c) it ***shall not have any claim against [Gramercy] in the event that any tax liability, problem or issue should arise in connection with the Transactions*** other than as a direct result of any negligence of [Gramercy] in effecting the investments pursuant to the Agreement.

(*Id.*, ¶ 16 (emphasis added).)

Notably, Defendants (who are successful, sophisticated, multi-millionaires) can hardly claim to have been duped into signing the multitude of disclaimers, waivers, and releases referenced above. Indeed, it is undisputed that Defendants engaged their own personal, trusted tax attorneys, J. Leigh Griffith, Esq. and Richard A. Johnson, Esq. of Waller Lansden Dortch & Davis in Nashville, Tennessee ("Waller Lansden"), and financial planner, Steve Solys of Lincoln Financial, to advise them on their tax strategy and assist with the review of the documents referenced above. (*Id.*, ¶¶ 17-19, 6.) Thus, Defendants cannot even credibly claim to have entered into their tax strategy without the unbiased, independent advice of their personal, independent tax, financial and legal advisors.

On April 9, 2007, Gramercy filed the instant three-count lawsuit, alleging breach of contract and seeking a declaratory judgment and specific performance. Gramercy now moves for partial summary judgment against Defendants on its claim for breach of contract, and seeks a declaration from the Court that Defendants must advance Gramercy's fees and expenses in connection with the Tennessee Action.

5

**LEGAL ARGUMENT**

I.  **PLAINTIFF IS ENTITLED TO A JUDGMENT DECLARING THAT THE PLAIN, UNAMBIGUOUS LANGUAGE OF EACH IMA REQUIRES DEFENDANTS TO ADVANCE EXPENSES TO GRAMERCY, AND ORDERING DEFENDANTS TO ADVANCE EXPENSES TO GRAMERCY.**

Gramercy has already incurred hundreds of thousands of dollars in expenses defending itself in the Tennessee Action, which frivolously attempts to blame Gramercy – which never provided tax advice of any kind to Defendants – for Defendants' failed tax strategy, and in attempting to enforce its clear right to advancement of those expenses. It will easily incur hundreds of thousands of dollars more defending against that meritless action, assuming it is not dismissed on the pleadings. Pursuant to the advancement clause contained in Paragraph 7(f) of each IMA, Defendants must advance the fees and costs incurred by Gramercy in its defense.

The Second Circuit's standard for considering a summary judgment motion in a contract dispute is firmly established. In such cases, summary judgment is warranted "where the language of the contract is unambiguous." *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 257 (2d Cir. 2002). Under New York law, ascertaining whether a contract is "unambiguous" is a question of law for the court. *Id.* Further, no ambiguity exists when the contract language has a "definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993). In interpreting a contract, words and phrases in a contract are given their plain meaning. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996). Where the intent of the parties can be determined from the face of the contract, interpretation is a question of law and may be determined by summary judgment. *Id.*

In light of these well established principles, summary judgment is clearly appropriate here. The advancement language contained in Paragraph 7(f) of the Defendants' IMAs is clear, unambiguous, and broad; it requires Defendants to advance expenses subject to a claim of indemnification to Gramercy, contingent only upon Gramercy's undertaking to repay any money

6

advanced if it shall later be determined that Gramercy is not entitled to indemnification. (56.1 Stat., Ex. E, at 5-6.)

Gramercy has already undertaken to repay the amount advanced by Defendants to the extent that it is determined ultimately that Gramercy is not entitled to indemnification under the IMAs. (See 56.1 Stat., ¶ 30.) Furthermore, the expenses incurred by Gramercy in connection with the Tennessee Action fall squarely within the purview of each IMA's indemnification clause, which (in Paragraph 7(f)) broadly and unequivocally requires the Defendants to indemnify Gramercy from any and all costs and expenses of any kind that arise out of[1] or in connection with "the business of [Defendants], managing the Account, any investment made under or in connection with [the IMA], or the performance by [Gramercy] of [Gramercy's] responsibilities [under the IMA]." (56.1 Stat., Ex. E, at 5.) Gramercy is therefore entitled to advancement under the IMAs. *See*, *e.g.*, *Higgins v. SPX Corp.*, No. 1:05-CV-127, 2006 WL 1547302, \*\*2-3 (W.D. Mich. Jun. 5, 2006) (plaintiff held entitled to advancement of expense in defending threatened legal proceeding where only prerequisite to advancement was delivery of an undertaking).

Notably, and contrary to Defendants' allegations in the Tennessee Action (56.1 Stat., Ex. A, ¶ 188), their obligation under Paragraphs 7(e) and 7(f) of the IMAs to indemnify and advance expenses is not limited to actions brought against Gramercy by third-parties. (See 56.1 Stat., Ex. E, at 5-6.) Nothing in the contract provides or implies any such limitation, and thus the contract's broad and unqualified indemnification and advancement language applies to Gramercy's claims. For example, in *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168 (2d Cir. 2005), the court held that the following contractual indemnity language was broad enough to encompass actions between the parties to the contract, not just

---

[1] The courts of this jurisdiction have held time and time again that contractual language such as "arising out of" must be expansively construed to include all matters having any connection with the referenced subject. *See generally Nycal Corp. v. Inoco PLC*, No. 98-7058, 166 F.3d 1201, 1998 WL 870192, \*\*2-3 (2d Cir. Dec. 9, 1998) (canvassing New York contract law concerning interpretation of phrase "arising out of").

7

actions brought against the signatories by third-parties: "[indemnification] from any actions . . . of any kind or nature arising, growing out of, or otherwise connected with any activity under this Agreement." *Id*. at 178-179. The language of Paragraph 7(e) at issue here – "[indemnification] from and against . . . any and all claims . . . that . . . arise out of or in connection with" (*inter alia*) the business relationship between the parties (56.1 Stat., Ex. E, at 5) – is indistinguishable, if not broader. *See also Moore v. Williams*, 902 F. Supp. 957, 965-967 (N.D. Iowa 1995) (where contractual indemnification provision provided for interim fees of counsel "[a]s permitted by law, when and if a legal proceeding, government investigation or suit of any kind or nature is instituted against one or more fiduciaries of the Fund," court refused to read into text a restriction that indemnification should only apply to suits brought by third-parties, and granted defendant partial summary judgment for advancement of fees); *Tafeen v. Homestore, Inc*., No. CIV A. 023-N, 2004 WL 556733, **8-9 (Del. Ch. Mar. 22, 2004) (rejecting corporation's request "to 'apply logic, fairness, and public policy'" and essentially re-write unambiguous by-law provision in order to broaden an exception to advancement obligation owed to former officer named as defendant in various lawsuits and regulatory investigations).

In short, the indemnification clause in the IMAs covers any claim remotely related to the business relationship between Gramercy and Defendants. And even a cursory review of the Amended Complaint filed in the Tennessee Action demonstrates that the claims Defendants assert against Gramercy clearly relate to that relationship. (*See, e.g.,* 56.1 Stat., Ex. A, ¶¶ 17, 21-29, 34, 73, 104, 112, 113, 184-188.) Consequently, because the allegations of the Tennessee Action fall within the broad scope of each IMA's indemnification clause, the advancement clause is triggered and Defendants are plainly obligated to advance the fees and expenses incurred by Gramercy in the Tennessee Action. Defendants, however, have expressly repudiated their contractual obligation to advance fees and expenses. (*See* 56.1 Stat., Ex. A, ¶¶ 185-188.) Accordingly, each Defendant is in breach of his IMA.

In view of the foregoing, summary judgment is clearly warranted on Plaintiff's breach of contract claim. The damages flowing from that breach include the fees and expenses that

Defendants have already failed to advance in violation of their contractual obligation, as well as advancement of fees going forward (and Gramercy submits that $500,000 is a reasonable initial sum to be advanced). (See accompanying Declaration of Michael E. Petrella, dated June 15, 2007, ¶ 3.) Additionally, given Defendants' breach, summary judgment is also appropriate on Plaintiff's claim for a declaratory judgment confirming that Defendants are required to advance Gramercy's fees and expenses pending a final determination on the merits of Gramercy's claim for indemnification. *See* 28 U.S.C. § 2201. An award of past and future fees is justified pursuant to 28 U.S.C. § 2202, which authorizes a court to grant "[f]urther necessary or proper relief based on the declaratory judgment." *See* 28 U.S.C. § 2202. By ordering that Defendants advance Gramercy's prospective expenses, the Court will ensure the most expeditious and just conclusion to this controversy. *See Beacon Cons. Co. v. Matco Elec. Co., Inc.*, 521 F.2d 392, 400 (2d Cir. 1975) (analyzing 28 U.S.C. § 2202, court stated that: "In deciding whether to award damages or require the parties to engage in further litigation the determinative factor is which solution will result in the most expeditious and just conclusion of the controversy.").

## II. DEFENDANTS' ALLEGATIONS OF MISCONDUCT BY GRAMERCY DO NOT NEGATE THEIR OBLIGATION TO ADVANCE EXPENSES.

Defendants seek to avoid their clear contractual obligations by contending that their advancement obligations do not apply because they have alleged that Gramercy engaged in willful misconduct, committed gross negligence, acted in bad faith, and fraudulently induced them into signing the IMAs. (56.1 Stat., Ex. A, ¶ 188.) Those allegations are merely defenses to Gramercy's indemnification claim that cannot defeat Gramercy's right to advancement. Thus, Defendants' specious effort to shirk their contractual duties – duties they accepted in consultation with their personal, independent legal and financial advisors – must fail.

Critically, Gramercy is not yet seeking judgment on the issue of indemnification. Rather, this motion merely seeks *advancement* of the fees and expenses incurred in defense of the Tennessee Action pursuant to Paragraph 7(f) of each IMA. The terms "advancement" and "indemnification" have very different meanings. Advancement merely entitles a prospective

indemnitee to fees and expenses while the parties litigate whether *indemnification* is required, which issue is determined after the court has entered final judgment on the merits of any defense the prospective indemnitor might have to indemnification. If the indemnitor prevails, the indemnitee must return the advanced fees and expenses. If the indemnitee prevails, it keeps the advanced fees and expenses and collects any other sums to which it is entitled. As one court succinctly expressed the salient point:

> The right to advancement is not dependent on the right to indemnification. The right to indemnification requires success on the merits or otherwise in defending [indemnification] proceedings . . . . ***The limited and narrow focus of an advancement proceeding precludes litigation of the merits of entitlement to indemnification*** . . . . If is it is subsequently determined that the [party receiving advancement] is not entitled to indemnification, [it] will have to repay the funds advanced.

*Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212, 214 (Del. 2005) (internal quotations omitted) (emphasis added).

      Because of this critical distinction, courts have repeatedly rejected attempts by litigants to avoid clear *advancement* obligations by invoking so-called fraud, misconduct, and "bad faith" defenses to *indemnification* (or clauses that preclude indemnification in the event such conduct is ultimately proved). These decisions comport with the fundamental purposes of an advancement clause – which is to ensure that the prospective indemnitee does not suffer the burden of fees and expenses at the hands of the prospective indemnitor while the parties litigate the right to final indemnification. Indeed, that result is compelled by the plain language of Paragraph 7(f) of each IMA, which provides that any expenses subject to a claim of indemnity must be advanced "***prior to the final disposition thereof***." (56.1 Stat., Ex. E, at 5-6.) Thus, Paragraph 7(f) expressly contemplates that Defendants might assert any number of defenses to indemnification, but nevertheless makes clear that, until those defenses are finally adjudicated, they (not Gramercy) are to bear the costs of litigation.

      The foregoing analysis comports with extensive precedent on the issue of advancement

10

rights.  For example, in *Lipson v. Supercuts, Inc.*, No. 15074-NCC, 1996 WL 560191, *2 (Del. Ch. Sept 10, 1996), the Delaware Court of Chancery held that a corporation's arguments concerning an officer's entitlement to ultimate indemnification are not necessary to consideration of a partial summary judgment motion for the advancement of fees, noting that an application for advancement "must be summary in character, because if advance indemnification is to have any utility or meaning, a claimant's entitlement to it must be decided relatively promptly."

Likewise, in *Kaung v. Cole National Corp.*, 884 A.2d 500, 509-10 (Del. 2005), the court recognized that "[w]hile the rights to indemnification and advancement are correlative, they are still discrete and independent rights, with the latter having a much narrower scope."  For this reason, the court held that an advancement application was not the appropriate forum for "litigating indemnification and recoupment." *Id.* at 510.  Similarly, in *Moore*, *supra*, 902 F. Supp. at 966-967, the federal court rejected plaintiffs' arguments that advancement to a defendant accused of breaching a fiduciary duty owed to a pension plan was prohibited by law, reasoning that "although ERISA prohibits, as against public policy, any agreement that purports to relieve a fiduciary of responsibility or liability under ERISA for breach of fiduciary duty . . . that prohibition does not prevent advancement of expenses until liability is determined." *Id.*, at 966-967 (citing, *inter alia*, *Spickerman v. Central State, Southeast and Southwest Areas Health and Welfare Fund*, 801 F.2d 257 (7th Cir. 1986)).

Authorities from this District are in accord.  In the highly analogous case of *U.S. v. Stein*, 452 F. Supp. 2d 230 (S.D.N.Y. 2006), former officers of KPMG LLP accused of criminal conduct at the firm claimed that KPMG had an implied contractual obligation to advance their legal fees pending the outcome of their criminal trials.  Judge Kaplan began his analysis by pointing out the dispositive distinction between ***initial*** advancement of fees and ***final*** indemnification:

> [T]he critical point about advancement of defense costs -- as distinguished from, among other things, claims for indemnification after the fact -- is that its value "is that it is granted or denied while the underlying action is pending."  . . .  In consequence, the scope

11

>of an advancement proceeding "is limited to determining 'the issue of entitlement according to the corporation's advancement provisions.'" "Neither indemnification nor recoupment of sums previously advanced are appropriate for litigation" in such a proceeding. They necessarily are reserved for subsequent determination.

*Id*. at 271-272 (footnotes omitted).

Judge Kaplan proceeded to acknowledge the vast body of case law affirming that a party with a contractual obligation to advance legal fees cannot avoid that duty by alleging that the party entitled to advancement committed fraud or otherwise engaged in wrongdoing:

>Nowhere is this clearer than from the line of Delaware cases that distinguishes between advancement and indemnification and requires companies to advance the cost of defending claims that allege wrongs to the companies, even lawsuits brought by companies themselves against former officers and directors. The fundamental principle is that a company that undertakes to advance defense costs may not avoid that obligation by claiming that the litigation against its former employee for which the employee seeks advancement of defense costs accuses the employee of conduct that, if proved, would foreclose indemnification or establish a breach of the employment contract or of a fiduciary or other duty owed to the company.

*Id.* at 272.

Finally, Judge Kaplan buttressed his analysis by echoing the common sense reasoning set forth above, which noted that a right to advancement of legal fees is wholly illusory if the party entitled to advancement must fully litigate its adversary's various defenses to indemnification in order to enjoy that right:

>[T]he inherent nature of the right [to advancement] is to receive the funds as the defense costs are incurred. ***Postponement of determination whether such a right exists would render the right meaningless. By the time a decision were reached, the underlying proceeding would be over -- the occasion for advancing defense costs would have passed and its purpose would have been defeated.*** In consequence, determination of a claim for advancement cannot wait until the underlying case is over, when an employee's right to indemnification may be determined.

*Id*. at 272-273 (emphasis added). Notably, while the claim for advancement in *Stein* was based

12

on an alleged implied contract, Plaintiff's right to advancement here is even stronger, as it is based on a clear and express, bargained-for contractual provision that Defendants admittedly executed. (See 56.1 Stat., Ex. E, at 5-6.)

The same common sense analysis applies with equal force here. Unless the Court orders advancement summarily without awaiting final judgment on Defendants' purported defenses, the advancement clause will be rendered a vestigial nullity subsumed within the indemnification clause. *See Miller v. U.S. Foodservice, Inc.*, 405 F. Supp. 2d 607, 620 (D. Md. 2005) ("If a [party] can circumvent its [advancement] obligation . . . simply by filing a counterclaim against the officer, then advance indemnification provisions will be rendered virtually null whenever a [party] wishes to avoid that obligation."); *see also Tafeen, supra,* 2005 WL 1314782, \*\*8-9 (Del. Ch. May 25, 2005) (rejecting corporation's request to stay, pending appeal, ruling requiring advancement: "Clearly, to be of any value to the executive or director, advancement must be made promptly, otherwise its benefit is forever lost . . . .").

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court grant its motion for partial summary judgment, declaring that Defendants are in breach of Paragraph 7(f) of the IMAs and are required to advance fees and expenses to Gramercy in connection with the Tennessee Action, and requests an Order requiring Defendants to advance fees and expenses in the amount of $500,000, and that the Court retain jurisdiction for purposes of granting additional advancements in the future as needed.

Dated:     New York, New York
           June 15, 2007

/s/ Sean F. O'Shea

Sean F. O'Shea (SO 5746)
Michael E. Petrella (MP 3794)
Robert R. Viducich (RV 7300)
**O'SHEA PARTNERS LLP**
90 Park Avenue, 20th Floor
New York, New York 10016
Tel:   (212) 682-4426
Fax:   (212) 682-4437