# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

John A. Jones and Carleton A. Jones, III,

        Plaintiffs,

    v.

BDO Seidman, LLP and Gramercy Advisors,
LLC,

        Defendants.

CASE NO.  3:06-CV-1115

Judge Echols

Magistrate Judge Brown

## MEMORANDUM OF LAW IN SUPPORT OF BDO SEIDMAN LLP'S
## MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION

      BDO Seidman, LLP ("BDO") submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to compel arbitration, pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act.

## INTRODUCTION

      Fundamental issues of law compel this Court to dismiss Plaintiffs' Amended Complaint (the "Complaint").  *First*, Tennessee's one-year statute of limitations bars Plaintiffs' claims, all of which arise from Consulting Agreements executed in 2002, *more than four years* prior to the date on which Plaintiffs filed their original Complaint, November 20, 2006.  *Second*, even if not time-barred, five of Plaintiffs' seven skeletally-pled counts fail to state a claim upon which relief can be granted.  Many of these pleading defects arise from irremediable judicial admissions, warranting dismissal with prejudice.  *Third*, in the event that BDO's Motion to dismiss is denied, the Consulting Agreements between Plaintiffs and BDO, which Plaintiffs attached to their Complaint, include arbitration provisions that have been consistently upheld and applied by

courts throughout the country to dismiss or stay similar cases against BDO.

## ARGUMENT

**I.    THIS COURT SHOULD DISMISS ALL OF PLAINTIFFS' CLAIMS AGAINST BDO AS BARRED BY THE ONE-YEAR STATUTE OF LIMITATIONS APPLICABLE TO ALL CLAIMS SOUNDING IN ACCOUNTING MALPRACTICE.**

Plaintiffs' Complaint clearly and unequivocally demonstrates that each and every asserted claim is time-barred.  A Rule 12(b)(6) motion tests the legal sufficiency of the Complaint.  Rippy v. Hattaway, 270 F.3d 416, 419 (6th Cir. 2001).  In evaluating BDO's Motion, this Court must accept Plaintiffs' well-pled allegations as true and draw reasonable factual inferences in their favor, but it need not accept Plaintiffs' *legal* conclusions as true or draw *unwarranted* factual inferences in their favor.  Brilliance Audio, Inc. v. Haights Cross Communications, Inc., 474 F.3d 365, 369 (6th Cir. 2007).  In addition to the Complaint itself and the documents attached thereto, this Court may consider additional materials if they are either public record or centrally referenced in the Complaint.  New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003) (public record); Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997) (referenced in the complaint).  Further, where, as here, it is apparent from the face of the Complaint that Plaintiffs' claims are time-barred, dismissal pursuant to Rule 12(b)(6) is warranted.  Hoover v. Langston Equipment Assocs., Inc., 958 F.2d 742, 744-45 (6th Cir. 1992).

Tennessee has a one-year statute of limitations for claims against public accountants:

(a) The following actions shall be commenced within one (1) year after the cause of action accrued:

      *   *   *

(2) Actions and suits against attorneys or licensed public accountants or certified public accountants for malpractice, whether the actions are

grounded or based in contract or tort;

\*      \*      \*

Tenn. Code Ann. § 28-3-104 (2006).  By its terms, the statute of limitations governs all claims of every nature against public accountants.  Tenn. Code Ann. § 28-3-104(a)(2); see Hanson v. Rudnick & Wolfe, No. 92-5480, 1993 U.S. App. LEXIS 7851, at \*17 (6th Cir. Apr. 5, 1993)[1] (applying one-year statute of limitations to professional negligence and negligent misrepresentation claims); Swett v. Binkley, 104 S.W.3d 64, 67 (Tenn. Ct. App. 2002) (applying one-year statute of limitations to breach of contract claim).

All of Plaintiffs' claims against BDO accrued well in advance of November 20, 2005, one year prior to the date Plaintiffs filed their original Complaint.  Pursuant to Tennessee's discovery rule, a cause of action for professional malpractice accrues "when the plaintiff[s] know[] or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant."  John Kohl & Co. v. Dearborn & Ewing, 977 S.W.2d 528, 532 (Tenn. 1998) (legal malpractice).  In other words, the statute of limitations begins running when a plaintiff has: (1) an injury; and (2) actual or constructive knowledge that the injury was caused by the defendant's negligent conduct.  Raitz v. Sparks, No. 95-6413, 1997 U.S. App. LEXIS 233, at \*6 (6th Cir. Jan. 2, 1997) (affirming J. Echols' grant of summary judgment in defendant's favor on the grounds that the plaintiff's claims were time-barred).[2]  Because, here, Plaintiffs allegedly both suffered an injury and constructively knew that BDO caused that injury before November 20, 2005, Plaintiffs' claims

---

[1] In accord with Local Rule 7.01(e)(5), this and all other unreported opinions cited herein are attached as Collective Exhibit A to this Memorandum.

[2] Although the court in Raitz applied the old three-year statute of limitation, it acknowledged that the current statute of limitation for accounting malpractice actions is one-year.  Raitz, 1997 U.S. App. LEXIS 233 at \*5 n. 2 ("In 1990, actions for accountant malpractice were added to *T.C.A. § 28-3-104*, which provides a one-year limitation period. The parties agree that the three-year statute applies in the present case.").

against BDO are time-barred.

### A. Plaintiffs Began Incurring Their Alleged Injuries Well Before November 20, 2005.

The statute of limitations for malpractice claims commences as soon as a plaintiff suffers any legally cognizable injury, *not* when the plaintiff suffers the full extent of injuries resulting from a professional's negligence.  Tennessee WSMP, Inc. v. Capps, No. 03A01-9407-CV-00241, 1995 Tenn. App. LEXIS 133, at *9 (Tenn. Ct. App. Mar. 2, 1995) (holding, in a legal malpractice action, that the plaintiff's initial discovery of cloud on title, rather than subsequent collapse of real estate deal, triggered the statute of limitations).   The injury need not be "irremediable."  Carvell v. Bottoms, 900 S.W.2d 23, 29-30 (Tenn. 1995).   Courts applying Tennessee law have specifically held that the statute of limitations for accounting malpractice is *not* tolled until the IRS issues a final tax assessment.  Raitz, 1997 U.S. App. LEXIS 233 at *7 (citing Carvell, 900 S.W.2d at 29) (poor investment performance, receipt of IRS deficiency and disallowance notices, and retention of counsel for IRS proceedings are all injuries that trigger the running of the statute of limitations); John Kohl & Co., 977 S.W.2d at 533 (holding that expense involved in responding to IRS request for information constitutes injury).

Here, Plaintiffs expressly allege that they suffered at least three distinct injuries prior to November 20, 2005.  First, Plaintiffs claim that they paid "large fees for worthless products and services" to BDO on June 19, 2002 and to De Castro West in May and June of 2003. (Complaint, ¶¶ 109, 111, 152.)  Plaintiffs themselves assert that these fees constitute an injury by alleging them as damages in their civil conspiracy claim.  (Complaint, ¶ 157.)  Further, under Tennessee law, such fees constitute an injury for statute of limitations purposes.  John Kohl & Co., 977 S.W.2d at 534 (initial fees paid to attorney recoverable in legal malpractice action).

Second, Plaintiffs invested over $2 million in the challenged transactions on September

11, 2002 (Complaint, ¶ 110), and they now claim that this, too, constituted an injury. (Complaint, ¶ 155) (alleging that BDO and Gramercy's conduct was the "*direct and immediate cause* of [their] misinformed decision *to invest money* in an illegal and abusive tax shelter") (emphasis added).

Third, Plaintiffs came under IRS scrutiny in the months preceding November 20, 2005, purportedly suffering damages in the form of the expense involved in responding to IRS inquiries.  (See Complaint, ¶¶ 135-39.)  Despite Plaintiffs' efforts to blur the precise date on which the IRS began to examine Plaintiffs' 2002 tax returns by characterizing it as "the latter part of 2005," it is beyond dispute that the IRS notified Plaintiffs of this investigation on or about August 8, 2005 and September 26, 2005 respectively.  (Complaint, ¶ 135.)  On these dates, the IRS sent John A. Jones and Carleton A. Jones, III Notices of Examination.  (Attached as Exs. B & C.)[3]  "[T]he fact that the IRS had not taken any formal action against the [Plaintiffs] as of that date, such as filing suit against them or issuing a deficiency notice, is largely irrelevant, because … it was unnecessary for the plaintiffs to have suffered all the injurious effects or consequences of the defendant's negligence in order for the statute to begin running."  John Kohl & Co., 977 S.W.2d at 533.  That the Plaintiffs "did not know the exact amount of their tax deficiency is" similarly "of no consequence."  Raitz, 1997 U.S. App. LEXIS 233 at *7.

---

[3] This Court can evaluate these Notices on a Rule 12(b)(6) motion because they were originally referenced by Plaintiffs in the Complaint at Paragraph 135. Johnson v. Hayden, Nos. 01-3661, 02-3585, 67 Fed. Appx. 319, 323 n. 4 (6th Cir. June 6, 2003) ("exhibits attached to … a motion to dismiss may be considered when explicitly referenced in the plaintiff's complaint"); Allied Mech. Servs., Inc. v. Local 337, No. 99-1494, 2000 U.S. App. LEXIS 15723, at *7 (6th Cir. June 26, 2000) ("consideration of materials presented in connection with motion to dismiss did not convert the motion to one for summary judgment because the materials reiterated the contents of the complaint, were referred to in the complaint, *or* were central to the claims asserted") (emphasis added); Armengau v. Cline, No. 99-4544, 7 Fed. Appx. 336, 344 (6th Cir. Mar. 1, 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). … [I]f extrinsic materials merely fill in the contours and details of a complaint, they add nothing new and may be considered without converting the motion to one for summary judgment.") (internal citations omitted).

**B. Plaintiffs Had Constructive Knowledge That BDO's Allegedly Negligent Conduct Caused The Foregoing Asserted Injuries Prior To November 20, 2005.**

The statute of limitations commences upon *either* the plaintiff's actual *or* constructive knowledge of the defendant's negligent conduct. Carvell, 900 S.W.2d at 29. A plaintiff is deemed to have constructive knowledge when he becomes aware of facts "sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." Raitz, at *6 (quoting Roe v. Jefferson, 875 S.W.2d 653, 657 (Tenn. 1994)). In other words, the statute of limitations commences as soon as a plaintiff is aware of the mere possibility of malpractice:

> The plaintiff need only possess a low level of awareness; he need not fully learn of the alleged wrongdoing. Knowledge of *all* facts is not required to set off the prescriptive clock. Thus, the clock begins to tick when a plaintiff senses 'storm warnings,' not when he hears thunder and sees lightning.

Harner v. Prudential-Bache Securities, Inc., Nos. 92-1353, 92-1910, 1994 U.S. App. LEXIS 25266, at **13-14 (6th Cir. Sept. 9, 1994) (quoting Jensen v. Shellings, 636 F. Supp. 1305, 1309 (E.D. La. 1986)) (emphasis in original). At that point, the plaintiff must "exercise reasonable care and diligence" to uncover his claims. John Kohl & Co., 977 S.W.2d at 532. Plaintiffs, in this case, acquired constructive knowledge of their purported claims against BDO well in advance of November 20, 2005.

**1. Based on IRS Notices 1999-59 and 2000-44, Plaintiffs had constructive knowledge of the alleged impropriety of BDO's advice regarding the potential tax ramifications of their transactions.**

The IRS issued Notices 1999-59 and 2000-44 on December 17, 1999 and August 11, 2000, respectively. (Complaint, ¶¶ 55-56.) According to Plaintiffs' Complaint, Notice 1999-59 sent a:

> … *clear message* …that purported losses arising from transactions wholly lacking

in "economic substance" (*e.g.*, tax strategies such as those recommended to and implemented for Messrs. Jones by BDO and Gramercy) were not allowable for federal income tax purposes.

(Complaint, ¶ 55) (emphasis added).  Further, Plaintiffs assert that Notice 2000-44 "*clearly and unequivocally* informed accountants and tax attorneys across the United States that it considered to be illegal … the precise tax-advantaged transaction which BDO and Gramercy would recommend to Messrs. Jones and implement for them" (Complaint, ¶¶ 56-57) (emphasis added), and that Notice 2000-44 sent an "*unambiguous message* from the IRS … that purported losses arising from the tax strategy … recommended to Messrs. Jones … was not lawful for federal income tax purposes."  (Complaint, ¶ 58.)[4]

The IRS published Notices 1999-59 and 2000-44 in the Internal Revenue Bulletin, the IRS' primary mechanism for communicating its position on tax-related issues to the public:

> The Internal Revenue Bulletin is the authoritative instrument of the Commissioner of Internal Revenue for the publication of official rulings and procedures of the Internal Revenue Service … .  The Service also announces in the Bulletin … items considered to be of general interest.  … The purpose of publishing revenue rulings and revenue procedures in the Internal Revenue Bulletin is to promote correct and uniform application of the tax laws … and to assist taxpayers in attaining maximum voluntary compliance by informing Service personnel and the public of National Office interpretations of the internal revenue laws, related statutes, treaties, regulations, and statements of Service procedures affecting the rights and duties of taxpayers.  Therefore, issues and answers involving substantive tax law under the jurisdiction of the Internal Revenue Service will be published in the Internal Revenue Bulletin … [and] [p]rocedures affecting taxpayers' rights or duties that relate to matters under the jurisdiction of the Service will be published in the Bulletin.

26 C.F.R. § 601.601(d)(2)(b).  In this respect, the Bulletin is akin to the Federal Register, which charges the public with notice of governmental rulemaking activities for purposes of statutes of limitations.  See, e.g., Prudential Ins. Co. v. United States Gypsum Co., 146 F. Supp. 2d 643, 670

---

[4] In quoting Plaintiffs' characterization of IRS Notices 1999-59 and 2000-44, BDO of course does not intend to admit or imply that it agrees with Plaintiff's characterization of the IRS Notices or that such characterization is accurate.

(D.N.J. 2001), aff'd, 359 F.3d 226 (3d Cir. 2004) (Federal Register publication of EPA regulations banning asbestos in construction put plaintiff on inquiry notice of potential injury from asbestos and thus commenced the statute of limitations period); Shiny Rock Mining Corp. v. United States, 906 F.2d 1362, 1364 (9th Cir. 1990) ("Actual knowledge of government action ... is not required for a statutory period to commence.  Publication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance.").  Accordingly, the public is deemed to have constructive knowledge of an IRS Notice upon its issuance.  See Redhouse v. Commissioner of Internal Revenue, 728 F.2d 1249, 1250 (9th Cir. 1984) (taxpayer had notice of a proposed amendment to the treasury regulations by virtue of, inter alia, the IRS' issuance of a news release); Wendland v. Commissioner of Internal Revenue, 739 F.2d 580, 581 (11th Cir. 1984) (same).

If, as Plaintiffs claim, the IRS Notices sent a "clear," "unequivocal," and "unambiguous" message regarding the alleged impropriety of Plaintiffs' "precise tax-advantaged transactions," then Plaintiffs too must be regarded as having constructive knowledge of this message from the time they entered into Consulting Agreements with BDO (May 14 and June 5, 2002, respectively).  See Harner, 1994 U.S. App. LEXIS 25266 at **14-17 ("plaintiffs were on inquiry notice when they bought their partnership interests because the prospectus warned investors of the risks in the depressed aircraft market") (emphasis added).

> **2. Plaintiffs additionally had constructive knowledge of BDO's purported misconduct as a result of the investigation conducted by the United States Senate and its resulting reports issued on November 17, 2003, Summer 2004, and February 8, 2005.**

According to the allegations in Plaintiffs' own Complaint, which BDO must accept as true for purposes of this Motion, the United States Senate investigated the "tax shelter" industry and issued three separate reports prior to November 20, 2005.  (Complaint, ¶ 32.)  Specifically,

on November 17, 2003, the Senate released *U.S. Tax Shelter Industry: the Role of Accountants, Lawyers, and Financial Professionals*.  (Id.)  Then in the Summer of 2004, the Senate issued a four volume report on its investigation.  And on February 8, 2005, the Senate issued *The Role of Professional Firms in the U.S. Tax Shelter Industry*.  (Id.)  Plaintiffs claim that as a result of these three reports, "[t]he common scheme and conspiracy of Gramercy and BDO to market, sell and promote unlawful tax shelters *came to light* … ."  (Id.) (emphasis added).

A congressional investigation concerning the subject matter of a complaint puts a plaintiff on inquiry notice, obligates the plaintiff to investigate, and triggers the statute of limitations.  See Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 394 (6th Cir. 1975) ("the congressional proceedings should have aroused Dayco's suspicions and its failure to investigate further at that time was not the exercise of due diligence"); Mitchell v. United States, 10 Cl. Ct. 63, 68-71 (Ct. Cl. 1986) (holding that claim against the government for mismanagement of resources was time-barred because congressional hearings and resulting reports on BIA under-pricing of Native American timber sales put the plaintiffs on notice and triggered the statute of limitations well before the suit was filed); Hurwitz v. United States, 884 F.2d 684, 686 (2d Cir. 1989) (district court held that congressional investigation of covert domestic CIA operations and resulting Rockefeller Report gave rise to constructive knowledge and triggered statute of limitations).  Accordingly, the Senate investigation, which Plaintiffs themselves claim brought "to light" BDO's purported transgressions, put Plaintiffs on notice of their claims well in advance of November 20, 2005.

**3. Plaintiffs also had constructive knowledge of BDO's alleged wrongdoing as a result of widespread news coverage by 2003 of IRS scrutiny of transactions allegedly similar to those entered into by Plaintiffs.**

By 2003, most major Tennessee newspapers covered the IRS' efforts to investigate individual taxpayers who engaged in transactions Plaintiffs allege are similar to the ones they entered into.  In a front-page July 12, 2002 article, less than two months after Plaintiffs had entered into consulting agreements with BDO, *The Tennessean* reported that the IRS was challenging "hundreds of wealthy individuals" who invested in "basis shifting tax shelters," including fellow Tennessee newspaper owner Irby Simpkins.  Staff, Wide IRS Review Includes Frist III, The Tennessean, July 12, 2002, at 1A (attached as Ex. D).[5]  On July 10, 2002, *The Commercial Appeal* reported that the Justice Department was engaged in a "crackdown on arrangements done solely to escape taxes."  Staff, On the Money, The Commercial Appeal, July 10, 2002, at C2 (attached as Ex. E).  On July 13, 2002 and then on February 9, 2003, the *Chattanooga Times Free Press* reported in separate articles that "[t]he Justice Department … sued … BDO Seidman LLP … for information about the tax shelters they have promoted" and that "unhappy taxpayers are seeking redress against the accounting firms that sold them the tax shelters and against the law firms that wrote 'comfort letters' assuring them that the strategies had a better-than-even chance of surviving an IRS challenge."  Mark Sherman, IRS Spills Big Names in Tax Shelters, Chattanooga Times Free Press, July 13, 2002, at C1; Staff, Shelters Turn into Millstones, Chattanooga Times Free Press, Feb. 9, 2003, at G1 (attached as Exs. F & G respectively).

In addition to the broad coverage by Tennessee newspapers of IRS efforts to examine

---

[5] BDO requests that this Court take judicial notice of this and all other newspaper articles cited herein as public record documents.  Azzolini v. Corts Trust II for Provident Fin. Trust I (In re Unumprovident Corp. Sec. Litig.), 396 F. Supp. 2d 858, 876-77 (E.D. Tenn. 2005) (holding that courts can and have taken judicial notice of newspaper

alleged tax shelters by 2003, there was national media attention on the alleged role of accounting firms in what the IRS characterized as unlawful tax shelters.  For example, on October 16, 2003, *The Wall Street Journal*, making specific reference to BDO, reported about the "IRS crackdown on tax shelters" and that "some tax-shelter clients have begun to turn on their professional advisers" by filing lawsuits against them.  John D. McKinnon and Cassell Bryan-Low, U.S. Government Sues Sidley Austin on Tax Shelters, The Wall Street Journal, Oct. 16, 2003, at C11 (attached as Ex. H).  On July 10, 2002, *The New York Times*, also referencing BDO, detailed one taxpayer's lawsuit against his former accounting firm.  David C. Johnston, U.S. Accuses 2 Audit Firms of Assisting Tax Violations, The New York Times, July 10, 2002, at C1 (attached as Ex. I).

News coverage of facts or events suggesting the existence of a claim gives rise to constructive knowledge on the part of the plaintiffs and triggers the statute of limitations. Hughes v. Vanderbilt University, 215 F.3d 543, 548 (6th Cir. 2000) (holding that newspaper coverage "was sufficient to charge [the plaintiff] with constructive knowledge of the events underlying her cause of action"); Ball v. Union Carbide Corp., 212 F.R.D. 380, 394 (E.D. Tenn. 2002) (holding that the plaintiffs' claims were time-barred based on constructive knowledge resulting from newspaper articles).  This Court need not consider whether Plaintiffs were actually aware of the news coverage, because it must determine the existence of constructive knowledge on an objective basis.  Hughes, 215 F.3d at 548 (rejecting the plaintiff's argument that she had not read any of the newspaper articles establishing her constructive knowledge); Ball, 212 F.R.D. at 394 (denying discovery on the plaintiffs' actual knowledge of newspaper articles establishing constructive knowledge because the applicable test is objective); accord Benak v. Alliance Cap. Mgmt. LP, 435 F.3d 396, 401 n. 15 (3d Cir. 2006) ("The inquiry notice

---

articles in support of a Rule 12(b)(6) motion).

analysis is an objective one.  Whether appellants read the articles or were aware of them is immaterial.  They serve only to indicate what was in the public realm at the time.").

Based on the extensive coverage, in both Tennessee and national newspapers, of the IRS investigation of so-called tax shelters, individual lawsuits by clients against accounting firms, and the media's specific reference to BDO, Plaintiffs, particularly as former owners of several newspapers, should have known of BDO's alleged wrongdoing by as early as 2003.

>    **4.    Finally, Plaintiffs had constructive knowledge of BDO's purported malfeasance, at the very latest, on August 8 and September 26, 2005, respectively, when they received Notices of Examination from the IRS.**

Plaintiffs admit in their Complaint that the IRS examined their 2002 tax returns "during the latter part of 2005."  (Complaint, ¶ 135.)  As explained above, the IRS sent Notices of Examination to Plaintiff John A. Jones on or about August 8, 2005 and Plaintiff Carleton A. Jones, III on or about September 26, 2005.  (Exs. B & C.)[6]  The receipt of notices from the IRS gives rise to constructive knowledge and requires the recipients to investigate their potential claims.  See Kohl, 977 S.W.2d at 533 ("[An attorney's] letter establishes that the plaintiffs had notice of a problem … *especially since the letter was sent on the heels of the letter to the [plaintiffs] by the IRS*.") (emphasis added); Raitz, 1997 U.S. App. LEXIS at *4; Harold v. United States, No. 1:04-CV-01281, 2005 U.S. Dist. LEXIS 41757, at *14 (N.D. Ohio July 21, 2005) (holding that receipt of IRS notices triggers duty to investigate).  An IRS Notice of Examination, by itself, is sufficient to put the plaintiffs on inquiry notice of an accounting malpractice claim. See United States v. Church Universal & Triumphant, No. CV 91-142, 1991 U.S. Dist. LEXIS 17455, at *16 (D. Mont. Nov. 19, 1991) ("From the early stages of the investigation, indeed from the original Notice of Examination, [the defendant] was aware that it had exposure relating to tax

---

[6] The court can consider these Notices, on a 12(b)(6) motion, for purposes of determining whether Plaintiffs had

exemption.")  Accordingly, at the very latest, Plaintiffs were alerted to BDO's allegedly tortious conduct approximately fourteen and fifteen months prior to filing this action against BDO, and all of their claims against BDO are, therefore, time-barred.

### C. Plaintiffs Do Not Adequately Allege Fraudulent Concealment And Therefore Cannot Toll The Statute Of Limitations On That Basis.

If, as here, the face of the Complaint affirmatively indicates that Plaintiffs' claims are time-barred, Plaintiffs must plead affirmative matter tolling the statute of limitations.  Hoover, 958 F.2d at 745.  Here, Plaintiffs have attempted but failed to adequately plead fraudulent concealment, which requires allegations that: (1) BDO wrongfully concealed its actions; (2) Plaintiffs failed to discover the operative facts of their claims within the limitations period; and (3) Plaintiffs exercised due diligence until discovery of those facts.  Id. at 744 n. 1; Dayco Corp., 523 F.2d at 394.

### 1. Plaintiffs have not adequately alleged that BDO affirmatively concealed Plaintiffs' causes of action or failed to disclose any operative facts regarding Plaintiffs' transactions.

Only conduct "affirmatively directed at deflecting litigation" can support a claim of fraudulent concealment.  Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211, 218-19 (4th Cir. 1987).  This conduct can be in the form of material misstatements, if the defendant has an arms-length relationship with the plaintiffs, or by failure to disclose material facts, if the defendant has a fiduciary relationship with the plaintiffs.  Soldano v. Owens-Corning Fiberglass Corp., 696 S.W.2d 887, 889 (Tenn. 1985).  In either case, Plaintiffs have failed to state a claim for fraudulent concealment here.

---

constructive knowledge of their potential claims against BDO.  See footnote 2, supra.

### a. Plaintiffs have not alleged fraudulent concealment by material misstatement.

A defendant conceals a cause of action by misstatement only when it "denies the plaintiff access to the relevant knowledge." Harner, 1994 U.S. App. LEXIS 25266 at *19. For example, where a lawyer, who is a trusted fiduciary, fails to disclose an adverse order resulting from his malpractice, he has fraudulently concealed a plaintiff's legal malpractice claim; but if the lawyer simply discredits the order, he has not engaged in fraudulent concealment. Cherry v. Williams, 36 S.W.3d 78, 86 (Tenn. Ct. App. 2000) ("A lawyer's rosy characterization of an order adverse to the client does not amount to fraudulent concealment of malpractice. As long as the client is aware of the fact that the court has ruled against his or her rights or interests, arguably due to the lawyer's mishandling of the case, then it matters not how counsel may try to downplay or spin the bad result.") (internal citations omitted). In Cherry, the court rejected the plaintiff's allegations of fraudulent concealment on the well-established principle that a misstatement of law can not support such a claim. 36 S.W.3d at 86.

In this case, BDO's alleged false statements cannot support a claim of fraudulent concealment. (Complaint, ¶¶ 74, 131, 131 n. 5.) First, they are non-actionable statements of law. Cherry, 36 S.W.3d at 86. Second, they did not deny Plaintiffs access to information. Tellingly, Plaintiffs do not allege that BDO denied the existence of the IRS bulletins, the Senate investigation and reports, the various newspaper articles, or the IRS Notices of Examination, detailed in Section I.B. supra, all of which purportedly laid bare BDO's malfeasance. Even if BDO "downplay[ed]" this information, characterized it in a "rosy" fashion, or even disputed it by arguing that the IRS "got the law wrong," under Cherry, such statements do not constitute fraud.

### b. Plaintiffs do not allege fraudulent concealment by omission.

In their only hint of an allegation that BDO concealed its alleged misconduct by omission, Plaintiffs state that BDO "knew that the tax-advantaged strategy being marketed to Messrs. Jones was *unlawful*, and intentionally concealed *this very material fact*." (Complaint, ¶ 73) (emphasis added). But the *legality* of Plaintiffs' transactions is clearly a matter of law, not fact, and accordingly, cannot support a claim of fraudulent concealment. See American Electric Power v. United States, 326 F.3d 737, 742 (6th Cir. 2003) ("the general characterization of a transaction for tax purposes is a question of law") (internal citations omitted).[7]  Moreover, Plaintiffs' claim of fraudulent concealment must rest on something more than BDO's failure to admit to its own purportedly illegal conduct. Pocahontas Supreme Coal Co., 828 F.2d at 218-19 ("To permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct upon this sort of timid inquiry would effectively nullify the statute of limitations.").

### 2. Plaintiffs cannot allege that they failed to discover the operative facts within the statute of limitations.

Plaintiffs' constructive knowledge of BDO's alleged wrongdoing by virtue of IRS bulletins, the Senate investigation, extensive news media coverage, and receipt of IRS Notices of Examination, as detailed fully in Section I.B. supra, defeats any claim of fraudulent concealment, even if BDO and Plaintiffs shared a fiduciary relationship. See Harner, 1994 U.S. App. LEXIS 25266 at *20 ("[B]ecause plaintiffs were on inquiry notice of the alleged fraud at the time they

---

[7] This Court need not accept as true Plaintiffs' allegation to the contrary because whether a misrepresentation is one of fact or law is itself a question of law. See Brilliance Audio, Inc., 474 F.3d at 369 (allegations of law not accepted as true on Rule 12(b)(6) motion); Cozen O'Connor, P.C. v. Asperger Caraher LLC, No. 05 C 5264, 2006 U.S. Dist. LEXIS 81112, at *13 (N.D. Ill. Nov. 6, 2006) ("Whether an asserted misrepresentation is one of fact is itself a question of law.")  Even if it could be construed as a mixed question of law and fact, the Sixth Circuit treats such mixed questions as questions of law. Prokos v. Athens, No. 02-4291, 118 Fed. Appx. 921, 925 (6th Cir. Dec. 21, 2004).

received the Prospectus, they cannot satisfy the second element of fraudulent concealment – failure to discover the operative facts."); Electric Power Bd. v. Monsanto Co., 879 F.2d 1368, 1377-78 (6th Cir. 1989) (constructive knowledge negates "failure to discover" element of fraudulent concealment); Winterhalter v. Watson Wyatt & Co., No. 02-1795, 87 Fed. Appx. 513, 520 (6th Cir. Jan. 23, 2004) (fiduciary relationship immaterial to this element).

### 3. Plaintiffs concede they failed to conduct any reasonable due diligence.

Plaintiffs do not describe with particularity or otherwise any due diligence efforts to discover their purported claims against BDO. Plaintiffs cannot state a claim for fraudulent concealment without such due diligence. See Dayco, 523 F.2d at 394 ("Dayco's mere allegation of due diligence without asserting what steps were taken is insufficient"). A fiduciary relationship between the parties does not excuse the obligation to undertake a reasonable investigation. Winterhalter, 87 Fed. Appx. at 520; Dean Witter Reynolds, Inc. v. McCoy, 853 F. Supp. 1023, 1037-38 (E.D. Tenn. 1994), aff'd No. 94-5779, 1995 U.S. Dist. LEXIS 37080, at **4-7 (6th Cir. Nov. 27, 1995). In Dayco, the court rejected the plaintiff's fraudulent concealment claim because it did not conduct any due diligence despite congressional hearings against the defendant regarding the very same conduct complained of in the complaint. 523 F.2d at 394.

Similarly, in this case, Plaintiffs' Complaint details an investigation conducted by the United States Senate which resulted in three separate reports released once a year for each of the three years after Plaintiffs entered into their Consulting Agreements with BDO. (Complaint, ¶ 32.) According to Plaintiffs, these reports brought "to light" "[t]he common scheme and conspiracy of Gramercy and BDO to market, sell and promote unlawful tax shelters." (Id.) Yet the Complaint is devoid of any allegation that the Plaintiffs conducted an independent

investigation of their relationship with BDO. To the contrary, Plaintiffs admit that they did not conduct any due diligence whatsoever: "[b]ecause Messrs. Jones trusted and had confidence in BDO, they believed BDO." (Complaint, ¶ 75).[8] Plaintiffs cannot rely upon such assurances by a potential defendant to justify their failure to engage in independent due diligence. See Cherry, 36 S.W.3d at 86; Bausch v. Philatelic Leasing, Ltd., 728 F. Supp. 1201, 1207 (D. Md. 1989) (holding that plaintiff-investor's obligation to engage in reasonable diligence was not satisfied by his queries to the very tax shelter promoters with whom he was investing).

## II.  THIS COURT SHOULD DISMISS SEVERAL OF PLAINTIFFS' CAUSES OF ACTION FOR THE ADDITIONAL REASON THAT THEY FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint which fails to state a claim. Fed. R. Civ. P. 12(b)(6). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must make more than "bare assertions of legal conclusions;" rather, a plaintiff must make "direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Southeast Texas Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 671-72 (6th Cir. 2006). Even under Rule 12(b)(6)'s liberal pleading standards, Plaintiffs have failed to state a claim for fraud, civil conspiracy, breach of fiduciary duty, violation of the Tennessee Consumer Protection Act, and negligent misrepresentation.

### A.  Plaintiffs Do Not Adequately Allege "Fraud and Misrepresentation" (Count I).

Tennessee law regards misrepresentation as a subset of a fraud claim, not a separate cause of action. Shahrdar v. Global Housing, Inc., 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998). In order to state a claim for fraud, Plaintiffs must allege that: (1) BDO intentionally misrepresented an existing or past material fact; (2) BDO knew or recklessly disregarded the

---

[8] Plaintiffs are bound by this and other admissions in their pleading. Hughes, 215 F.3d at 549.

falsity of the representation; (3) Plaintiffs reasonably relied on the misrepresentation; and (4) the misrepresentation proximately caused Plaintiffs damages.  Stacks v. Saunders, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990).  In this case, Plaintiffs' fraud claim is deficient in multiple respects.

> **1. Plaintiffs did not plead fraud with the requisite degree of particularity.**

Plaintiffs must state a claim for fraud with particularity, alleging, "at a minimum," "the time, place, and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud."  Power & Tel. Supply Co. v. Suntrust Banks, Inc., 447 F.3d 923, 931 (6th Cir. 2006).  It is altogether unclear from Plaintiffs' Complaint what misrepresentations form the basis of their cause of action.  In any case, Plaintiffs do not identify who made the misstatements, when the misstatements were made, where the misstatements were made, or the precise content of the misstatements.  Plaintiffs conclusory allegations do not satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements.

> **2. BDO's alleged misrepresentations are non-actionable statements of opinion.**

In order to support a claim for fraud, BDO's purported misrepresentations must concern existing or past material fact.  Stacks, 812 S.W.2d at 592.  A prediction regarding a future event will not sustain a fraud claim.  Patel v. Baker, No. 01-A-01-90110-CH-00413, 1991 Tenn. App. LEXIS 576, at **8-9 (Tenn. Ct. App. July 24, 1991).  Similarly, a representation of future value made in a commercial transaction does not constitute fraud, but instead an expression of opinion or trade statement.  Patel, 1991 Tenn. App. LEXIS 576 at **8-9; T.H. Eng'g & Mfg., Inc. v. Mussard, No. E2001-02406-COA-R3-CV, 2002 Tenn. App. LEXIS 367, at *9 (Tenn. Ct. App. May 23, 2002) ("Statements of opinion, puffing, sales talk, conjecture, or representations

concerning future events are not actionable, even though they may later turn out to be inaccurate.").

Plaintiffs admit that BDO's alleged misrepresentations did not concern existing or past material fact: "the *opinions, representations of law and predictions* which they gave to Messrs. Jones are actionable as misrepresentations of fact." (Complaint, ¶ 28) (emphasis added). Plaintiffs' various allegations of misrepresentation, which are scattered throughout the Complaint, concern non-actionable statements of opinion regarding the law, future events, and the value of their transactions, and cannot sustain their fraud claim. <u>See</u> Section I.C.1., <u>supra</u>.

### 3. Plaintiffs' Complaint demonstrates that their reliance on BDO's alleged misrepresentations was unreasonable.

Plaintiffs cannot recover against BDO for fraud if they unreasonably relied upon BDO's purportedly fraudulent statements. <u>Stacks</u>, 812 S.W.2d at 592. "[B]lind faith" acceptance of a misrepresentation is unreasonable as a matter of law. <u>McNeil v. Nofal</u>, 185 S.W.3d 402, 408-9 (Tenn. Ct. App. 2005). Reliance upon the assurances of a potential defendant is likewise unreasonable. <u>See</u> <u>Cherry</u>, 36 S.W.3d at 86; <u>Bausch</u>, 728 F. Supp. at 1207. Yet Plaintiffs allege in their Complaint that they relied upon the assurances of BDO: "[b]ecause Messrs. Jones trusted and had confidence in BDO, they believed BDO." (Complaint, ¶ 75); <u>see also</u> Section I.C.3, <u>supra</u>.

Because Plaintiffs fail to make particularized allegations of fraud, admit that BDO's purported misrepresentations do not concern existing or past material fact, and admit that they unreasonably relied upon BDO's alleged misrepresentations, this Court should dismiss Count I of the Complaint.

### B.   Plaintiffs Do Not Adequately Allege "Civil Conspiracy" (Count II).

In order to state a claim for civil conspiracy, Plaintiffs must allege: (1) a common design between BDO and Gramercy (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury.  Kinkaid v. Southtrust Bank, No. M2005-00121-COA-R3-CV, 2006 Tenn. App. LEXIS 711, at *12 (Tenn. Ct. App. Oct. 31, 2006).  Plaintiffs must support these elements with specific material facts, not conclusory allegations.  Kinkaid, 2006 Tenn. App. LEXIS 711 at *12. In this case, Plaintiffs have failed to specifically allege that BDO and Gramercy conspired with an illegal purpose or means, or with the primary purpose of injuring Plaintiffs.

#### 1.   As a matter of law, BDO and Gramercy did not conspire for an unlawful purpose or using unlawful means.

Plaintiffs cannot sustain a claim for civil conspiracy without a predicate unlawful act constituting the purpose or means of the conspiracy.  Beaudreau v. Larry Hill Pontiac/Oldsmobile/GMC, Inc., 160 S.W.3d 874, 881 (Tenn. Ct. App. 2004).  Plaintiffs allege that BDO's unlawful purpose was to "receiv[e] and split[] millions of dollars in fees" and unlawful means was the "promot[ion] of various abusive tax shelters." (Complaint, ¶ 28).  These actions, however, are not unlawful in any respect.  First, receiving fees for the provision of professional services, without more, does not violate the law.  Second, Plaintiffs chose to voluntarily settle with the IRS, and no court has ever held that the tax positions taken by Plaintiffs failed to comply with then-applicable law.

#### 2.   The Complaint demonstrates that BDO's primary purpose was *not* to injure Plaintiffs.

In order to support a claim of civil conspiracy, Plaintiffs must plead that BDO and Gramercy conspired with the primary purpose of injuring them.  Lipman v. First Nat'l Bank of

<u>Boston</u>, No. 01A01-9803-CH-00139, 1999 Tenn. App. LEXIS 87, at *12 (Tenn. Ct. App. Feb. 5, 1999). Incidental injuries resulting from the pursuit of BDO's own fair interest are not actionable. <u>Lipman</u>, 1999 Tenn. App. LEXIS at *12. As such, an agreement to further the business interests of BDO and Gramercy does not constitute a conspiracy. <u>Knott's Wholesale Foods, Inc. v. Azbell</u>, No. 01-A-01-9510-CH-00459, 1996 Tenn. App. LEXIS 774, at *19 (Tenn. Ct. App. Dec. 6, 1996). In this case, Plaintiffs admit that BDO and Gramercy's primary purpose was the advancement of their business interests, not injury to Plaintiffs: "[t]he receipt of fees and pecuniary gain from those fees was the *primary* motive for defendant's conduct … ." (Complaint, ¶ 145) (emphasis added).

Because BDO and Gramercy did not engage in any unlawful conduct whatsoever and, by Plaintiff's own admission, did not conspire with the primary purpose of injuring Plaintiffs, this Court should dismiss Count II of the Complaint.

### C. Plaintiffs Do Not Adequately Allege "Breach of Fiduciary Duty" (Count III).

In order to state a claim for breach of fiduciary duty, Plaintiffs must allege: (1) the existence of a fiduciary relationship; (2) the breach of a fiduciary duty; and (3) damages proximately caused by the breach. <u>Anderson v. Watchtower Bible & Tract Society of New York</u>, No. M2004-01066-COA-R9-CV, 2007 Tenn. App. LEXIS 29, at **68-69 (Tenn. Ct. App. Jan. 19, 2007). Plaintiffs' Complaint does not make clear *how* BDO's "acts and omissions" breached its fiduciary duties, if any. (<u>See</u> Complaint, ¶ 161.) Moreover, Tennessee has never recognized a cause of action against a professional, separate and apart from malpractice, for breach of fiduciary duty. <u>See</u> <u>Limor v. Buerger (In re Del-Met Corp.)</u>, 322 B.R. 781, 824 (Bankr. M.D. Tenn. 2005) ("No Tennessee case is offered by the parties either accepting or rejecting separate causes of action against a lawyer for malpractice and breach of fiduciary duty

in connection with client representation."). Accordingly, this Court should dismiss Count III of the Complaint.

### D. Plaintiffs Do Not Adequately Allege A Violation Of The "Tennessee Consumer Protection Act" (Count V).

In order to state a claim under the Tennessee Consumer Protection Act ("TCPA"), Plaintiffs must allege that: (1) BDO engaged in an unfair or deceptive act as specified in the TCPA and (2) that act caused Plaintiffs an ascertainable loss. Hall v. Hamblen, No. M2002-00562-COA-R3-CV, 2004 Tenn. App. LEXIS 524, at *11 (Ten. Ct. App. Aug. 16, 2004). As with claims of common law fraud, Plaintiffs must plead a violation of the TCPA with particularity pursuant to Rule 9(b). McKee Foods Corp. v. Pitney Bowes, Inc., No. 1:06-CV-80, 2007 U.S. Dist. LEXIS 20630, at *16 (E.D. Tenn. Mar. 22, 2007) (dismissing TCPA claim because complaint failed to specify time and place of violation). Plaintiffs' TCPA count merely alleges that the "acts and omissions of BDO and Gramercy as set forth in this Complaint constitute unfair and deceptive acts." (Complaint, ¶ 167.) Plaintiffs' Complaint does not describe *how* any of BDO's alleged "acts or omissions" are unfair or deceptive or identify the particular provision of the TCPA violated by the foregoing conduct. As explained previously in Section II.A., supra, Plaintiffs' vague and conclusory allegations do not satisfy the heightened pleading standards for claims of fraud. Therefore, this Court should dismiss Count V of the Complaint.

### E. Plaintiffs Do Not Adequately Allege "Negligent Misrepresentation" (Count VII).

Negligent misrepresentation is essentially fraud without intent. Bolding v. Sisson, No. W2005-01507-COA-R3-CV, 2006 Tenn. App. LEXIS 404, at * 9-10 (Tenn. Ct. App. June 14, 2006). In order to state a claim for negligent misrepresentation, Plaintiffs must allege that: (1)

BDO acted in the course of its business; (2) BDO supplied faulty information meant to guide Plaintiffs in their business transactions; (3) BDO failed to exercise reasonable care in obtaining or communicating the information; and (4) Plaintiffs justifiably relied upon the information, proximately resulting in damages. Bolding, 2006 Tenn. App. LEXIS 404 at **8-9. Like a fraud claim, Plaintiffs must plead misrepresentations of existing or past material fact and reasonable reliance upon the misrepresentations. Gardner v. Anesthesia & Pain Consultants, P.C., No. E2003-03027-COA-R3-CV, 2004 Tenn. App. LEXIS 813, at **16-17 (Tenn. Ct. App. Nov. 30, 2004) (existing or past material fact); McNeil, 185 S.W.3d at 411 (reasonable reliance). Accordingly, this Court should dismiss Count VII for the same reasons as Count I – namely, Plaintiffs admit, in their own Complaint, both that BDO's purported misrepresentations do not concern existing or past fact and that Plaintiffs did not reasonably rely upon these misrepresentations. See Section II.A.2-3, supra.

### III. IN THE ALTERNATIVE TO DISMISSAL BASED ON THE STATUTE OF LIMITATIONS, THIS COURT SHOULD ENFORCE THE ARBITRATION PROVISION IN PLAINTIFFS' CONSULTING AGREEMENTS WITH BDO.

Initially, BDO notes that this Court should fully evaluate and rule upon BDO's Motion to Dismiss Plaintiffs' Amended Complaint on the basis of the statute of limitations and for failure to state a claim *before* it considers BDO's alternative Motion to Compel Arbitration. This would best serve the interest of efficiency for all parties involved – for this Court by giving value to the time it has and will spend on this case and foreclosing the lengthy post-arbitration appeal process, for the Arbitration Panel by eliminating facially defective claims, and for the Parties and the Arbitration Panel by eliminating the potentially wasteful additional time and expense of proceeding to arbitration on what will ultimately be determined are time-barred or otherwise deficient claims. Joyce v. Clyde Sandoz Masonry, 871 F.2d 1119, 11127 n. 6 (D.C. Cir. 1989)

("[T]he purely legal issue of the time bar involves no special expertise available to the arbitrator, and, given the posture of the proceedings, judicial economy is certainly served by our disposition of this single issue."); Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 465 (2d Cir. 1985) ("[B]y eliminating some of the claims as a matter of law, the role of the arbitrator might be made more simple, because the arbitrator would then be able to concentrate solely on claims that have facial merit."); Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP, 434 F. Supp. 2d 211, 216-19 (S.D.N.Y. 2006) ("[T]he Second Circuit plainly contemplated that a defendant might use a Rule 12(b)(6) motion to dispose of a facially deficient claim before proceeding to arbitration.").

But if this Court denies BDO's Motion to Dismiss, it should then compel the parties to proceed to arbitration.  The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et. seq.*, reflects a liberal federal policy in favor or arbitration.  Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91 (2000).[9]   Accordingly, a district court must enforce an arbitration provision if: (1) a valid arbitration agreement exists and (2) the specific dispute falls within the scope of the agreement. Masco Corp. v. Zurich Am. Ins. Co., 382 F.3d 624, 627 (6th Cir. 2004).  Because, in this case, Plaintiffs' Consulting Agreements with BDO contain a valid arbitration provision which covers the claims in Plaintiffs' Complaint, this Court must compel arbitration and dismiss or stay these proceedings.

### A.  The Consulting Agreements Between Plaintiffs And BDO Contain A Valid Arbitration Provision.

Arbitration clauses in commercial contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

---

[9] Although the Consulting Agreements giving rise to this Motion contain choice-of-law provisions specifying the application of Tennessee law to the governance of the Agreements, federal substantive law governs the determination of the arbitrability of Plaintiffs' claims.  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,

In this case, the Plaintiffs entered into Consulting Agreements containing an identical arbitration provision:

> (d)    If any dispute, controversy or claim arises in connection with the performance or breach of this Agreement and cannot be resolved by mediation within sixty days (or the parties agree to waive that process) then such dispute, controversy or claim *shall* be settled by binding arbitration under the then current Dispute Resolution Rules for Professional Accounting and Related Services Disputes (Including Mediation) of the American Arbitration Association ("AAA"), and shall take place in either the cities of Nashville, Johnson City, or Memphis, Tennessee as mutually agreed by the parties unless the parties agree to a different locale.  The arbitrator(s) shall permit each party to engage in limited discovery with a period of 60 days to complete any such discovery.

(Complaint, Ex. 7 at 8(d) & Ex. 8 at 8(d)) (emphasis added).

Courts across the country, including the U.S. District Court for the Western District of Tennessee, have found similar arbitration provisions in BDO consulting agreements to be both valid and enforceable.  Plyler v. BDO Seidman, LLP, No. 04-2146, 2005 U.S. Dist. LEXIS 41288, at **7-8 (W.D. Tenn. Apr. 8, 2005) (attached as Ex. J); Denney v. BDO Seidman, LLP, 412 F.3d 58, 67-8 (2d Cir. 2005) (attached as Ex. K); Miron v. BDO Seidman, LLP, 342 F. Supp. 2d 324, 329-330 (E.D. Penn. 2004) (attached as Ex. L); King v. Deutsche Bank AG, No. CV 04-1029, 2005 U.S. Dist. LEXIS 11317, at **39-43 (D. Or. Mar. 8, 2005), magistrate's report adopted at 2005 U.S. Dist. LEXIS 11316 (May 9, 2005) (collectively attached as Ex. M); Young v. BDO Seidman, LLP, No. 4:04-902-25 (D.S.C. Jan. 21, 2005) (Magistrate's Report and Recommendation & District Court's Order attached as Ex. N).

Moreover, in several other instances, including another case in the Western District of Tennessee, the plaintiffs simply stipulated to the enforceability of the arbitration provision in their respective consulting agreements with BDO.  Crunk v. BDO Seidman, LLP, No. 04-2573 (W.D. Tenn. Dec. 13, 2004) (attached as Ex. O); Westbrook v. Deutsche Bank AG, No. 5:05-

---

473 U.S. 614, 626 (1985).

CV-30 (E.D.N.C. Sept. 2, 2005) (attached as Ex. P); <u>Tice v. BDO Seidman, LLP</u>, No. SACV 04-

599 (C.D. Cal. Oct. 25, 2004) (attached as Ex. Q); <u>Heller v. Deutsche Bank AG</u>, No. 2:04-cv-

03571 (E.D. Pa. Jan. 25, 2005) (attached as Ex. R); <u>Thompson v. BDO Seidman, LLP</u>, No. 05-

CA-1041-16-L (Fla. Cir. Ct. Jan. 10, 2007) (attached as Ex. S).

### B.   The Arbitration Provision In The Consulting Agreements Encompasses All Claims Asserted In Plaintiffs' Complaint.

This Court must resolve all doubts regarding the scope of an arbitration clause in favor of

arbitration.   <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983).

Where, as here, the contract contains a broad arbitration provision, "in the absence of any

express provision excluding a particular grievance from arbitration, … only the most forceful

evidence of a purpose to exclude the claim from arbitration can prevail."  <u>AT&T Techs., Inc. v.

Communications Workers of America</u>, 475 U.S. 643, 650 (1986).  In order to deny arbitration,

this Court must conclude that the provision at issue is not susceptible to *any* interpretation which

could encompass the claims asserted in the Complaint.   <u>International Union, Inc. v. Cummins,

Inc.</u>, 434 F.3d 478, 485-86 (6th Cir. 2006).

The arbitration clause here covers Plaintiffs' claims, all of which arise from tax advice

and services provided by BDO pursuant to the very Consulting Agreements which contain the

arbitration provision at issue.   By its terms, the arbitration clause covers "any dispute,

controversy or claim aris[ing] in connection with the performance or breach of th[e] Agreement."

(Complaint, Ex. 7 at 8(d) & Ex. 8 at 8(d).)  A sister district enforced an arbitration provision in a

BDO consulting agreement, virtually identical in all material respects to the one at issue here,[10]

---

[10]  That arbitration provision provided: "If any dispute, controversy or claim arises in connection with the performance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of Tennessee, and the then current Arbitration Rules of the American Arbitration Association ("AAA"), except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration

because the plaintiff's RICO violation, breach of fiduciary duty, fraud, negligent misrepresentation, professional malpractice, breach of conduct, unjust enrichment, civil conspiracy, excessive fees, and improper fee-splitting claims were all "related to the 'performance or breach' of the Agreement." Plyler, 2005 U.S. Dist. LEXIS 41288 at *8; accord Denney, 412 F.3d at 69 ("BDO's services fall well within the scope of the consulting agreements. … Because the contractual terms clearly and unambiguously referred to 'tax services' that BDO in fact provided, we need not look beyond them. … The District Court's conclusion that the services BDO provided were not within the scope of the agreement was therefore clearly erroneous, and the BDO defendants' motion to compel arbitration should have been granted with respect to the signatory plaintiffs.") (Ex. J); King, 2005 U.S. Dist. LEXIS 11317 at *47 ("Because 1) there is no express provision excluding claims arising from the COBRA strategy from arbitration, or 2) any evidence of a purpose on the part of the Allen plaintiffs and BDO Seidman to exclude claims arising from the COBRA strategy from arbitration, 3) the arbitration clause is broad, and 4) any doubts are to be resolved in favor of arbitrability, I recommend that the motion to compel arbitration be granted.") (Ex. L); Young v. BDO Seidman, LLP, No. 4:04-902-25 (D.S.C. Jan. 21, 2005) (Ex. M).

Further, Plaintiffs cannot circumvent the contractual arbitration provision, which is both enforceable and inclusive of their claims, by simply adding Gramercy Advisors, LLC as a Defendant in the Amended Complaint. See Arnold v. Arnold, 920 F.2d 1269, 1281 (6th Cir. 1990) ("If appellant can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in his complaint, … the effect of the rule requiring arbitration would, in effect, be nullified.") (internal quotations and citations omitted); Hilti, Inc. v. Oldach,

panel, and shall take place in Memphis, unless the parties agree to a different locale. Plyler, 2005 U.S. Dist. LEXIS 41288 at **5-6 (Ex. J).

392 F.2d 368, 369 n. 2 (1st Cir. 1968) ("If arbitration defenses could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised."); Cosmotek Mumessillik v. Cosmotek USA, Inc., 942 F. Supp. 757, 759 (D. Conn. 1996) ("Plaintiffs cannot avoid the arbitration for which they had contracted simply by adding a nonsignatory defendant, lest the efficacy of contracts and the federal policy favoring arbitration be defeated."); Lawson Fabrics, Inc. v. Akzona, Inc., 355 F. Supp. 1146, 1151 (S.D.N.Y. 1973) ("If this Court were to allow [the plaintiff] to prevent the arbitration of these issues by the naming of [a nonsignatory] as a party to this action, the Federal policy in favor of arbitration would be thwarted.")

### C.   By Presenting, In The Alternative, Its Motion To Dismiss The Complaint, BDO Has Not Waived Its Right To Compel Arbitration.

Because of the strong federal policy favoring arbitration, courts cannot "infer lightly" waiver of a contractual arbitration provision. J.C. Bradford & Co. v. Kitchen, No. M2002-00576-COA-R3-CV, 2003 Tenn. App. LEXIS 345, at **9-12 (Tenn. Ct. App. May 14, 2003) (applying federal law). "[W]aiver may not be inferred from the fact that a party does not rely exclusively on the arbitration provisions of a contract, but attempts to meet all issues raised in litigation between it and another party." Germany v. River Terminal Ry. Co., 477 F.2d 546, 547 (6th Cir. 1973). Accordingly, filing a motion to dismiss does not waive a contractual arbitration clause. See Southern Sys., Inc. v. Torrid Oven, Ltd., 105 F. Supp. 2d 848, 854 (W.D. Tenn. 2000); accord Sharif v. Wellness Int'l Network, Ltd., 376 F.3d 720, 726 (7th Cir. 2004) (filing motion to dismiss for failure to state a claim and improper venue does not waive right to arbitration); Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32-33 (1st Cir. 2001) (filing motion to dismiss and requesting damage calculation pursuant to FRCP 26(a)(1)(C) does not waive right to arbitration); Williams v. Cigna Fin. Advisors, Inc., 56 F.3d 656, 661-62 (5th

Cir. 1995) (removing case to federal court, filing motion to dismiss, answering complaint after moving to stay pending arbitration, and exchanging Rule 26 discovery after district court's denial of motion to stay discovery pending arbitration does not waive right to arbitration); <u>Palcko v. Airborne Express, Inc.</u>, 372 F.3d 588, 597-98 (3d Cir. 2004) (filing motion to dismiss for insufficiency of service of process does not waive right to arbitration).

## <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should dismiss Plaintiffs' Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) because all claims are time-barred and, in addition, several claims are also facially deficient. In the alternative, this Court should compel arbitration of all claims alleged by Plaintiffs against BDO and dismiss or stay these proceedings pending arbitration pursuant to 9 U.S.C. §§ 3-4 of the Federal Arbitration Act.

Respectfully submitted,

Dated: May 7, 2007

By: <u>/s/ Robert S. Markin</u>
   Michael L. Dagley (12895)
   Brian D. Roark (20262)
   **BASS, BERRY & SIMS PLC**
   315 Deaderick Street, Suite 2700
   Nashville, TN 37238-3001
   Tel: 615.742.6200
   Fax: 615.742.6293

   Michael S. Poulos (admitted *pro hac vice*)
   Robert S. Markin (admitted *pro hac vice*)
   **DLA PIPER US LLP**
   203 North LaSalle Street, Suite 1900
   Chicago, IL 60601
   Tel: 312.368.4000
   Fax: 312.236.7516

   *Attorneys for Defendant BDO Seidman, LLP*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Memorandum in Support of Motion to Dismiss or, in the Alternative, to Compel Arbitration has been served on the following parties through the Court's CM/ECF Electronic Filing System this the 7th day of May, 2007:

Thomas W. Shumate IV (tshumate.ef@ejratty.com)
Winston S. Evans (wevans.ef@ejratty.com)
Julie M. Burnstein (jburnstein@boultcummings.com)
Sean F. O'Shea (soshea@osheapartners.com)
Jonathan R. Altschuler (jaltschuler@osheapartners.com)
Michael E. Petrella (mpetrella@osheapartners.com)

/s/ Brian D. Roark
Brian D. Roark

6441990.1