# Exhibit 5

Case 1:07-cv-02809-LMM    Document 21-6    Filed 07/27/2007    Page 1 of 13

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

----------------------------------------------------------------X
JOHN A. JONES and
CARLETON A. JONES, III,

      **Plaintiffs,**

v.

BDO SEIDMAN, LLP and GRAMERCY
ADVISORS, LLC,

      **Defendants.**
----------------------------------------------------------------X

Case No. 3:06-CV-1115
Judge Echols
Magistrate Judge Brown

**REPLY MEMORANDUM OF LAW OF DEFENDANT GRAMERCY ADVISORS, LLC
IN FURTHER SUPPORT OF MOTION FOR A PROTECTIVE ORDER STAYING
DISCOVERY AND TO STAY PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION RELATING TO OTHER PENDING ACTION**

Julie M. Burnstein
**BOULT, CUMMINGS, CONNERS &
  BERRY, PLC**
1600 Division Street
Suite 700
P.O. Box 340025
Nashville, TN 37203
Tel. (615) 252-2338

Sean F. O'Shea (admitted *pro hac vice*)
Michael E. Petrella (admitted *pro hac vice*)
**O'SHEA PARTNERS LLP**
90 Park Avenue, 20th Floor
New York, New York 10016
Tel: (212) 682-4426

*Attorneys for Gramercy Advisors, LLC*

**PRELIMINARY STATEMENT**

By leave of the Court, Defendant Gramercy Advisors, LLC ("Gramercy") submits this Reply Memorandum of Law in further support of its motion (i) for a protective order staying discovery in this action pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and (ii) to stay briefing on Plaintiffs' "Motion for Preliminary Injunction Restraining Defendant, Gramercy Advisors LLC, From Pursuing Second-Filed Action in New York."

**LEGAL ARGUMENT**

**I.    THE COURT SHOULD NOT GRANT PLAINTIFFS JURISDICTIONAL DISCOVERY ON THEIR CONSPIRACY ALLEGATIONS.**

Plaintiffs have alleged two bases for *in personam* jurisdiction of Gramercy: (1) several written and telephonic communications by Gramercy to Plaintiffs in Tennessee; and (2) various acts and omissions in Tennessee by Defendant BDO Seidman, LLP ("BDO"), Gramercy's alleged co-conspirator. In opposing the instant motion, Plaintiffs claim they are entitled to take preliminary discovery on both issues.[1] At a teleconference on June 28, 2007, Magistrate Joe Brown noted his disinclination to grant Plaintiffs jurisdictional discovery on their conspiracy allegations, observing that this would amount to full discovery on the merits.

Magistrate Brown's view is fully consistent with the pertinent case law and with common sense. The essential problem is that to grant such "limited" discovery is, in fact, to grant full-blown discovery on the merits – which, in turn, engenders an irreparable violation of Gramercy's due process rights if the discovery fails to turn up adequate proof of jurisdiction. And, indeed, here Plaintiffs admit that the jurisdictional discovery they seek is coextensive with the full scope of the merits. (Pl. Resp., at 16).

As the Sixth Circuit aptly noted in an analogous context,

> sovereign immunity is immunity from suit, not just from liability . . . .
> *[E]xtensive discovery and other extended proceedings at this [(early)] stage*
> *may frustrate the significance and benefit of entitlement to immunity from*

---

[1]    See Response of Plaintiffs Opposing Motion of Gramercy Advisors LLC for A Protective Order Staying Discovery and to Stay Plaintiffs' Motion for Preliminary Injunction Relating to Other Pending Action ("Pl. Resp."), at 3.

1

> *suit*.  Accordingly, *discovery and fact-finding should be limited to the essentials* necessary to determining the preliminary question of jurisdiction.

*Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988) (emphasis added; citation omitted).  Gramercy's opening brief similarly cited the *Waller* case, which held that to grant "limited" jurisdictional discovery on a plaintiff's conspiracy allegations would be improper, particularly where, as here, the conspiracy allegations were inadequately pled.[2]  Plaintiffs' opposition brief does not address *Waller* or the other cases cited by Gramercy, and instead offers several other cases for the proposition that the Court must grant discovery where jurisdictional facts are "intertwined" with the merits.  (Pl. Resp., at 16-18).  These authorities are unavailing.

Plaintiffs argue that *Serras v. First Tennessee Bank N.A.*, 875 F.2d 1212 (6th Cir. 1989) requires the Court to grant discovery on the merits where jurisdictional and substantive facts are intertwined.  (Pl. Resp., at 17).  *Serras*, however, says nothing of the sort; it held only that the district court erred by crediting the defendant's affidavit, denying certain jurisdiction facts, when the plaintiff's affidavit had itself set forth a *prima facie* case for jurisdiction.  *Id.* at 1215.  *Serras* did not grapple with the problematic issue here – that granting "limited" jurisdiction discovery of a weakly-pled conspiracy claim effectively subsumes the entire case and eviscerates due process rights.  To the contrary, the Sixth Circuit subsequently ***rejected*** a similar attempt to extend *Serras*:

> Borrowing language from our opinion in *Serras*, **MMR submits that when "disputed jurisdiction facts are intimately intertwined with the parties' dispute on the merits," 875 F.2d at 1215, the district court must defer until trial a ruling on a 12(b)(2) motion to dismiss.**  MMR contends that the jurisdictional facts in the instant case are not merely "initimately [(sic)] intertwined" but are identical, and, therefore, the district court erred by failing to reserve until after trial its determination of the 12(b)(2) motion.
>
> ***MMR misreads the Serras opinion***.  Although in that case we held that the district court erred by granting a 12(b)(2) motion without obtaining additional evidence before or during trial, we based our decision on the finding that Serras' affidavit offered a "fully adequate allegation of jurisdictional facts." *Id.*  MMR overlooks the fact that we noted in *Serras*. . . that "the plaintiffs rely not only on

---

[2]  See Memorandum of Law of Defendant Gramercy Advisors, LLC in Further Support of Motion for A Protective Order Staying Discovery and to Stay Plaintiffs' Motion for Preliminary Injunction Relating to Other Pending Action, at 10-11.

2

> alleged telephone calls but also on an allegation that the defendant actually travelled to Michigan to solicit their business, and actually made fraudulent representations while in Michigan." *Id.* at 1217. These allegations alone were sufficient to support jurisdiction; therefore, a 12(b)(2) dismissal was improper absent controverting evidence that may have been presented later in the proceedings. *Serras* should not be read to require the district court to hold an evidentiary hearing when, as in the instant case, a plaintiff's pleadings and affidavits are insufficient to make a prima facie showing of facts supporting the court's assertion of *in personam* jurisdiction.
>
> ***Nothing in the record indicates that the district court abused its discretion by failing to require depositions* . . . *prior to its grant of the motion to dismiss***.

*Market/Media Research, Inc. v. Union-Tribune Publ'g Co.*, 951 F.2d 102, 106 (6th Cir. 1991) (emphasis added).

Plaintiff also cites *Firemen's Fund Ins. Co. v. Railway Express Agency*, 253 F.2d 780, 784 (6th Cir. 1958), but that case concerned discovery relating to **subject matter** jurisdiction (specifically, the amount-in-controversy requirement for diversity jurisdiction), not personal jurisdiction. Where a court has valid personal jurisdiction of a party, compelling that party to engage in discovery concerning subject matter jurisdiction does not potentially violate the party's constitutional rights. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982) (unlike subject matter jurisdiction, which only implicates federal sovereignty, personal jurisdiction raises issues of due process and personal liberty interests). Consequently, *Firemen's* grant of limited discovery on subject matter jurisdiction cannot be extended to the *in personam* jurisdiction context.

Given the Sixth Circuit's demonstrably conservative standard on the instant issue, *see Market/Media, id.*, Plaintiffs' reliance on two authorities from other Circuits with more liberal standards (Pl. Resp., at 16-18) is misguided, and the cited cases are in any event unavailing. *Young v. Crofts*, 2003 WL 1875504, *1 (9th Cir. 2003) (see Pl. Resp., at 16-17) – like *Firemen's Fund, supra* – concerned subject matter, not *in personam*, jurisdiction, and is irrelevant. Similarly, while *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965) (see Pl. Resp., at 18) does concern *in personam* jurisdiction, the court relied solely on precedents concerning subject matter jurisdiction, and made no attempt to address the unique perils presented by compelling a

3

defendant, invalidly haled into the forum, to endure discovery and other procedures concerning the merits. *See Schramm*, 352 F.2d at 149. *Schramm* is therefore unpersuasive.

Likewise, while Plaintiffs cite two decisions emanating from the D.C. Circuit – *Edmond v. United States Postal Services Gen'l Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991) and *Diamond Chem. Co., Inc. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003) – *Diamond* pointedly notes that the D.C. Circuit's standard for permitting jurisdictional discovery is substantially more liberal than that of other Circuits. *Id.*[3]

## II. PLAINTIFFS HAVE NOT MADE A THRESHOLD SHOWING OF PERSONAL JURISDICTION WARRANTING LIMITED DISCOVERY.

Jurisdictional discovery is typically granted where a defendant disputes the facts advanced by the plaintiff in support of a *prima facie* showing of minimum contacts. Such is not the case here. Gramercy does not dispute that – after it was retained in New York by Plaintiffs – it sent communications to Plaintiffs in Tennessee and had a business relationship with Plaintiffs. Accordingly, "minimum contacts" discovery would merely confirm already undisputed facts. The issue here is not one of disputed fact, but rather a legal one, because the facts cited by Plaintiffs in support of personal jurisdiction are simply ***jurisdictionally irrelevant as a matter of law***. (Declaration of Michael E. Petrella, dated June 4, 2007 ("Petrella Decl."), Ex. G, Point I). Thus, the Court should simply proceed to adjudicate Gramercy's motion to dismiss. *Cf. Am. Copper & Brass, Inc. v. Mueller Europe, Ltd.*, 452 F. Supp. 2d 821, 832 (W.D. Tenn. 2006) (denying jurisdictional discovery where plaintiffs demonstrated no "legitimate factual dispute with Defendant"). With respect to Plaintiffs' conspiracy allegations, Gramercy does dispute them, but, as established in Point I, *supra*, "limited" discovery thereon is neither possible nor warranted.

---

[3] Indeed, as discussed further in Point II, *infra*, *Diamond* also demolishes another of Plaintiffs' central arguments in opposition. That case expressly notes that, unlike the D.C. Circuit, other Circuits require a plaintiff to make out a *prima facie* showing of jurisdiction before being given leave to take jurisdictional discovery. (Compare Pl. Resp., at 2-4 (arguing that plaintiff need not make *prima facie* showing of jurisdiction but, instead, need demonstrate only that jurisdiction allegations are "not 'clearly frivolous.'"))

4

If the Court is nonetheless inclined to examine the strength of Plaintiffs' minimum-contacts allegations in determining whether to permit discovery thereon, Plaintiffs have not made the requisite showing.

### A. Plaintiffs Are Required to Make a *Prima Facie* Showing of Jurisdiction before the Court May grant Jurisdictional Discovery.

Plaintiffs erroneously assert that they need not establish a *prima facie* case of personal jurisdiction to qualify for jurisdictional discovery, claiming that their jurisdiction allegations need only be not clearly frivolous. Plaintiffs' citation to *Siderman v. Republic of Argentina*, 965 F.2d 699, 713 (9th Cir. 2002) has a now-familiar infirmity: the case concerns subject matter, not *in personam*, jurisdiction. Plaintiffs' other authorities come from courts outside the Sixth Circuit, and are inconsistent with prevailing Sixth Circuit jurisprudence. *See, e.g., Am. Copper & Brass*, 452 F. Supp. 2d at 832 (denying jurisdictional discovery where complaint failed to make *prima facie* showing of jurisdiction); *Diamond*, 268 F. Supp. 2d at 15 (circuits other than D.C. Circuit require *prima facie* showing before permitting jurisdictional discovery); *cf. Market/Media*, 951 F.2d at 106 (court not required to conduct evidentiary hearing where plaintiff has not made *prima facie* case for jurisdiction).

### B. Plaintiffs' Allegations Fail to Establish a *Prima Facie* Case of Either Specific or General Jurisdiction.

Plaintiffs admit that they traveled to New York to retain Gramercy. (Am. Compl., ¶ 94). They do not deny that Gramercy was retained to execute transactions and perform other services wholly outside of Tennessee. The only tortious act allegedly committed by **Gramercy** (as distinguished from various alleged tortious acts committed by BDO) was an alleged failure at the New York meeting to disclose that BDO would allegedly be sharing its fee with Gramercy. (Pl. Resp., at 5-6). Putting aside the fact that Plaintiffs have not alleged how such fee sharing, if it even occurred, was tortious or occasioned any of their injuries, this is the sole proffered basis for "specific" jurisdiction of Gramercy (again, apart from conspiracy-based jurisdiction). (*Id.*, at 5-

5

10). Plaintiffs contend that this allegedly tortious omission occurring outside Tennessee caused them injury within Tennessee, creating jurisdiction over Gramercy. (*Id.*, at 6).

>  1. *Plaintiffs Have Not Even Established a Statutory Basis for Long-Arm Jurisdiction.*

Plaintiffs' argument fails the threshold test of jurisdiction: it contravenes the express language of Tennessee's long-arm statute. The pertinent provision, Tenn. Code 20-2-223(a)(4), enacted in 1997 (subsequent to most of Plaintiffs' authorities), permits courts to exercise jurisdiction where an extraterritorial tortious act causes injury in Tennessee, but contains a critical qualification:

> "A court may exercise personal jurisdiction over a person, who acts directly or indirectly, as to a claim for relief arising from the person's . . . [c]ausing tortious injury in this state by an act or omission outside this state of the ***person who regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state.***"

(Emphasis added). Assuming, *arguendo*, that Gramercy's alleged fee sharing and omission regarding same constitute an actionable wrong, Plaintiffs have not and cannot establish the other elements of § 20-2-223(a)(4) jurisdiction. Plaintiffs do not seriously argue that Gramercy regularly engages in ***any*** activity ***in*** Tennessee. In a subsequent section of their brief (in which Plaintiffs, incredibly, appear to be arguing for ***general*** jurisdiction), they contend that Gramercy derived substantial fees from Plaintiffs, who reside in Tennessee. (See Pl. Resp., at Point II.B, p.11). Indisputably, however, Gramercy's financial services were not "***goods*** used or consumed" in Tennessee, nor were the "services rendered ***in [Tennessee]***," Tenn. Code § 20-2-223(a)(4) (emphasis added). Given that Plaintiffs' allegations fall outside Tennessee's long-arm jurisdiction, the Court need not even reach the second tier of analysis; whether the particular exercise of jurisdiction under the statute comports with due process.

>  2. *Even If Plaintiffs Could Show a Statutory Basis for Jurisdiction, Gramercy Lacks the Constitutionally-Requisite Minimum Contacts with Tennessee.*

In addition to Gramercy's alleged failure to disclose alleged fee sharing, Plaintiffs point to a number of other purported contacts between Gramercy and Tennessee that occurred *after* Plaintiffs came *to New York* to retain Gramercy to execute various transactions *wholly outside Tennessee*: Gramercy sent several documents to Tennessee for signature, sent monthly account statements; had several telephone communications with Plaintiffs; sent Plaintiffs (years after the circumstances at issue herein) brochures about several other Gramercy investment funds; and derived "substantial" account management fees from Plaintiffs' investment accounts. Additionally, Plaintiffs' relationship with Gramercy has persisted for four years. (Pl. Resp., at 10-11).[4]

As a preliminary matter, it is unclear whether Plaintiffs offer the foregoing to establish "specific" jurisdiction, as opposed to "general" jurisdiction. They assert that the allegations "establish that Gramercy has had substantial and continuing contacts with Tennessee" (Pl. Resp., at 10 (emphasis in original), which appears to be an approximation of the "continuous and systematic contacts" standard for general jurisdiction. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). If so, Plaintiffs do not cite even a single authority in support of such argument (see Pl. Resp., Point II.B), and the argument would be ridiculous, the proffered facts falling far short of the standard. General jurisdiction requires that a defendant's contacts with the forum be so pervasive as to "approximat[e] physical presence." *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (internal quotation marks omitted). The mere fact that a nonresident defendant does business with forum residents does not permit general jurisdiction. *Id.* (defendant's internet-based business relationships with 4,666 forum residents failed to establish "'continuous and systematic' presence").

If the foregoing facts are instead proffered in support of "specific" jurisdiction, then two of the facts cited by Plaintiffs – Gramercy's investor teleconferences and invitations to

---

[4] Notably, Plaintiffs do not cite any legal authority holding that the dollar amount of a non-resident's earnings on services rendered outside of Tennessee, but paid by a Tennessee plaintiff, has any jurisdictional significance, or that the mere duration of such relationship has any jurisdictional significance.

7

participate in other Gramercy funds – are plainly irrelevant. "Specific" jurisdiction exists only where the cause of action arises from or relates to the defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 414. Here, Plaintiffs claim that they were fraudulently induced in 2002 to, *inter alia*, retain Gramercy to implement certain transactions, with the promise that the transactions would generate sizable deductions on Plaintiffs' 2002 tax returns. (Am. Compl., *e.g.* ¶¶ 83-86). Plaintiffs do not allege that they ever pursued any of the additional investment opportunities offered in the brochures subsequently mailed to them in 2005, and thus these contacts are wholly unrelated to Plaintiffs' causes of action. (Plaintiffs also inaptly characterize these mailings as a "solicitation;" the parties' relationship long preceded these mailings). Likewise, Plaintiffs do not allege that Gramercy's management of the invested funds was faulty, and there is no other apparent nexus between the handful of conference calls participated in by Plaintiffs and the present action.

With these preliminary observations in mind, it is abundantly clear, even from Plaintiffs' proffered authorities, that Gramercy lacks the requisite minimum contacts for "specific" jurisdiction. As a general matter, Gramercy's earlier Rule 12(b)(2) dismissal brief cited a wealth of relatively recent **Sixth Circuit** cases concerning *in personam* jurisdiction in commercial and financial transactions,[5] conclusively showing that Gramercy's alleged contacts with Tennessee are insufficient as a matter of law to confer jurisdiction. Plaintiffs have made absolutely no effort to address these authorities, and have instead cobbled together mostly twenty or thirty year old decisions from various district courts other than the Middle District of Tennessee, and Tennessee state court decisions (See Pl., Resp., Point II.A). Plaintiffs' failure to cite more recent cases is an obvious sign they are grasping at anomalous, outlier decisions that cannot be squared with the vast weight of judicial authority. Plaintiffs' state court cases are unavailing, because they carry absolutely no weight on the federal constitutional issue *sub judice*.[6]

---

[5]    See, for example, the case law cited in Point I of the Gramercy memorandum of law annexed as Exhibit G to the Petrella Declaration in support of the instant motion.

[6]    *See First Am. Title Co. v. Devaugh*, 480 F.3d 438, 455 (6th Cir. 2007) ("state court's opinion on an issue of federal law . . . is entitled to no deference whatsoever").

8

Plaintiffs' authorities are also clearly distinguishable. Several of the cited cases involved extraterritorial defendants who sent into Tennessee communications that were themselves fraudulent or tortious.[7] In another case cited by Plaintiffs, however, the Sixth Circuit explained that a nonresident defendant's communications into the forum will suffice for jurisdiction only "***where the phone calls and faxes form the bases for the action. . . . When the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment***." *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) (emphasis added). The court distinguished "merely incidental communications sent by the defendant into Tennessee" and communications which "merely solicited business from the forum or involved services not alleged to form the basis of the complaint": "[W]e hold that when a foreign defendant purposefully directs communications into the forum ***that cause injury*** within the forum, ***and those communications form the 'heart' of the cause of action***, personal jurisdiction may be present over that defendant without defendant's presence in the state." *Id.* at 332-33 (emphasis added). Here, Plaintiffs have not alleged that Gramercy sent any false or fraudulent communications into Tennessee. Indeed, the ***only*** alleged tortious act by Gramercy – the alleged failure to disclose fee sharing – occurred at a meeting in New York. (See Pl. Resp., at 5-6, 10-12). All of Gramercy's communications into Tennessee were merely incidental.

A number of Plaintiffs' authorities apply special jurisdiction sub-doctrines developed for inapplicable domains such as products liability and personal injury.[8] As *Nat'l Union*, 259 F. Supp. 2d at 1104, noted, these product liability decisions generally apply the broad "stream of commerce" doctrine for commercial goods enunciated in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 287 (1980), rather than the minimum-contracts standards for interstate

---

[7]  *See First Fed. Sav. Bank of Tennessee v. Jefferson Sav. & Loan Ass'n*, 640 F. Supp. 47, 49 (E.D. Tenn. 1986) (defendant sent fraudulent communications into forum); *Masada Investment Corp. v. Allen*, 697 S.W.2d 332 (Tenn. 1985) (defective warranty deed sent to Tennessee); *Jasper Aviation, Inc. v. McCollum Aviation, Inc.*, 497 S.W.2d 240242-43 (Tenn. 1972) (defendant falsely advertised within, and sent telephonic misrepresentations into, forum).

[8]  *See Cannon v. Metcalfe*, 458 F. Supp. 843, 845-46 (E.D. Tenn. 1977) (wrongful death and product liability arising from airplane crash); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Aerohawk Aviation, Inc.*, 259 F. Supp. 2d 1096, 1099-1100 (D. Idaho 2003) (same); *Steelman v. Strickland*, 78 F.R.D. 187, 188 (E.D. Tenn. 1977) (agricultural products liability).

9

contractual relations developed in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) and its progeny. Gramercy's dismissal brief (Petrella Decl., Ex. G, at Point I) demonstrates that the Sixth Circuit's jurisprudence applying *Burger King* conclusively shows that Plaintiffs' allegations fail to demonstrate that Gramercy purposefully availed itself of the benefits and privileges of Tennessee law. In that regard, the remaining authorities cited by Plaintiffs reflect a degree of defendants' purposeful availment of the forum far higher than that of Gramercy.[9]

Plaintiffs' failure to address abundant Sixth Circuit authority, coupled with its failure even to cite factually-similar cases, demonstrates the palpable lack of personal jurisdiction here.

Dated: Nashville, Tennessee
July 3, 2007

**BOULT, CUMMINGS, CONNERS & BERRY, PLC**

/s/ Julie Murphy Burnstein
Julie Murphy Burnstein
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, TN 37203
Tel. (615) 252-2338

**O'SHEA PARTNERS LLP**
Sean F. O'Shea (admitted *pro hac vice*)
Michael E. Petrella (admitted *pro hac vice*)
90 Park Avenue, 20th Floor
New York, NY 10016
Tel. (212) 682-4426

---

[9] In *Third Nat'l Bank in Nashville v. Shearson Equip. Mgmt. Corp.*, 619 F. Supp. 907, 909-10 (M.D. Tenn. 1985), the defendant had **affirmatively** solicited a Tennessean; met with plaintiff in Tennessee several times; guaranteed loans by Tennessee; and, after financial difficulties arose, again came to Tennessee for negotiations. Here, by contrast, Plaintiffs came to New York to retain Gramercy to perform services and transactions entirely outside of Tennessee. *See also Masada*, 697 S.W.2d at 333-35 (Texan affirmatively sought a real estate parcel in Tennessee; co-defendant attorney, Allen, sent to Tennessee defective warranty deed central to case; transaction documents drafted pursuant to Tennessee law (unlike the transactions documents here, all of which were governed by New York law (see Petrella Decl., Ex. G, at 24 n.18)); Tennessee "realty . . . was being sold by a Tennessee limited partnership subject to the laws of Tennessee"; documents were to be recorded in Tennessee; "By wilfully and knowingly choosing to prepare legal documents which would be filed in Tennessee and be of great consequence here, Allen purposely availed himself of the privilege of doing business within this state"); *Shelby Mut. Ins. Co. v. Moore*, 645 S.W.2d 242, 247 (Tenn. Ct. App. 1981) (although defendants were nonresidents at time of lawsuit, they previously resided in Tennessee and personally contracted in Tennessee with insured in connection with the subject matter of the action, and had been doing so with other Tennessee clients for years). *Progeny Mktg.. v. Farmers & Merchants Bank*, 2005 WL 819732, *10 (Tenn. Ct. App. 2005) (contract drawn up in Tennessee, was governed by Tennessee law, and required substantial performance in Tennessee, and payments were submitted to Tennessee).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded electronically via the Court's electronic filing system or via U.S. Mail to:

Winston S. Evans
Thomas V. Shumate, IV
Evans, Jones & Reynolds, P.C.
1810 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2424
(615) 259-4685

Michael L. Dagley
Brian D. Roark
Bass, Berry & Sims
315 Deaderick Street
Suite 2700
Nashville, TN 37238
(615) 742-6200

Robert S. Markin
Mike Poulos
DLA Piper US LLP
203 N. LaSalle Street
Suite 1900
Chicago, IL 60601
(312) 368-2190

on this the 3rd day of July, 2007.

/s/ Julie Murphy Burnstein
Julie Murphy Burnstein