# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **GRAMERCY ADVISORS, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 07-CV-2809** |
| **CARLETON A. JONES, III and** ) | |
| **JOHN A. JONES,** ) | **Judge McKenna** |
| ) | **Magistrate Judge Peck** |
| **Defendants,** ) | |
| ) | |

---

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## MOTION TO DEFER MOTION FOR PARTIAL SUMMARY JUDGMENT
## OR, IN THE ALTERNATIVE, FOR TIME TO CONDUCT DISCOVERY

---

Winston S. Evans (WE 6081)
Thomas W. Shumate IV (TE 3160)
Evans, Jones & Reynolds, P.C.
1810 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2424
(615) 259-4685

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

REPLY TO "PRELIMINARY STATEMENT" AND TO "STATEMENT OF FACTS AND
       PROCEDURAL HISTORY" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     IN ORDER TO AVOID WASTEFUL AND UNNECESSARY LITIGATION
           EXPENSE, THE COURT SHOULD DEFER THE MOTION FOR
           PARTIAL SUMMARY JUDGMENT UNTIL AFTER THE COURT HAS
           RULED ON THE MOTION TO DISMISS, STAY OR TRANSFER . . . . . . . . 4

    II.    THE ISSUES PRESENTED IN THIS CASE ARE DUPLICATIVE OF THE
           ISSUES IN THE TENNESSEE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    III.   IN ORDER TO AVOID THE RISK OF INCONSISTENT JUDGMENTS
           AND THE BURDEN OF DUPLICATIVE LITIGATION, THIS COURT
           SHOULD DEFER THE MOTION FOR PARTIAL SUMMARY
           JUDGMENT UNTIL THE MIDDLE DISTRICT OF TENNESSEE HAS
           RULED ON WHETHER IT HAS JURISDICTION OVER GRAMERCY . . . . . 7

    IV.   THE FACT THAT GRAMERCY HAS CHALLENGED JURISDICTION IN
           THE TENNESSEE CASE DOES NOT PERMIT IT TO CIRCUMVENT
           THE FIRST-FILED RULE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

         A.    Absent Special Circumstances, Courts Will Apply the First-filed Rule
                Even When Personal Jurisdiction Has Been Challenged in the First-
                filed Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

         B.    PURSUANT TO THE SETTLED LAW OF THIS DISTRICT, THE
                MIDDLE DISTRICT OF TENNESSEE WILL DECIDE WHETHER
                GRAMERCY WILL BE PERMITTED TO PURSUE THIS CASE . . . . 12

         C.    FURTHERMORE, MESSRS. JONES HAVE ALREADY
                ESTABLISHED A COMPELLING CASE FOR JURISDICTION
                OVER GRAMERCY IN THE TENNESSEE CASE . . . . . . . . . . . . . . 14

    V.    IN THE ALTERNATIVE, THE COURT SHOULD ALLOW MESSRS.
           JONES TO CONDUCT DISCOVERY BEFORE RESPONDING TO THE
            MOTION FOR PARTIAL SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . 15

A.    Messrs. Jones should be allowed to conduct discovery on the issue of whether the Investment Management Agreements are enforceable . . . . . 15

B.    Even if the Investment Management Agreements are enforceable, Messrs. Jones should be allowed to conduct discovery on what amounts, if any, they are required to advance pursuant to those Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## **TABLE OF AUTHORITIES**

*Almagamated Cotton Garment & Allied Industries Fund v.*
    *J.B.C. Company of Madera, Inc.*, 608 F. Supp.  158 (W.D. Pa. 1984) . . . . . . . . . . . . . . 9

*Assicuraioni Generali v. Terranova*, 1984 WL 1191 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Auchincloss & Lawrence, Inc.*, SEC No-Action Letter,
    1974 SEC No-Act. LEXIS 1479 (Feb. 8, 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742 (S.D.N.Y. 1977) . . . . . . . . . . . 10

*Gresham Park v. Howell*, 652 F.2d 1227 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Heitman Capital Mgmt., LLC*, SEC No-Action Letter,
    2007 SEC No-Act. LEXIS 159 (Feb. 12, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Inland Mut. Ins. Co. v. Eastern Motor Lines,* 119 F.Supp. 344 (W.D.S.C. 1954) . . . . . . . . . . . 6

*Int'l Airport Centers v. Cetrin*, 455 F.3d 749 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F. Supp. 35 (E.D. Pa. 1983) . . . . . . . . . . . . . . . 10

*Jonathan-Forbes, Inc.*, SEC No-Action Letter,
    1972 SEC No-Act. LEXIS 1294 (Mar. 20, 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*MSK Ins., Ltd. v. Employers Reinsurance Corp.*, 212 F. Supp. 2d 266 (S.D.N.Y. 2002) . . . . . 13

*O'Hare v. Vulcan Capital, L.L.C.*, 2007 U.S. Dist. LEXIS 26218 (W.D.Tex. 2007) . . . . . . . . 12

*Pem America v. Lambert*, 2003 U.S. Dist. LEXIS 28153 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . 13

*Schnabel v. Ramsey Quantitative Systems, Inc.*, 322 F.Supp.2d 505 (S.D.N.Y. 2004) . . . . . . . 11

*Tavery v. U.S.*, 897 F.2d 1032 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*The Cadle Company v. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir. 1999) . . . . . . . . . . . 11

*Tiber Laboratories, LLC v. Cypress Pharmaceuticals, Inc.*,
    2007 U.S. Dist. LEXIS 54684 (N.D.Ga. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Transamerica Mortgage Advisers, Inc.*, 444 U.S. 11 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United Food & Commercial Workers' Local Union v. Food Employers'*
   *Council, Inc.*, 827 F.2d 519 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wall Street Money Mgmt Group, Inc.*, SEC No-Action Letter,
   1994 SEC LEXIS 2872 (Sept. 14, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Defendants, John A. Jones and Carleton A. Jones, III ["Messrs. Jones"], submit this reply memorandum in further support of their Motion to Defer Motion for Partial Summary Judgment or, in the Alternative, for Extension of Time to Conduct Discovery ["Motion to Defer"].

**REPLY TO "PRELIMINARY STATEMENT" AND TO
"STATEMENT OF FACTS AND PROCEDURAL HISTORY"**

Gramercy begins its response with a "Preliminary Statement" and a "Statement of Facts and Procedural History." What Gramercy has set forth in those parts of its response is largely irrelevant to the Motion to Defer. Nevertheless, we are compelled to respond because Gramercy has made several statements which are inaccurate or are flat wrong.

For example, Gramercy asserts that Messrs. Jones added it as an additional defendant in the Tennessee case "in an apparent effort to defeat BDO's arbitration rights." This is simply not true. Indeed, Messrs. Jones have not even raised the presence of Gramercy as a co-defendant in response to BDO's Motion to Compel Arbitration. *See*, Response of Plaintiffs Opposing Motion to Dismiss Filed by BDO Seidman, LLP, at pages 27-30. [Evans Suppl. Decl., Exh. 1][1]

Next, Gramercy states that the original Complaint in the Tennessee case asserted "claims sounding in negligence only." This is incorrect. The Complaint not only sought punitive damages but also asserted claims for breach of fiduciary duty, recklessness and gross negligence, and violation of the Tennessee Consumer Protection Act. *See*, Complaint in Tennessee case [Evans Suppl. Decl., Exh. 2].

---

[1]"Evans Suppl. Decl." refers to the Supplementary Declaration of Winston S. Evans which has been filed with this reply.

Next, Gramercy states that the Magistrate in the Tennessee case "refused to permit discovery on [Messrs. Joneses'] conspiracy theory of jurisdiction. . . ." This is misleading. In pertinent part, the Orders of the Magistrate provide as follows:

> The parties may take discovery on matters of general jurisdiction until September 10, 2007. Discovery may not be taken on the theory of jurisdiction by way of an alleged conspiracy between Gramercy and BDO Seidman. . . . Any contention that the Plaintiffs can establish jurisdiction over Gramercy by way of their conspiracy theory will not be taken up until the issue of traditional jurisdiction has been resolved.

Order filed July 9, 2007 [Evans Suppl. Decl., Exh. 3].

> The parties did conduct a brief discussion with the Magistrate Judge about his earlier discovery order. It was the Magistrate Judge's intention that discovery on jurisdiction would encompass the areas of jurisdiction and specific acts which would justify jurisdiction. Jurisdiction on the theory of conspiracy would be considered at a later date, if necessary. Of course, if jurisdiction is found without reference to the jurisdiction by conspiracy theory, discovery on allegations of conspiracy could be undertaken as part of the merits of the case.

Order filed August 7, 2007 [Evans Suppl. Decl., Exh. 4](emphasis supplied).

Thus, the Magistrate simply deferred the question of whether he would permit discovery on the theory of jurisdiction by conspiracy. He did not deny such discovery.

Next, BDO asserts that Messrs. Jones have made "a threadbare attempt to establish that Gramercy had conspired with BDO." Gramercy ignores compelling evidence which Messrs. Jones have already uncovered to support their conspiracy theory. See, Appendix A to Memorandum in Support of Motion to Dismiss, Stay or Transfer at pp. A-9 through A-19 [Docket Entry 11, Attachment 1]. In addition, BDO has now admitted that it secretly paid to Gramercy $300,000 of the fees which Messrs. Jones had paid to it. See, Amended Response and Objections of BDO to Interrogatory No. 1 in Tennessee case [Evans Suppl. Decl., Exh. 5]. This huge, undisclosed payment alone establishes the conspiracy. If Gramercy had simply been executing transactions without regard to tax ramifications (as its claims), what plausible reason could there have been for the $300,000

2

payment?  Why was it not sufficient for Gramercy simply to receive its usual management and incentive fees?[2]

Next, Gramercy asserts that Messrs. Jones were sophisticated investors who did not rely upon Gramercy for tax advice.  It is true that Messrs. Jones did not rely upon Gramercy for tax advice. *However, they did rely upon Gramercy to tell the truth*.  Instead of telling the truth, Gramercy lied to Messrs. Jones and concealed the fact that it would secretly split the consulting fees with BDO. *See*, Amended Complaint filed in Tennessee case at ¶¶94-99. [7/27/07 Petrella Decl., Exh. 2 (Docket Entry 21)].

Finally, Gramercy invokes certain provisions of the IMAs which (1) which purport to require Messrs. Jones to indemnify Gramercy except for "willful misconduct, gross negligence, a violation of applicable securities laws or criminal wrongdoing" and (2) which purport to limit or exclude liability of Gramercy for adverse tax consequences.  Such "hedge clauses" and exculpatory provisions violate the 1940 Investment Company Act.[3]  Furthermore, Gramercy fraudulently induced Messrs. Jones to sign the IMAs with those "hedge clauses" and exculpatory provisions.

---

[2]As a registered investment advisor, Gramercy was obligated to file a Form ADV with the Securities & Exchange Commission.  At page 7 of the Form ADV filed April 1, 2003, Gramercy represented that it received a "management fee" and a "performance based fee . . ." [6/19/07 Evans Decl., Exh. 12] (Docket Entry. 9, Attachment 15).  Query why Gramercy failed to disclose to the SEC the fact of the additional payment from BDO?

[3]A registered investment advisor, such as Gramercy, violates the 1940 Investment Company Act by including such "hedge clauses" in contracts with its clients.  *See, Heitman Capital Mgmt., LLC*, SEC No-Action Letter, 2007 SEC No-Act. LEXIS 159 (Feb. 12, 2007); *Wall Street Money Mgmt Group, Inc.*, SEC No-Action Letter, 1994 SEC LEXIS 2872 (Sept. 14, 1994); *Auchincloss & Lawrence, Inc.*, SEC No-Action Letter, 1974 SEC No-Act. LEXIS 1479 (Feb. 8, 1979); *Jonathan-Forbes, Inc.*, SEC No-Action Letter, 1972 SEC No-Act. LEXIS 1294 (Mar. 20, 1972). Contracts that violate section 206 are void and unenforceable under section 215 of the Investment Advisers Act. *Transamerica Mortgage Advisers, Inc.*, 444 U.S. 11, 19 (1979).

**ARGUMENT**

I.  **IN ORDER TO AVOID WASTEFUL AND UNNECESSARY LITIGATION EXPENSE, THE COURT SHOULD DEFER THE MOTION FOR PARTIAL SUMMARY JUDGMENT UNTIL AFTER THE COURT HAS RULED ON THE MOTION TO DISMISS, STAY OR TRANSFER.**

As explained in the initial Memorandum of Messrs. Jones, the Motion for Partial Summary Judgment will be rendered moot if the Motion to Dismiss, Stay or Transfer ["Motion to Stay"] is granted. Messrs. Jones should not be required to incur the expense of responding to that Motion for Partial Summary Judgment even if there is only a possibility that it will be rendered moot.[4] For this reason alone, the Motion to Defer should be granted. In its response, Gramercy has not even attempted to respond to this. Indeed, Gramercy cannot respond to this argument because the argument is sound and its logic is irrefutable.

In an attempt to detract from this glaring deficiency in its response, Gramercy has addressed the merits of the Motion to Stay and the Motion for Partial Summary Judgment. In essence, Gramercy asks the Court to prejudge the merits of those motions and **assume** that Gramercy will prevail on both of those motions. Respectfully, the Court should not prejudge the merits of either of those motions or make any assumption as to which party will prevail on either of those motions. Instead, the Court should address the merits of the motion which is now before it, *i.e.,* the Motion to Defer.

Finally, the ultimate goal of Gramercy is to have the Motion to Stay and the Motion for Partial Summary Judgment briefed and decided at the same time. As already stated, this will cause

---

[4]Gramercy will undoubtedly wish to file a reply brief in support of its Motion for Partial Summary Judgment. It makes no sense for Gramercy to incur the expense of preparing that reply brief as long as there is the possibility that the Motion might be rendered moot.

unnecessary burden and expense because the Motion for Partial Summary Judgment will be rendered moot if the Motion to Stay is granted (whether by dismissal, stay or transfer to the Middle District of Tennessee).  Furthermore, Gramercy will suffer no harm or prejudice if this Court decides the Motion to Stay first, rather than decide both motions at the same time.  This lack of prejudice or harm to Gramercy is still more reason why the Motion to Defer should be granted.

## II.     THE ISSUES PRESENTED IN THIS CASE ARE DUPLICATIVE OF THE ISSUES IN THE TENNESSEE CASE.

As more fully explained at pages 1-3, and 13-14 of Messrs. Jones' Memorandum Supporting Motion to Dismiss, Stay, or Transfer [DE #12] the matters placed at issue in this case are identical to the matters already at issue in the Tennessee Case.[5]  Indeed, the Tennessee Case includes a claim for declaratory judgment on precisely the same issues as are raised in this case.

In response, Gramercy asserts that Messrs. Jones "raced to the courthouse" and filed their claim for declaratory judgment "as a tactical gambit to preempt the present action."  That is simply not true.  There was no "race to the courthouse."  Indeed, Gramercy did not have any claims to assert against Messrs. Jones until they filed the Amended Complaint in the Tennessee Case.  If that Amended Complaint had not been filed in the Tennessee Case, this suit could not and would not have ever been filed.  Thus, the filing of the Tennessee Case could not possibly have been the result of a race to the courthouse.

Messrs. Jones asserted the claim for declaratory judgment because it would involve the same issues and evidence which must be presented in connection with the other claims in the Tennessee Case.  They wished to avoid having those issues and evidence presented in separate lawsuits.

---

[5]For the sake of brevity, we will not repeat that explanation here.  Instead, we incorporate those pages by reference.

Therefore, they included the claim for declaratory judgment in order to avoid a multiplicity of actions. As is well settled, this is a proper purpose of suits for declaratory judgments.

> . . .Indeed, the very purpose of a declaratory judgment is to avoid multiplicity of lawsuits, Crosby Corp. v. Hazeltine Corp., 122 F.2d 925, 930 (3d Cir. 1941), and piecemeal litigation, Savini v. Sheriff on Nassau County, 209 F. Supp. 946, 950 (E.D.N.Y. 1962), by providing a method for settlement of a controversy in its entirety. Shannon v. Sequeechi, 365 F.2d 827, 829 (10th Cir. 1966), cert. denied, 386 U.S. 481 (1967).

*Assicuraioni Generali v. Terranova*, 1984 WL 1191 (S.D.N.Y.) (emphasis supplied).

> The United States Supreme Court, as well as the Circuit Court of Appeals for the Fourth Circuit, has held that the purpose of the Declaratory Judgment Act is to avoid trying cases piecemeal and to afford an adequate, expedient and inexpensive remedy for declaring the rights and obligations of litigants in one action. [numerous citations omitted].

*Inland Mut. Ins. Co. v. Eastern Motor Lines,* 119 F.Supp. 344 (W.D.S.C. 1954) (emphasis supplied).

*See also, United Food & Commercial Workers' Local Union v. Food Employers' Council, Inc.*, 827 F.2d 519, 524 (9th Cir. 1987) ("Declaratory Judgment Act . . . helps avoid multiplicity of actions . . . [citation omitted].").

Even if the claim for declaratory judgment had not been filed in the Tennessee Case, the issues in the two cases would still have been duplicative.  This is because Gramercy's claims in this case, including its claim for advancement, are predicated on those provisions of the IMAs which provide for indemnity and advancement of fees.   Messrs. Jones have asserted in both the Tennessee Case and in this case, that Gramercy fraudulently induced them to sign the IMAs.  If a court determines that Gramercy fraudulently induced Messrs. Jones to sign the IMAs, then the IMAs are unenforceable. If the IMAs are unenforceable, then their provisions which purport to require advancement and indemnity are likewise unenforceable.   Thus, neither Gramercy's claim for advancement nor its claim for indemnity can be determined until a court has first determined whether

Gramercy defrauded Messrs. Jones.  Of course, the issue of whether Gramercy defrauded Messrs.

Jones is at the heart of the Tennessee Case.   That issue would be at the heart of the Tennessee Case

even if Messrs. Jones had not included their claim for declaratory judgment.

Gramercy has cited *Int'l Airport Centers v. Cetrin*, 455 F.3d 749 (7th Cir. 2006) for the

proposition that the claim of fraudulent inducement is of no import to Gramercy's claim for

advancement.  That case is inapposite because fraudulent inducement was not even at issue in that

case.  Indeed, the Seventh Circuit expressly stated that the only issue in the suit for advancement was

the *applicability* of the advancement clause. 455 F.3d at 751.

### III.    IN ORDER TO AVOID THE RISK OF INCONSISTENT JUDGMENTS AND THE BURDEN OF DUPLICATIVE LITIGATION, THIS COURT SHOULD DEFER THE MOTION FOR PARTIAL SUMMARY JUDGMENT UNTIL THE MIDDLE DISTRICT OF TENNESSEE HAS RULED ON WHETHER IT HAS JURISDICTION OVER GRAMERCY.

Until and unless the Middle District of Tennessee decides that it does not have personal

jurisdiction over Gramercy, the parties and the Federal Courts will be subject to the unnecessary

burden of duplicative litigation in the Southern District of New York and the Middle District of

Tennessee.  In order to minimize (if not eliminate) this burden, the Motion for Partial Summary

Judgment should be deferred until the Middle District of Tennessee has determined whether it has

personal jurisdiction over Gramercy.[6]

In response, Gramercy argues that the Middle District of Tennessee likely will have

dismissed the Tennessee Case for lack of jurisdiction over Gramercy before "Gramercy's

indemnification claim is to be adjudicated by this Court."  Gramercy's argument is flawed because

it *assumes* that the Middle District of Tennessee will dismiss the Tennessee case for lack of

---

[6]Indeed, we submit that the reasonable and logical solution is simply to stay this case pending the ruling by the Middle District of Tennessee on whether it has personal jurisdiction over Gramercy.

jurisdiction.  If Gramercy's *assumption* proves to be incorrect, then time and expense incurred by the parties and this Court in this case will have been all for naught.

There is also the risk of inconsistent judgments and rulings if this Court does not defer the Motion for Partial Summary Judgment until after the Middle District of Tennessee has ruled on whether it has jurisdiction over Gramercy.[7]  In order to avoid the risk of such inconsistent judgments and rulings, this Court should defer the Motion for Partial Summary Judgment until the Middle District of Tennessee has decided whether it has jurisdiction over Gramercy.

In response, Gramercy argues that res judicata and collateral estoppel will protect the parties from this risk of inconsistent rulings and judgments.  For several reasons, we disagree.

To begin, collateral estoppel and res judicata apply only to final judgments, not to interlocutory rulings.  *See*, *Gresham Park v. Howell*, 652 F.2d 1227, 1242-1243 (5th Cir. 1981) which held that issue preclusion did not arise from a permanent injunction issued by a state court. Although an appeal could have been taken within the state-court system, the trial-court proceedings remained open on the issue of damages and the damage litigation "easily could lead to a modification or vacating of the injunction." Thus, the decision thus could not be considered final even under "the most liberal federal test."

---

[7] If this case were allowed to proceed prior to that ruling, judicial chaos in the form of inconsistent rulings and judgments could result.  For example, there could be inconsistent rulings on discovery matters. There could also be other inconsistent rulings on other pre-trial motions, such as the motion for partial summary judgment which Gramercy has just filed. This Court might find that the IMAs are unenforceable so that Gramercy would not be entitled to indemnity.  Conversely, the Middle District of Tennessee might then find that the IMAs are enforceable and order indemnity. Alternatively, the Middle District of Tennessee might find that the indemnity provisions simply do not apply to the facts of this case whereas this Court might find to the contrary.  In any of these situations, judicial chaos would result.

In this case, it will be necessary to prosecute extensively, if not to final judgment, both this case and the Tennessee Case in order to obtain a ruling which would be sufficiently final to operate as res judicata or collateral estoppel.  Of course, doing so would require the parties and the Federal Courts to be burdened with the time, effort and expense of duplicative litigation.

Further, any rulings which are made by this Court or the Middle District of Tennessee and which are subsequently vacated or reversed on appeal will not be given effect for claim res judicata or collateral estoppel.  *Tavery v. U.S.*, 897 F.2d 1032, 1033 (10th Cir. 1990); *Almagamated Cotton Garment & Allied Industries Fund v. J.B.C. Company of Madera, Inc.*, 608 F. Supp. 158, 163 (W.D. Pa. 1984)("[J]udgment that has been reversed on appeal is thereby deprived of all conclusive effect for purposes of both *res judicata* and collateral estoppel. [citations omitted]").  Thus, it is simply not possible to know whether any rulings by this Court or the Middle District of Tennessee can be given res judicata or collateral estoppel effect until a final judgment has been rendered and appeals have been exhausted. In the meanwhile, the parties and the Federal Courts will continue to be burdened with the time, effort and expense of duplicative litigation.

There are still more problems.   For example, will this Court be willing to apply rulings on discovery issues which are made by the Middle District of Tennessee?   Will the Middle District of Tennessee be willing to apply such rulings which are made by this Court?

What if the Middle District of Tennessee and this Court make conflicting rulings on the question presented by the Motion for Partial Summary Judgment (whether Gramercy is entitled to advancement of fees) but appeals are filed from each of those rulings.  We would then have the bizarre situation of simultaneous appeals involving the same parties and the same issues before the Second Circuit and the Sixth Circuit. If the Sixth Circuit rules first, would that ruling govern and render moot the appeal before the Second Circuit?  What if the Middle District of Tennessee issues

9

a ruling which is ultimately reversed on appeal?  Would this Court be required to follow the ruling of the Middle District of Tennessee until that ruling is reversed on appeal?  In order to avoid such judicial chaos, all matters must be determined in one court.   For this reason alone, this Court should defer the Motion for Partial Summary Judgment until the Middle District of Tennessee has decided whether it has jurisdiction over Gramercy.

Finally, Gramercy asserts that BDO's motion to compel Messrs. Jones to arbitrate their claims against BDO will be granted.  Based on this, Gramercy asserts that the litigation among Messrs. Jones, Gramercy and BDO "likely will be fragmented anyway."  Here again, Gramercy asks the Court to *assume* what will be a ruling of the Middle District of Tennessee in the first-filed action. It is true that BDO has successfully forced many other clients to arbitrate claims similar to those asserted by Messrs. Jones.   *However*, Tennessee follows the minority view which recognizes fraudulent inducement as a defense to arbitration and Messrs. Jones have asserted that defense.[8] Messrs. Jones have not been able to find a single case in which this defense to arbitration has been asserted against BDO in a jurisdiction which follows the minority view.

## IV.     THE FACT THAT GRAMERCY HAS CHALLENGED JURISDICTION IN THE TENNESSEE CASE DOES NOT PERMIT IT TO CIRCUMVENT THE FIRST-FILED RULE.

### A.     Absent Special Circumstances, Courts Will Apply the First-filed Rule Even When Personal Jurisdiction Has Been Challenged in the First-filed Case.

Citing *Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F. Supp. 35, 36-37 (E.D. Pa. 1983) and *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 748 (S.D.N.Y. 1977), Gramercy contends that a court should exercise its discretion and not apply the first-filed rule when personal

---

[8]*See*, Response of Plaintiffs Opposing Motion to Dismiss Filed by BDO Seidman, LLP, at pages 27-28. [Evans Suppl. Decl., Exh. 1]

jurisdiction has been challenged in the first court.[9]  This contention is flawed because such a challenge to jurisdiction is only a factor which <u>may</u> be considered in determining whether there are special  circumstances which militate against application of the first-filed rule.[10]  *See*, *The Cadle Company v. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir. 1999) in which Cadle contended that the district court should have applied the first-filed rule only if it first determined that personal jurisdiction was proper in the court where suit had first been filed.  The Fifth Circuit rejected this argument and distinguished the cases which Gramercy has cited, explaining as follows:

> Jefferson Ward's analysis of the first-to-file rule, however, is unpersuasive. The court's decision to consider the jurisdiction of the first-filed court sprang from *Columbia Pictures Industries, Inc. v. Schneider,* **[\*605]** *435 F. Supp. 742 (S.D.N.Y. 1977).*  .  .
>
>  <u>Subsequent case law, uncited by Cadle, casts the Jefferson Ward and Columbia Pictures decisions in the appropriate light. While the likelihood of a jurisdictional dispute in the first-filed court may be a factor to consider in applying the rule, resolving the dispute in favor of that court's jurisdiction is never a condition precedent to applying it.</u> See *Berisford Capital Corp. v. Central States, Southeast and Southwest Areas Pension Fund, 677 F. Supp. 220 (S.D.N.Y. 1988)* ("I would not conclude at this time in the 'sound discretion' allotted to me in this matter that [jurisdictional uncertainty in the first filed court], standing virtually alone, should be so compelling as to cause me to depart from the well established and **[\*\*18]** salutary first-filed rule."); *Brower v. Flint Ink Corp., 865 F. Supp. 564, 570 (N.D. Iowa 1994)* (noting that Berisford "rejected the suggestion that jurisdictional uncertainties standing alone should be so compelling as to cause the court to depart from the 'first filed rule.'"); Firstier Bank, N.A. v. G-2 Farms, 1996 U.S. Dist. LEXIS 14160, No. 95-3118, 1996 WL 539217, at \*4 (D. Neb. Mar. 11, 1996) (noting that a jurisdictional dispute is only one factor to consider).
>
> . . .

---

[9]This contention does not address the merits of the Motion to Defer.  Rather, it goes to the merits of the Motion to stay.

[10] " 'There is a strong presumption in favor of the forum of the first-filed suit.' [citations omitted].  '<u>The party opposing application of the first-filed doctrine has the burden to show that special circumstances justify an exception.</u>' [citations omitted]." *Schnabel v. Ramsey Quantitative Systems, Inc.*, 322 F.Supp.2d 505, 510 (S.D.N.Y. 2004)(Peck, Magistrate Judge)

In sum, Cadle's view of the first-to-file rule is supported by neither the policies behind the rule nor the cases that apply it. While the jurisdictional certainty of the first-filed court might be a proper factor for a district court to weigh in maximizing judicial economy, Cadle does not allege that the court below erred in this respect. Nor could it: the district court in this case was the second-filed court, and under Fifth Circuit precedent that balancing act is reserved only for the first-filed court. "Once the likelihood of a substantial overlap between the two suits has been demonstrated, it [is] was no longer up to the [second filed court] to resolve **[**19]** the question of whether both should be allowed to proceed." Mann, 439 F.2d at **[*606]** 407. The district court correctly refused to act as a "super appellate court" by entertaining either Cadle's jurisdiction or the defendants' standing arguments, and properly limited its inquiry to the potential overlap between the two cases. By so limiting its analysis, the district court indeed avoided trenching on the authority of its sister court, one of "the very abuses the first-to-file rule is designed to prevent." . . .

174 F.3d at 605-606 (emphasis supplied).

For other cases which have applied the first-filed rule, notwithstanding a challenge to jurisdiction in the court where suit was first filed, *see, O'Hare v. Vulcan Capital, L.L.C.*, 2007 U.S. Dist. LEXIS 26218 (W.D.Tex. 2007) ("'While the likelihood of a jurisdictional dispute in the first-filed court may be a factor to consider in applying the rule, resolving the dispute in favor of that court's jurisdiction is never a condition precedent to applying it.'[citation omitted]. . . . 'Jurisdictional uncertainties, standing alone, must be compelling to cause a court to depart from the first-to-file rule.' [citations omitted]"); *Tiber Laboratories, LLC v. Cypress Pharmaceuticals, Inc.*, 2007 U.S. Dist. LEXIS 54684 (N.D.Ga. 2007)(second-filed court transferred action to first-filed court even though the defendant in first-filed action had, *inter alia*, failed to allege personal jurisdiction adequately).

   B.    **PURSUANT TO THE SETTLED LAW OF THIS DISTRICT, THE MIDDLE DISTRICT OF TENNESSEE WILL DECIDE WHETHER GRAMERCY WILL BE PERMITTED TO PURSUE THIS CASE.**

   Even more importantly, Gramercy's challenge to personal jurisdiction is simply irrelevant to the motions which are pending before this Court.  This is because the settled law of this District

requires that the Middle District of Tennessee determine whether Gramercy will be permitted to pursue this later filed action. *See, Pem America v. Lambert*, 2003 U.S. Dist. LEXIS 28153 (S.D.N.Y.) in which Lambert filed suit in the Northern District of Illinois against Pem America for a declaratory judgment. Three days later, Pem America filed a similar lawsuit in the Southern District of New York against Lambert for declaratory judgment. Each party then moved to stay the respective action in which it had been named as a defendant. Stating as follows, Judge Keenan transferred the New York action to the suspense docket pending a determination by the Northern District of Illinois as to which action would be allowed to proceed:

> In order to avoid conflict and confusion, the courts of this district, guided by Second Circuit case law, have adopted the bright-line rule that the court in which the first action was filed has the right and responsibility to decide whether the first filed rule or an exception thereto applies. *See MSK Ins., Ltd. v. Employers Reinsurance Corp., 212 F. Supp. 2d 266, 267 (S.D.N.Y. 2002);* **[*7]** *Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 54 n.2 (S.D.N.Y. 2001); Invivo Research, Inc. v. Magnetic Resonance Equip. Corp., 119 F. Supp. 2d 433, 440 (S.D.N.Y. 2000); Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 557 n.4 (S.D.N.Y. 2000); Ontel Prods., 899 F. Supp. 2d at 1150 n.9.* Although this bright-line rule is largely identical to and rooted in the first filed rule, it does not provide for any special exceptions. It is a straight-forward rule to be applied in a rote manner.

(emphasis supplied).

*And see, MSK Ins., Ltd. v. Employers Reinsurance Corp.*, 212 F. Supp. 2d 266, 267 (S.D.N.Y. 2002) in which the first suit was filed in the District of Kansas and the second suit was filed in the Southern District of New York. The Southern District of New York stayed the New York case pending ruling by the District Court of Kansas on which suit would be allowed to proceed.

For this reason alone, this Court need not consider the fact that Gramercy has challenged jurisdiction in Tennessee. Pursuant to the bright-line rule of this district, it should simply stay this action pending rulings from the Middle District of Tennessee. This Court need look no further.

## C. FURTHERMORE, MESSRS. JONES HAVE ALREADY ESTABLISHED A COMPELLING CASE FOR JURISDICTION OVER GRAMERCY IN THE TENNESSEE CASE.

As explained, Gramercy's challenge to jurisdiction in the Tennessee case is simply irrelevant to the motions which are pending before this Court, including the motion which is now before the Court, *i.e.*, the Motion to Defer. Nevertheless, Gramercy has argued in its response that the Middle District of Tennessee lacks jurisdiction over it. Therefore, we are compelled to respond.

Gramercy states that Messrs. Jones predicate jurisdiction over Gramercy in the Middle District of Tennessee on only the following two theories: (1) Gramercy committed a tort outside Tennessee which has caused injury within Tennessee and (2) jurisdiction by conspiracy with BDO. This is incorrect. Messrs. Jones also predicate jurisdiction on the traditional theory of minimum contacts. Such "minimum contacts" which Messrs. Jones have already discovered should be more than sufficient to constitute the required "minimum contacts." *See*, **Supplementary Appendix A** filed with this Memorandum.[11]

To support its argument against personal jurisdiction in Tennessee, Gramercy has incorporated briefs which it has filed in the Tennessee Case. For response to these arguments of Gramercy, we incorporate **Appendix A** to Messrs. Jones' Memorandum in Support of Motion to Dismiss, Stay or Transfer [Docket Entry 11, Attachment 1] and **Supplementary Appendix A** filed with this Memorandum.

---

[11]Indeed, Messrs. Jones are conducting jurisdictional discovery in the Tennessee Case only out of an abundance of caution.

14

## V.   IN THE ALTERNATIVE, THE COURT SHOULD ALLOW MESSRS. JONES TO CONDUCT DISCOVERY BEFORE RESPONDING TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT.

### A.   Messrs. Jones should be allowed to conduct discovery on the issue of whether the Investment Management Agreements are enforceable.

Gramercy's Motion for Partial Summary Judgment seeks to have Messrs. Jones advance the fees which Gramercy incurs in defending itself against the claims of Messrs. Jones. Gramercy insists that its rights to advancement of those fees is not dependent upon whether its conduct is ultimately found to be within the scope of the indemnity provisions.[12]   Based on this, Gramercy reasons that any discovery which Messrs. Jones wish to conduct is irrelevant to the advancement of fees. It insists that Messrs. Jones must advance the fees at this time, subject to refund if the Court later determines that the actions of Gramercy constituted "willful misconduct, gross negligence, a violation of applicable securities laws or criminal wrongdoing."

Gramercy's argument is flawed because it *assumes* that the IMAs (which contain the provisions for indemnity and advancement of fees) are enforceable.  If the IMAs are *un*enforceable, Messrs. Jones cannot be required to advance fees or to pay any other amounts to Gramercy pursuant to the IMAs.  Therefore, the Court must first determine the threshold issue of whether the IMAs are enforceable.  If it determines that Messrs. Jones were fraudulently induced to enter the IMAs, then the IMAs are unenforceable.  If the IMAs are unenforceable, then the provisions which purport to require indemnity and the advancement of fees, are likewise unenforceable.

Reduced to its essence, Gramercy's argument is this: Notwithstanding the fact that Gramercy fraudulently induced Messrs. Jones to sign the IMAs, it may still enforce the IMAs against them.

---

[12]The IMAs exclude indemnity for conduct which is  "willful misconduct, gross negligence, a violation of applicable securities laws or criminal wrongdoing."

Thus, an investor whom Gramercy defrauded into signing an IMA containing the indemnity provisions could not bring a lawsuit against Gramercy without first advancing to Gramercy the attorney fees which Gramercy would incur in defending claims arising from its own fraud. Stated simply, the investor would be required to advance the attorney fees which Gramercy would incur as a result of its own fraud. This defies logic and common sense.

### B.    Even if the Investment Management Agreements are enforceable, Messrs. Jones should be allowed to conduct discovery on what amounts, if any, they are required to advance pursuant to those Agreements.

In their initial memorandum, Messrs. Jones explained why they should be permitted to conduct discovery on the amount of fees which Gramercy demands that they advance to it. This includes the amount of those fees, the reasonableness of the fees, and the contractual limitations on the amount of fees for which Gramercy can seek advancement or indemnity.[13] Because Gramercy claims that it incurred more than $250,000 of attorney fees in less than two months, Messrs. Jones are also entitled to inquire into whether these fees are legitimate. Indeed, Messrs. Jones suspect that Gramercy is taking an overly broad interpretation of the IMAs to arrive at the conclusion that more than $250,000 of its attorney fees have been incurred as a result of the suit by Messrs. Jones.

In response, Gramercy argues that no discovery should be permitted on this issue. This argument is untenable. To require Messrs. Jones to pay more than $500,000 but not to permit them to take discovery to determine the validity of that amount would be a denial of due process. [14]

---

[13]The IMAs limit the advancement and indemnity provisions to the amount of management and incentive fees which Messrs. Jones have paid to Gramercy.

[14]Indeed, to accept Gramercy's argument would be to hold that defendants can take discovery on liability but not on damages. This makes no sense.

Finally, Gramercy cites an order of the Southern District of New York in *Gramercy Advisors, LLC v. Kenneth R. Thompson* [Docket 05-9385] in support of its position. However, that order does not even consider the issue for which it has been cited; *i.e.*, whether discovery should be permitted in order to determine the reasonableness or amount of fees a defendant should be required to advance.[15]

<u>**CONCLUSION**</u>

For the reasons stated, the Motion for Partial Summary Judgment should be deferred until after the Court has ruled on the Motion to Stay. In the alternative, Messrs. Jones should be granted leave to conduct discovery as requested.

Respectfully submitted,

s/ Winston S. Evans
Winston S. Evans (WE 6081)
Thomas W. Shumate IV (TE 3160)
Evans, Jones & Reynolds, P.C.
1810 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2424
(615) 259-4685

*Attorneys for Defendants*

---

[15]It should also be noted that Gramercy and the defendant in that lawsuit agreed to arbitrate the dispute between them. As a result, the case was dismissed. *See*, Evans Suppl. Decl., Exh. 6. This is further reason why that lawsuit cannot be cited by Gramercy in support of its position.

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing **REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DEFER MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR TIME TO CONDUCT DISCOVERY** has been served via **Electronic Transmission** and **Federal Express** upon:

Michael Edward Petrella, Esq.
O'Shea Partners, LLP
90 Park Avenue, 20th Floor
New York, NY 10016

Richard D. Meadow, Esq.
The Lanier Law Firm, PLLC
126 East 56th Street, 6th Floor
New York, NY 10022

and via **Federal Express** upon:

Hon. Lawrence M. McKenna, District Judge
United States Courthouse
500 Pearl St., Room 1640
New York, NY 10007

this 20th  day of August,  2007.

s/ Winston S. Evans                              

361400.047

18