**SUPPLEMENTARY APPENDIX A
IN SUPPORT OF MOTION TO DEFER MOTION FOR PARTIAL SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, FOR TIME TO CONDUCT DISCOVERY**

I. **MESSRS. JONES ASSERT JURISDICTION OVER GRAMERCY IN THE TENNESSEE CASE PURSUANT TO T.C.A. §§ 20-2-214(6) AND 20-2-225. THOSE STATUTES CONFER JURISDICTION TO THE FULL EXTENT ALLOWED UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT**

Gramercy asserts that Messrs. Jones must assert jurisdiction over it in the Tennessee Case pursuant to T.C.A. §20-2-223(a)(4) which would require Messrs. Jones to show that Gramercy "regularly does or solicits business in Tennessee." This is flat wrong because that statute provides for long-arm jurisdiction in only certain limited circumstances. It is narrower than T.C.A. §2-2-214(6) which provides for long-arm jurisdiction on "any basis not inconsistent with the constitution of [Tennessee] or of the United States." This latter statute "confers jurisdiction to the full extent allowable under the Due Process Clause of the Fourteenth Amendment."*Hi Fi Corner, Inc. v. Inflight Cinema International, Inc.*, 505 F. Supp. 12, 14 (M.D. Tenn. 1980). It is pursuant to this latter statute which Messrs. Jones invoke for jurisdiction over Gramercy in the Tennessee Case.

Messrs. Jones also invoke T.C.A. §20-2-225 which was enacted in 1997 and provides as follows:

> **20-2-225. Other bases of jurisdiction unaffected - Jurisdiction whenever permitted by constitution.**
>
> A court of this state may exercise jurisdiction:
>
> (1) On any other basis authorized by law; or
>
> (2) Any basis not inconsistent with the constitution of this state or of the United States.

(underlining supplied).

Thus, it is clear that Messrs. Jones are not limited to the provisions of T.C.A. §20-2-223(a)(4). They may also invoke jurisdiction over Gramercy to the full extent allowed by due process. As the Middle District of Tennessee of Tennessee recently emphasized in *Kelley v. International Capital Resources*, 231 F.R.D. 502, (M.D.Tenn. 2005):

> . . . The Tennessee long-arm statute has been interpreted to extend to the limits of due process. n9 *See Bridgeport* **[*510]** *Music, 327 F.3d at 477*; *see also Neal v. Janssen, 270 F.3d 328, 331 (6th Cir. 2001)*; **[**20]** *Masada Inv. Corp. v. Allen, 697 S.W.2d 332, 334 (Tenn. 1985)*. Therefore, the court need only address whether exercising personal jurisdiction over the defendants is consistent with federal due process requirements.

231 F.R.D. at 509-510 (emphasis supplied).

Likewise, the Middle District of Tennessee need only determine whether its exercise of jurisdiction over Gramercy is consistent with federal due process.

**II.    MESSRS. JONES HAVE ALREADY ESTABLISHED A COMPELLING BASIS FOR JURISDICTION OVER GRAMERCY UNDER THE TRADITIONAL "MINIMUM CONTACTS" THEORY.**

Messrs. Jones have already established a compelling basis for jurisdiction over Gramercy under the traditional "minimum contacts" theory. The documents and contracts between Messrs. Jones and Gramercy, including the Investment Management Agreements ["IMAs"], were prepared by Gramercy and sent to Messrs. Jones in Tennessee. Messrs. Jones signed those documents in Tennessee.

Next, the IMA's specified that the initial term of those agreements would be one year and would automatically renew for additional annual terms. Further, those agreements continued in effect for more than four years. Thus, this was not the proverbial "one shot" transaction. It was a significant commercial transaction which created continuing obligations.

Next, the IMA's specified that Messrs. Jones would invest a total of $2,400,000 to be managed by Gramercy. As required by the IMAs, Messrs. Jones invested approximately this amount for management by Gramercy. This alone demonstrates that Gramercy's dealing with Messrs. Jones was a significant commercial transaction.

During the time that Gramercy has managed investments for Messrs. Jones, it has sent monthly statements to Messrs. Jones in Tennessee. It has also conducted telephonic conference calls on a regular basis with its investors, including Messrs. Jones in Tennessee. Messrs. Jones participated from Tennessee in several of those conference calls. Thus, Gramercy has sent numerous communications to Tennessee and has done that on a continuing and systematic basis.

During those same years, Gramercy has received substantial fees for managing the accounts of Messrs. Jones. Those fees exceed $350,000.[1] *This is in addition to $300,000 of fees which Messrs. Jones paid to BDO but which BDO secretly paid to Gramercy.*[2] Thus, it appears that Gramercy received more than $650,000 from its dealings with Messrs. Jones who are residents of Tennessee.

Finally, Gramercy sent brochures to Carleton Jones and John Jones in Tennessee in 2005, soliciting them for investments in three other funds which are managed by it. This further demonstrates that Gramercy has purposely availed itself of the privilege of doing business in

---

[1] The statements which Gramercy sent to Messrs. Jones for the period prior to March 31, 2004 do not reveal the amount of fees which Gramercy charged to their accounts. The statements for the period April 1, 2004 through December 31, 2006 reveal that Gramercy charged $253,397 in fees during those months alone.

[2] Amended Response and Objections of BDO to Interrogatory No. 1 in Tennessee case [Evans Suppl. Decl., Exh. 5 ].

Tennessee.³

These facts establish a compelling basis for jurisdiction in Tennessee based on the traditional "minimum contacts" theory of jurisdiction and the *Mohasco* test.  To begin, the first part of the *Mohasco* test is that the defendant must purposefully avail himself of the privilege of acting in the forum state <u>or causing a consequence in the forum state</u>.  When a defendant enters a contract with a citizen of the forum state, this "purposeful availment" test is satisfied.

> Purposeful availment is "something akin to a deliberate **[*511]** undertaking to do or cause an act or thing to be done [in the forum state] <u>or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state]</u>, something more than a passive availment of the [forum state's] opportunities." *Bridgeport Music, 327 F.3d at 478* (quoting *Neogen, 282 F.3d at 891*) (alteration in original).

*Kelley v. International Capital Resources*, supra 231 F.R.D. at 510, 511 (emphasis supplied).

> Thus where the defendant "deliberately" has **[*476]** engaged in significant activities within a State, *Keeton v. Hustler Magazine, Inc., supra, at 781*, <u>or has created "continuing obligations" between himself and residents of the forum</u>, *Travelers Health Assn*. v. *Virginia, 339 U.S., at 648*, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King v. Rudzewicz*, 471 U.S. 462, 475-476, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528, 543 (1985)(emphasis supplied).

Thus, the continuing obligations which Gramercy established with Messrs. Jones in Tennessee are sufficient to satisfy the "purposeful availment" requirement.  Further, it is of no consequence that an agent or employee of Gramercy did not physically enter Tennessee.

> <u>Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State</u>.  Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that

---

³All of this is *in addition to* the fact that Gramercy committed tortious acts which caused injury to be sustained within Tennessee.

> a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.[citations omitted].

*Id.,* 471 U.S. at 476, 105 S. Ct. at 2184, 85 L. Ed. at 543(emphasis supplied).

Even if the plaintiff solicited a non-resident defendant for a contract, that fact is immaterial where the non-resident defendant purposefully chooses to deal with the plaintiff. *Kelley v. International Capital Resources*, 231 F.R.D. at 511.

> With such view of the "purposeful action" requirement in mind, this Court in *Southern Machine* elaborated on that requirement in terms of the "transacting any business" clause **[\*\*17]** of a long-arm statute. In this Circuit one has "acted" so as to transact business in a state "when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state." Such "acts" become purposeful if the defendant "should have reasonably foreseen that the transaction would have consequences in that state." *401 F.2d 374, 382-383*.
>
> In some cases, meeting this requirement may pose the most difficult challenge of all for a plaintiff seeking to establish jurisdiction over a non-resident defendant. Here, however, it seems clear that the defendant acted in such a manner. **[\*227]** Van Dusen entered into contract negotiations involving a substantial order for the manufacture of goods with a firm which it necessarily knew was based in Ohio and had its production facilities located within that State. That the making (and breaking) of a contract with the Plaintiff would have substantial consequences with the State of Ohio is a reality of which Defendant could not have been ignorant. *See*, Comment "Long Arm **[\*\*18]** and Quasi In Rem Jurisdiction" *supra, n. 11 at 322-25. Cf. Jack O'Donnell Chevrolet, Inc. v. Shankles, 276 F. Supp. 998 (N.D.Ill.1967).*
>
> The making of a substantial business contract with a corporation based in another jurisdiction has been held to be adequate to satisfy the requirements of the "purposeful" test of *Southern Machine. See Simpson Timber Co. v. Great Salt Lake Minerals and Chemicals Corp., 296 F. Supp. 243 (D.Or.1969).*

*In-flight Devices Corporation v. VanDusen Air, Inc.*, 466 F.2d. 220, 226-227 (6th Cir. 1972)(emphasis supplied).

Likewise, Gramercy satisfied the "purposeful availment" requirement when it entered the contracts with Messrs. Jones. That making those contracts, breaking those contracts, or both, "would have substantial consequences within [Tennessee] was a reality of which [Gramercy] could not have been ignorant."

> . . . Even a single act by a defendant deliberately directed toward a Tennessee resident that gives rise to cause of action can support a finding of purposeful availment and meet the due process requirement of minimum contacts. *McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957)*; *Youn, 324 F.3d at 419*; *Neal, 270 F.3d at 331.*

*SSM Industries v. Fairchild Apparel Group, Inc.*, 2004 U.S. Dist. LEXIS 906 (E.D.Tenn. 2004) at *17.

> *Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998)* (when nonresident defendant chose to transact business by negotiating **[*25]** and executing a contract via telephone calls and mail to an Ohio resident, defendant purposefully availed himself of the Ohio forum by creating a continuing contractual obligation in Ohio);*Advanced Polymer, 34 F. Supp2d at 600-02*.

*Id.* at *24-*25.

*See also*, *Milan Express, Inc. v. Missie, Inc.*, 575 F.Supp. 931, 934 (W.D. Tenn. 1983)(making contract with business in Tennessee gave sufficient minimum contacts for jurisdiction even though defendant never entered Tennessee).

Clearly, the "purposeful availment" part of the *Mohasco* test has been satisfied.

The second part of the *Mohasco* test is that the plaintiff's claims must have arisen from the defendant's contacts with Tennessee. *Kelly v. International Capital Resources, supra*, 231 F.R.D. at 511-512. In this case, this second requirement is easily met.

> When the cause of action **[**28]** is for breach of a contract entered into by the defendant with a forum state resident, the second prong of the *Mohasco* test is easily met. *See Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998)* ("if the cause of action is for breach of that contract, as it is here, then the cause of action naturally arises from the defendant's activities in [the forum state]."); *In-Flight Devices, 466 F.2d 220, 229*

> *(6th Cir. 1972)* ("Defendant's transaction of business in [the forum state]-- its entering of a contractual relationship with a [forum state] corporation-- is necessarily the very soil from which the action for breach grew."). . . .

*Id.* at 512.

> . . . Defendant's transaction of business in Ohio -- its entering of a contractual relationship with an Ohio corporation -- is necessarily the very soil from which the action for breach grew. The intimate relationship between the jurisdictional basis and the cause of action necessary to the validity of any single act long-arm jurisdictional assertion cannot be denied here.

*In-flight Devices Corporation v. VanDusen Air, Inc., supra*, 466 F.2d. at 229.

So it is in this case. The contractual relationship between Gramercy and Messrs. Jones and how Gramercy fraudulently induced Messrs. Jones to enter that contractual relationship is the "very soil" from which the Tennessee Case arises.

The third part of the *Mohasco* test is that the exercise of jurisdiction must be reasonable. This requirement is satisfied even more easily that the first and second requirements.

> <u>When the first two elements of the *Southern Machine* test are met, an inference arises that the third element, fairness, is also present</u>. *CompuServe, Inc. v. Patterson 89 F.3d 1257, 1268*; *WEDGE, 882 F.2d at 1092*; *American Greetings, 839 F.2d at 1170*; *First National Bank v. J.W. Brewer Tire Co., 680 F.2d 1123, 1126 (6th Cir. 1982)*; *Southern Machine, 401 F.2d at 384*; *Southern Systems, 58 F. Supp.2d at 851*. <u>Where the first two criteria are satisfied, "only the unusual case will not meet **[\*28]** this third criterion."</u> *Aristech, 138 F.3d at 628* (quoting *Theunissen, 935 F.2d at 1461*); *Southern Machine, 401 F.2d at 384*.
>
> <u>Defendants must present a "compelling case" that the presence of some other considerations would render personal jurisdiction unfair or unreasonable</u>. *Burger King, 471 U.S. at 477*; *American Greetings, 839 F.2d at 1170*; *Steelcase, Inc. v. Mar-Mol Co., Inc., 210 F. Supp.2d 920, 935 (W.D. Mich. 2002)*. . . .
>
> To determine whether the exercise of personal jurisdiction over the defendants is fair and reasonable, the Court balances four factors: (1) the burden on the defendants; (2) the interests of the forum State (Tennessee); (3) plaintiff . . .interest in obtaining relief; and (4) the interests of other States in securing the most efficient resolution of the controversy. *Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 113,*

*94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)*; **[\*29]** *Youn, 324 F.3d at 419*; *Compuserve, 89 F.3d at 1268*; *Theunissen, 935 F.2d at 1461*; *American Greetings, 839 F.2d at 1169-70*.

*SSM Industries v. Fairchild Apparel Group, supra*, at \*27-\*29(emphasis supplied).

In this case, Gramercy's burden of litigating in Tennessee is relatively slight because Gramercy is a well-financed organization which manages billions of dollars of assets throughout much of the world. Further, Tennessee has a manifest interest in providing Messrs. Jones with a convenient forum to obtain redress. Finally, it would be manifestly unfair for Gramercy to derive the benefit of $650,000 in fees from its dealings with residents of Tennessee but to escape having to account in Tennessee for the consequences of its actions in dealing with those same residents. *See*, *SSM Industries v. Fairchild Apparel Group*, *supra*, which explained as follows in a similar claim.

> In *Burger King, 471 U.S. at 473-74*, the Supreme Court explains there are several reasons why a forum State may legitimately exercise personal jurisdiction over a nonresident defendant who has purposefully directed its activities toward the forum's residents. A State generally has a manifest interest in providing its residents with a convenient judicial forum to obtain redress for injuries caused by nonresidents or out-of-state actors. Where individuals purposefully derive economic benefit from their interstate activities, it may be unfair to allow them to escape having to account in other States for consequences which are proximately caused by such activities. "*The Due Process Clause* may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King, 471 U.S. at 474*; *see also Youn, 324 F.3d at 419-20*.
>
> Modern transportation and communications make it much less burdensome **[\*31]** today for nonresident defendants to litigate and defend themselves in Tennessee where the defendants have purposefully engaged in business or economic activity in Tennessee. It will usually be fair to subject a nonresident defendant to the burdens and inconvenience of litigating in the other forum for disputes relating to such business or economic activity. . . .
>
> When a contract is made with a Tennessee resident, the State of Tennessee has a strong interest in providing a judicial forum to resolve a suit based on a breach of the contract. Tennessee has a strong interest in adjudicating this controversy involving customized goods manufactured in and shipped from Tennessee by SSM, a

> Tennessee resident. *Aristech*, 138 F.3d at 629; *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 232 (6th Cir. 1972); **[*32]** *Southern Machine*, 401 F.2d at 385; *Floratine*, 282 F. Supp.2d at 801; *Steelcase*, 210 F. Supp.2d at 935; *Norcold, Inc. v. Greg Lund Products, Ltd.*, 109 F. Supp.2d 819, 827 (S.D. Ohio 2000); *Southern Systems*, 58 F. Supp.2d at 851-52; *Advanced Polymer*, 34 F. Supp.2d at 602; *J.I. Case*, 832 S.W.2d at 533; *Nicholstone*, 621 S.W.2d at 564-65; *A.R.C. Management Corp.*, 1992 Tenn. App. LEXIS 819, 1992 WL 156037; see also *S & S Screw Machine Co. v. Cosa Corp.*, 647 F. Supp. 600, 611 (M.D. Tenn. 1986) (Tennessee has an interest in seeing that its residents involved in interstate commercial transactions receive the benefit of their bargains).

*Id.* at *30-*32.

Thus, all three parts of the *Mohasco* test have been satisfied so that the Middle District of Tennessee has jurisdiction over Gramercy under the traditional "minimum contacts" theory.

### III. GRAMERCY'S TORTIOUS MISREPRESENTATIONS AND FAILURE TO DISCLOSE MATERIAL FACTS CAUSED INJURY IN TENNESSEE. FOR THAT REASON ALONE, THE MIDDLE DISTRICT OF TENNESSEE HAS JURISDICTION OVER GRAMERCY.

As explained in **Appendix A** to Messrs. Jones' Memorandum in Support of Motion to Dismiss, Stay or Transfer [Docket Entry 11, Attachment 1], Gramercy made misrepresentations to Messrs. Jones and failed to disclose material facts to them. As a result of this fraud, injury was inflicted upon Messrs. Jones in Tennessee. Because Gramercy knew that Messrs. Jones resided in Tennessee, it knew that the injury caused by its actions would be inflicted in Tennessee. Therefore, the tortious acts of Gramercy were aimed at Tennessee. For this reason alone, the Middle District of Tennessee has jurisdiction over Gramercy.

In response, Gramercy contends that the Sixth Circuit does not recognize this theory of jurisdiction; *i.e.,* tortious act outside forum state which causes injury within forum state is sufficient basis for personal jurisdiction even though the defendant has never entered forum state. Gramercy is wrong.

The Sixth Circuit and District Courts in Tennessee have repeatedly recognized this as a valid basis for personal jurisdiction. *See*, *Neal v. Jannsen*, 270 F.3d 328 (6th Cir. 2001); *Mark Hanby Ministries v. Lubet*, 2007 U.S. Dist. LEXIS 24361 (E.D. Tenn. 2007); *Returns Distribution Specialists, LLC v. Playtex Products*, 2003 U.S. Dist. LEXIS 9004 (W.D. Tenn. 2003); *First Federal Savings Bank of Tennessee v. Jefferson Savings & Loan Association*, 640 F.Supp. 47 (E.D.Tenn. 1986); *Third National Bank in Nashville v. Shearson Equipment Management Corporation,* 619 F.Supp. 907 (M.D. Tenn. 1984); *Cannon v. Metcalfe*, 458 F.Supp. 843 (E.D. Tenn.1977); *Steelman v. Strickland*, 78 F.R.D. 187 (E.D. Tenn. 1976); *Gullett v. Qantas Airways Ltd.,* 417 F. Supp. 490 (M.D. Tenn. 1975). Indeed, this is simply an application of the "effects test" which the United States Supreme Court first articulated in *Calder v. Jones,* 465 U.S. 783, 79 L. Ed. 2d 804, 104 S. Ct. 1482 (1984)(personal jurisdiction exists where an individual purposefully directs tortious conduct towards the forum state with the intent to cause harm there).

IV. **GRAMERCY CONSPIRED WITH BDO AND BDO COMMITTED OVERT ACTS IN FURTHERANCE OF THAT CONSPIRACY IN TENNESSEE. FURTHER, THE MIDDLE DISTRICT OF TENNESSEE UNDENIABLY HAS JURISDICTION OVER BDO. FOR THIS REASON ALONE, THE MIDDLE DISTRICT OF TENNESSEE HAS JURISDICTION OVER GRAMERCY.**

As explained in **Appendix A** to Messrs. Jones' Memorandum in Support of Motion to Dismiss, Stay or Transfer [Docket Entry 11, Attachment 1], Messrs. Jones rely upon Gramercy's conspiracy with BDO Seidman, LLP as an alternative basis for personal jurisdiction.[4]

---

[4]Gramercy conspired with BDO and BDO committed overt acts in furtherance of that conspiracy in Tennessee. Further, BDO is clearly subject to the jurisdiction of the Middle District of Tennessee.

In **Appendix A**, Messrs. Jones set forth evidence which they had already found and which confirms the existence of that conspiracy. In addition, BDO has now admitted that it secretly paid to Gramercy $300,000 of the fees which Messrs. Jones had paid to it. *See*, Amended Response and Objections of BDO to Interrogatory No. 1 in Tennessee case [Evans Suppl. Decl., Exh. 5]. This huge, undisclosed payment alone establishes the conspiracy. If Gramercy had simply been executing transactions without regard to tax ramifications (as its claims), what plausible reason could there have been for the $300,000 payment? Why was it not sufficient for Gramercy simply to receive its usual management and incentive fees?

361400.051