# E X H I B I T   1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **JOHN A. JONES and** | ) |
| **CARLETON A. JONES, III,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No. 3:06-CV-1115** |
| | ) **Judge Echols** |
| **BDO SEIDMAN, LLP and** | ) |
| **GRAMERCY ADVISORS, LLC** | ) **Magistrate Judge Brown** |
| | ) |
| **Defendant.** | ) |

## RESPONSE OF PLAINTIFFS OPPOSING MOTION TO DISMISS
## FILED BY BDO SEIDMAN, LLP

Winston S. Evans (#6281)
Thomas W. Shumate IV (#19595)
EVANS, JONES & REYNOLDS, P.C.
1810 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2424
(615) 259-4685

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      THE CLAIMS ASSERTED BY MESSRS. JONES ARE NOT BARRED
        BY THE APPLICABLE STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . 3

        A.      The one year statute of limitations of T.C.A. §28-3-104(a) does not
                apply to the claims for fraud and misrepresentation, civil conspiracy,
                and breach of fiduciary duty. Those claims are governed by longer
                statutes of limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      Messrs. Jones did not suffer any injury until the IRS assessed
                additional taxes in December of 2005. Therefore, the statute of
                limitations did not accrue until that time . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.      BDO fraudulently concealed the causes of action which Messrs. Jones
                had against it . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                1.      The Amended Complaint is replete with allegations of
                        fraudulent concealment by affirmative misrepresentations . . . . . 10

                2.      The majority of the misrepresentations which BDO made and
                        which concealed the causes of action against it were not
                        expressions of opinion or matters of law . . . . . . . . . . . . . . . . . . . 11

                3.      Even if the misrepresentations which BDO made were
                        expressions of opinion or matters of law, those
                        misrepresentations were still sufficient to constitute
                        fraudulent concealment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                4.      Because BDO owed a fiduciary duty to Messrs. Jones, it owed
                        a duty to speak. Thus, BDO's silence and concealment of
                        facts was sufficient to constitute fraudulent concealment
                        which tolled the statute of limitations . . . . . . . . . . . . . . . . . . . . . 16

|  |  | 5. | Messrs. Jones cannot be charged with constructive knowledge of BDO's fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17 |

II.  THE AMENDED COMPLAINT ADEQUATELY ALLEGES EACH OF THE ASSERTED CAUSES OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

A.  The causes of action for fraud and misrepresentation have been adequately alleged . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1.  Fraud and misrepresentation have been plead with the requisite degree of particularity . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

2.  To the extent that the misrepresentations by BDO might have been expressions of opinion, they are still actionable . . . . . . . . . 23

3.  The Amended Complaint alleges that the reliance of Messrs. Jones on the misrepresentations and concealment by BDO was reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

B.  The Amended Complaint adequately alleges a civil conspiracy . . . . . . . 25

1.  The Amended Complaint alleges that BDO and Gramercy not only conspired for an unlawful purpose but also that they used unlawful means . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

2.  The Amended Complaint specifically alleges that the primary purpose of the conspiracy was to injure Messrs. Jones and other like them . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

C.  The Amended Complaint adequately alleges a breach of fiduciary duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

D.  The Amended Complaint adequately alleges a violation of the Tennessee Consumer Protection Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

E.  The Amended Complaint adequately alleges the claim for negligent misrepresentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

III.  THE MOTION TO COMPEL ARBITRATION MUST BE DENIED . . . . . . . . 27

A.  Messrs. Jones have alleged that BDO wrongfully induced them to sign the consulting agreements which contain the provisions for arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

B.    Cases cited by BDO are inapposite ............................. 28

C.    Because BDO has not requested mediation, it has failed to satisfy the
      condition precedent to invoking the arbitration provisions .......... 28

D.    BDO has waived any rights which it might have had to compel
      arbitration ................................................. 29

CONCLUSION .......................................................... 30

CERTIFICATE OF SERVICE ............................................... 30

iv

## TABLE OF AUTHORITIES

*Bagby v. Carrico*, 1997 Tenn. App. LEXIS 875 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ball v. Union Carbide Corp.*, 212 F.R.D. 380 (E.D. Tenn. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ballan v. Upjohn*, 814 F. Supp. 1375 (W.D., Mi. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Barnes v. West,* 243 F. Supp. 2d 559 (E.D. Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Benak v. Alliance Cap. Mgmt. LP*, 435 F.3d 396 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Benton v. Snyder*, 825 S.W.2d 409 (Tenn. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bornstein v. Kalcheim & Kalcheim*, 90 Ill. App. 3d 957,
414 N.E.2d 96 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Braswell v. Carothers*, 863 S.W.2d 722 (Tenn. Ct. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Brownell v. Garber*, 199 Mich. App. 519; 503 N.W.2d 81 (1993) . . . . . . . . . . . . . . . . . . . . . . . 4

*Cap Gemini Ernst & Young v. Nackel*, 346 F.3d 360 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 28

*Cherry v. Williams*, 36 S.W.3d 78 (Tenn. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Clark v. American National Bank & Trust,* 531 S.W.2d 563
(Tenn. Ct. App. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dean Witter Reynolds Inc. v. McCoy*, 853 F.Supp. 1023 (E.D. Tenn. 1994) . . . . . . . . . . . . . . . 3

*Gerdes v. Estate of Cush*, 953 F.2d 201 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hamilton v. Galbraith*, 15 Tenn. App. 158 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Harner v. Prudential-Bache Securities, Inc.*,
1994 U.S. App. LEXIS 25266 (6ᵗʰ Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Harold v. United States,* 2005 WL 1719126 (N.D. Ohio 2005) . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Henley v. Phillip Morris*, 114 Cal.App.4th 1429,
9 Cal.Rptr.3d 29 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Herzog v. Yuill*, 399 N.W.2d 287 (S.D.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*HIM Portland, LLC v. DeVito Builders, Inc., 317 F.3d 41 (1st Cir. 2003)* . . . . . . . . . . . . . . . . . 29

*Hughes v. Vanderbilt University*, 215 F.3d 543 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*International Engine Parts. Inc. v. Feddersen and Company*,
    9 Cal. 4th 606; 888 P.2d 1279; 38 Cal. Rptr. 2d 150 (1995) . . . . . . . . . . . . . . . . . . . . . . . 5

*John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528 (Tenn. 1998) . . . . . . . . . . . . 7-9, 19, 20

*Kelley v. McGuire*, 41 S.W.3d 679 (Tex. Civ. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kemiron Atlantic v. Aguakem International, Inc.*, 290 F.3d 1287
    (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Kinnard v. Shoney's, Inc.*,39 Fed. Appx. 313;
    2002 U.S. App. LEXIS 14687 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Lake v. Thompson*, 366 Pa. 352, 77 A.2d 364 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Limor v. Buerger,* 322 B.R. 781 (Brktcy. M.D. Tenn. 2005) *quoting* Ray Ryden
    Anderson & Walter W. Steele, Jr., *Fiduciary Duty. Tort and Contract:
    A Primer on the Legal Malpractice Puzzle,* 47 SMU L. REV. 235 (1994) . . . . . . . . . . . . 4

*Magnaleasing. Inc. v. Staten Island Mall*, 428 F.Supp. 1039 (S.D.N.Y. 1977) . . . . . . . . . . . . 14

*Marlow v. Medlin*, 558 S.W.2d 933 (Tex. Civ. App. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mcneil v. Nofal*, 185 S.W.2d 402 (Tenn. Ct. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Mike v. Po Group*, 937 S.W.2d 790 (Tenn. 1996) *quoting Kirley v. Kirley,*
    25 Mass. App. Ct. 651, 521 N.E.2d 1041 (Mass. Ct. App. 1988) . . . . . . . . . . . . . . . . . . 3

*National Convenience Corp. v. Cedar Building Corp.*,
    23 N.Y.2d 621, 246 N.E.2d 351. 298 N.Y.S.2d 499 (1969) . . . . . . . . . . . . . . . . . . . . . . 14

*Patel v. Baker*, 1991 Tenn. App. LEXIS 576 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Phillips v. Giles*, 620 S.W.2d 750 (Tex. Civ. App. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Plyler v. BDO Seidman, LLP.* 2005 U.S. Dist. LEXIS 41288
    (W.D. Tenn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Pocohontas Supreme Coal Co. v. Bethlehem Steel Corp.*,

828 F.2d 211 (4th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Prudential Ins. Co. v. U.S. Gypsum*, 146 F. Supp.2d 643 (D.N.J. 2001) . . . . . . . . . . . . . . . . . 20

*Raitz v. Sparks*, 1997 U.S. App. LEXIS 233 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 9, 19, 20

*Redhous v. Commissioner of Internal Revenue*, 728 F.2d 1249 (9th Cir. 1984) . . . . . . . . . . . . . 19

*Reis v. Peabody Coal Co.*, 997 S.W.2d 49 (Mo. Ct. App. E.D. 1999) . . . . . . . . . . . . . . . . . . . 24

*Rife Construction Company v. Brans*, 298 S.W.2d 254 (Tex. Civ. App. 1956) . . . . . . . . . . . . 30

*River Links at Deer Creek, LLC v. Melz*, 108 S.W.3d 855 (Tenn. Ct. App. 2002)
*perm. app. denied* (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Scott v. Bodor*, 571 N.E.2d 313 (Ind. Ct. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Shadrick v. Coker*, 1996 Tenn. App. LEXIS 651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Shiny Rock Mining Corp. v. U.S.*, 906 F.2d 1362 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 19, 20

*Snipes v. Jackson*, 69 N.C. App. 64, 316 S.E.2d 657 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*Squyres v. Christian, et al.*, 242 S.W.2d 786 (Tex.Civ.App. 1951) . . . . . . . . . . . . . . . . . . . . . . 13

*Stacks v. Saunders*, 812 S.W.2d 587 (1990) *perm. app. denied* (1991) . . . . . . . . . . . . . . . . . . . . 23

*Stanley v. Richmond*, 35 Cal. App. 4th 1070, 41 Cal. Rptr. 2d 768 (1995) . . . . . . . . . . . . . . . . 5

*Stinnett v. Goans*, 1995 Tenn. App. LEXIS 699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*T.H. Engineering & Mfg., Inc. v. Mussard*, 2002 Tenn. App. LEXIS 367 . . . . . . . . . . . . . . . . . 23

*U.S. v. American Healthcorp, Inc.*, 977 F. Supp. 1329 (M.D. Tenn. 1997) . . . . . . . . . . . . . . . 21

*U.S. v. Church Universal and Triumphant, Inc.*, 1991 WL 322615
(D. Mont. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Vernon v. Medical Management*, 912 F. Supp. 1549 (S.D. Fla. 1996) . . . . . . . . . . . . . . . . . . . . 21

*Vokes v. Arthur Murray, Inc.*, 212 So.2d 906 (Fla.Ct.App. 1968) . . . . . . . . . . . . . . . . . . . . . . . 13

*Wendland v. Commissioner of Internal Revenue*, 739 F.2d 580 (11th Cir. 1984) . . . . . . . . . 19, 20

*Whisenant v. Bill Heard Chevrolet*, 2005 Tenn. App. LEXIS 418
(Tenn. Ct. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## RESPONSE OF PLAINTIFFS OPPOSING MOTION TO DISMISS FILED BY BDO SEIDMAN, LLP

Plaintiffs, John A. Jones and Carleton A. Jones ["Messrs. Jones"] file this Response in opposition to the Motion to Dismiss, or, in the Alternative, to Compel Arbitration that has been filed by BDO Seidman, LLP ["BDO"].

## STATEMENT OF THE CASE

On November 20, 2006, Messrs. Jones filed suit against BDO. On March 27, 2007, Messrs. Jones filed their Amended Complaint which, *inter alia,* added Gramercy Advisors, LLC ["Gramercy"] as a defendant. The Amended Complaint asserts the following claims: (1) fraud and misrepresentation, (2) civil conspiracy, (3) breach if fiduciary duty, (4) recklessness and gross negligence, (5) violation of Tennessee Consumer Protection Act, (6) accounting malpractice and professional negligence, and (7) negligent misrepresentation. BDO filed its Motion in response to the Amended Complaint.

## SUMMARY OF THE ALLEGATIONS

BDO is one of the largest accounting firms in the United States. [Amd. Cmplnt., ¶ 4]. BDO acted as trusted advisors to Messrs. Jones on tax matters. [Amd. Cmplnt., ¶¶ 34, 75, 148]. Messrs. Jones justifiably placed their trust and confidence in BDO. [Amd. Cmplnt., ¶¶ 24] Therefore, BDO owed a fiduciary duty to Messrs. Jones. [Amd. Cmplnt., ¶¶ 21-22]

BDO conspired with Gramercy to promote and sell illegal tax shelters. [Amd. Cmplnt., ¶¶ 29, 33, 143-159]. It wrongfully induced Messrs. Jones to enter those tax shelters by means of misrepresentations, misleading statements and concealments. [Amd. Cmplnt., ¶¶ 86, 112, 113]. Despite BDO's knowledge that similar tax shelters had failed and that this shelter would likewise

1

fail. BDO prepared tax returns implementing the shelter, advised Messrs. Jones to file those returns, and issued favorable opinion letters. [Amd. Cmplnt., ¶ 35, 37, 114-125].

In reliance on the misrepresentations and concealments by BDO, Messrs. Jones did the following:(1) paid $1,185,000 to BDO for consulting fees, (2) invested $2,240,000 in the transactions, and (3) paid $95,000 to the law firm of DeCastro, West, Chodorow, Glickfeld & Nass, Inc. for an opinion letter [Amd. Cmplnt., ¶¶ 104, 109-111, 113]

In December of 2005, the IRS sent notices to Messrs. Jones advising that not only additional taxes but also penalties would be assessed. [Exhibits 1 and 2]. In those same notices, the IRS proposed a settlement which disallowed deductions from the transactions and imposed nearly $300,000 in penalties. [Amd. Cmplnt., ¶¶ 135-137]. Instead of vigorously resisting this adverse action by the IRS or standing behind its opinion letters, BDO told Messrs. Jones that they should accept the settlement proposed by the IRS. [Amd. Cmplnt., ¶¶ 138-139].

A chronology of events which are material to BDO's motion is as follows:

| Date | Event |
|------|-------|
| May-June, 2002 | Messrs. Jones signed Consulting Agreements and paid consulting fees to BDO [Amd. Cmplnt., ¶ 107-109] |
| September, 2002 | Messrs. Jones invested in the transactions which had been recommended to them by BDO [Amd. Cmplnt., ¶ 110] |
| October, 2003 | BDO issued tax opinion letters to Messrs. Jones and prepared their tax returns reflecting the transactions [Amd. Cmplnt., ¶¶ 114-127] |
| August and September of 2005 | IRS sent to Messrs. Jones advising that their returns had been selected for examination [BDO Memorandum. Exhibits B, C] |
| December, 2005 | IRS sent to Messrs. Jones notices which indicated that penalties and additional taxes would be assessed [Exhibits 1, 2] |
| November 20, 2006 | Messrs. Jones filed suit against BDO |

## ARGUMENT

## I. THE CLAIMS ASSERTED BY MESSRS. JONES ARE NOT BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

### A. The one year statute of limitations of T.C.A. §28-3-104(a) does not apply to the claims for fraud and misrepresentation, civil conspiracy, and breach of fiduciary duty. Those claims are governed by longer statutes of limitations.

BDO contends that T.C.A. §28-3-104(a) applies to all claims for relief against it. BDO is

incorrect. T.C.A. §28-3-104 (a) provides as follows in pertinent part:

(a) The following actions shall be commenced within one (1) year after the cause of action accrued . . (2) Actions and suits against attorneys or licensed public accountants or certified public accountants *for malpractice*, whether the actions are grounded or based in contract or tort . . . (emphasis supplied).

Thus, T.C.A. §28-3-104(a) applies only to claims "for *malpractice*," whether stated in tort or in

contract. It does not apply to claims for fraud, breach of fiduciary duty or intentional misconduct.

Therefore, the three year statute of limitations for property torts, T.C.A. §28-3-105, applies to the

fraud claims. The six year statute of limitations, T.C.A. §28-3-109(3), applies to the claim for

breach of fiduciary duty. *Dean Witter Reynolds Inc. v. McCoy*, 853 F.Supp. 1023, 1035 (E.D. Tenn.

1994): *Kinnard v. Shoney's, Inc.*,39 Fed. Appx. 313; 2002 U.S. App. LEXIS 14687 (6th Cir. 2002).[1]

Apparently, the Courts of Tennessee have never decided whether breach of fiduciary duty is a tort

separate and distinct from professional malpractice. However, the Supreme Court of Tennessee has

recognized that "[t]here is a 'growing common law trend to declare 'that a breach of fiduciary duty

is a tort.'" *Mike v. Po Group*, 937 S.W.2d 790, 795 (Tenn. 1996).

_____

[1]The six-year statute should also apply to the claim for conspiracy because the co-conspirators, BDO and Gramercy, each owed a fiduciary duty to Messrs. Jones. Finally, it applies to the claim for recklessness and gross negligence because that claim stems from the status of BDO as a fiduciary. Stated otherwise. the gravamen of that claim is a breach of fiduciary duty.

3

As one commentator explains:

. . . .

.   .   . [L]egal malpractice is professional negligence. Like all negligence, professional negligence is failure to perform. Breach of fiduciary duty is not failure to perform. Breach of fiduciary duty is failure to adhere to the [*824] authority granted by the client. An attorney-client relationship imposes a fiduciary duty on the lawyer to represent the client with undivided loyalty. Failing to give undivided loyalty does not necessarily mean that the attorney performed legal services negligently. Instead, failure to give undivided loyalty to the client means that the attorney performed the legal service outside the scope of the authority (fiduciary duty) granted by the client.

*Limor v. Buerger*, 322 B.R. 781, 823-824 (Brktcy. M.D. Tenn. 2005)(emphasis supplied) *quoting* Ray Ryden Anderson & Walter W. Steele, Jr., *Fiduciary Duty, Tort and Contract: A Primer on the Legal Malpractice Puzzle*, 47 SMU L. REV. 235, 235 & n.4 (1994) (internal citations omitted).

Most courts hold that similar statutes of limitations for malpractice do not apply to claims

for fraud, breach of fiduciary duty, or intentional misconduct against attorneys. *See, e.g. Brownell*

*v. Garber*, *199 Mich. App. 519:* 503 N.W.2d 81 (1993), holding as follows:

.   .   . [T]he interest involved in a claim for damages arising out of a fraudulent misrepresentation differs from the interest involved in a case alleging that a professional breached the applicable standard of care. Simply put, fraud is distinct from malpractice. [citation omitted]. . . when a complaint alleges not only malpractice but also all the necessary elements of fraud, the statute of limitations governing fraud actions will apply to the fraud count . . . [citation omitted].

503 N.W.2d at 532-533(emphasis supplied).

*See also, Kelley v. McGuire*, 41 S.W.3d 679, 684 (Tex.Civ.App. 2003)(breach of fiduciary duty

claim not governed by shorter statute of limitations for malpractice); *Herzog v. Yuill*, 399 N.W.2d

287, 291 (S.D.1987)(allegations that attorneys falsely represented to their client that a pre-existing

conflict of interest had been eliminated and breached their duty "to disclose any material matter

bearing upon the attorneys' duty to represent their client with undivided loyalty" were subject to the

statute of limitations for fraud); *Gerdes v. Estate of Cush*, 953 F.2d 201 (1992); (under Louisiana law, action for breach of fiduciary duty against lawyer not subject to one year statute of limitations for malpractice); *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086, 41 Cal. Rptr. 2d 768, 776 (1995) ("Appellant is, of course, correct that a breach of fiduciary duty is a species of tort distinct from a cause of action for professional negligence. [citations omitted]")

This case was filed against BDO on November 20, 2006. The claims for fraud and misrepresentation, civil conspiracy, breach of fiduciary duty, and recklessness and gross negligence accrued well within three years of that date, and certainly within six years.

**B.    Messrs. Jones did not suffer any injury until the IRS assessed additional taxes in December of 2005. Therefore, the statute of limitations did not accrue until that time.**

There is no dispute that an injury must be suffered before the statute of limitations for accounting malpractice on tax matters will accrue. Such an injury will not occur until the IRS assesses taxes or penalties. This is the majority rule. *See, International Engine Parts, Inc. v. Feddersen and Company*, 9 Cal. 4th 606; 888 P.2d 1279; 38 Cal. Rptr. 2d 150 (1995) in which the California Supreme Court acknowledged that the negligence of an accountant may have been discovered during an IRS audit, but still held that the statute of limitations did not accrue until additional taxes were assessed. The Court stressed as follows:

> We are persuaded by decisions of the Court of Appeal, the majority of sister state jurisdictions, and the federal circuit courts, that actual harm occurs on the date the tax deficiency is assessed.
>
> . . .
>
> . . . [T]he question whether the taxpayer suffered actual injury as a result of the accountant's allegedly negligent preparation of the tax returns is contingent on the outcome of the audit.
>
> . . .
>
> . . . Although Feddersen's alleged negligence may have been "discovered" during

the audit, such potential liability could not amount to actual harm until the date of the deficiency tax assessment or finality of the audit process.

The foregoing rule both conserves judicial resources and avoids forcing the client to sue the allegedly negligent accountant for malpractice while the audit is pending. It also avoids requiring the client to allege facts in the negligence action that could be used against him or her in the audit, without first allowing the accountant to correct the error (or mitigate the consequences thereof) during the audit process. (See *Ackerman v. Price Waterhouse (1992) 156 Misc.2d 865* **[\*\*1288]** *[591* **[\*\*\*159]** *N.Y.S.2d 936, 941],* affd., *198 A.D.2d 1 [604 N.Y.S.2d 721]* ["general rule that statute of limitations for accountant malpractice does not begin to run until a tax deficiency is assessed protects federal tax preparers from the prejudice of needless litigation expense on suits which must later be abandoned because no damage ensued, after occasioning an entirely wasted investment of court resources"].)

3. *Other-state Cases*

Authority from other jurisdictions favors a rule whereby the limitations period for the tort of accountant malpractice regarding tax advice does not commence until the taxing authority assesses a deficiency. [numerous citations omitted] The general rule in these cases is that "the statute [of limitations for accountant malpractice] does not begin to run until a tax deficiency is assessed because there is no injury to the plaintiff prior to that time; i.e., there is not a completed tort until the IRS assesses a deficiency." (*Mills, supra, 768 P.2d at p. 556.)*

. . . Most taxpayers are likely to contact the accountant who prepared the returns in question for assistance in the audit process. If the taxpayer were required to file suit against the accountant at this time, the effort to clarify any mistakes in filing would be frustrated.[citation omitted]

The use of the date of deficiency assessment to mark the date of actual injury in accountant malpractice cases provides the parties with a bright line that, once crossed, commences the limitations period under section 339, subdivision 1, and therefore provides certainty in terms of the statute's application. Obviously, in some cases injury will be clear before the notice of deficiency is given to the taxpayer. But uniformity in application serves a **[\*622]** more important function when interpreting statutes of limitation than does the identification of the precise point at which some harm might be said to have occurred, even if negative collateral consequences might arise from the *tentative* assessment of additional tax liability.

9 Cal. 4th at 609, 612-613, 619-622, 888 P.2d at 1281, 1282-1283, 1287-1288, 38 Cal. Rptr. at 152-154, 158-159 (emphasis supplied).

*And see, Snipes v. Jackson*, 69 N.C. App. 64, 68-69, 316 S.E.2d 657, 659-661 (1984)(statute of

limitations did not accrue until an assessment had been made by the IRS); *CDT, Inc. v. Addison*,

*Roberts & Ludwig*, 198 Ariz. 173, 179, 7 P.3d 979, 985 (2000)(same)

For the same reasons, the statutes of limitations applicable to the claims of Messrs. Jones did not accrue when they received the notices in August and September of 2005. This is because those notices did not assess additional tax or penalties. Those notices only stated that the tax returns of Messrs. Jones had "been selected for examination." [BDO Memorandum, Exhibits C and D]. The statutes of limitations did not accrue until December 14 and 15 of 2005 when the IRS mailed to Messrs. Jones notices in which the IRS asserted that they had additional tax liabilities. [Exhibits 1 and 2]. That was less than one year before suit was filed.

Other courts have held that an action for malpractice is premature if it is filed before the IRS has made an assessment. *See*, *Bornstein v. Kalcheim & Kalcheim*, 90 Ill. App. 3d 957, 959-960, 414 N.E.2d 96, 98 (1980)(even a lawsuit filed after receipt of a notice of deficiency from the IRS was premature); *Phillips v. Giles*, 620 S.W.2d 750, 751 (Tex. Civ. App. 1981)(holding suit was premature and stressing that injury could "not arise until the tax deficiency was assessed"). Likewise, this suit would have been premature if Messrs. Jones had filed it before receiving the notices of additional taxes in December of 2005. If Messrs. Jones had filed suit before that date, BDO undoubtedly would have moved to dismiss this suit as premature. If the IRS had agreed with the advice of BDO and the opinion letters which they delivered to Messrs. Jones, then no taxes would have ever been assessed and any lawsuit against BDO would have been baseless. Therefore, BDO is in no position to claim that Messrs. Jones suffered an injury so as to trigger the statute of limitations before December of 2005.

In *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528 (Tenn. 1998), the Tennessee Supreme Court did hold that injury was suffered before the IRS issued a notice of assessment.

7

However, the Court also stated as follows in its opinion:

> [W]hen the act is not legally injurious until certain consequences occur, the time commences to run from the consequential damage. . . ."). However, the injury element is not met if it is contingent upon a third party's actions or amounts to a mere possibility.[citation omitted]

977 S.W.2d at 532 (emphasis supplied).

This is precisely the reasoning for the majority rule that the statute of limitations will not accrue until the IRS makes an assessment. Until an assessment is made, the taxpayer does not know if he has suffered an injury. If no assessment is made, he does not suffer an injury. So it is in this case. The notices to Messrs. Jones in August and September of 2005 simply advised that their returns had been selected for examination. Until Messrs. Jones received the notices in December of 2005 indicating that additional taxes were due, they had not suffered any injury. Until that time, any injury which they might suffer was only a mere possibility and was contingent upon the action of the IRS.

Further, the notices which the IRS sent to Messrs. Jones in August and September of 2005 were quite different from the letter which the IRS sent in *John Kohl & Co.* The letter in *John Kohl & Co.* stated that "that the income, deductions and credits you reported do not agree with the amounts reported to us on information returns filed by the payers." *Id.* The letter also stated that the IRS would issue an adjustment assessing additional tax if the taxpayers did not respond within 30 days. *Id.* In contrast, the notices which were sent to Messrs. Jones stated simply that their returns had been selected for examination. The notices did not state that additional taxes would be assessed if Messrs. Jones failed to respond within 30 days. Still further, the Tennessee Supreme Court stressed as follows:

> We do not mean to suggest by our holding that the mere routine questioning by the IRS of a tax return is always sufficient by itself to trigger the running of the statute

8

> of limitations as a matter of law for a potential legal malpractice action. We
> recognize that inquiries by governmental agencies into business transactions are
> routinely conducted.

977 S.W.2d at 533 (emphasis supplied).

Thus, the Court was cautioning against a broad application of its holding in *John Kohl & Co.*, if not implicitly limiting the holding to the particular facts of that case. Further, *John Kohl & Co.* was an appeal after trial. In contrast, BDO's motion is a Rule 12(b) motion. Therefore, all factual inferences must be drawn in favor of Messrs. Jones.

Next, *John Kohl & Co.* is factually inapposite because there was no allegation of fraudulent concealment in that case. In contrast, BDO misrepresented certain facts and concealed other facts, thereby fraudulently concealing its tortious conduct and the claim against it. Because of BDO's fraudulent concealment, Messrs. Jones did not discover until December of 2005 that the conduct of BDO was wrongful or that they had been injured by it.

Finally, it must be remembered that *John Kohl & Co.* concerned legal malpractice, not accounting malpractice. As one court has cautioned, cases concerning accounting malpractice are "not directly analogous to professional negligence suits against doctors or attorneys in general." *Snipes v. Jackson, supra*, 69 N.C. App. at 71, 316 S.E.2d 661.

BDO also relies upon *Raitz v. Sparks*, 1997 U.S. App. LEXIS 233 (6th Cir. 1997) in which the plaintiffs contended that the statute of limitations for suit against their accountant did not accrue until September of 1991 when the IRS made a *final* determination regarding the amount of tax owed. Unlike the plaintiffs in *Raitz*, Messrs. Jones do not contend that accrual of the statute of limitations was delayed until the IRS made a *final* tax determination. Rather. they only contend that the statute of limitations did not accrue until they received the initial notice that taxes would be assessed. Of

9

course, that was not until December of 2005 which was within one year of the filing of suit.[2]

## C.   BDO fraudulently concealed the causes of action which Messrs. Jones had against it.

### 1.   The Amended Complaint is replete with allegations of fraudulent concealment by affirmative misrepresentations.

The Amended Complaint is replete with allegations of fraudulent concealment by affirmative

misrepresentations. [Amd. Cmplnt., ¶¶ 86, 88, 89, 96-99, 128-134]. In particular, the allegations

of fraudulent concealment by affirmative misrepresentation also include the following:

37. . . . Even after BDO learned that the IRS had begun to audit and disallow capital and other losses claimed through similar tax strategies, it continued to advise Messrs. Jones to use the strategy to offset income and/or capital gains on their income tax returns.

74. Messrs. Jones became generally aware that the IRS was attacking tax shelters and questioned BDO about whether the IRS would attack the tax shelter which BDO and Gramercy were recommending to them. In response to their questions, BDO repeatedly represented that the tax shelter which BDO and Gramercy were recommending to Messrs. Jones was distinct from the types of tax shelters which the IRS was attacking. It repeatedly assured Messrs. Jones that the tax shelter which it was recommending to them was legitimate and would withstand any scrutiny from the IRS. BDO continued to make these same representations after Messrs. Jones entered the consulting agreements with BDO, and after they had entered the transactions recommended by BDO and Gramercy.

131. From the time that BDO issued its tax opinion letter until the winter of 2005-2006, BDO continued to represent to Messrs. Jones that, more likely than not, the courts would reject any attempt by the IRS to challenge the tax benefits which would be realized from the transactions. (emphasis supplied)

---

[2]BDO contends that Messrs. Jones suffered injury when they paid the consulting fees to BDO in June of 2002 and when they paid fees to Decastro West during the spring of 2003. If BDO was correct, then the injury prong of the statute of limitations was satisfied at that time (spring of 2002) so that the statute of limitations would have expired in the spring of 2003. Yet, BDO did not even prepare the tax returns or deliver its opinion letters to Messrs. Jones until October of 2003. Thus, BDO contends that the statute of limitations expired even before it prepared the tax returns or delivered the opinion letters.

10

By making these affirmative misrepresentations and misleading statements, BDO fraudulently concealed the cause of action against it.

The notices which Messrs. Jones received from the IRS in December of 2005, proposed a settlement which disallowed most of the deductions which had been taken and imposed penalties. [Amd. Cmplnt., ¶ 137]. Instead of vigorously resisting this adverse action of the IRS, BDO told Messrs. Jones that they should accept the settlement. [Amd. Cmplnt., ¶ 138]. BDO told Messrs. Jones to accept the settlement even though it had previously represented to Messrs. Jones that *inter alia* it would vigorously resist any attempt by the IRS to deny favorable tax treatment for the transactions. [Amended Complaint, ¶ 139]. It was not until this occurred that Messrs. Jones realized their trust and confidence in BDO was misplaced. Accordingly, the statute of limitations did not accrue until December of 2005.

BDO has cited *Pocohontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-219 (4th Cir.) for the proposition that only conduct "affirmatively directed at deflecting litigation" will constitute fraudulent concealment. However, the Fourth Circuit effectively overruled that case when it subsequently clarified its opinion in that case. *See, Barnes v. West,* 243 F. Supp. 2d 559, 563-564 (E.D. Va. 2003)("it is now settled that plaintiff's proof may include acts of concealment involved in the TILA violation itself"). Thus, the acts of fraudulent concealment by BDO are not limited to acts "affirmatively directed at deflecting litigation."

### 2. The majority of the misrepresentations which BDO made and which concealed the causes of action against it were not expressions of opinion or matters of law.

In an attempt to escape the consequences of its fraudulent concealment, BDO invokes the general rule that statements of law are merely expressions of opinion which are not actionable.

However, most of the misrepresentations by BDO were matters of *fact*, not expressions of opinion or matters of law. BDO cannot escape liability for those misrepresentations simply because it might have intermingled those misrepresentations of fact with expressions of opinion which BDO knew to be false. *See,* page 23-24, *infra.*

> **3. Even if the misrepresentations which BDO made were expressions of opinion or matters of law, those misrepresentations were still sufficient to constitute fraudulent concealment.**

Even if the misrepresentations which BDO made were expressions of opinion or matters of law, those misrepresentations were still sufficient to constitute fraudulent concealment. This is because there are recognized exceptions to the general rule which holds that misrepresentations in the form of statements of law and expressions of opinion are not actionable. Three of those exceptions are directly applicable to this case.

First, the general rule does not apply where misrepresentations are made by one who is a fiduciary or who possesses superior knowledge regarding the subject of the misrepresentation. In either of those events, expressions of opinion or representations as to matters of law will be sufficient to constitute fraudulent concealment. *Scott v. Bodor,* 571 N.E.2d 313 (Ind. Ct. App. 1991) is directly on point. In that case, the defendants had supplied tax planning advice to Bodor (a corporation). Defendants had sold a supplemental income plan to Bodor by representing *inter alia* that it could take an immediate tax deduction for any funds it contributed to the program and could retrieve any funds it paid in if it needed to do so. Over the course of two years, Bodor contributed $360,000 to the plan. It then discovered that the payments were not tax deductible and that it could not retrieve the funds which it had paid into the plan. Bodor sued defendants. Defendants moved for summary judgment dismissing the claims for fraud and constructive fraud.

12

Like BDO, the defendants argued that their misstatements were, at most, misstatements of

law and that misstatements as to the law can never form the basis of fraud. The trial court denied

the motion for summary judgment and the Court of Appeals affirmed, explaining as follows:

> Misrepresentations of domestic law will support an action for fraud where the party
> making the misrepresentation is an attorney or professes some knowledge in legal
> matters and induces a less experienced person to act in reliance on his misstatement
> of the law. [citations omitted] These cases make it clear that the Indiana rule that
> misrepresentations of law cannot be the basis for fraud is not an absolute, but will
> admit of exceptions in appropriate instances.the plaintiff argues that, in certain
> circumstances, pure misrepresentations of law can constitute actionable fraud.
>
>                     .   .   .
>
> . . . [T]his exception is not limited to attorney cases, but properly applies whenever
> a party claims a special knowledge or expertise in the law and induces another to rely
> on the claimed knowledge or expertise.

571 N.E.2d at 319-320 (emphasis supplied).

Likewise, BDO was a fiduciary to Messrs. Jones and held itself out as possessing superior

knowledge regarding tax matters. It stood in a confidential relationship with Messrs. Jones.

Therefore, the misrepresentations which BDO made, even if those misrepresentations were

expressions of opinions or matters of law, were sufficient to constitute fraudulent concealment. *See*

*also, Squyres v. Christian, et al.*, 242 S.W.2d 786, 789-790 (Tex.Civ.App. 1951)(expression of

opinion that statute of limitations would not bar debt was actionable); *Henley v. Phillip Morris*, 114

Cal.App.4th 1429, 1466, 9 Cal.Rptr.3d 29, 62 (2004); *Lietz v. Primock*, 84 Ariz. 273, 277, 327 P.2d

288, 290 (1958); §169, the *Restatement of Contracts 2d*; *Amazon v. Davidson*, 390 So.2d 383, 385-

386 (Fla.App. 1980);

Second, an opinion will nevertheless be actionable if the speaker knows it to be false or if

he does not have a reasonable basis for the opinion. This exception applies even if the speaker is not

13

a fiduciary and does not have special knowledge. *Magnaleasing, Inc. v. Staten Island Mall*, 428 F.Supp. 1039, 1042-1043 (S.D.N.Y. 1977); *Motor City Bagels v. The American Bagel Company*, 50 F.Supp.2d 460, 473 (D.Md. 1999); *Henley v. Phillip Morris, supra*, 114 Cal.App.4th at 1466, 9 Cal.Rptr.3d at 62. Because Messrs. Jones have alleged that BDO knew its opinions were false and did not have a reasonable basis, this exception is applicable.

Third, an opinion will be actionable if it is intended and understood as a representation of fact. *Allison v. Stevens*, 269 Ala. 288, 292, 112 So. 2d 451, 453 (1959); *Marlow v. Medlin*, 558 S.W.2d 933, 938-939 (Tex. Civ. App. 1977); *National Convenience Corp. v. Cedar Building Corp.*, 23 N.Y.2d 621, 627-629, 246 N.E.2d 351, 355-356, 298 N.Y.S.2d 499, 504-505 (1969). Messrs. Jones understood as fact the representations which BDO made concerning the taxation of the transactions. BDO undoubtedly intended those representations to be understood by Messrs. Jones as a fact so that they would sign the consulting agreements, enter the transactions, and pay the enormous consulting fees to it. Therefore, this exception is applicable as well.

Tennessee law is in accord. *See, Hamilton v. Galbraith*, 15 Tenn. App. 158 (1932) in which Hamilton asserted that Galbraith had fradulently induced him to enter a transaction by falsely representing that certain notes of Yellow Cab Coach Company "were perfectly good and well secured and that said Company was worth $ 50,000 and was making money." *Id.* at 160. Galbraith contended that these were representations were expressions of opinion which were not actionable. The Tennessee Court of Appeals resoundingly rejected this contention, stating as follows:

While it is an accepted general principle that fraud cannot be predicated upon a mere expression of opinion, the weight of authority supports the rule that an expression of belief by the vendor of a promissory note that the maker is responsible is equivalent to an assertion that he is so, if meant to be so understood and if made with a knowledge that he is not responsible. It is of no consequence that [*167] the

14

representation is made in the form of an opinion if it is meant to impress, and does impress, on the mind of the buyer that the note is good. [citations omitted]

"If a person makes a statement for the fraudulent purpose of deceiving another and thereby inducing him to enter into a contract or assume an obligation, it is a fraudulent misrepresentation warranting relief to the party defrauded, although the statement relates to that which is properly matter of opinion rather than matter of fact, or although the person expressing it [**18] puts it forward as his opinion, if he knows it to be false or does not believe it to be true, or if he does not in reality hold any such opinion or holds a contrary opinion." [citation omitted].

15 Tenn. App. at 166-167 (emphasis supplied).

Likewise, the amended complaint alleges not only that BDO lacked a reasonable basis for its opinions but also that BDO knew its expressions of opinion were false. Therefore, BDO's expressions or opinions were sufficient to constitute fraudulent concealment. Furthermore, the transaction in *Hamilton v. Galbraith* was a business transaction at arm's length so that Galbraith did not owe any special duty to Hamilton. In stark contrast, BDO was a fiduciary to Messrs. Jones, stood in a confidential relationship with them, and had superior knowledge regarding tax matters. *A fortiori*, the false opinions of BDO were sufficient to constitute fraudulent concealment.

BDO has cited *Cherry v. Williams*, 36 S.W.3d 78 (Tenn. App. 2000) for the proposition that misrepresentations of law will not constitute fraudulent concealment. For each of three reasons, BDO's reliance on *Cherry* is misplaced. First, BDO's reasoning would lead to illogical results. If BDO were correct, then a lawyer or accountant could knowingly give false legal advice to a client and thereby toll the statute of limitations. In essence, the lawyer or accountant could lie to the client with impunity. Second, *Cherry* did not address or consider any of the exceptions to the general rule, particularly the exception which applies when a false expression of opinion as to matters of law is given by one who has a fiduciary duty or who has superior knowledge. Third, *Cherry* is factually inapposite. In that case, Cherry alleged that entry of a $75,000 judgment against him shocked him

15

into "state of disbelief." Although Cherry's lawyers represented to him that the trial court had erred and that they would correct the error on appeal, the Court of Appeals still held that Cherry knew he had been injured as soon as he was informed of the judgment. In contrast, Messrs. Jones did not know of any injury and did not even suffer any injury until December, 2005 when the IRS sent the notice indicating that additional taxes were due.

**4.    Because BDO owed a fiduciary duty to Messrs. Jones, it owed a duty to speak. Thus, BDO's silence and concealment of facts was sufficient to constitute fraudulent concealment which tolled the statute of limitations.**

The Amended Complaint alleges fraudulent concealment by BDO through its silence and failure to disclose facts. [Amd. Cmplnt., at ¶¶ 112-113, 114-125]. That silence and those failures to disclose likewise constitute fraudulent concealment which tolled the statute of limitations.

It was not necessary for BDO to take affirmative action to conceal the cause of action against it. Because BDO owed a fiduciary duty to Messrs. Jones, mere silence or concealment of material facts was sufficient for fraudulent concealment. *Benton v. Snyder*, 825 S.W.2d 409 (Tenn. 1992)(mere silence will constitute fraudulent concealment where a confidential relationship exists). In *Stinnett v. Goans*, 1995 Tenn. App. LEXIS 699, a joint bank account was established in the name of Bertha Goans (mother), Dora Stinnett (daughter) and Fred Goans (son). Funds of the mother were deposited into this account. In 1989, Fred Goans and his wife converted these funds to the use of himself and his wife. Fred Goans never revealed to his mother that he had converted these funds. The conversion was not discovered until 1993, at which time suit was filed. The Court held that Goans' failure to speak constituted fraudulent concealment because he owed a fiduciary duty to his mother. *Id. See also, Blakeney v. Kassel*, 1991 Tenn. App. LEXIS 394 (statute of limitations tolled because attorney fraudulently concealed his participation in coal contracts).

16

### 5.    Messrs. Jones cannot be charged with constructive knowledge of BDO's fraud.

BDO contends that Messrs. Jones had constructive knowledge of its fraud because of the Congressional Investigation of Abusive Tax Shelters and the reports from that investigation, two IRS Notices, and six newspaper reports on actions taken by the IRS against promoters of abusive tax shelters. For numerous reasons, this contention of BDO is not well taken.

First, BDO is guilty of bad faith because it repeatedly represented to Messrs. Jones that the tax shelter which it was promoting was legitimate and was different from the tax shelters which were being attacked by the IRS. [Amd. Cmplnt., ¶ 74]. Further, BDO made numerous other false statements and concealed material facts. Because of its bad faith, BDO cannot invoke the doctrine of constructive knowledge. *Hamilton v. Galbraith, supra*, 15 Tenn. App. at 175 ("One who practices bad faith with another will not be permitted to invoke the doctrine of constructive notice in aid of his wrongdoing")(emphasis supplied). *See also*, *Bagby v. Carrico*, 1997 Tenn. App. LEXIS 875, *10-12 (rejecting constructive knowledge defense and stating: "[H]aving misrepresented a material fact to one who had placed his trust in him, Carrico cannot now claim that the injured party should have independently discovered that he was not telling the truth"). So it is in this case.  "Having misrepresented a material fact to one who had placed his trust in [it], [BDO] cannot now claim that the injured party [Messrs. Jones] should have independently discovered that [it] was not telling the truth." If the law were otherwise, accountants and lawyers could lie to their clients with impunity to conceal their wrongful conduct long enough for the statute of limitations to expire.[3]

Second, federal income taxation is complicated and understanding it is beyond the ken of

---

[3]None of the cases cited by BDO in support of its "constructive notice" argument appear to involve a fiduciary who, like BDO, had acted in bad faith.

laymen, such as Messrs. Jones. As a result, Messrs. Jones had no reason to suspect that BDO was lying when it represented that the tax shelter was different from the tax shelters which were being attacked and that the tax shelter would receive favorable treatment. This is *a fortiori* so inasmuch as BDO was their trusted advisor and owed them a fiduciary duty. In order to know whether BDO was lying to them, Messrs. Jones would have had to employ another accountant (or lawyer) to advise whether BDO was telling the truth. This would be ludicrous. In order to avoid the bar of the statute of limitations, clients of accountants should not be required to hire another accountant (or lawyer) to advise whether the first accountant is telling the truth. Yet, that would be the result if BDO's "constructive knowledge" argument were accepted.

Third, the Amended Complaint does not allege that Messrs. Jones read or became aware of any of the materials which BDO has cited. The Amended Complaint only alleges that they "became generally aware that the IRS was attacking tax shelters . . ." [Amd. Cmplnt., ¶ 74]. There is nothing in the record which establishes that Messrs. Jones read or became aware of the Congressional investigation, reports from those investigations, the IRS notices or the newspaper articles which BDO has submitted with its motion.

Fourth, the newspaper articles from *The Tennessean* and *The Chattanooga Times Free Press* make no mention of BDO. Likewise, the Congressional Report published in February of 2005 made no reference to BDO.[4] Because there was no mention of BDO in those documents, a perusal of the them would have only convinced Messrs. Jones that BDO was telling the truth when it said that its

---

[4]The Congressional Report published in November of 2003 mentioned the name of BDO at only one page of that 131 page report. It discussed only the activities of three other accounting firms: KPMG, Ernst & Young, and Price Waterhouse Coopers.

18

tax shelter was different from the tax shelters which were being attacked.[5]

Fifth, the statute of limitations will not accrue until the plaintiff has been injured, regardless of when the plaintiff has actual or constructive knowledge of the defendant's wrongful conduct. *Kohl v. Dearborn and Ewing, supra.* As already explained, Messrs. Jones did not suffer injury until December of 2005. Accordingly, the question of whether or when Messrs. Jones had constructive knowledge of BDO's wrongful conduct should be moot.

Sixth, whether publicity will be sufficient to charge a plaintiff with constructive notice is an issue of fact for the jury to decide. *Williams v. Stewart,* 137 N.M. 420, 425, 112 P.3d 281, 286 (N.M. App..2005). Thus, BDO's "constructive knowledge" argument is not something which can be decided on a Rule 12 motion to dismiss.

Seventh, cases cited by BDO are inapposite. To begin, the precise issue before this Court is not when constructive knowledge will trigger the statute of limitations. Rather, it is whether the alleged actions of a fiduciary constituted fraudulent concealment. Yet, fraudulent concealment was not even an issue in many of the cases which BDO has cited.[6]

Furthermore, silence by *a fiduciary*, such as BDO will constitute fraudulent concealment.

---

[5]At page 9 of its brief, BDO states that Messrs. Jones allege the conspiracy between BDO and Gramercy came to light as a result of the Congressional Investigations. This is misleading. The amended complaint only alleges that the conspiracy came to light *in part* because of those investigations. [Amd. Cmplnt., ¶ 32].

[6]*Shiny Rock Mining Corp. v. U.S.*, 906 F.2d 1362 (9th Cir. 1990); *Redhous v. Commissioner of Internal Revenue*, 728 F.2d 1249 (9th Cir. 1984); *Wendland v. Commissioner of Internal Revenue*, 739 F.2d 580 (11th Cir. 1984); *Hughes v. Vanderbilt University*, 215 F.3d 543 (6th Cir. 2000); *Ball v. Union Carbide Corp.*, 212 F.R.D. 380 (E.D. Tenn. 2002); *Benak v. Alliance Cap. Mgmt. LP*, 435 F.3d 396 (3d Cir. 2006); *Harold v. United States*, 2005 WL 1719126 (N.D. Ohio 2005); *U.S. v. Church Universal and Triumphant, Inc.*, 1991 WL 322615 (D. Mont. 1991); *Kohl v. Dearborn & Ewing, supra*, and *Raitz v. Sparks, supra.*

19

*See*, page 16, *supra.* Further, the client of a fiduciary is entitled to rely on what a fiduciary tells him and believe it to be true. Yet, only four of the cases cited by BDO in support of its "constructive notice" argument even mention a fiduciary relationship. *Benak v. Alliance Cap. Mgmt. LP*, *supra*; *Kohl v Dearborn & Ewing*, *supra*, *Raitz v. Sparks*, *supra* and *Harner v. Prudential-Bache Securities, Inc.*, 1994 U.S. App. LEXIS 25266 (6th Cir. 1994). Still further, fraudulent concealment was raised as an issue in only one of those cases, *Harner v. Prudential Bache.* In that case, investors received documents which contained contradictory information about an investment. The 6th Circuit held that this was sufficient to give notice to the investors of the fraud so that defendants' subsequent actions could not possibly have constituted fraudulent concealment.

In *Prudential Ins. Co. v. U.S. Gypsum*, 146 F. Supp.2d 643 (D.N.J. 2001), the plaintiff's suit was based on the hazards of asbestos. The court held that publication of EPA regulations on asbestos and other factors should have placed plaintiff under a duty of inquiry. The plaintiff was extensively involved in the commercial building industry, its executives had actual knowledge of the regulations, and it had conducted its own asbestos tests. In stark contrast, Messrs. Jones were not knowledgeable about tax matters and relied upon BDO, who owed a fiduciary duty to them.

*Shiny Rock Mining Corp. v. U.S.*, *supra,* involved a procedural challenge to the promulgation of a federal regulation. *Wendland v. Commissioner of Internal Revenue, supra,* considered the question of whether the IRS Commissioner had abused his discretion in giving retroactive effect to an amendment to a treasury regulation. *Harold v. United States*, 2005 WL 1719126 (N.D. Ohio 2005) was an appeal from the assessment of unpaid payroll taxes and did not involve a statute of limitations issue. Likewise, *U.S. v. Church Universal and Triumphant, Inc.*, 1991 WL 322615 (D. Mont. 1991) did not involve a statute of limitations issue. Instead, that case involved the IRS's

20

attempt to enforce summonses related to its investigation of the defendant's tax exempt status.

## II.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES EACH OF THE ASSERTED CAUSES OF ACTION.

### A.    The causes of action for fraud and misrepresentation have been adequately alleged.

BDO has also moved to dismiss pursuant to Rule 12(b), asserting that the Amended

Complaint fails to state a claim against it. As this court stated in *U.S. v. American Healthcorp, Inc.*,

977 F. Supp. 1329 (M.D. Tenn. 1997):

> The issue is not whether a claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." [citation omitted] . . .   A complaint should not be dismissed under *Rule 12(b)(6) of the Federal Rules of Civil Procedure* "unless it appears beyond doubt that [non-moving party] can prove no set of facts in support of [his or her] claim which would entitle [him or her] to relief."[citation omitted]

977 F. Supp. at 1331-1332 (emphasis supplied).

Further. such motions to dismiss are disfavored and rarely granted. *Vernon v. Medical Management*,

912 F. Supp. 1549, 1554 (S.D. Fla. 1996).

####   1.    Fraud and misrepresentation have been plead with the requisite degree of particularity.

> [I]n ruling on a motion to dismiss under Rule 9(b) for failure to plead fraud "with particularity," a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8. Indeed. Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather the two rules must be read in harmony. "Thus, it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.". . .The overarching purpose of Rule 9(b) is to provide a defendant with fair notice of the claims against him, in order that he may prepare an adequate responsive pleading. Id.

*U.S. v. American Healthcorp, Inc.*, *supra*, 977 F. Supp. at 1332 (emphasis supplied).

*See also, Ballan v. Upjohn*, 814 F. Supp. 1375 (W.D., Mi. 1992) which also cautioned against a strict reading of Rule 9(b), stressing as follows:

> Courts must also be sensitive to the fact that application of Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." [citations omitted].

814 F. Supp. at 1385 (emphasis supplied).

The Amended Complaint gives BDO the required "fair notice" of the claims against it. To begin, the Amended Complaint painstakingly alleges each of the misrepresentations and concealments by BDO. [Amd. Cmplnt., ¶¶ 74, 86, 91, 95-99, 112,130-134]. These same paragraphs of the Amended Complaint, particularly ¶¶ 92, 93, 95 and 99, allege that these misrepresentations were made by Mark Puckett of BDO and other representatives of BDO. At ¶ 93, the Amended Complaint alleges that one of those other representatives of BDO was an individual whom Puckett described as being a leading expert on tax shelters.[7]

The Amended Complaint specifically alleges that these misrepresentations were made at meetings in Nashville on October 18, 2001 and in New York in April of 2002. Thus, Messrs. Jones have specifically identified the two primary meetings at which the misrepresentations were made.

It is true that the Amended Complaint does not allege the "who, when and where" of the *concealments*. However, it is impossible to allege the "who, when and where" of concealments. Because of the very nature of concealments, it is only possible to allege "what" was concealed. The Amended Complaint does that in painstaking detail. [Amd. Cmplnt., ¶¶ 91, 95-97, 99, 112].

---

[7] Messrs. Jones believe that "leading expert" was Robert Greisman of BDO. After discovery has revealed the identity of that "leading expert," Messrs. Jones will amend their complaint to identify him specifically.

2. **To the extent that the misrepresentations by BDO might have been expressions of opinion, they are still actionable.**

BDO next asserts that its misrepresentations were non-actionable statements of opinion. For each of three reasons, this assertion is mistaken. First, there are exceptions to the general rule that expressions of opinion or representations of law will not form the basis of an action for misrepresentation. As explained at pages 12-16, *supra,* at least three of those exceptions are directly applicable to this case. The cases cited by BDO on this point (*Patel v. Baker*, 1991 Tenn. App. LEXIS 576; *Stacks v. Saunders*, 812 S.W.2d 587 (1990) *perm. app. denied* (1991); and *T.H. Engineering & Mfg., Inc. v. Mussard*, 2002 Tenn. App. LEXIS 367) are inapposite because none of them considered any of the exceptions to the general rule. Further, those cases involved arm's length business transactions whereas this case involves a fiduciary relationship. Indeed, *Patel* expressly held that the defendant did not owe a fiduciary duty to the plaintiff. Finally, the parties who claimed to have been defrauded in *Mussard* were CPA's. In this case, the CPA's were the *defrauding* party.

Second, many of the misrepresentations and misleading statements by BDO were clearly misrepresentations of fact. *See*, Amended Complaint, ¶¶ 86, 91, 95-99, 112, 138, 139.[8]

Third, BDO cannot escape liability for its misrepresentations and concealments of fact simply because it might have intermingled those misrepresentations of fact with expressions of opinion which it knew to be false. As stated at 37 *Am Jur 2d*, Fraud and Deceit §70:

It is not necessary, to constitute fraud, that all the representations made in a transaction be statements of fact. It is immaterial that some of the false

---

[8]In its brief, BDO claims that Messrs. Jones admitted at ¶ 28 of the Amended Complaint that *all* of BDO's misrepresentations and concealments were opinions, representations of law and predictions. *This is not so. See also*, ¶ 90 of the Amended Complaint which alleges as follows: "To the extent that any of these representations might have been opinions or projections, there was no reasonable basis for such an opinion or projection when it was made." (emphasis supplied).

23

> representations do not separately or collectively constitute an actionable statement
> of fact; that some are matters of opinion will not preclude relief. It is sufficient if
> there are any misrepresentations of material facts made with knowledge of their
> falsity and the intention that they should be relied upon, which constitute a
> substantial factor in inducing the transaction. Stated otherwise, the general rule that
> the expression of an opinion cannot constitute fraud does not apply if in addition to
> expressing an opinion, material facts have been fraudulently concealed.

Id., *citing Lake v. Thompson*, 366 Pa. 352, 77 A.2d 364 (1951) and *Reis v. Peabody Coal Co.*, 997 S.W.2d 49 (Mo. Ct. App. E.D. 1999) (emphasis supplied).

In this case, the misrepresentations of fact were obviously a substantial factor in inducing Messrs. Jones enter the transactions and to pay the huge amount of consulting fees. Therefore, the Amended Complaint sufficiently alleges a claim for fraud and misrepresentation.

### 3. The Amended Complaint alleges that the reliance of Messrs. Jones on the misrepresentations and concealment by BDO was reasonable.

BDO contends that Messrs. Jones have failed to allege that they reasonably relied on its misrepresentations. However, Messrs. Jones have repeatedly alleged that they reasonably relied on BDO. [Amd. Cmplnt., ¶¶ 34, 76, 116, 104-105, 116, 121, 132, 141].

BDO nevertheless contends that the reliance by Messrs. Jones was unreasonable because they accepted BDO's representations as true. BDO cites *Mcneil v. Nofal*, 185 S.W.2d 402, 408-409 (Tenn. Ct. App. 2005) for the proposition that "blind faith" acceptance of a misrepresentation is unreasonable as a matter of law. However, that case is inapposite because it involved an "arm's length transaction between knowledgeable parties." *Id.* at 410. In stark contrast: (1) BDO owed a fiduciary duty to Messrs. Jones, (2) Messrs. Jones had placed their trust and confidence in BDO, and (3) BDO held itself out as having vastly superior knowledge on tax matters. Under such circumstances, it was reasonable for Messrs. Jones to rely upon what BDO represented to them.

Finally, whether the reliance of Messrs. Jones was reasonable is not a question to be decided

24

from the pleadings on a Rule 12(b) motion. It is a question of fact to be decided by the jury.

**B.     The Amended Complaint adequately alleges a civil conspiracy.**

> 1.     **The Amended Complaint alleges that BDO and Gramercy not only conspired for an unlawful purpose but also that they used unlawful means.**

BDO asserts the Amended Complaint does not allege an unlawful purpose or an unlawful means for the conspiracy. However, a complaint states a claim for conspiracy if it alleges that the conspiracy had an unlawful purpose *or* that it utilized an unlawful means. It is *not* necessary to allege both. *Braswell v. Carothers*, 863 S.W.2d 722, 727 (Tenn. Ct. App. 1993). Further, the Amended Complaint alleges *both*. First, it alleges that BDO and Gramercy conspired for the unlawful purpose of defrauding Messrs. Jones and others into paying huge fees for worthless services. [Amd. Cmplnt., ¶¶ 29, 36, 143-159].[9] Second, it alleges that BDO and Gramercy did this by the unlawful means of promoting and selling illegal and abusive tax shelters. *Id.*[10]

> 2.     **The Amended Complaint specifically alleges that the primary purpose of the conspiracy was to injure Messrs. Jones and other like them.**

BDO asserts that the Amended Complaint fails to allege that the primary purpose of the conspiracy was to injure Messrs. Jones. However, the Amended Complaint specifically alleges at ¶ 29 "that the primary motive of BDO and Gramercy in their fraud was to exact more than

_____

[9]For example, the Amended Complaint alleges as follows at ¶ 152: "BDO and Gramercy engaged in a civil conspiracy consisting of an agreement . . . to trick Messrs. Jones into paying large fees for worthless products and services."

[10]The Amended Complaint alleges as follows at ¶154: "The scheme of BDO and Gramercy included overt acts such as using established customer relationships and confidential customer information to identify potential clients for their illegal and abusive tax shelters; executing the series of transactions underlying the abusive and illegal tax shelters; preparing and signing inaccurate tax returns; and procuring and providing false tax opinion letters . . .."

25

$1,100,000 in fees and commissions *from Messrs. Jones.*" (emphasis supplied). At ¶ 145, the

Amended Compliant further alleges as follows:

> The receipt of fees and pecuniary gain from those fees was the *primary* motive for
> defendants' conduct; the provision of professional services to clients was merely an
> incidental byproduct of, and not a motivating factor for, the conduct of BDO and
> Gramercy . . . (emphasis supplied)

## C.   The Amended Complaint adequately alleges a breach of fiduciary duty.

BDO next alleges that the claim for breach of fiduciary duty is duplicative of the claim for

malpractice. Based on this, BDO contends that the claim for breach of fiduciary duty should be

dismissed. BDO is incorrect. A claim for breach of fiduciary duty is not duplicative of a claim for

malpractice. This has already been explained at pages 3-5, *supra.*

## D.   The Amended Complaint adequately alleges a violation of the Tennessee Consumer Protection Act.

The claim for breach of the Tennessee Consumer Protection Act ["the Act"] is set forth at

¶¶ 166-168 of the Amended Complaint. Further, ¶166 incorporates by reference the allegations of

¶¶ 1-165. Thus, the claim for breach of the Act includes the allegations which support the claim for

fraud and misrepresentation. Because the claim for fraud and misrepresentation is alleged with

sufficient particularity to satisfy the requirements of Rule 9(b), the claim for breach of the Act is

likewise alleged with sufficient particularity to satisfy the requirements of Rule 9(b).

## E.   The Amended Complaint adequately alleges the claim for negligent misrepresentation.

For the same reasons that the claim for fraud and misrepresentation has been adequately

pleaded and should not be dismissed, the claim for negligent misrepresentation has been adequately

pleaded and should not be dismissed.

26

## III. THE MOTION TO COMPEL ARBITRATION MUST BE DENIED.

### A. **Messrs. Jones have alleged that BDO wrongfully induced them to sign the consulting agreements which contain the provisions for arbitration.**

Messrs. Jones signed the consulting agreements which include the provisions that purport

to require arbitration. However, Messrs. Jones have alleged that BDO wrongfully induced them to

sign those consulting agreements. [Amd. Cmplnt., ¶¶ 104, 113]. Therefore, the motion to compel

arbitration must be denied. *Whisenant v. Bill Heard Chevrolet,* 2005 Tenn. App. LEXIS 418 (Tenn.

Ct. App. 2005) is directly on point. In that case, Whisenant contended that she had been fraudulently

induced to enter a contract which included an arbitration agreement. The trial court denied the

defendant's motion to compel arbitration. The Court of Appeals affirmed, explaining as follows:

> The [Tennessee Supreme Court said [in *Taylor v. Butler, 142 S.W.3d 277 (Tenn. 2004)*]:
>
> This Court has also held that claims of fraud in the inducement are to be resolved by the courts and not by an arbitrator when the contract is governed by Tennessee law. *Frizzell Constr. Co., 9 S.W.3d at 84*. In Frizzell,. . . we held that:
>
> > By stating that the contract is to be governed by Tennessee law, the parties have indicated their intention to arbitrate all disputes "arising out of, or relating to" their agreement - but only to the extent allowed by Tennessee law. . . . Therefore, because Tennessee law contemplates judicial resolution of contract formation issues, we conclude that the parties have indicated their intention not to submit such issues to arbitration.
>
> *Id. at 85.*
>
> . . . [A]s shown in our review of the case law, Tennessee law reflects the "minority view" that even in the face of a broadly worded arbitration agreement, a party is entitled to a judicial resolution of a claim of fraudulent inducement since such a claim calls into question the very existence of the contract of which the arbitration agreement is part. (emphasis supplied)

Similarly, the consulting agreements in this case provide that the law of Tennessee shall control .

[Amd. Cmplnt., Exhibit 7, §11 and Exhibit 8, § 11]. Therefore, the motion to compel arbitration

must be denied. *See also*, *River Links at Deer Creek, LLC v. Melz*, 108 S.W.3d 855 (Tenn. Ct. App.

27

2002) *perm. app. denied* (2003) in which the Middle Section for the Tennessee Court of Appeals refused to compel arbitration, emphasizing as follows:

> Appellant argues that a plaintiff should only be allowed to avoid arbitration on the basis of fraud in the inducement where the alleged fraud induced the execution of the arbitration clause itself, rather than other clauses in the contract. But in *City of Blaine,* supra, we rejected such a narrow construction of the fraud exception.

108 S.W.3d at 859 (emphasis supplied).

It is of no moment that this case is in Federal Court, rather than in state court. The law of Tennessee still controls. *Cap Gemini Ernst & Young v. Nackel*, 346 F.3d 360, 364-365 (2d Cir. 2003); *Shlomo v. Time Warner*, 2006 U.S. Dist. LEXIS 75972, *9-10 (S.D.N.Y. 2006)(same).

### B.    Cases cited by BDO are inapposite.

The cases cited by BDO are inapposite. First, BDO has cited a plethora of cases in which the parties stipulated that they would arbitrate. Obviously, those cases are meaningless.[11]

BDO has cited five cases in which the duty to arbitrate was at issue. However, only one of those cases applies Tennessee law. *Plyler v. BDO Seidman, LLP,* 2005 U.S. Dist. LEXIS 41288 (W.D. Tenn. 2005). Further, *Plyler* did not involve a claim of fraudulent inducement.

### C.    Because BDO has not requested mediation, it has failed to satisfy the condition precedent to invoking the arbitration provisions.

At §§8(a) and (d), the consulting agreements include the following :

If any dispute, controversy or claim arises in connection with the performance or breach of this Agreement, either party may, upon written notice to the other party, request mediation . . .

. . .

If any dispute, controversy or claim arises in connection with the performance or

---

[11]A stipulation does not involve a decision by a court. Further, the parties in those cases could have had numerous reasons for agreeing to arbitrate even though they believed the arbitration provisions were not enforceable.

breach of this Agreement and cannot be resolved by mediation within sixty days (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by binding arbitration . . .

Thus, mediation must be requested before either party may demand arbitration. However, neither party has requested mediation. [Winston S. Evans Affidavit]. So, neither party can demand arbitration. *See, Kemiron Atlantic v. Aguakem International, Inc.*, 290 F.3d 1287, 1290 (11th Cir. 2002)(motion to compel arbitration denied where parties' agreement provided that they would first attempt to mediate any disputes and neither party had requested mediation); *HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41 (1st Cir. 2003)(same).

D.    **BDO has waived any rights which it might have had to compel arbitration.**

"It is well settled that a party can waive its contractual right to arbitration like any other contractual provision. [numerous citations omitted]." *Southern Systems, Inc. v. Torrid Oven Limited*, 105 F. Supp.2d 848, 852 (W.D. Tenn. 2000). One factor to consider in determining if there has been waiver is prejudice. *Id.* at 853. Prejudice can occur "when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." *Id.* at n. 5(emphasis supplied).

In this case, BDO has taken at least two actions inconsistent with the right to arbitrate. First, it did not request mediation before demanding arbitration. Second, it coupled its demand for arbitration with a motion to dismiss. If its motion to dismiss is denied, BDO hopes to have this case sent to arbitration. Once in arbitration, BDO will again present its motion to dismiss in the hope that arbitrator will grant the motion.[12] BDO is attempting to have the proverbial "two bites at the apple." This should not be permitted. As at least one court has observed:

A party cannot take his chances before the court without objection, and, after he

--------

[12]Should this occur, the arbitrator will have effectively overruled the District Court.

29

loses, claim the right to arbitration under the terms of the contract.

*Rife Construction Company v. Brans*, 298 S.W.2d 254, 259 (Tex. Civ. App. 1956).

## CONCLUSION

For the reasons stated, the motion to dismiss and the request for arbitration should be denied.

Respectfully submitted,

s/ Winston S. Evans
Winston S. Evans (#6281)
Thomas W. Shumate IV (#19595)
EVANS, JONES & REYNOLDS, P.C.
1810 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2424
(615) 259-4685
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **RESPONSE OF PLAINTIFFS OPPOSING MOTION TO DISMISS FILED BY BDO SEIDMAN, LLP** has been served via **Electronic Transmission** upon:

Michael L. Dagley, Esq.
Brian D. Roark, Esq.
BASS, BERRY & SIMS, PLC
315 Deaderick St., Suite 2700
Nashville, TN 37238-3001

Robert S. Markin, Esq.
Mike Poulos, Esq.
DLA Piper US LLP
203 N. LaSalle St., Suite 1900
Chicago, IL 60601

Julie Murphy Burnstein, Esq.
BOULT, CUMMINGS, CONNERS
& BERRY, PLLC
1600 Division St., Suite 700
P.O. Box 340025
Nashville, TN 37203

Jonathan R. Altschuler, Esq.
Michael E. Petrella, Esq.
Sean F. O'Shea, Esq.
O'SHEA PARTNERS, LLP
90 Park Ave., 20th Floor
New York, NY 10016

this 27th day of June, 2007.

s/ Winston S. Evans

361400 021 ls

30

# E X H I B I T    1

Internal Revenue Service
LMSB Division
801 Civic Center Drive, Suite 200
Santa Ana, CA. 92701

Date: December 15, 2005

Taxpayer:
Carleton A. Jones, III
2734 E. Oakland Ave., #18
Johnson City, TN, 37601

Department of the Treasury

Refer Reply to: FC:HMT 1224

Group: HMT 1224

Person to Contact: Frank Camarillo

Employee Identification Number:
33-05360
Telephone Number: 714-347-9459

Dear Taxpayer:

On October 27, 2005, the Internal Revenue Service issued Announcement 2005-
80, 2005-46 I.R.B. 967, which sets forth the terms of a settlement initiative that
provides taxpayers an opportunity to resolve their tax liabilities associated with
certain transactions. We are aware that you participated in an abusive
transaction that is not one of the transactions included in the settlement initiative.
Although the transaction you participated in is not included in that initiative, we
would like to give you the opportunity to resolve your tax liabilities associated
with that transaction in accordance with the terms set forth in Announcement
2005-80.

Based on our records, you participated in a transaction in which you were a
partner in a partnership and another partner made a section 721 contribution of
property to the partnership, where the contributing partner's adjusted basis in the
property was greater than the fair market value of the asset, and you participated
in the transaction for the purpose of recognizing the loss on the partnership's
disposition of that asset for federal income tax purposes (The Partnership Loss
Contribution Transaction)

If you would like to settle your transaction pursuant to this letter, then you must
complete the enclosed Form 13750, Election to Participate in Announcement
2005-80 Settlement Initiative. Do not fill out Section II and do not send the
Election to the address noted on the form. Instead, type or write the name of
your transaction at the top of each page (The Partnership Loss Contribution
Transaction), and return the Election to the contact person named above at
the following address:
            Internal Revenue Service
            801 Civic Center Drive, Suite 200
            Santa Ana, CA, 92701
            Attn: FC: HMT1224

You must return the Election to the IRS on or before February 16, 2006. Please note that this Election must be signed under penalties of perjury. Taxpayers entitled to relief because of Hurricanes Katrina and Rita (see IR-2005-112 and IR-2005-110) have until February 28, 2006, to return the Election to the IRS.

We may ask you to provide additional information and documentation relating to the transaction, such as marketing materials and tax opinion letters. All requested information must be submitted under penalties of perjury to the Service within 30 days of the date of mailing of the request for additional information by the Service. Failure to provide the information timely will affect your ability to participate in the settlement initiative. Settlement will be pursuant to a Form 906, Closing Agreement on Final Determination Covering Specific Matters.

Resolution of the issues relating to your transaction will be in accordance with the terms described in the attached appendix.

If you have any questions, please contact the individual whose name and telephone number appear at the top of this letter.

Sincerely,

Frank Camarillo

Internal Revenue Agent

## APPENDIX

1. General Tax Adjustments: The tax benefits attributable to the difference between the fair market value of the contributed property at the time of contribution and the contributing partner's claimed adjusted basis in the property (the "built-in loss") will be disallowed. In this regard, in computing the corrected gain or loss (if any) from the sale or exchange of the contributed property (or from the sale of a lower tier entity holding such property) the basis used in such computation will be reduced by the amount of the built-in loss and the resulting corrected gain or loss (if any) will be allocated to the partners in accordance with their partnership interests. In computing the built-in loss, the fair market value of the distressed assets will be based upon the price you paid the foreign entity for your partnership interest (projected to reflect a 100% interest if less than 100% interest was acquired). Also you will be required to reduce your outside basis in the partnership to the extent that any of such basis is attributable to the contribution of foreign currency options. In addition, if the partnership or any lower tier entity continues to hold assets received in exchange for the contributed property, the partnership's basis in such assets received will be limited to fair market value on the date of the exchange, which will be presumed to be the value used by the partnership (i.e. amount received) in computing the claimed loss on the property exchanged.

2. Transaction Costs: Taxpayers will be allowed to treat as an ordinary loss transaction costs, including promoter fees and fees paid for accounting, appraisal, and legal services. If tax benefits, including benefits attributable to transaction costs, were claimed in a year barred by the period of limitations on assessment, then transaction costs will be allowed as an ordinary loss only to the extent the transaction costs exceed the tax benefits claimed in the barred years.

3. Penalties: Any person wishing to settle under this offer will be subject to a section 6662 accuracy-related penalty in an amount equal to 10 percent of the underpayment attributable to this transaction.

Part IV - Items of General Interest

Settlement Initiative

Announcement 2005-80

## Section 1. Overview

This announcement provides a settlement initiative under which taxpayers and the Internal Revenue Service (Service) may resolve the tax treatment of certain tax transactions. Section 2 describes who is eligible to participate. Section 3 describes eligible transactions. Section 4 describes the settlement terms. Section 5 sets out the settlement procedures. Taxpayers have until January 23, 2006, to notify the Service of their intent to participate in this settlement initiative.

## Section 2. Eligible Taxpayers

A person that claimed a federal tax benefit from a transaction described in section 3, including a person that filed an amended return claiming a federal tax benefit from such a transaction, may participate in this initiative unless the person is an ineligible person as determined in this section. However, a person described in paragraph 1, 2, or 3 that would like to settle under this initiative may file an Election that identifies each reason the person is an ineligible person, and request that the Service permit settlement under this initiative.

1.  Promoters. A person who (i) organized, managed or sold the transaction; (ii) participated in the organization, management, or sale of the transaction; or (iii) received fees in connection with the organization, management, or sale of the transaction is an ineligible person.

2.  Persons related to promoters. A partner in a partnership that is described in paragraph 1 of this section, a five percent or more shareholder of a corporation that is described in paragraph 1, or a person otherwise related to a person described in paragraph 1 within the meaning of § 267(b) (other than § 267(b)(1)) or § 707(b) is an ineligible person.

3.  TEFRA partners of promoters. A partner in a disqualified entity in which (a) an ineligible partner claimed more than two percent of the improper tax benefits from the transaction at issue, or (b) ineligible partners in the aggregate claimed five percent or more of the improper tax benefits from the transaction, is an ineligible person. An "ineligible partner" is a person who is an ineligible person other than by reason of this paragraph 3. A "disqualified entity" is an entity that (i) is subject to the unified partnership audit and litigation provisions of §§ 6221 through 6234, as enacted by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA partnership) (ii) engaged in a transaction described in section 3 of this

announcement, and (iii) includes one or more ineligible partners. However, a partner who is not an ineligible partner may settle if the ineligible partners that cause the TEFRA partnership to be described in this paragraph 3 execute a waiver under § 6224(b) of their right under § 6224(c)(2) to a consistent settlement agreement, as provided in Form 13751, *Waiver of Right to Consistent Agreement of Partnership Items and Partner-level Determinations as to Penalties, Additions to Tax, and Additional Amounts.*

4.    Persons who engaged in a transaction that has been designated for litigation. A person who directly or indirectly engaged in a transaction and, before the date on which the Election is filed, the Service has informed the person (or the tax matters partner or notice group of the TEFRA partnership of which the person was a partner) that the Service has designated or is considering designating the transaction for litigation is an ineligible person.

5.    Persons in litigation. A person who, individually or as a partner in a TEFRA partnership, is a party in a court proceeding to determine the tax treatment of any aspect of the transaction is an ineligible person.

6.    Fraud. A person against whom the Service has imposed the fraud penalty under § 6663, or a person that has been notified before the date on which the Election is filed that the Service is considering imposing the fraud penalty against that person, is an ineligible person.

7.    Persons under criminal investigation. A person under tax-related criminal investigation by the Service or the Department of Justice, or a person that has been notified, before the date on which the Election is filed, that the Service or the Department of Justice intends to commence a tax-related criminal investigation of that person is an ineligible person.

## Section 3. Eligible Transactions

The following transactions are eligible for settlement under this initiative. Stated by each transaction is the accuracy-related penalty on the underpayment attributable to the transaction that a person will be required to pay, unless one of the exceptions listed in paragraph E of section 4 applies.

1.    Notice 2002-21, 2002-1 C.B. 730 (Tax Avoidance Using Inflated Basis) (20%).
2.    Notice 2001-16, 2001-1 C.B. 730 (Intermediary Transactions Tax Shelter) (20%).
3.    Notice 2003-55, 2003-2 C.B. 395 (Accounting for Lease Strips and Other Stripping Transactions (10%), and transactions involving losses reported from inflated basis assets from lease strips (20%)).
4.    Notice 2003-54, 2003-2 C.B. 363 (Common Trust Fund Straddle Tax Shelters) (10%), but excluding transactions described in Notice 2002-50, 2002-1 C.B. 992, and Notice 2002-65, 2002-2 C.B. 690.
5.    Notice 2003-81, 2003-2 C.B. 1223 (Tax Avoidance Using Offsetting Foreign Currency Option Contracts) (10%).
6.    Notice 99-59, 1999-2 C.B. 761 (Tax Avoidance Using Distributions of Encumbered Property) (10%).

7.   Rev. Rul. 2004-98, 2004-42 I.R.B. 664 ("Reimbursements" for parking expenses previously paid by an employer or previously paid by an employee through salary reduction) (5%).

8.   Rev. Rul. 2004-20, 2004-1 C.B. 546, Situation 1 (Pension plan fails to satisfy § 412(i) where amounts accumulated under life insurance contracts and annuities held by the plan exceed benefits payable under plan terms) and Situation 2 (Employer contributions to pension plan are not currently deductible when used to pay premiums on life insurance contracts that provide for death benefits in excess of the participant's death benefit under the terms of the plan), and Rev. Rul. 2004-21, 2004-1 C.B. 544 (Pension plan fails to satisfy nondiscrimination requirements due to differences in the value of participants' rights to purchase life insurance contracts from the plan) (5%).

9.   Notice 2004-8, 2004-1 C.B. 333 (Abusive Roth IRA Transactions) (5%).

10.  Rev. Rul. 2004-4, 2004-1 C.B. 414 (Transactions that involve segregating the business profits of an employee stock ownership plan (ESOP)-owned S corporation in a qualified subchapter S subsidiary, so that rank-and-file employees do not benefit from participation in the ESOP) (5%).

11.  Notice 2003-77, 2003-2 C.B. 1182 (Transfers to Trusts to Provide for the Satisfaction of Contested Liabilities) (5%).

12.  Notice 2003-24, 2003-1 C.B. 853 (Tax Problems Raised by Certain Trust Arrangements Seeking to Qualify for Exception for Collectively Bargained Welfare Benefit Funds under § 419A(f)(5)) (5%).

13.  Rev. Rul. 2003-6, 2003-1 C.B. 286 (Certain arrangements involving the transfer of ESOPs that hold stock in an S corporation for the purpose of claiming eligibility for the delayed effective date of § 409(p)) (5%).

14.  Rev. Rul. 2002-3, 2002-1 C.B. 316; Rev. Rul. 2002-80, 2002-2 C.B. 925 ("Reimbursements" of employees for salary reduction amounts previously excluded from gross income under § 106; "Advance reimbursements" or "loans" without regard to whether an employee has incurred medical expenses) (5%).

15.  Notice 2000-60, 2000-2 C.B. 568 (Stock Compensation Corporate Tax Shelter) (5%).

16.  Rev. Rul. 2000-12, 2000-1 C.B. 744 (Certain transactions involving the acquisition of two debt instruments the values of which are expected to change significantly at about the same time in opposite directions) (5%).

17.  Notice 95-34, 1995-1 C.B. 309 (Tax Problems Raised by Certain Trust Arrangements Seeking to Qualify for Exemption from § 419) (5%).

18.  Treas. Reg. § 1.643(a)-8 (Certain Distributions by Charitable Remainder Trusts) (5%).

19.  Certain abusive charitable contributions and conservation easements (Deductions under § 170 improperly claimed as a result of: (a) open space easements where the easement has no, or de minimis, value; (b) historic land or façade easements that have no, or de minimis, value; and (c) so-called conservation buyer transactions where the charitable organization purchases property, places an easement on it and then "sells" the property with the easement to a buyer at a price substantially less than that paid for it and the

buyer also makes a charitable contribution that approximates the price differential. See Notice 2004-41, 2004-28 I.R.B. 31.) (5%).[1]

20. Certain abusive charitable contributions of patents and other intellectual property (Transfers of patents or other intellectual property to charitable organizations where the property transferred has no, or de minimis, value. See Notice 2004-7, 2004-1 C.B. 310.) (5%).[1]

21. Management S Corporation ESOP Transactions (Transactions where the taxpayer has claimed that it is entitled to exclude income of an operating business by asserting, incorrectly, that the taxpayer had established, on or before March 14, 2001, an employee stock ownership plan entitled to an exemption from unrelated business income and an S corporation that is a management corporation, and whatever actions that were taken to attempt to establish an employee stock ownership plan and a management S corporation were taken on or before March 14, 2001) (5%).

## Section 4. Settlement Terms

### A. General Tax Adjustments.

The Service will settle with persons under this initiative by disallowing the improperly claimed tax benefits associated with the transaction in a manner consistent with relevant published guidance providing the Service's view of the transaction, the terms set forth in this announcement, and the facts and circumstances surrounding the specific transaction. For certain transactions, that may mean that the transaction will be treated as not having occurred for tax purposes and the person must concede all claimed tax benefits of the transaction for all taxable periods not barred by the period of limitations on assessment. For other transactions, that may mean that the transaction will be recharacterized in a manner consistent with its substance, and the person must concede all claimed tax benefits inconsistent with that substance. The person may also be required to make adjustments to basis, as appropriate, may be required to unwind or dissolve entities formed for the purpose of facilitating the transaction, and may have to pay applicable excise tax, employment tax, and self-employment tax liabilities.

These settlement terms apply for resolution of these transactions only, and do not constitute an interpretation of general rules to be applied in transactions not settled under this initiative.

A person may be required to change its method(s) of accounting to resolve a

---

[1] The Service does not consider deductions under § 170 for charitable contributions of patents, other intellectual property, or conservation easements to be inappropriate when taxpayers have complied with the requirements for such deductions. Indeed, § 170 is intended to encourage charitable giving. In some instances, however, taxpayers have improperly claimed charitable contribution deductions as described in Notice 2004-41 and Notice 2004-7.

4

transaction. In such a situation, the settlement will impose the necessary accounting method change(s) with the following terms and conditions. The year of change will be the earliest taxable year in which the existing accounting method was used by the person in connection with the transaction, or the first taxable year for which the period of limitations has not expired. The Commissioner will grant consent under § 446(e) to make the method change on a retroactive basis. Where required, a § 481(a) adjustment will be imposed and taken into account entirely in the year of change.

Additional transaction-specific provisions apply in resolving these transactions. See Questions and Answers for Announcement 2005-80 at http://www.irs.gov for those specific provisions.

B. Transaction Costs Generally Allowed as an Ordinary Loss. A person settling under this initiative will be allowed to treat as an ordinary loss those transaction costs, including promoter fees and fees paid for accounting, appraisal, and legal services, actually paid by the taxpayer. If tax benefits, including benefits attributable to transaction costs, were claimed in a year barred by the period of limitations on assessment, then transaction costs will be allowed as an ordinary loss only to the extent the transaction costs exceed the tax benefits claimed in the barred years.

C. Tax-Exempt Entities. Where a transaction includes a tax-exempt entity as a party, resolution for the taxpayer may require the tax-exempt entity to disburse any funds received as a result of the transaction. As noted in paragraph A of this section 4, excise taxes may also apply. If an eligible taxpayer created a tax-exempt entity specifically for the purpose of accommodating an abusive or tax-avoidance transaction, or if an entity created by an eligible taxpayer has engaged in abusive transactions as a substantial part of its activities, the entity may also be required to agree to revocation of its exemption.

D. Multi-Party Transactions. The Service generally expects that all parties to a transaction (e.g., an employer and employee) will elect to resolve the transaction under this initiative. The failure of all parties to the transaction to elect to resolve the transaction under this initiative will not automatically preclude settlement for the electing parties. If all parties do not elect to participate in this initiative, however, the Service reserves the right to not settle with the electing parties if it is not in the interest of sound tax administration to do so.

E. Penalties.

1.  Except as otherwise provided in this paragraph E, a person that settles a transaction under this initiative will pay an accuracy-related penalty under § 6662 on the underpayment attributable to the transaction in the percentage amount provided for the transaction above in section 3.
2.  A person that properly disclosed the transaction under Announcement 2002-2, 2002-1 C.B. 304, will not pay a penalty on the underpayment attributable to the disclosed transaction.

3. For purposes of this settlement initiative, at the discretion of the Service, a person that received and relied on a written tax opinion with respect to the treatment of the transaction under federal tax law before filing a return affected by the transaction will not pay a penalty on the underpayment attributable to that transaction if[2]—

    a. the tax opinion (i) concluded at a confidence level of at least "more likely than not" (a greater than 50% likelihood) that all significant federal tax issues arising out of the transaction would be resolved in the taxpayer's favor, and (ii) considered all the relevant facts and did not assume any unreasonable facts; and

    b. the tax advisor (i) was not a person described in section 2, paragraph 1 or 2, (ii) was not referred to the taxpayer by a person described in section 2, paragraph 1 or 2, and (iii) did not have a fee arrangement contingent on the successful sustention of all or part of the intended tax benefit.

4. All other applicable penalties and additions to tax will apply.

F. Statute Extensions. Where the period of limitations on assessment of any applicable tax (e.g., income, excise, and employment taxes) will otherwise expire within 12 months after a person files an Election, the Service will ordinarily request that the person consent to extend the applicable period of limitations. If, after a request by the Service, the person does not consent to extend the applicable period of limitations as requested, the Service will treat that person as having withdrawn from this initiative.

## Section 5. Application Process

A. Election. A person that wants to resolve a transaction through this settlement initiative must send an Election (Form 13750, *Election to Participate in Announcement 2005-80 Settlement Initiative*, and all required attachments) on or before January 23, 2006, to:

> INTERNAL REVENUE SERVICE
> Attn: Announcement 2005-80
> MS 1505
> 24000 Avila Rd
> Laguna Niguel, CA 92677

Form 13750, as well as the required schedules and attachments, must be used to elect to participate in this initiative and must be submitted to the address listed above. The form will be available at http://www.irs.gov. The Service reserves the right not to accept any Election not properly addressed and timely mailed within the meaning of § 7502.

---

[2] The penalty waiver under this paragraph is being provided in the context of this administrative settlement, and does not reflect all relevant facts and circumstances that determine whether a taxpayer reasonably relied in good faith on a tax opinion.

A person who is under examination (or in Appeals), or who is a partner in a TEFRA partnership that is under examination (or in Appeals), must send a copy of the Election to the IRS examiner (or IRS Appeals Officer).

B. Required Information. The Election requests information necessary to process the election and determine the proper tax liabilities. The Service may request additional information and documents relating to the transaction, such as marketing materials and tax opinion letters. All requested information must be submitted under penalties of perjury to the Service within 30 days of the date of mailing of the request for additional information by the Service. The Service may grant an extension for good cause to persons who request additional time within the 30-day period. The Service will treat a person who fails to provide the required information within the applicable time period as having withdrawn from the initiative.

C. Passthrough Entities. If the participant in the transaction was a partnership, subchapter S corporation, or some other pass-through entity, then the person that would be liable for the tax (e.g., the partner or shareholder) who wants to participate in this initiative must submit an Election on his or her own behalf.

D. Closing Agreement and Payment. After receiving all the necessary information, the Service will prepare a closing agreement under § 7121 reflecting the terms of the settlement. The Service will send the closing agreement to the person (or the person's corporate parent or representative, if appropriate), who must sign and return it to the Service within 30 days of the date of mailing by the Service. The Service may grant an extension for good cause.

A person settling under this initiative must fully pay all taxes, interest, and penalties due under the terms of the settlement when the signed closing agreement is returned to the Service. Any person unable to make full payment at that time must submit complete financial statements and agree to financial arrangements acceptable to the Service before the Service will execute a closing agreement. The Service will not execute a closing agreement under this initiative with anyone unable to reach acceptable financial arrangements.

E. Other Dispute Resolution Procedures. This settlement initiative does not affect conventional Service resolution procedures available to eligible persons that do not settle under this initiative. For eligible persons that forgo resolving eligible transactions under this settlement initiative and take their issues to Appeals, Appeals will carefully consider both the issue merits and the penalty, but such persons should not expect to receive a better offer in Appeals than that offered under this settlement initiative and may in fact receive a less favorable outcome.

7

### Section 6. Paperwork Reduction Act

The collection of information in this announcement has been reviewed and approved by the Office of Management and Budget under the Paperwork Reduction Act (44 U.S.C. § 3507) under control number 1545-1967. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection of information displays a valid OMB number.

The collection of information in this announcement is in Section 5, Application Process. This information is required to apply the terms of the settlement and determine the suitable amount of any penalties. Collecting information is required to obtain the benefit described in this announcement. The likely respondents are individuals, businesses, other for-profit institutions, and tax-exempt entities.

The estimated total annual reporting burden is 2,500 hours. The estimated annual burden per respondent varies from 3 to 7 hours, depending on individual circumstances, with an estimated average of 5 hours. The estimated number of respondents is 500. The estimated frequency of responses is one time per respondent.

Books or records about a collection of information must be retained as long as their content may become material in administering any internal revenue law. Generally tax returns and tax return information are confidential, as required by 26 U.S.C § 6103.

### Section 7. Contact Information

The principal author of this announcement is Joe Spires of the Office of Chief Counsel. For further information regarding this announcement, questions can be sent to Settlement.Initiative@irscounsel.treas.gov or contact (202) 622-4284 (not a toll-free call).

# E X H I B I T   2

Internal Revenue Service
LMSB Division

Date: December 14, 2005

John A. Jones
Janet S. Givens Jones
2308 Rambling Road
Johnson City, TN 37604

Department of the Treasury

Refer Reply to:
The Partnership Loss Contribution
Transaction

Group:
LMSB 1223

Person to Contact:
E. Ploessel

Employee Identification Number:
33-04576

Telephone Number:
949-398-4552

Dear Taxpayer:

On October 27, 2005, the Internal Revenue Service issued Announcement 2005-80, 2005-46 I.R.B. 967, which sets forth the terms of a settlement initiative that provides taxpayers an opportunity to resolve their tax liabilities associated with certain transactions. We are aware that you participated in an abusive transaction that is not one of the transactions included in the settlement initiative. Although the transaction you participated in is not included in that initiative, we would like to give you the opportunity to resolve your tax liabilities associated with that transaction in accordance with the terms set forth in Announcement 2005-80.

Based on our records, you participated in a transaction in which you were a partner in a partnership and another partner made a section 721 contribution of property to the partnership, where the contributing partner's adjusted basis in the property was greater than the fair market value of the asset, and you participated in the transaction for the purpose of recognizing the loss on the partnership's disposition of that asset for federal income tax purposes (The Partnership Loss Contribution Transaction).

If you would like to settle your transaction pursuant to this letter, then you must complete the enclosed Form 13750, Election to Participate in Announcement 2005-80 Settlement initiative. Do not fill out Section II and do not send the Election to the address noted on the form. Instead, type or write the name of your transaction at the top of each page (The Partnership Loss Contribution,

Transaction), and **return the Election to the contact person named above at** the following address:

> Internal Revenue Service
> ATT: LMSB: HMT:1223:EP
> Mail Stop 6001
> 24000 Avila Road
> Laguna Niguel, CA 92677

You must return the Election to the IRS on or before February 16, 2006. Please note that this Election must be signed under penalties of perjury. Taxpayers entitled to relief because of Hurricanes Katrina and Rita (see IR-2005-112 and IR-2005-110) have until February 28, 2006, to return the Election to the IRS.

We may ask you to provide additional information and documentation relating to the transaction, such as marketing materials and tax opinion letters. All requested information must be submitted under penalties of perjury to the Service within 30 days of the date of mailing of the request for additional information by the Service. Failure to provide the information timely will affect your ability to participate in the settlement initiative. Settlement will be pursuant to a Form 906, Closing Agreement on Final Determination Covering Specific Matters.

Resolution of the issues relating to your transaction will be in accordance with the terms described in the attached appendix.

If you have any questions, please contact the individual whose name and telephone number appear at the top of this letter.

Sincerely,
Elisabeth Ploessel
Elisabeth Ploessel

Revenue Agent

## APPENDIX

1. General Tax Adjustments: The tax benefits attributable to the difference between the fair market value of the contributed property at the time of contribution and the contributing partner's claimed adjusted basis in the property (the "built-in loss") will be disallowed. In this regard, in computing the corrected gain or loss (if any) from the sale or exchange of the contributed property (or from the sale of a lower tier entity holding such property) the basis used in such computation will be reduced by the amount of the built-in loss and the resulting corrected gain or loss (if any) will be allocated to the partners in accordance with their partnership interests. In computing the built-in loss, the fair market value of the distressed assets will be based upon the price you paid the foreign entity for your partnership interest (projected to reflect a 100% interest if less than 100% interest was acquired). Also you will be required to reduce your outside basis in the partnership to the extent that any of such basis is attributable to the contribution of foreign currency options. In addition, if the partnership or any lower tier entity continues to hold assets received in exchange for the contributed property, the partnership's basis in such assets received will be limited to fair market value on the date of the exchange, which will be presumed to be the value used by the partnership (i.e. amount received) in computing the claimed loss on the property exchanged.

2. Transaction Costs: Taxpayers will be allowed to treat as an ordinary loss" transaction costs, including promoter fees and fees paid for accounting, appraisal, and legal services. If tax benefits, including benefits attributable to transaction costs, were claimed in a year barred by the period of limitations on assessment, then transaction costs will be allowed as an ordinary loss only to the extent the transaction costs exceed the tax benefits claimed in the barred years.

3. Penalties: Any person wishing to settle under this offer will be subject to a section 6662 accuracy-related penalty in an amount equal to 10 percent of the underpayment attributable to this transaction.